UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ALEXA CURTIN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF ORANGE, et al.,<br><br>　　　　　　Defendants. | No. SA CV 16-591-SVW (PLAx)<br><br>**ORDER RE:  PLAINTIFF'S MOTION TO COMPEL** |

**I.**

**BACKGROUND**

According to plaintiff's Second Amended Complaint ("SAC") alleging civil rights violations under 42 U.S.C. § 1983, in April 2014, she and her then-husband got into a verbal argument at their home in Dana Point, California, and Orange County Sheriff's deputies were called to respond. Plaintiff and her husband were detained while the deputies conducted an investigation. The deputies determined that, while no arrests would be made, plaintiff should not stay the night at the home. Deputy Caropino ordered plaintiff into his vehicle and drove her to her vehicle, which was parked nearby. Deputy Caropino searched plaintiff's purse and vehicle, and ordered plaintiff to remain there until he returned or she would be in "a lot of trouble." Approximately twenty minutes later, the deputy returned, alone, in his personal vehicle and out of uniform, and proceeded to

sexually assault plaintiff inside her vehicle. (SAC ¶¶ 12-27). Plaintiff alleges that the foregoing conduct and violation of her constitutional rights were the result of the policy, practice and custom of the Orange County Sheriff's Department to inadequately supervise and discipline law enforcement officers. (SAC ¶ 33). Plaintiff further alleges that it is the policy, practice, and custom for deputies working for the County of Orange to not intervene to prevent civil rights violations, to not arrest the deputies engaging in illegal activity, and to not report the illegal activity. (SAC ¶ 35).

On February 21, 2017, plaintiff filed a Motion to Compel ("Motion") defendant County of Orange to provide responses and to produce documents in response to plaintiff's first set of Requests for Production of Documents and Things ("RFP" numbers 3-6, 8, 17, 21, 28, 29, 32-39), and first set of Interrogatories (numbers 9, 12, 14, 16, 18-23). According to plaintiff, the discovery seeks information and documents relating to the personnel file of Deputy Caropino, as well as internal affairs investigations and criminal investigations regarding sexual misconduct, sexual assaults, inappropriate sexual behavior while on duty, unjustified searches and seizures, citizen complaints, and discipline imposed, which plaintiff asserts is necessary to prove her complaints of individual and municipal liability pursuant to 42 U.S.C. § 1983 and Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[1]  Plaintiff further alleges in the Motion that after filing this action on March 30, 2016, she has become aware of two other victims of Deputy Caropino, whose attacks occurred under factual circumstances very similar to her own. (JS at 3-6).[2]

---

[1]  In order to prevail on a Monell claim, plaintiff must show that the constitutional injury that occurred was so prevalent as to constitute either a custom or policy of the entity defendant. Monell, 436 U.S. at 694 (plaintiff may hold a local government entity responsible under § 1983 for a constitutional injury only if he can show that his injury resulted from a policy, practice, or custom made by the entity's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy"); see also Delia v. City of Rialto, 621 F.3d 1069, 1081-82 (9th Cir. 2010) (as amended) (plaintiff must show that the alleged "constitutional violation result[ed] from: (1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a final policymaker") (quotations and citation omitted).

[2]  Neither party filed a supplemental memorandum in connection with the Motion, and the (continued...)

## II.

## **DISCUSSION**

Preliminarily, the Court will examine the issues in this Motion using the general standard set forth in Federal Rule of Civil Procedure 26 ("Rule 26") (as amended December 1, 2015). Rule 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. Discovery need not be admissible in evidence to be discoverable. Id. However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Finally, the Court is mindful of the imperative that the Federal Rules of Civil Procedure be "construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (as amended December 1, 2015) (emphasis added); see also Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (a court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance").

It is well-established that for a federal civil rights case, federal law controls the issues of privilege and privacy rights. See Kerr v. U.S. Dist. Court for Northern Dist. Of California, 511 F.2d

---

[2](...continued)
Court previously determined that no hearing was needed.

