1   Jeremy D. Jass, SBN 279466
    jeremy@jasslaw.com
2   JASS LAW
3   4510 E. Pacific Coast Highway, Suite 400
    Long Beach, CA 90804
4   Telephone: (562) 340-6299
5   Facsimile: (562) 340-6422

6
    Attorneys for Plaintiff
7   ALEXA CURTIN

8
9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA

11

12  ALEXA CURTIN,                          Case No.: 8:16-CV-00591-SVW-PLA

13
                                           Assigned to Hon. Stephen V. Wilson
14                   Plaintiff,
                                           **PLAINTIFF ALEXA CURTIN'S**
15                                          **OPPOSITION TO DEFENDANT'S**
                                           **MOTION *IN LIMINE* NO. 2**
16
            vs.
17

18
                                           Date: April 17, 2017
19  COUNTY OF ORANGE; NICHOLAS             Time: 3:00 p.m.
20  LEE CAROPINO, individually and as      Crtrm: 6
    Deputy Sheriff for the County of Orange;
21  and DOES 1 through 50,

22

23
                     Defendants,
24

25

26

27

28
                                    I

    **PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

1

**TABLE OF CONTENTS**

2
I.    INTRODUCTION .................................................................................... 1

3
II.   RELEVANT FACTUAL PREDICATE......................................................2

4
III.  ARGUMENT.........................................................................................5

5
       A.    Contrary to the County's Position, the Evidence of Prior Similar

6
             Sexual Assaults Are Relevant to Plaintiff's Claim for

7
             *Monell* Liability...............................................................................5

8
       B.    The County's Assertion that Such Evidence Should be Excluded as

9
             More Prejudicial than Probative is Misplaced ................................. 10

10
IV.  CONCLUSION……………………………………………………….....14

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

# TABLE OF AUTHORITIES

**Cases**

*Anthony v. County of Sacramento,* 898 F.Supp. at 1452 (E.D. Cal. 1995)....................................... 8

*Blind-Doan v. Sanders,* 291 F.3d 1079 (9th Cir. 2002)....................................................... 10, 11, 12

*City of St. Louis v. Praprontik*, 485 U.S. 112 (1988)................................................................ 7

*Doe v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000) ............................................................... 11, 12

*Flores v. County of L.A.,* 758 F.3d 1154 (9th Cir. Cal. 2014) ....................................... 10

*Frank v. County of Hudson,* 924 F.Supp. 620 (D.N.J.1996) ........................................... 11

*Gillette v. Delmore,* 979 F.2d 1342 (9th Cir.1992)........................................................... 8

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001).................................................................. 9

*Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir. 1985) ........................................ 8

*Henderson v. City & Cnty. of San Francisco,* C05-234 VRW, 2006 WL 3507944 (N.D. Cal. Dec. 1, 2006) .................................................................................................................. 7

*Henry v. County of Shasta,* 132 F3d 512 (9th Cir. 1997) ............................................. 8

*Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir. 1991) ........................................... 8

*McRorie v. Shimoda,* 795 F.2d 780 (9th Cir. 1986)........................................................... 8

*Monell v. Dept. of Social Services of the City of N.Y.*, 436 U.S. 658 (1978)................................ 6

*Old Chief v. United States,* 519 U.S. 172  (1997).......................................................... 12

*Oviatt by and through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992)....................................... 7

*Rogers v. City of Little Rock,* 152 F.3d 790  (8th Cir. Ark. 1998)..................................... 9

*Seeley v. Chase,* 443 F.3d 1290 (10th Cir. 2006) ................................................... 12, 13

*Thompson v. City of Los Angeles,* 885 F.2d 1439 (9th Cir. 1989)........................................ 8

*Ulrich v. City & County of San Francisco,* 308 F.3d 968 (9th Cir.2002)................................. 6, 7

*United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir.1998)................................................ 11

**Statutes**

42 U.S.C. § 1983................................................................................................................. 12

**Other Authorities**

III

---

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

9th CIR. MODEL JURY INSTR. Nos. 9.5 ................................................................................... 7

9th CIR. MODEL JURY INSTR. Nos. 9.6 ................................................................................... 7

9th CIR. MODEL JURY INSTR. Nos. 9.7 ................................................................................... 7

9th CIR. MODEL JURY INSTR. Nos. 9.4 ................................................................................... 7

**Rules**

Fed. Rules of Evid. Rule 402 ................................................................................................. 12