1  192, 197 (9th Cir. 1975). As a matter of comity, however, the federal court "should attempt to
2  ascertain what interests inspire relevant state doctrine [regarding privilege and privacy issues] and
3  should take into account the views of state authorities about the importance of those interests."
4  Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987). The ultimate determination
5  regarding the weight to be given to the state interest resides with the federal court. Id.
6        It is also well-established that an entity that withholds discovery materials based on a
7  privilege must provide sufficient information (i.e., a privilege log) to enable the requesting party to
8  evaluate the applicability of the privilege or other protection. Fed. R. Civ. P. 26(b)(5); see Clarke
9  v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992). Failure to provide sufficient
10 information may constitute a waiver of the privilege. See Eureka Financial Corp. v. Hartford Acc.
11 & Indem. Co., 136 F.R.D. 179, 182-83 (E.D. Cal. 1991) (a "blanket objection" to each document
12 on the ground of attorney-client privilege with no further description is clearly insufficient); Peat,
13 Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984) (attorney-client privilege
14 waived when defendant did not make a timely and sufficient showing that the documents were
15 protected by privilege). Asserting a "blanket objection" to document requests will be found to be
16 insufficient and improper. Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) (blanket privilege
17 objection is improper); see Clarke, 974 F.2d at 129 (blanket assertions of privilege are "extremely
18 disfavored"). In particular, the attorney-client privilege applies only when "(1) legal advice is
19 sought (2) from a professional legal advisor in his capacity as such, and (3) the communications
20 relating to that purpose (4) are made in confidence (5) by the client." Griffith v. Davis, 161 F.R.D.
21 687, 694 (C.D. Cal. 1995). Additionally, Rule 26(b)(3) of the Federal Rules of Civil Procedure may
22 "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of
23 an attorney . . . concerning the litigation." The work product doctrine "is intended to preserve a
24 zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye
25 toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman,
26 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385,
27 91 L.Ed. 451 (1947)). Furthermore, "[t]o be entitled to the protection of the work product rule, the
28

material must have been generated in preparation for litigation. The prospect of future litigation is insufficient." Whitman v. United States, 108 F.R.D. 5, 9 (D.N.H. 1985).

Here, defendant has produced a privilege log in response to the discovery requests, and the Court has reviewed the parties' contentions regarding the log's sufficiency, in particular plaintiff's argument that the privilege log fails to address the identity and position of all authors and recipients and each document's present location. (JS at 30). To the extent the Court herein orders production of any documents listed on the privilege log, plaintiff's arguments about the log's insufficiency are rendered moot. To the extent there are documents on the privilege log that are *not* being produced as a result of this Order, defendant is **ordered** to supplement the privilege log with information regarding the identity and title of all authors, the identity and title of all recipients, and the present location of each document. Furthermore, although in the privilege log defendant asserts the attorney-client privilege and work product doctrine as reasons for withholding certain documents (see, e.g., Exhibit F at 17-19), defendant has not made any showing that counsel was contacted for the purpose of providing legal advice, or that any documents were generated in preparation of litigation.[3] Accordingly, for any documents currently listed in the privilege log that defendant indicates are protected by the attorney-client privilege and/or the work product doctrine and that are not ordered produced, defendant is further **ordered** to supplement the privilege log to provide more detailed information that clearly establishes that the privilege or doctrine applies.

The Court now turns to the specific discovery requests at issue. As set forth in more detail below, the Court finds that certain discovery seeks information that is properly within the range of relevant material, and plaintiff's Motion to Compel is **granted in part** and **denied in part**.

---

[3] For example, for a document titled "OCSD Internal Criminal Investigation dated 11/25/2014," the privilege log indicates that this document was given to Capt. Stu Greenberg from Lt. Dave Sawyer. (Exhibit F at 17). There is no showing that this document involves confidential communications from defendant's counsel, or that this document was made in preparation of litigation.

**REQUESTS AT ISSUE**

<u>Interrogatory No. 9</u>

Interrogatory No. 9 requests the County to identify each person interviewed by OCSD personnel as part of the investigation of Case No. 16-077964 (the case number assigned to the criminal investigation into the incident which is the subject matter of this litigation).