Fed. Rules of Evid. Rule 415 ............................................................................................. 10, 11

Fed.Rules of Evid. Rule 401 ................................................................................................. 12

IV

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

## I.   INTRODUCTION

Defendant County of Orange seeks to exclude "other alleged complaints of sexual assault" from all phases of trial in this action.  Dkt. 60 at 1, 3.  The County seeks to exclude such evidence on the bases that prior sexual assaults are "irrelevant" to the *Monell* claim since the County allegedly had no notice of such claims and, even if relevant, such evidence should be excluded as it "would be unduly prejudicial."  Dkt. 60 at 5, 12.  The County's attempt to exclude such critical evidence falls woefully short.

At the outset and as explained below, the County entirely ignores that separate from *Monell* liability, the evidence is relevant and in fact critical Plaintiff's 1983 claim against Deputy Caropino.  While the County argues that the evidence may "taint" the jurors ability to objectively evaluate the evidence, the County ignores Deputy Caropino's anticipated defense that the sexual conduct was *consensual*.  Evidence concerning the two other young women who were similarly victimized by Deputy Caropino during the year prior to the attack on Plaintiff is admissible as it supports Plaintiff's description of the assault and dispenses with any contention that it was consensual.

Furthermore, the County's position that such evidence should be excluded since it had no notice of the prior sexual assaults is belied by the evidence.  The County *admits* that it received the February 2014 tort claim and that conducted an investigation into the claims.  Dkt. 60 at 13-14.  While the County is silent as to the results of the investigation, claiming only that "[u]ltimately, County appropriately managed his [Caropino's] status," it is without dispute that the County permitted Caropino to continue to work as a deputy following the sexual assault claim and it was indeed during this time period that he sexually assaulted and raped Plaintiff.  The County's position that it had no notice of such prior similar assaults is entirely disputed and is in no way a basis for exclusion of such evidence.

1

PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2

1    It appears that even the County recognizes the relevance of evidence of prior

2    similar sexual assaults.  At one point in its motion, the County represents that it

3    may rely on such evidence of prior sexual attacks.  Dkt. 60 at 15-16 (the County

4    states "the evidence may or may not be necessary *for the defense of the case*, and

5    defendants will be prepared to argue how that evidence might be used as it pertains

6    to the *Monell* claim.").  Apparently the County is arguing that the evidence should

7    be excluded to the extent it supports Plaintiff's theories of liability, but admitted

8    should it assist the County in its defense.

9    For several reasons, the County's motion should be denied.  \

10   **II.    RELEVANT FACTUAL PREDCATE**

11   As a result of inherently deficient police procedures and policies, as well as

12   a *de facto* policy which permitted and condoned misconduct by deputies, Plaintiff

13   was violently assaulted and raped.  Plaintiff was not the first victim, and indeed the

14   evidence reveals at least two prior sexual assaults by Deputy Caropino alone prior

15   to the time Plaintiff was sexually assaulted.

16   **2012-2013.**   A detainee files a lawsuit against Deputy Jennifer Tamara

17   McClain and the Orange County Sheriff's Department alleging that the deputy

18   engaged in a sexual relationship with the detainee.  The case was dismissed on

19   procedural grounds in May 2013.

20   **June 2013.**  In June 2013, Deputy Caropino sexually assaulted Jane Doe #1

21   in her vehicle while detaining her during a DUI investigation.  Ms. Doe #1

22   complied with Deputy Caropino's commands out of fear of harm to her person and

23   out of fear that he would abuse his position to wrongfully arrest her.

24   Ms. Doe #1 is prepared to testify that at about 1:00 a.m. in Dana Point, she

25   was heading home from Fred's Mexican Café.  On her way home she went through

26   the drive through of Del Taco and could see a Sheriff's Deputy standing at the cash

27   register looking at her. After eating her food, Ms. Doe #1 was pulled over leaving

28   Del Taco.  Deputy Caropino walked up to her car and said, "I saw that look you

2

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

1  gave me," and asked her if she would ever date a cop.  Ms. Doe #1 said, "No."

2  Deputy Caropino then asked Ms. Doe #1 if she had been drinking, she initially said

3  no, but Deputy Caropino incessantly asked her again if she had been drinking. She

4  felt Deputy Caropino was doing this to scare her, and she was in fact fearful of

5  him. She then admitted that she had a couple of margaritas at Fred's Mexican Café.