In the Joint Stipulation, defendant argues that Interrogatory No. 9 is overbroad and infringes upon privacy rights of individuals and third parties, appears to be a "fishing expedition" to identify each and every individual who was contacted as part of the OCSD investigation, and is not reasonably calculated to lead to the discovery of admissible evidence.[4]  (JS at 48).

The Court agrees that plaintiff's request to have defendant identify every person interviewed as part of the investigation for Case No. 16-077964 is overly broad.  Defendant has already identified, in response to Interrogatory No. 8, each OCSD employee who investigated or worked on Case No. 16-077964, which totaled 12 individuals.  Plaintiff has entirely failed to articulate how the information sought in this interrogatory -- <u>i.e.</u>, a list of each person interviewed by the 12 OCSD employees who worked on investigation, regardless of whether each interview yielded relevant information or was ultimately included in the investigation file -- is proportional to the needs of the case.  In any event, as set forth <u>infra</u>, plaintiff is entitled to receive the documents

---

[4] The "not reasonably calculated" objection is based on the *former*, more liberal standard under Rule 26 that discovery was allowed if it was "reasonably calculated to lead to the discovery of admissible evidence." See <u>Gilead Scis., Inc. v. Merck & Co., Inc.</u>, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence.  In fact, the old language to that effect is gone.  Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case."); Advisory Committee Note to Rule 26(b)(1) (stating that "[t]he former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted.  The phrase has been used by some, incorrectly, to define the scope of discovery.  As the Committee Note to the 2000 amendments observed, use of the 'reasonably calculated' phrase to define the scope of discovery 'might swallow any other limitation on the scope of discovery.' . . . The 'reasonably calculated' phrase has continued to create problems . . . and is removed by these amendments.").

comprising the investigation for Case No. 16-077964 (see discussion regarding RFP Nos. 6, 8, and 17).  Accordingly, the Motion to Compel is **denied** with respect to Interrogatory No. 9.

Interrogatory Nos. 12, 14, 16, and 18

In the Interrogatories, plaintiff asked the County to identify OCSD policy relating or referring to "sexual activity while on duty" (Interrogatory No. 11), "sexual activity with detained persons" (Interrogatory No. 13), "sexual activity with recently detained persons" (Interrogatory No. 15), and "off-duty sexual activity with persons recently detained while on-duty" (Interrogatory No. 17). In response, defendant identified two policies: Policy No. 1018 and Policy No. 1001. In Interrogatory Nos. 12, 14, 16, and 18, which are at issue here, plaintiff seeks to compel information regarding "each and every instance" in which an OCSD employee violated the foregoing policies.

Defendant argues that Interrogatory Nos. 12, 14, 16, and 18 are vague, overbroad in time and scope, and compound. (JS at 50).  The Court agrees that the interrogatories are deficient in that they request information regarding all OCSD employees, and fail to limit the request to only deputies and other peace officers.  Moreover, the interrogatories do not specify a time frame.  As such, the information sought is not proportional to the needs of the case. Moreover, as for the two policies identified by defendant -- Policy No. 1018 and Policy No. 1001 -- the parties have not provided the Court with a copy of these policies, so the Court is unable to ascertain the nature of the two policies in order to determine whether any discovery regarding employee violations of such policies is appropriate in this action.  Accordingly, the Motion to Compel is **denied without prejudice** with respect to Interrogatory Nos. 12, 14, 16, and 18.

Interrogatory Nos. 19-22

In Interrogatory No. 19, plaintiff asks defendant to identify the number of allegations or complaints of sexual misconduct by OCSD personnel in the last five years.  In turn, Interrogatory No. 20 asks defendant to identify whether an investigation was conducted into the complaint or allegation, and to describe any investigation that occurred.  Interrogatory Nos. 21 and 22 ask defendant to identify, with respect to each investigation, any changes made to OCSD policies or

7

procedures to ensure the prevention of future similar misconduct, and whether any OCSD employee violated the changed policies or procedures.