6  At that point, Deputy Caropino told her that he had turned all of his recording

7  devices off, which further frightened Ms. Doe #1. Deputy Caropino then asked if

8  Ms. Doe #1 was "wet" and that he wanted to feel her. He then reached in through

9  the driver side window and forced his hand under her underwear panties to fondle

10 her genitals. Deputy Caropino then said, "I want to fuck you right now," and told

11 Ms. Doe #1 to follow him. Still fearful that Deputy Caropino would harm her or

12 take her to jail, she complied. She followed him to a parking lot, where he parked

13 his squad car next to hers and directed her to get into the backseat of her car. He

14 then engaged in non-consensual sexual intercourse with her in the backseat of her

15 car.  Before leaving, Deputy Caropino asked Ms. Doe #1 for her phone number and

16 she gave it to him. A few days later he started sending her vulgar threatening text

17 messages that Ms. Doe #1 did not reciprocate.  Ms. Doe #1 was 21 years old at the

18 time of the incident.

19        **February 2014**.  Jane Doe #2 filed a government claim against the County

20 of Orange and Deputy Caropino in late February of 2014. In her claim, Ms. Doe #2

21 states that on September 4, 2013, while she was under arrest and sitting in the back

22 of a squad car, Deputy Caropino uncuffed her hands and forced her to touch his

23 penis through his uniform. Deputy Caropino intimidated her, coerced her, and

24 sexually assaulted her.  He then called and text messaged her once she was

25 released from custody and showed up at her home while on duty and in uniform to

26 have non¬consensual sex with her. Ms. Doe #2 was 18 years old at the time of the

27 incident.

28

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

**June 2014**

In the early morning hours of June 28, 2014 sheriff's deputies, including Deputy Caropino, responded to dispute between Ms. Curtin and her husband. After investigating, the deputies concluded no crime had occurred, and the couple should part ways for the night. Then, Deputy Caropino placed Ms. Curtin in his patrol car and drover her to her car.

Once there, he got her out of the patrol vehicle and further detained her. He searched her purse, vehicle, and contents of the vehicle including luggage and clothing. He asked Ms. Curtin why the panties he found were wet. He then told her that she was not free to leave and that if she did leave, "She would be in a lot of trouble," and that he was going to return.

Ms. Curtin followed Deputy Caropino's orders not to leave and waited in her car. After some time, Deputy Caropino returned and ordered Ms. Curtin to let him into her vehicle.  He then said to Ms. Curtin, "Since you are still here, I am going to fuck the shit out of you."  Deputy Caropino told Plaintiff, "Show me your pussy." Plaintiff was afraid and feared for her own safety, and she complied with all of Deputy Caropino's commands. Then Deputy Caropino groped Plaintiff's vagina and digitally penetrated her while commenting on her anatomy. Deputy Caropino then pulled his pants down and shoved Plaintiff's head down towards his genitals and forced her to orally copulate him despite her cries of pain.

Next, Deputy Caropino ordered Ms. Curtin to straddle him while he sat in the passenger seat of her vehicle. She was still in fear for her safety and knew that many in law enforcement carry guns, even when out of uniform, and complied with the Deputy Caropino's commands. While in this position, the Deputy Caropino forced sexual intercourse with Ms. Curtin.

Before leaving, Deputy Caropino then pulled up his pants, and asked Plaintiff for her cellular phone number so he could text her and to do this again.

4

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

1   Still afraid, Plaintiff gave Deputy Caropino an incorrect phone number. Ms. Curtin

2   was 21 years old at the time of the incident.

3   **III.   ARGUMENT**

4   **A. Contrary to the County's Position, the Evidence of Prior Similar Sexual**

5   **Assaults Are Relevant to Plaintiff's Claim for *Monell* Liability.**

6   According to the County, the evidence of prior sexual assaults should be

7   excluded from trial "because there is no evidence the alleged assaults were made

8   known to the County before the alleged assault involving the Plaintiff."  Dkt. 60 at

9   5.  The County's position is puzzling to say the least.  Throughout its brief, the

10   County *admits* receiving prior complaints concerning Deputy Carpoino.  Dkt. 60 at

11   6, 11-12, 13-14.