Defendant argues that these interrogatories are not reasonably calculated to lead to the discovery of admissible evidence, and that responsive information would violate the privacy of individuals/non-parties who purportedly engaged in undefined "sexual activity while on duty." (JS at 50-51).

The Court determines that the interrogatories as propounded seek information not proportional to the needs of the case as the interrogatories request information about <u>any</u> complaints and investigations into sexual misconduct for <u>all</u> OCSD personnel. The interrogatories fail to limit the scope of the discovery sought to only incidents of misconduct involving peace officers. Moreover, the information sought is not limited to incidents of "sexual misconduct" similar to the claim brought in the instant suit. However, narrowing the scope of these interrogatories may well reveal relevant information. Accordingly, with respect to Interrogatory No. 19, the Court **grants in part** the Motion to Compel to the extent that defendant must identify the number of complaints or allegations of sexual misconduct between any deputy or other peace officer, on the one hand, and any non-OCSD employee, on the other hand, in the last five years. Consistent with this limited scope of Interrogatory No. 19, the Motion to Compel is also **granted** with respect to Interrogatories Nos. 20, 21, and 22.

Interrogatory No. 23

Interrogatory No. 23 asks defendant to identify any changes the OCSD made to its policies or procedures to ensure the prevention of future misconduct, following the Department's discovery of the sexual misconduct of Deputy Jennifer Tamara McClain on or about February 9, 2012.

Even without being provided any information regarding the circumstances of the alleged sexual misconduct by Deputy McClain, it is evident that plaintiff is seeking information regarding whether any changes to policies or procedures were made as a result of this particular incident, which apparently took place more than two years *before* plaintiff's alleged sexual assault by Deputy Caropino. However, the Court is not aware from the language of this Interrogatory or from

the parties' contentions in the Joint Stipulation whether "the sexual misconduct of Deputy Jennifer Tamara McClain" involves a deputy or peace officer, on the one hand, and any non-OCSD employee, on the other hand.  Accordingly, only to the extent this incident of sexual misconduct does involve such a scenario (i.e., an incident of sexual misconduct involving a deputy or other peace officer and any non-OCSD employee), the Court finds that responsive information may be relevant to plaintiff's Monell claim, and **grants** the Motion to Compel.

RFP Nos. 3-5

RFP No. 3 seeks all documents that report, memorialize, summarize, reflect or depict any statements given by any witnesses in connection with the incident (i.e., plaintiff's alleged sexual assault by Deputy Caropino), and RFP No. 4 seeks audio recordings of such statements.  RFP No. 5 seeks all documents reflecting any contact between any OCSD deputy or investigator and any witness to the incident.

Defendant's discovery responses reflect that one document was produced in response to these three requests:  Bates No. 000566.  (Exhibit D at 5-8).  The Court was not provided a copy of this document and therefore is not able to ascertain its contents.  In any event, defendant further asserts that there are no additional responsive documents as there are no known witnesses to the incident.  (JS at 55-56).  Given defendant's representation that no additional responsive documents exist, the Motion is **denied** with respect to RFP Nos. 3, 4, and 5.  However, **defendant shall provide plaintiffs with a declaration, signed under penalty of perjury by a County official responsible for the oversight of County litigation matters, attesting to the accuracy of defendant's representation that no additional responsive documents exist.**

/
/
/

RFP Nos. 6, 8, and 17

RFP Nos. 6 and 8 seek all documents relating to plaintiff's alleged sexual assault by Deputy Caropino and all documents relating to OCSD Case No. 16-077964. RFP No. 17 seeks documents identified in Interrogatory No. 7 (asking for identification of writings that refer to OCSD Case No. 16-077964). In addition to numerous objections, defendant produced the following documents in response to RFP Nos. 6, 7, and 17: Bates Nos. 000566, 000703-000716. (Exhibit D at 8-10).