12   As outlined above, Jane Doe #2 filed a government claim detailing the

13   sexual assault *months prior* to Caropino's sexual attack and rape of Plaintiff. The

14   County *admits* that it received the February 2014 tort claim, but claims "[a]s will

15   be more fully addressed at the hearing, the Claim for Damages submitted to the

16   County did not put the County on notice of a rape."  Dkt. 60 at 13.  The County

17   offers no explanation as to how Ms. Doe #2's claim for sexual assault did not put

18   the County on notice of at least allegations of Caropino's inappropriate and

19   unlawful behavior prior to the time he assaulted and raped Plaintiff.  Indeed, the

20   County represents that in response to Ms. Doe #2's claim, "the County conducted

21   an investigation as it was required to do" and "[u]ltimately, [the] County

22   appropriately managed his status." Dkt. 60 at 13-14. The County notes in its

23   motion in limine: "Notably, a criminal investigation was initiated after the Claim

24   for Damages was filed by Accuser No. 1, and while the DA declined to prosecute

25   the case, *the County investigated* and ultimately took appropriate action vis a vis

26   Caropino."  Dkt. 60 at 6.

27   Thus, pursuant to the County's own suspiciously veiled argument, the

28   County was aware of Jane Doe #2's claim and indeed *conducted an investigation*

5

PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2

1   into the allegations and Caropino's past – which ultimately resulted in the County

2   "manag[ing]" Caropino's status.  While the County argues that it had no notice of

3   prior sexual assaults, the County has repeatedly refused to disclose documents of

4   its investigation or even the details of Caropino's apparent change in status

5   resulting from the investigation.  The County cannot credibly argue a lack of notice

6   as to prior sexual assaults when it admits to receiving such claims and conducting

7   an investigation in response thereto which ultimately led to Deputy Caropino's

8   "change in status."  Again, Plaintiff was raped *months after* Jane Doe #2 filed her

9   claim while Caropino was still acting as a deputy sheriff for the County.  As will

10  be established at trial, the County essentially provided Caropino the platform for

11  which he could abuse his authority as an officer and continue to sexually assault

12  and abuse female civilians with impunity.

13       The County's motion in limine should thus be denied at the outset since it is

14  entirely disputed whether it had notice of the prior sexual assaults it seeks to

15  exclude.  Furthermore, the County's scarce legal analysis concerning the

16  admissibility of prior acts of misconduct in establishing *Monell* liability fails.

17  Indeed, it is most often through such evidence of prior similar incidents that

18  liability under *Monell* is established.

19       To impose liability on a government entity, a plaintiff must show that "the

20  municipality itself causes the constitutional violation through 'execution of a

21  government's policy or custom, whether made by its lawmakers or by those whose

22  edicts or acts may fairly be said to represent official policy.'"  *Ulrich v. City &*

23  *County of San Francisco,* 308 F.3d 968, 984 (9th Cir.2002) (quoting *Monell v.*

24  *Dept. of Social Services of the City of N.Y.*, 436 U.S. 658, 694 (1978)).  "Municipal

25  liability under 1983 may be premised upon an officially promulgated policy, a

26  single decision by an official with final decisionmaking authority, a custom or

27  persistent practice or a deliberately indifferent training or supervision."  *Henderson*

28  *v. City & Cnty. of San Francisco,* C05-234 VRW, 2006 WL 3507944 (N.D. Cal.

6

1  Dec. 1, 2006); *Ulrich v. City & County of San Francisco,* 308 F.3d 968, 984–85

2  (9th Cir.2002); see also 9th CIR. MODEL JURY INSTR. Nos. 9.4 [Monell claim

3  based on "official policy" or widespread "practice and custom"], 9.5 [acts by final

4  policymaker]; 9.6 [ratification by a final policymaker], 9.7 [failure to train or

5  supervise].

6       The evidence in this case reveals an unwritten practice and policy within the

7  County where deputies protect fellow deputies from investigation and

8  consequences of their wrongdoing.  The failures of the County to report

9  misconduct by fellow officers and appropriately discipline officers that have

10  committed misconduct resulted in a *de facto* policy permitting deputies to act with

11  impunity in sexual misconduct against females.  Further, the express policies of the

12  County were woefully inadequate, failing to mandate reporting of misconduct and

13  patently inept at preventing the very type of misconduct engaged in by Caropino.

14       The evidence of prior similar sexual attacks by Caropino is admissible and

15  relevant to support Plaintiff's *Monell* claim against the County. As will be

16  explained by Plaintiff's police expert, the County was aware of Caropino's

17  sexually deviant tendencies and yet failed to do anything in response.  The

18  evidence reveals a well-settled, widespread practice or custom of protecting fellow

19  deputies that engage in such misconduct and a complete failure by the County to

20  appropriately discipline such deputies.