Although defendant argues that RFP Nos. 6, 8, and 17 infringe on the privacy rights of Deputy Caropino, third parties, and witnesses (JS at 56), the Court finds that the requested information is relevant to plaintiff's claims in the pending action, and further finds that plaintiff's need for the discovery outweighs any alleged privacy interest of defendants or third parties whose information may be produced. See Unger v. Cohen, 125 F.R.D. 67, 70-71 (S.D.N.Y. 1989); Tyner v. City of Jackson, 105 F.R.D. 564, 565-66 (S.D. Miss. 1985) ("A basic function of federal courts is to facilitate the ascertainment of truth in resolving disputes. . . . [I]nvestigative reports regarding other similar incidents involving any of the individual police officers are also either relevant or will lead to the discovery of admissible evidence."); Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 604-05 (C.D. Cal. 1995) (the right to privacy is not absolute, but is "subject to invasion depending upon the circumstances"). Moreover, the Court finds that the protective order previously issued in this case strikes the appropriate balance between the need for the information and the privacy interests of defendant or third parties. Defendant's objections based on privacy concerns are **overruled**.

Additionally, internal investigation files are presumptively discoverable where plaintiff makes a proper showing of relevance.[5] Here, plaintiff's request for documents concerning the internal investigation of the incident described in the Second Amended Complaint is relevant and not

---

[5] See also Soto v. City of Concord, 162 F.R.D. 603, 613 n.3 (N.D. Cal. 1995) ("the policies underlying civil rights laws, public confidence in the court system, and in doing individual justice outweigh[] both the police department's desire for secrecy and privacy rights of officers or citizen complainants") (citing Kelly, 114 F.R.D. at 661).

overbroad. See Soto, 162 F.R.D. at 611 ("Plaintiff's request for the internal affairs documents concerning the investigation of the specific incident described in the complaint is relevant and is not overbroad. Information contained in these documents [may, for example,] include complaints of excessive force, the names of officers involved, witnesses identified, as well as findings and conclusions. Such evidence is relevant. . . .").

For these reasons, the Motion to Compel is **granted** with respect to RFP Nos. 6, 8, and 17.

RFP Nos. 21, 28, and 29

RFP Nos. 21, 28, and 29 seek, respectively, all documents: relating to response to Interrogatory No. 12 (asking defendant to identify each instance in which OCSD employees violated policy or procedure regarding sexual activity while on duty); relating to response to Interrogatory No. 19 (asking defendant to identify the number of allegations and complaints of sexual misconduct by OCSD personnel in the last five years); and relating to response to Interrogatory No. 20 (asking defendant to identify whether an investigation was conducted into the complaints or allegations of sexual misconduct by OCSD personnel in the last five years as identified in response to Interrogatory No. 19).

For the reasons set forth in the Court's discussion of Interrogatory No. 12, the Motion to Compel is **denied without prejudice** with respect to RFP No. 21.

For RFP Nos. 28 and 29, the Court **grants** the Motion to Compel consistent with the limited scope of Interrogatory Nos. 19 and 20, as set forth supra.

RFP Nos. 32-39

RFP Nos. 32 and 33 seek documents relating to any "citizen complaints" concerning sexual misconduct, sexual assault, use of force, dishonesty, unlawful detention, false arrest, planting of evidence, false statements or false testimony, against Deputy Caropino as well as the three deputies who responded with Deputy Caropino to the June 28, 2014, Dana Point call for service.

RFP Nos. 34 and 35 seek the personnel files, including disciplinary records, of Deputy Caropino and the three responding deputies. RFP Nos. 36 and 37 seek all documents and

recordings referring or relating to investigations, evaluations, reprimands, or administrative reviews of Deputy Caropino and the three responding deputies. RFP Nos. 38 and 39 seek all documents and recordings that refer or relate to any investigations, evaluations, reprimands, or administrative reviews of Deputy Caropino and the three responding deputies arising out of any allegation that the deputies engaged in sexual misconduct, sexual advances, or sexual harassment against any person other than plaintiff for the five year period of time preceding the incident.