21       Acquiescence in a custom or practice that routinely disregards the

22  constitutional rights of citizens may itself be sufficient to establish a policy or

23  practice sufficient for *Monell* liability.  See *City of St. Louis v. Praprontik*, 485

24  U.S. 112, 130 (1988) (potential section 1983 liability "if a series of decisions by

25  suboardinate official manifested a 'custom or usage' of which the supervisor must

26  have been aware"); *Oviatt by and through Waugh v. Pearce*, 954 F.2d 1470, 1477

27  (9th Cir. 1992) (policymaker's inaction in face of problem constituted policy for

28  purposes of section 1983 liability); see also *Grandstaff v. City of Borger,* 767 F.2d

7

1   161, 171 (5th Cir. 1985) (prior incidents of misconduct tend to prove a pattern or

2   custom and policymaker's accession to it).

3         Further, "[t]he lack of appropriate discipline is evidence of custom."

4   *Anthony, supra,* 898 F.Supp. at 1452; *Gillette v. Delmore,* 979 F.2d 1342, 1349

5   (9th Cir.1992), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993).

6   A plaintiff may prove "the existence of a custom or informal policy with evidence

7   of repeated constitutional violations for which the errant municipal officials were

8   not discharged or reprimanded." *Navarro,* at 714, citing *Gillette, supra*, 979 F.2d

9   at 1348.  Once such a showing is made, a municipality may be liable for its custom

10  "irrespective of whether official policy-makers had actual knowledge of the

11  practice at issue." *Navarro,* at 714-715, citing *Thompson v. City of Los Angeles,*

12  885 F.2d 1439, 1444 (9th Cir. 1989).

13        The evidence concerning the prior sexual assault victim of Caropino who

14  reported the attack to the County months prior to the attack against Plaintiff is

15  particularly relevant to the *Monell* claim. It is established that a department's

16  handling of a misconduct claim may be "highly probative" in proving the existence

17  of a municipal policy or custom under Section 1983.  See *Henry v. County of*

18  *Shasta,* 132 F3d 512, 519 (9th Cir. 1997).  A "[p]olicy or custom may be inferred

19  if officials took no steps to reprimand or discharge the [officers involved], or if

20  they otherwise failed to admit the [officers'] conduct was in error." *Id.* (citing

21  *McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir. 1986)); see also *Larez v. City of*

22  *Los Angeles,* 946 F.2d 630 (9th Cir. 1991).  In *Henry,* the plaintiff's constitutional

23  rights were violated after being stopped for a traffic violation.   The officers

24  involved were not reprimanded and plaintiff also demonstrated that, after bringing

25  suit, several other officers employed by the county similarly detained other traffic

26  violators. *Henry,* 132 F3d at 519.  The Ninth Circuit concluded that when a

27  municipality "turn[s] a blind eye to severe violations of inmates' constitutional

28  rights-despite having received notice of such violations-a rational fact finder may

8

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

1   properly infer the existence of a previous policy or custom of deliberate

2   indifference." *Id.*, see also *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)

3   (holding that correctional department administrators may not take a "blind-eye"

4   approach and that condoning unconstitutional acts by the failure to investigate or

5   correct the repeated violations constitutes a policy or custom under *Monell*.)

6       The County cites *Rogers v. City of Little Rock,* 152 F.3d 790, 800 (8th Cir.

7   Ark. 1998) as allegedly supporting its position of exclusion of the evidence. Dkt.

8   60 at 9.  There, in affirming an order granting summary judgment based on the lack

9   of evidence demonstrating that the "policy was not shown to have caused the

10  constitutional violation" (an argument not advanced by the County here), the Court

11  noted that "[a] city may also be liable under § 1983 where there had been 'a prior

12  pattern of unconstitutional conduct that [was] so "persistent and widespread" as to

13  have the effect and force of law,' and the pattern caused the alleged injury."

14  *Rogers,* at 799.  The Court concluded that "evidence of the city's inadequate

15  reaction an earlier incident where Morgan engaged in sexual intercourse with a

16  *fellow cadet* while on duty and an unsustained claim by another *cadet* of sexual

17  harassment," was insufficient because "the department investigated both incidents

18  and suspended Morgan as a result of his engaging in intercourse with a fellow

19  cadet while on duty." *Id*.