First, to the extent defendant objects to producing any documents contained in personnel files based on the official information privilege, this objection is **overruled**. While federal common law recognizes that a privilege for official information exists, and that government personnel files are official information, the privilege is only qualified. Kerr, 511 F.2d at 198. In order to determine if a privilege exists that would bar discovery, a court "must weigh potential benefits of disclosure against potential disadvantages; . . . [s]uch balancing should be considered on a case by case basis, determining what weight each relevant consideration deserves in the fact-specific situation that is before the Court." Miller v. Pancucci, 141 F.R.D. 292, 299-300 (C.D. Cal. 1992) (emphases added); see also Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990). The court in Miller noted that the balancing test has been "moderately pre-weighted in favor of disclosure." Miller, 141 F.R.D. at 300 (citing Kelly, 114 F.R.D. at 662).

Before the balancing test is even conducted, however, certain requirements must be met. Among other things, the party asserting the official information privilege must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of the privilege. Id. In addition, the opposing party must also submit a declaration from the head of the department with control over the issue containing, in part, "a specific identification of the governmental or privacy interests that would be threatened by disclosure." Id. (quoting Kelly, 114 F.R.D. at 670). If the threshold burden of showing why production is not warranted has not been met, the "privilege will be overruled in its entirety and complete disclosure will be ordered." Id. at 301. Here, defendant has not submitted such a declaration. Thus, the Court cannot conclude either (1) that harm would result from the disclosure of the requested documents, or (2) that disclosure pursuant to a protective order would harm a "significant government interest," and how

much harm would be done "to those interests by disclosure in this particular case." Id. (citing Kelly, 114 F.R.D. at 670) (emphasis added).[6]

Regarding citizen complaints against Deputy Caropino, the Court determines that complaints regarding sexual misconduct, sexual assault, dishonesty, unlawful detention, false statements, and false testimony are either relevant to plaintiff's claims or could be used to determine credibility. See Ramirez v. Cnty. of L.A., 231 F.R.D. 407, 411 (C.D. Cal. 2005) (overruling sheriff department's privacy objections and granting motion to compel disclosure of documents related to citizen complaints). Accordingly, because such documents are relevant to plaintiff's claims in this action and proportional to the needs of the case, the Court **grants** the Motion to Compel regarding the production of citizen complaints against Deputy Caropino (RFP No. 33) regarding sexual misconduct, sexual assault, dishonesty, unlawful detention, false statements, and false testimony.

As for citizen complaints directed at the other three responding deputies, defendant asserts that there is no basis to produce the requested documents as plaintiff makes no allegations against them in her lawsuit. (JS at 57-58). Although the three responding deputies are not named defendants, and are not specifically alleged with wrongdoing, the Court finds that limited discovery is appropriate regarding the issue of citizen complaints. Taking into consideration the privacy rights of the three responding deputies, the Court finds that plaintiff's need for certain of the requested information outweighs any invasion of the non-defendant officers' privacy rights, as citizen complaints regarding dishonesty, false statements, and false testimony could be used to determine credibility, and could have bearing on plaintiff's Monell claim. Accordingly, the Court **grants** the Motion to Compel (RFP No. 32) regarding citizen complaints regarding dishonesty, false statements, and false testimony against the three responding deputies **for the period of five years prior to the date of the incident.**

---

[6] To the extent defendant also relies on the "self-critical analysis" privilege, such reliance is misplaced as this privilege has not been recognized by the Ninth Circuit. Union Pac. R. Co. v. Mower, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000).

The remaining requests for production, RFP Nos. 34-39, seek the personnel files of Deputy Caropino and the three responding deputies, including disciplinary records and documents regarding any investigations, evaluations, reprimands, and administrative reviews. First, the Court notes that complaints made against Deputy Caropino of misconduct similar to the allegations in the instant lawsuit, and any ensuing investigations, reprimands, employee evaluations and administrative reviews, are discoverable as such documents are clearly relevant to plaintiff's claims and proportional to the needs of the case. Likewise, regarding disciplinary records of Deputy Caropino, the Court finds that any documents reflecting discipline for any incident similar to the incident at issue in this case, or regarding any other incidents involving sexual misconduct, must be produced. Also, documents in Deputy Caropino's personnel file relating to training records for the five years preceding the incident must be produced, as such documents are relevant to plaintiff's Monell claim.