20      Unlike in *Rogers* where after notice of the inappropriate sexual conduct with

21  fellow cadets, as opposed to public civilians as in the present case, the city

22  responded with an investigation and appropriate discipline, here the County *did*

23  *nothing* for months following express notice of Deputy Caropino's sexual assault

24  of a civilian in his detention.  Again, at least with respect to Jane Doe #2, the

25  County was made aware of the allegations in February 2014 and it was not until

26  November 2014 that the County changed his status. The rape of Plaintiff occurred

27  in June 2014.  A reasonable trier of fact could conclude that the County's

28  inadequate response to the Claim filed by Jane Doe #2, whereby Caropino was

9

PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2

1   permitted to continue as a deputy officer, led Caropino to believe that he could act

2   with impunity in sexually abusing Plaintiff.

3        Likewise misplaced is the County's citation to *Flores v. County of L.A.* (9th

4   Cir. Cal. 2014) 758 F.3d 1154.  Dkt. 60, at 7.   There, the plaintiff argued that the

5   County's alleged failure to train officers not to commit sexual assault constituted

6   deliberate indifference.  The Court highlighted the absence of any pattern of sexual

7   assaults by deputies prior to the plaintiff's assault in 2011, and noted that the

8   plaintiff's reliance on the criminal conviction of a different deputy, working at a

9   different installation, from 2004 was inadequate as the incident resulted in

10   *convictions* against the sole offender.  Here, the evidence of prior assaults occurred

11   within one year of the attack against Plaintiff.  Further, it appears by the County's

12   own admissions in its brief that at the time of the attack on Plaintiff, Deputy

13   Caropino had not been disciplined at all despite express notice of his sexual assault

14   against a civilian.

15        In short, the County's attempt to exclude "any references to prior alleged

16   assaults" on the ground that the City was allegedly not on notice of such instances

17   fails.  For several reasons, the evidence is necessary and imperative at establishing

18   the City's liability under *Monell*.

19       **B. The County's Assertion that Such Evidence Should be Excluded as**

20          **More Prejudicial than Probative is Misplaced.**

21        The County's further position that such evidence, even if relevant, should be

22   excluded as more prejudicial than probative is without merit as the County entirely

23   ignores the relevance of such evidence in defending against Caropino's alleged

24   defense that the sexual assault was in fact consensual.

25        The Federal Rules of Evidence specifically provide that evidence of other

26   offenses of sexual assault may be admissible in a civil case predicated on a claim

27   of sexual assault.  Fed. Rules of Evid. Rule 415(a); *Blind-Doan v. Sanders,* 291

28   F.3d 1079, 1082 (9th Cir. 2002).  Pursuant to Rule 415, "[i]n a civil case involving

10

---

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

1   a claim for relief based on a party's alleged sexual assault or child molestation, the

2   court may admit evidence that the party committed any other sexual assault or

3   child molestation. The evidence may be considered as provided in Rules 413 and

4   414." Fed. Rules of Evid. Rule 415(a).

5         The Ninth Circuit's decision in *Blind-Doan* is illustrative of why evidence of

6   Deputy Caropino's prior sexual assaults and abuse of other women is admissible

7   here. There, a detainee sued a police officer after he sexually assaulted her. While

8   booked in jail, the officer had escorted the plaintiff back to her cell and according

9   to the victim he told her he was going to "teach her a lesson" and inserted his

10   police baton into her vagina. *Blind-Doan*, 291 F.3d at 1081. The officer denied the

11   assault occurred. At trial, the victim listed seventeen witnesses who would testify

12   as to relevant prior sexual assaults by the officer. Included among such testimony

13   was testimony from one victim who alleged that "'prior to being booked at the Taft

14   jail, Officer Sanders took her into a small room at the jail and tried to get her to

15   have sex with him in exchange for letting her go free." Id. at 1082. The district

16   court granted the defendant's motion in limine to exclude all such evidence. Id. at

17   1081. The Ninth Circuit reversed.

18         In its discussion of Rule 415, the Court cited its earlier decision in *Doe v.*

19   *Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) where it was held:

20         To determine whether Fed.R.Evid. 415 applies to evidence that a

21         party is seeking to introduce at trial, courts adopt a three-step inquiry.

22         See *Frank v. County of Hudson,* 924 F.Supp. 620, 625–26

23         (D.N.J.1996). First, the defendant must be accused of an offense of

24         sexual assault or child molestation; second, the evidence being

25         proffered must relate to the commission of another offense of sexual

26         assault or child molestation; and last, the evidence has to be relevant.

27         See *United States v. Guardia*, 135 F.3d 1326, 1328, 1332 (10th

28         Cir.1998) (discussing Fed.R.Evid. 413's relation to Fed.R.Evid. 403).

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

1    *Doe v. Glanzer*, 232 F.3d at 1268; *Blind-Doan, supra,* at 1081.

2          In *Doe v. Glanzer*, the Ninth Circuit explained: "With respect to this last

3    prong, it is generally accepted that a defendant with a propensity to commit acts

4    similar to those charged is more likely to have committed the charged act than

5    another and therefore such evidence is relevant and in conformity with the

6    standards set out in Fed.R.Evid. 401 & 402." *Doe v. Glazner,* at 168 citing

7    Fed.R.Evid. 401 (stating that evidence is relevant if it has a tendency to "make the

8    existence of any fact that is of consequence to the determination of the action more

9    probable or less probable than it would be without the evidence"); Fed.R.Evid. 402

10   (stating that only relevant evidence is admissible at trial); *Old Chief v. United*

11   *States,* 519 U.S. 172, 181 (1997).

12         In *Seeley v. Chase,* 443 F.3d 1290 (10th Cir. 2006), the Tenth Circuit held

13   that even an attempted prior sexual assault may be admissible under Rule 415.  In

14   that case, the plaintiff alleged a violations of her civil rights under 42 U.S.C. §

15   1983, and for assault, battery, false arrest, and false imprisonment under the New

16   Mexico Tort Claims Act after she was sexually assaulted by an officer.  The

17   district court permitted testimony from four other alleged victims and evidence of a

18   criminal indictment (concerning several victims of sexual abuse by the officer) in

19   the plaintiff's civil trial against the officer. *Id.* at 1292.  The Tenth Circuit rejected

20   the officer's claim that the testimony from the other witnesses could not be

21   admitted since the prior acts did not expressly involve a sexual touching.  Noting

22   that the "[t]estimony of the other four women allegedly assaulted by Chase is

23   chilling," the Court held that testimony that the officer stopped a motorist twice,

24   handcuffed her, asked if she would have sex with him, and rubbed her breasts, and

25   testimony that on another occasion he took a juvenile to his car, pulled her pants

26   and underwear down, and shined a flashlight on her genitals, was sufficient to

27   establish that officer took a substantial step toward sexually assaulting the victims,

28   warranting admission of that testimony, as evidence of other acts of sexual assault

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

1    under Rule 415, even though the officer was not alleged to have touched the two

2    witnesses' genitals.  *Id.* at 1296-1297

3         Here, the evidence of Deputy Caropino's prior sexual assaults falls within

4    the ambit of admissible evidence under Rule 415.  As explained in Plaintiff's

5    motion in limine concerning this same evidence, the prior instances of sexual

6    assault by Officer Caropino dispel Caropino's alleged defense that the sexual

7    assault and rape was consensual.

8         Notably, and as highlighted above, while the County argues that as to the

9    first phase against Deputy Caropino, the evidence is unduly prejudicial character

10   evidence with no probative value, as to the second phase concerning *Monell*

11   liability, the County posits: "the evidence may or may not be necessary *for the*

12   *defense of the case*, and defendants will be prepared to argue how that evidence

13   might be used as it pertains to the *Monell* claim."  Dkt. 60 at 15-16.  Thus it

14   appears that the County actually appreciates the relevance of this evidence and

15   indeed may intend to rely on such evidence at trial.

16        While, as with other arguments in its motion the County fails to actually

17   explain its position stating only that it will make such an offer of proof at the

18   hearing, the very fact that the County recognizes the relevance and importance of

19   such evidence supports denial of its motion in limine.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

13

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**

## IV.    CONCLUSION

For the foregoing reasons, the motion in limine should therefore be denied. Should the Court be inclined to rule otherwise, in the very least the ruling should be deferred pending the County's production of documents concerning its purported investigation into Jane Doe #2 and its ultimate change of status of Deputy Caropino as Plaintiff anticipates that such documents will reveal further evidence of the County's notice.

Dated:  March 27, 2017                    Jass Law


                                    ___/s/ Jeremy Jass_____
                                    Jeremy Jass
                                    *Attorney for Plaintiff*,
                                    ALEXA CURTIN

14

**PLAINTIFF ALEXA CURTIN'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 2**