Regarding the personnel files of the three responding deputies, the Court finds the Soto opinion instructive:

> [D]istrict courts in the Ninth Circuit have found that the privacy interests police officers have in their personnel files do not outweigh the civil rights plaintiff's need for the documents. The court in Martinez v. City of Stockton, 132 F.R.D. 677, 683 (E.D. Cal.1990), balancing the privacy interests of the individual police officers versus the need for discovery under state law, allowed the discovery of personnel records subject to a protective order. The court in Hampton v. City of San Diego declined to apply state-codified privacy laws, but did conduct a general balancing test to determine the privacy interests of the officers in that case. 147 F.R.D. 227, 230 (S.D. Cal.1993). The court also balanced the need for the requested personnel files against the privacy rights of individual police officers, *expressing concern only for the privacy of those non-party officers involved at the scene* of the incident.[7] Id. Finally, the court in Miller ordered discovery of personnel files despite the defendants' assertion of the right of privacy. 141 F.R.D. at 301 (C.D. Cal. 1992). Thus, the existing case law suggests that the privacy interests of police officers have not outweighed the civil rights plaintiff's need to discover the *officer-defendants'* personnel files.

---

[7] The court in Hampton determined that because of its concerns regarding the privacy rights of the non-party officers at the scene of the incident, the court would review the disputed files *in camera*. Hampton, 147 F.R.D. at 230. It does not appear, however, that there was a protective order issued at the time of the court's decision in Hampton. See id. at 229-30 (stating that a privilege log could have been produced pursuant to a stipulated protective order and declining to conduct an in camera review until after a protective order had been entered).

Soto, 162 F.R.D. at 617 (emphases added) (footnote omitted).  Thus, the privacy interests of the three responding officers are more substantial because they are not parties to this case.  Notwithstanding this fact, the Court finds that plaintiff's need for the requested information here outweighs any invasion of the non-defendant officers' privacy rights, as these documents are relevant to plaintiff's claim for failure to supervise and are not otherwise available to plaintiff.  Thus, defendant must produce any documents in the personnel files of the three responding officers *relating to the incident at issue in this case.*  See also Tennison v. City & Cnty. of S.F., 2005 WL 89008, at *1 (N.D. Cal. Jan. 12, 2005).  Additionally, the following must be produced: documents in these non-defendant officers' personnel files relating to training records for the five years preceding the incident; and complaints relating to sexual assault and any corresponding disciplinary actions, including, but not limited to, investigations, performance evaluations, reprimands, and administrative reviews, **during the five years preceding the incident**.

With respect to documents from personnel files, each document produced shall be redacted to remove personal information such as social security numbers, home addresses, family members, or information relating to compensation and benefits, and may be produced pursuant to the protective order previously issued in this matter.

### III.
### CONCLUSION

Based on the foregoing, **IT IS ORDERED THAT**:

1. Plaintiffs' Motion to Compel is **granted in part** to the extent described above.

2. Defendant is ordered to provide all responsive information and documents in its possession, custody, or control, and the required declaration, **no later than March 27, 2017.** To the extent defendant produces any document or other information that is designated confidential in nature, such document or information may be produced pursuant to the protective order currently in place.  Additionally, to the extent there are documents listed on the privilege log previously provided by defendant that are not being produced as a result of this Order, defendant is ordered to supplement the privilege log with information regarding the identity and title of all

authors, the identity and title of all recipients, and the present location of each such document. To the extent defendant asserts the attorney-client privilege and/or work-product doctrine as a basis for withholding any document, defendant shall further supplement the privilege log to provide more detailed information establishing that the privilege or doctrine applies.

**IT IS SO ORDERED.**

DATED: March 13, 2017

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE