**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANA ALDEN FOX, SB# 119761
  E-Mail: Dana.Fox@lewisbrisbois.com
DAWN M. FLORES-OSTER, SB# 155722
  E-Mail: Dawn.Flores-Oster@lewisbrisbois.com
BARRY HASSENBERG, SB# 71136
  E-Mail: Barry.Hassenberg@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant COUNTY OF
ORANGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEXA CURTIN,<br><br>                  Plaintiff,<br><br>          vs.<br><br>COUNTY OF ORANGE; and DOES 1<br>through 50,<br><br>                  Defendants. | CASE NO. 8:16-cv-00591-SVW-PLA<br>The Hon. Stephen V. Wilson<br><br>**DEFENDANT'S UPDATED<br>MEMORANDUM OF<br>CONTENTIONS OF FACT AND<br>LAW**<br><br>**Date:   July 24, 2017**<br>**Time:  3:00 p.m.**<br>**Crtrm.: 10A**<br><br>**FPTC Date:     July 24, 2017**<br>**Trial Date:     August 1. 2017** |

TO THIS HONORABLE COURTAND TO PLAINTIFF AND HER

ATTORNEYS OF RECORD:

Defendant COUNTY OF ORANGE provides its Updated Memorandum of

Contentions of Fact and Law:

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**Page**

I.    PARTIES ............................................................................................... 2

II.   INTRODUCTION .................................................................................. 3

I.    PROCEDURAL AND FACTUAL BACKGROUND ...................................... 4

    A.    Brief Procedural Background ....................................................... 4

        1.    The Complaint ................................................................... 4

        2.    Order to Show Cause,  Filing of First Amended
            Complaint, and Discharge ................................................... 6

        3.    First Amended Complaint .................................................. 7

        4.    Court's Order re Bifurcation .............................................. 7

        5.    Second Amended Complaint .............................................. 7

    B.    *Monell* Claim ............................................................................. 8

III.  THE CLAIM BROUGHT UNDER 42 U.S.C. SECTION 1983 ..................... 9

II.   PLAINTIFF'S SINGLE CAUSE OF ACTION AGAINST THE
    COUNTY UNDER *MONELL* MUST FAIL .............................................. 9

    A.    Any *Monell* Violation Must Be Attributed To Conduct Which
        Was Performed As Official Policy of The Local Governmental
        Body ........................................................................................... 9

    B.    *Monell* Liability Can Also Arise For a Municipality's Failure to
        Train and Supervise Its Employees ............................................. 9

    C.    Without an Underlying Constitutional Violation, There Can Be
        No Violation Under *Monell* ..................................................... 10

        1.    The Evidence Does Not Demonstrate Plaintiff was in
            Custody at the Time of the Assault, and There Can
            Therefore Be No Violation of the Fourth Amendment ............. 11

        2.    There Can Be No Fourteenth Amendment Violation ................. 12

    D.    Single, Isolated or Random Events Are Insufficient to Support a
        Claim Under *Monell* ................................................................ 13

    E.    Section 1983 Liability Cannot Be Supported by An Allegation of
        Mere Negligence ....................................................................... 14

    F.    A *Respondeat Superior* Theory Will Not Serve to Keep the
        County in this Action ................................................................. 14

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

G. The County's Comprehensive Investigation and the Alleged Prior Incidents of Sexual Assault by Caropino, and the District Attorney's Declination to File Charges .................................................... 15

H. The County's Policies ................................................................................ 15

1. The County has no policy which allows or authorizes the alleged violations of federally protected rights. .......................... 15

(i) The County Has Written Policies Which Prohibit the Violation of Federally-Protected Rights .................... 15

(ii) The County Has No Policy Which Authorizes the Falsification of Reports .................................................... 16

(iii) The County Does Not Condone the Unconstitutional Infringement of Citizens' Rights ...................................... 16

(iv) The County Selects its Law Enforcement Personnel In Accord with All State-Mandated Requirements ......... 16

(v) Deputies Must Maintain Certain Proficiency Levels ....... 17

IV. EVIDENTIARY ISSUES AND DISPUTE ................................................... 18

A. Motion in Limine No. One  to Exclude Exhibits Or Witnesses, Including Expert Witnesses Not Identified In Plaintiff's F.R.C.P. Rule 26 Report or Never Produced In Discovery ................................. 18

B. Motion In Limine No. Two To Exclude Any Argument, Evidence Or Testimony Of Other Alleged Complainants Of Sexual Assault Due To The County's Lack Of Notice ......................... 18

C. Motion In Limine No. Three To Exclude Argument, Evidence. Testimony, Or Reference To Negligence Principles Or Comparative Fault In The Context Of A Section 1983 Action ............ 19

D. Motion In Limine No. Four To Exclude Any Reference To Speculative Interpretation Of Missing Time Or Inaudible Audio Which Captures Interaction Between Plaintiff And Caropino ............. 19

E. Motion In Limine No. Five To Exclude Alleged Misconduct, Personnel Files And IA Investigations of Deputies Dwayne Chapple, Christopher Eiben, Cameron Mathis And Nicholas Caropino (Phase 1 And Phase 2) ........................................................... 19

F. Motion In Limine No. Six To Exclude Any Opinions of Jeffrey Noble And Roger Clark Based On Post Deposition Review Of Evidence (Phase 1 And  Phase 2) ......................................................... 19

G. Motion In Limine No. Seven To Exclude Portions of Defendant Nicholas Caropino's Termination Letter And Revised Motion In Limine No. 2 (Phase 1 And Phase 2) ................................................... 20

H.   Motion *In Limine* No. Eight To Exclude Testimony of Dr. Zackler As Violative of The Parties' Stipulation (Phase 1 And Phase 2) ...................................................................... 20

I.   Motion *In Limine* No. Nine To Exclude Any Reference To The Criminal Matter of The People of The State of *California v. Scott Dekraai* And The Matter Of John Chamberlain (Phase 1 And Phase 2) ...................................................................... 21

J.   Motion *In Limine* No. Ten To Exclude Any Speculative Argument Plaintiff's  Alleged Incident Would Have Been Avoided If Caropino Had Immediately Been Placed On Administrative Leave (Phase 1 And Phase 2) ..................................... 21

K.   Motion *In Limine* No. Eleven To Exclude Any Reference To Investigator Virgil Asuncion Having Socialized With Nicholas Caropino While Off-Duty ................................................ 21

L.   Motion *In Limine* No. Twelve To Exclude Any Reference To Rape.................................................................................. 21

M.   Motion *In Limine* No. Thirteen To Exclude All Reports Prepared By The Office of Independent Review .................................. 22

N.   Motion *In Limine* No. Fourteen To Exclude Testimony By Defendant Caropino As To Those Questions In Which He Asserted The Fifth Amendment Privilege At Deposition And In Written Discovery ......................................................... 22

V.   CLAIMS AND DEFENSES ............................................................. 22

A.   Claims Asserted Pursuant to 42 U.S.C. Section 1983 (First Claim)............................................................................... 22

     1.   Alleged Excessive Force and Elements Required to Prove ....... 22

B.   Affirmative Defenses and Elements Required to Prove ...................... 24

VI.  EVIDENCE IN SUPPORT OF DEFENDANT'S DEFENSES .................... 25

1.   Testimony of Plaintiff. ............................................................... 25

2.   Testimony of witnesses, including Sgt. Margaret Sheehan and Lt. Sean Howell. .............................................................................. 25

3.   Testimony of Defendant's expert Robert Fonzi............................... 25

4.   Photos of scene........................................................................ 25

5.   Audio and videotape of various interactions between Caropino and Plaintiff.................................................................................. 25

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

6.      Audio of dispatchers' radio communications. ...................................25

7.      Documents evidencing training given to deputies regarding prohibited
        fraternization.............................................................................................25

8.      Documents evidencing criminal investigations and internal affairs
        investigators conducted after reviewing civilian complaints. .........................25

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## Federal Court Cases

*Barsamian v. City of Kingsburg,*
    597 F. Supp. 2d 1054 (E.D. Cal. 2009)......................................................11, 12

*Blair v. City of Pomona,*
    223 F.3d 1074 (9th Cir. 2000)..........................................................................9

*Brendlin v. California,*
    551 U.S. 249, 127 S.Ct. 2400, 168 L. Ed. 2d 132 (2007).............................12

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) ......................................................................................10

City of *Los Angeles v. Heller,,*
    475 U.S. 796, 106 S. Ct. 1571 (1986) ..........................................................10

*City of St. Louis v. Praprotnik,*
    485 U.S. 112, 106 S.Ct. 915 (1988) ........................................................14, 18

*Davis v. City of Ellensburg,*
    869 F.2d 1230 (9th Cir. 1989).......................................................................14

*Doe v. Lebbos,*
    348 F.3d 820 (9th Cir. 2003)..........................................................................10

*Dougherty v. City of Covina,*
    654 F.3d 892 (9th Cir. Cal. 2011) ................................................................19

*Foote v. Spiegel,*
    903 F.Supp. 1463 (1995)................................................................................14

*Fourth Amendment. Fontana v. Haskin,*
    262 F.3d 871 (9th Cir. 2001)..........................................................................13

*Fourth Amendment. In Fontana v. Haskin,*
    262 F.3d 871 (9th Cir. Cal. 2001) ................................................................11

*Harris v. City of Marion, Ind.,*
    79 F.3d 56 (7th Cir. 1996)..............................................................................13

*Hawkins v. Holloway,*
    316 F.3d 777 (8th Cir. 2003)..........................................................................13

*Hodgson v. Mississippi Department of Corrections,*
    963 F.Supp. 776 (1997)..................................................................................14

*Larez v. Holcomb,*
    16 F.3d 1513 (9th Cir. 1994)............................................................................9

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## <u>TABLE OF AUTHORITIES</u> (cont'd)

Federal Court Cases

*Los Angeles v. Heller,,*
    475 U.S. 796 (1986) ..................................................................................11, 13

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978) ...................................................................................3, 14

*Quintanilla v. City of Downey,*
    84 F.3d 353 (9th Cir 1996)...........................................................................10

*Shields v. Tracy,*
    2005 U.S. Dist. LEXIS 49157 (E.D. Cal. June 21, 2005)............................12

*Trevino v. Gates,*
    99 F3d 911 (9th Cir. 1996)...........................................................................13

*United States v. Lanier,*
    520 U.S. 259, 117 S.Ct. 1219, 137 L. Ed. 2d 432 (1997) .............................13

*United States. See Pavao v. Pagay,*
    307 F.3d 915 (9th Cir. 2002).........................................................................9

*Wise v. New York City Police Department,*
    928 F.Supp. 355 (1996)................................................................................14

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.,*
    259 F.3d 1101 (9th Cir. 2001).......................................................................18

State Court Cases

*California Supreme Court in People v. Zamudio,*
    43 Cal. 4th 327, 75 Cal. Rptr. 3d 289, 181 P.3d 105 (2008) ..................11, 12

*People v. Celis,*
    33 Cal. 4th 667, 16 Cal. Rptr. 3d 85, 93 P.3d 1027 (2004) ..........................11

Federal Statutory Authorities

42 U.S.C. § 1983.................................................................................................14, 22

42 U.S.C. §1983..................................................................................................5, 11

42 U.S.C. section 1983 .......................................................................................4, 7, 9

Federal Rules and Regulations

F.R.C.P. Rule 26 ................................................................................................18

F.R.C.P. Rule 37 ................................................................................................18

Fed. R. Civ. P. Rule 4(m) ..................................................................................7

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I.    **PARTIES**

**For Plaintiff, Alexa Curtin**

Jeremy D. Jass, Esq.
JASS LAW
3730 E. Broadway, Suite EF
Long Beach, CA 90803
Phone:  (562) 340-6299
Fax:  (562) 340-6422

**Co-Counsel for Plaintiff, Alexa Curtin**

Daniel K. Balaban, Esq.
Balaban & Spielberger, LLP
11999 San Vicente Blvd., Ste. 345
Los Angeles, CA 90049
Phone: (424) 832-7677
Fax: (424) 832-7702

Holly N. Boyer, Esq.
Shea S. Murphy, Esq.
Esner, Chang & Boyer
234 East Colorado Blvd., Ste. 975
Pasadena, CA 91101
Phone: (626) 535-9860
Fax: (626) 535-9859

Philip Kent Cohen, Esq.
Philip Kent Cohen, APC
100 Wilshire Bl., Ste. 1300
Santa Monica, CA 90401
Phone: (310) 451-9111
Fax: (310) 451-9119

**For Defendant Nicholas Caropino**

Thomas R. Chapin, Esq.
Law Office of Thomas R. Chapin
232 E. Grand Blvd., Suite 204
Corona, CA 92882
Phone: (951) 278-2919
Fax: (951) 278-2999

**For Defendant County of Orange**

Dana Alden Fox, Esq.
Barry Hassenberg, Esq
Dawn Flores-Oster, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone: (213) 250-1800; Fax: (213) 250-7900

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## II.   __INTRODUCTION__

Plaintiff Alexa Curtin ("Plaintiff") cannot present any facts or competent evidentiary support the County of Orange ("County" or "Defendant") is liable for the alleged violation of the principles espoused under *Monell,* [1] the only Claim for Relief asserted against it.  In brief, Plaintiff claims she was sexually assaulted by Defendant Caropino after Caropino responded to a domestic abuse complaint made by a reporting party citizen.

It is important to note the County's liability is principally based on whether the County promulgated or ratified unconstitutional policies which were the cause of the alleged sexual assault. In other words, plaintiff must prove the Department had a policy which fostered abuse of authority or, alternatively, did nothing when confronted with facts a Deputy engaged in sexually untoward behavior while on duty, or abused his power as a deputy whether on or off duty. The County reacted immediately and appropriately when confronted with the allegations brought by Plaintiff, conducting a broad and intensive investigation to uncover any other allegations of sexual assault. Plaintiff can present no evidence the County failed to investigate or concealed her allegations. Finally, policies promulgated by the County neither reveal the existence of nor support Plaintiff's contention the County fostered an abuse of authority by its Deputies.

For a *Monell* claim to succeed, Plaintiff must establish there was a constitutional violation in the first instance.  The County's alleged municipal liability is based upon a purported violation of Plaintiff's Fourth Amendment rights But the undisputed facts demonstrate there was no detention and therefore no seizure of the Plaintiff, and no Fourth Amendment violation.

/ / /

---

[1]  *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L. Ed. 2d 611], "*Monell*."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                                    3                                    8:16-cv-00591-SVW-PLA
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    Further, the evidence will demonstrate the County's policies and practices do

2    not permit or condone improper treatment of women, nor do they permit or condone

3    abuse of power by the County's Deputies.  In short, the County never promulgated

4    any policy or engaged in any act which could be construed as a violation of

5    Plaintiff's rights under the Constitution.

6    Finally, even if Plaintiff were able to establish the County's policies

7    constituted a pattern and practice of denying the Constitutional rights of citizens,

8    including Plaintiff (which she cannot), there is no evidence such untoward policy

9    was a "moving force" behind the injury Plaintiff alleges she sustained.

10   **I.    PROCEDURAL AND FACTUAL BACKGROUND**

11       **A.    Brief Procedural Background**

12           **1.    The Complaint**

13   On March 30, 2016, Plaintiff Alexa Curtin filed a Complaint in the Southern

14   District of the United States District Court of California, against County of Orange

15   and "Deputy Epson," and Does 1-50. While the caption page of the Complaint sets

16   forth two claims for relief, namely, Violation of Civil Rights, (42 U.S.C. section

17   1983), and *Monell* Claim (42 U.S.C. section 1983), the body of the Complaint set

18   forth three different claims, including (1) Violation of Civil Rights (Unreasonable

19   Seizure), against Defendants Does 1-25, (2) a substantive due process claim against

20   Defendants Does 1-25, and a "fourth" claim (a third claim appears to have been

21   omitted), for unlawful custom and practice against the County, "Sniff" (sic), and

22   Does 26 to 50.  The Complaint contained a vague reference to "deliberate

23   indifference to the civil rights of minority groups," although there is no indication

24   Plaintiff was a member of a minority. It was additionally plead that "to the best of

25   Plaintiff's recollection, Deputy Epson was the culprit involved in the April 2014

26   incident. Should it be determined through discovery that Plaintiff has misidentified

27   the culprit as Deputy Epson, Plaintiff will seek relief to amend this Complaint to

28   name to identify (sic) the true culprit as a defendant in this matter." Punitive

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   damages were sought against the Deputy. [Docket No. 1].

2       Plaintiff alleged this Court's jurisdiction pursuant to 42 U.S.C. §1983. FAC, at

3   ¶1. At ¶4, Plaintiff alleged County "possessed the power and authority to adopt

4   policies and prescribe rules, regulations and practices affecting the operation of the

5   Orange County Sheriff's Department, and particularly said Department's Patrol,

6   Internal Investigations, Training and Personnel Divisions… and their tactics,

7   methods, practices, customs and usages related to their dealings with the public,

8   internal investigations, personnel supervision and meaningful records and review

9   and maintenance." Does 1-50 are alleged to have been responsible for the assault,

10  and ". . . advised, encouraged, participated in, ratified, directed and conspired to do

11  the wrongful acts alleged… ." [¶7]. At ¶8, Plaintiff alleges each defendant was

12  acting on the course and scope of their employment as Sheriff's Deputies of the

13  County… ."

14      In brief, Plaintiff claimed "in the month of April, 2014," in Dana Point,

15  California, Plaintiff and her then boyfriend got into a "verbal argument," where

16  Plaintiff "elected to leave and go home." As she was leaving, an "Orange County

17  Deputy" initiated a traffic stop, and Plaintiff pulled her vehicle to the side of the

18  road. [2] The Deputy began questioning her, and searched her vehicle. While

19  conducting the search of her vehicle, the Deputy "…found some of Plaintiff's

20  underwear, and began inappropriately questioning Plaintiff about her underwear;

21  asking her how many pairs she had, why she needed the underwear, etc." The

22  Deputy then told Plaintiff he needed to attend to a "more pressing matter," but that

23  she was not free to leave, ordering her to remain in her vehicle. Plaintiff allegedly

24  complied, and "tried to go to sleep."

25  / / /

26

27

28

---

[2] This allegation was later denied in Plaintiff's deposition testimony.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Approximately 20 minutes later, the Deputy returned, and pulled behind
2  Plaintiff's vehicle in his "personal vehicle," and "out of uniform." He entered
3  Plaintiff's vehicle, and sat in the passenger seat, while Plaintiff was still in the
4  driver's seat. The Deputy began "issuing orders" to Plaintiff, and, "based on
5  information and belief," stated: "since you are still here, I am going to fuck the shit
6  out of you," and "show me your pussy."  Because she was "afraid and feared for her
7  life," and because "Plaintiff knew that many in law enforcement carry guns, even
8  when out of uniform," Plaintiff complied with the Deputy's demands, which also
9  included straddling the Deputy, and allowing him to grope and digitally penetrate
10  Plaintiff's vagina, while he commented on her anatomy.  Plaintiff claims to have
11  had "non-consensual sexual intercourse" with the Deputy, the Deputy "partially
12  ejaculating inside of Plaintiff's vagina, and partially on the seat of Plaintiff's
13  vehicle."

14    After the Deputy pulled up his pants, he asked Plaintiff for her cell phone
15  number so he could text and they could "do this again." Plaintiff gave the Deputy
16  the wrong number. The Deputy then left in his personal vehicle.

17    Plaintiff stated she made "no attempt to resist whatsoever." [See, Complaint,
18  ¶¶ 11-25].

19    Among other allegations, the *Monell* claim was principally based upon the
20  allegation the Orange County Sheriff's Department (not a named Defendant in the
21  Caption or otherwise) failed to "adequately supervise and discipline law
22  enforcement officers who abuse their position as law enforcement officers in order
23  to commit these heinous acts, and then rely on their status to shield themselves from
24  any culpability." [See, Complaint, at ¶31].

25        **2.    Order to Show Cause,  Filing of First Amended Complaint,**
26            **and Discharge**

27    On June 28, 2016, the Court issued an Order to Show Cause Why the Case
28  Should Not Be Dismissed for Lack of Prosecution, reminding Plaintiff's counsel of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                     6                         8:16-cv-00591-SVW-PLA
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

his obligations under Rule FRCP Rule 4(m), which requires a Plaintiff to serve the summons and complaint within 90 days from the date of the filing of the Complaint. Plaintiff was therefore ordered to show cause why the Complaint should not be dismissed on or before July 12, 2016. [Docket No. 8]. On June 29, 2016, Plaintiff filed a First Amended Complaint, in which Deputy Epson was omitted as a defendant, and was replaced with Deputy Doe 1. [Docket No. 9]. On July 1, 2016, the Court thereafter discharged its Order to Show Cause. [Docket No. 10]. On July 22, 2016, County answered the Complaint. [Docket No. 12]. Does 1-50 are alleged to have been responsible for the assault, and ". . . advised, encouraged, participated in, ratified, directed and conspired to do the wrongful acts alleged… ."

### 3.    First Amended Complaint

The allegations in the First Amended Complaint ("FAC") regarding the sexual assault were largely the same as those set forth in the Complaint, at ¶¶ 11-24, 27, Docket No.9]. The FAC, filed on June 29, 2016 contained three causes of action: (1) First Cause of Action (Violation of Civil Rights, 42 U.S.C. §1983- Unreasonable Seizure) against Defendants Does 1-25; (2) Second Cause of Action (Violation of Civil Rights, 42 U.S.C. §1983- Substantive Due Process) against Defendants Does 25-50; (3) Fourth (sic) Cause of Action (Violation of Civil Rights, 42 U.S.C. §1983- Unlawful Custom and Practice) against County, "Sniff," and Does 26-50. No Third Cause of Action was asserted.

### 4.    Court's Order re Bifurcation

On August 8, 2016, this Court ordered that the Deputy's liability be bifurcated from that of the County.  [Docket No. 17].

### 5.    Second Amended Complaint

On November 21, 2016, Plaintiff filed a Motion for Leave to File a Second Amended Complaint "SAC." [Docket No. 18]. On December 14, 2016, the Court granted the Motion and on December 15, 2016, Plaintiff filed the SAC. [Docket Nos. 28 and 29].

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                              7                          8:16-cv-00591-SVW-PLA
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    Notably, the SAC identified Caropino as a Defendant in the case (at ¶6,) and

2 removed an allegation which appeared in the First Amended Complaint, at ¶14,

3 from the SAC which suggested one of the Deputies initiated a traffic stop causing

4 Plaintiff to pull over. [3]

5    **B.**   *Monell* **Claim**

6    In support of plaintiff's *Monell* claim, which commences at ¶49 to ¶60 of the

7 FAC, Plaintiff alleges [4] the County maintained, enforced, and applied a custom,

8 practice, policy and usage tending to encourage, promote, sanction, tolerate and

9 ratify the abuse of authority, and the use of unreasonable seizure, unnecessary and

10 excessive force by law enforcement personnel. It also alleges the County required

11 and encouraged the employment, deployment and retention of persons as peace

12 officers who have demonstrated their brutality, dishonesty, and numerous other

13 serious abuses of their powers as peace officers.

14    Plaintiff further alleges the County failed and refused to impartially

15 investigate personnel complaints, and failed to discipline or prosecute peace officers

16 who commit acts of felonious dishonesty and crimes of violence. Plaintiff contends

17 the County knew its deputies engaged in abuse and assaultive misconduct toward

18 detainees and arrestees, and did not ensure their safety.

19    Plaintiff also contends the County refused to adequately discipline individual

20 deputies and employees found to have committed similar acts of abuse and

21 _____

22 [3] The removal of this allegation is significant because it supports the proposition
plaintiff was not detained at the time of the incident, and therefore, there was no

23 violation of the Fourth Amendment. Plaintiff amended the SAC to read "… the
Deputies concluded their investigation and determined that no arrests would be

24 made…" (SAC,¶15.)

[4] A great number of these allegations have no application whatsoever since there can

25 be no Fourth Amendment violation - there was no seizure, no unconstitutional use of
force and no excessive use of force. These are marked by an asterisk at the end of

26 the paragraph reference. See, ¶¶ 6 (¶52(c)), 7 (¶52(d)), 8 (¶52(e)), 15 (¶52(I)), 16
(¶53, in part), 17 (¶ 54, in part), 18 (¶ 55, in part), 19 (¶ 56, in part), 20 (¶ 57, in

27 part). 21 (¶ 58 (a), in part), 22 (¶ 58 (b), in part), 24 (¶58(d) in part), and 25( ¶59 (in
part)).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                    8                    8:16-cv-00591-SVW-PLA
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  misconduct, and demoted or fired deputies who reported acts of abuse by other

2  deputies.  Plaintiff additionally maintains the County harbored deliberate

3  indifference to the civil rights of minority groups. See, SAC, at ¶¶51-63.

4  **III.   THE CLAIM BROUGHT UNDER 42 U.S.C. SECTION 1983**

5          Plaintiff bears the burden of proving a constitutional violation under the

6  Fourth Amendment. A section 1983 plaintiff bears the burden of pleading and

7  proving that a person acting under color of state law committed the conduct at issue,

8  and that the conduct caused the plaintiff to be deprived of some right, privilege, or

9  immunity protected by the Constitution or laws of the United States. See *Pavao v.*

10 *Pagay*, 307 F.3d 915, 919 (9th Cir. 2002) (citing *Larez v. Holcomb*, 16 F.3d 1513,

11 1517 (9th Cir. 1994)); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir.), *cert.*

12 *denied*, 522 U.S. 996, 118 S. Ct. 559, 139 L. Ed. 2d 401 (1997). Plaintiff cannot

13 meet that burden under the facts of this case.

14 **II.   PLAINTIFF'S SINGLE CAUSE OF ACTION AGAINST THE**

15 **COUNTY UNDER *MONELL* MUST FAIL**

16 **A.   Any *Monell* Violation Must Be Attributed To Conduct Which Was**

17 **Performed As Official Policy of The Local Governmental Body**

18         In *Monell,* the Supreme Court explained that local governments may not be

19 sued "for an injury inflicted solely by its employees or agents" and that "it is when

20 execution of a government policy or custom, whether made by its lawmakers or by

21 those whose edicts or acts may fairly be said to represent official policy, inflicts the

22 injury that the government as an entity is responsible under section 1983." *Monell,*

23 *supra*, at 694.  Thus, if the alleged deprivation cannot be attributed to conduct which

24 was performed as official policy of the local governmental body, no *Monell* cause of

25 action can be stated.  *Blair v. City of Pomona*, 223 F.3d 1074 (9th Cir. 2000).

26 **B.   *Monell* Liability Can Also Arise For a Municipality's Failure to**

27 **Train and Supervise Its Employees**

28         A municipality may also be held liable for failure to train and supervise its

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  employees.  See *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-389 (1989).  A

2  failure to train is not a constitutional violation, but merely one method of proving a

3  *Monell* claim. Id.  In order to prove a *Monell* claim based on failure to train, the

4  plaintiff must prove:

5      1.  A violation of the plaintiff's federally protected rights.

6      2.  A conscious decision by the public entity not to provide training on

7      a subject which it knows its employees are likely to encounter, or that

8      the training was otherwise inadequate.

9      3.  Proof that specific additional training would have prevented the

10      violation of the plaintiff's federally protected rights. *Canton, supra*, at

11      389 ("Only where a failure to train reflects a "deliberate" or

12      "conscious" choice by a municipality -- a "policy" as defined by our

13      prior cases -- can a city be liable for such a failure under § 1983"); *Doe*

14      *v. Lebbos*, 348 F.3d 820, 831 (9th Cir. 2003) (no causal connection

15      between alleged inadequate training and the injury was shown).  In

16      effect, the plaintiff must prove the inadequate training was a result of a

17      conscious decision undertaken by the municipality.

18  **C.**   **Without an Underlying Constitutional Violation, There Can Be No**

19      **Violation Under *Monell***

20      A claim under *Monell* for an official custom or policy that is unconstitutional

21  cannot be established if the plaintiff suffered no infringement of his or her

22  constitutional rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct.

23  1571 (1986).  ("If a person has suffered no constitutional injury at the hands of the

24  individual police officer, the fact that the departmental regulations might have

25  authorized the use of constitutionally excessive force is quite beside the point");

26  *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir 1996), cert. den., 519 U.S.

27  1122 (a plaintiff may not pursue a *Monell* claim without first establishing a

28  constitutional injury). Where there is no underlying constitutional harm, a plaintiff

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  cannot maintain a *Monell* claim against a municipality. See e.g., *Los Angeles v.*

2  *Heller*, 475 U.S. 796, 799 (1986).

3          **1.        The Evidence Does Not Demonstrate Plaintiff was in Custody**

4                 **at the Time of the Assault, and There Can Therefore Be No**

5                 **Violation of the Fourth Amendment**

6          Because there are no facts which support the proposition plaintiff was

7  in custody at the time of the alleged assault, there can be no violation of the

8  Fourth Amendment.  In *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. Cal. 2001),

9  a police officer was sued under 42 U.S.C. §1983 and state law claims after he

10 arrested, and then allegedly sexually harassed and touched a female arrestee

11 in a police vehicle while on their way to the police station.  The Court found a

12 violation of the Fourth Amendment. In the case at bar, however, plaintiff was

13 not in custody nor was she under arrest at the time of the assault.

14         We note the restraint on an individual's freedom of movement may be

15         sufficient to trigger a Fourth Amendment violation. In *Barsamian v.*

16         *City of Kingsburg*, 597 F. Supp. 2d 1054, 1065 (E.D. Cal. 2009), the

17         Court, citing *People v. Celis*, 33 Cal. 4th 667, 673, 16 Cal. Rptr. 3d 85,

18         93 P.3d 1027 (2004), reasoned: "[t]he California Supreme Court noted

19         that '[a] seizure occurs whenever a police officer 'by means of physical

20         force or show of authority' restrains the liberty of a person to walk

21         away.'" 33 Cal. 4th at 673.The Court continued: '[W]hen police engage

22         in conduct that would communicate to a reasonable person that he [or

23         she] was not at liberty to ignore the police presence and go about his

24         [or her] business, there has been a seizure.'" *Celis*, 33 Cal. 4th at 673.

25

26         The *Barsamian* court went on to observe:

27         As more recently explained by the California Supreme Court in *People*

28         *v. Zamudio*, a seizure of an individual occurs only when the "'officer,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   by means of physical force or show of authority, terminates or

2   restrains'" an individual's 'freedom of movement' 'through means

3   intentionally applied' by the officer. 43 Cal. 4th 327, 341, 75 Cal. Rptr.

4   3d 289, 181 P.3d 105 (2008) (quoting *Brendlin v. California*, 551 U.S.

5   249, 127 S.Ct. 2400, 2405, 168 L. Ed. 2d 132 (2007)). The dispositive

6   inquiry is whether, 'in view of all of the circumstances surrounding the

7   incident, a reasonable person would have believed that he [or she] was

8   not free to leave.' *Zamudio*, 43 Cal. 4th at 341 . . . . When, as here, an

9   individual 'as no desire to leave for reasons unrelated to the police

10  presence, the coercive effect of the encounter can be measured better

11  by asking whether a reasonable person would feel free to decline the

12  officers' requests or otherwise terminate the encounter.' Id. . . .. "The

13  test is objective, not subjective; it looks to the intent of the police as

14  objectively manifested to the person confronted." Id. . . .. Thus, an

15  'officer's uncommunicated state of mind and the individual citizen's

16  subjective belief are irrelevant.' Id."  Id. (Italics added).

17       Under the objective test as enunciated in *Barsamian*, the undisputed

18  material facts demonstrate that at the time of the assault, plaintiff was not

19  stopped for a traffic violation, was not under arrest nor under investigation,

20  and was not forced to remain in her vehicle. Further, Caropino was not "on

21  the clock" at the time the alleged assault occurred.

22            **2.    There Can Be No Fourteenth Amendment Violation**

23       Plaintiff may claim her rights were allegedly violated in accord with the

24  Fourteenth Amendment substantive due process protection, however, the Fourth

25  Amendment appears to be the preferred analysis.  See, *Shields v. Tracy*, 2005 U.S.

26  Dist. LEXIS 49157, 24-25 (E.D. Cal. June 21, 2005).

27       Allegations of sexual assault by a governmental officer may, in some

28  circumstances, serve as the basis of a substantive due process claim.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Hawkins v. Holloway*, 316 F.3d 777, 784 (8th Cir. 2003). However, Shields's claim is best analyzed under the Fourth Amendment. "[I]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Lewis*, 523 U.S. at 843 (quoting United *States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L. Ed. 2d 432 (1997)). Noting this rule, the Ninth Circuit has held that while sexual misconduct by a police officer toward another is generally analyzed under the Fourteenth Amendment, such allegations of sexual misconduct by a police officer during a continuing seizure are more properly analyzed under the Fourth Amendment. *Fontana v. Haskin*, 262 F.3d 871, 881-82 (9th Cir. 2001).

### D.   Single, Isolated or Random Events Are Insufficient to Support a Claim Under *Monell*

A single isolated incident by a law enforcement officer does not establish official policy or practice of a municipality sufficient to render it liable for damages under Section 1983. *Oklahoma City v. Tuttle* (1985) 41 U.S. 808, 105 S.Ct. 2427, rehearing denied 1985 473, U.S. 925, 106 S.Ct. 16; *Los Angeles v. Heller* (1986) 475 U.S. 796, 106 S.Ct. 1571 rehearing denied 1986 476 U.S. 1154, 106 S.Ct. 2268. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F3d 911, 918 (9th Cir. 1996); *Harris v. City of Marion, Ind.*, 79 F.3d 56, 59 (7th Cir. 1996) ("One incident cannot be bootstrapped into a pattern"). Indeed, "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino*, 99

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  F3d at 920.There is no evidence the operative Complaint identifies anything more

2  than a "single event."

3     E.     **Section 1983 Liability Cannot Be Supported by An Allegation of**

4            **Mere Negligence**

5         There is no liability pursuant to Section 1983 for negligence.  *Hodgson v.*

6  *Mississippi Department of Corrections*, 963 F.Supp. 776 (1997); *Wise v. New York*

7  *City Police Department*, 928 F.Supp. 355 (1996).  Liability under Section 1983 must

8  be predicated upon deliberate deprivation of constitutional rights by defendant, and

9  not mere negligence. *Foote v. Spiegel*, 903 F.Supp. 1463 (1995).

10        Accordingly, to prevail on the Second Claim for Relief, plaintiff must

11  establish defendant County had a policy which exceeded any act of negligence. *See*

12  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir. 1989) ("Municipalities

13  cannot be held liable simply because they employ a tortfeasor").

14     F.     **A *Respondeat Superior* Theory Will Not Serve to Keep the County**

15            **in this Action**

16        A local government unit such as a county or city cannot be liable for damages

17  pursuant to 42 U.S.C. § 1983 based solely upon a *respondeat superior theory*.

18  *Monell v. Department of Social Services*, 436 U.S. 658 (1978) ("*Monell*"). Instead,

19  plaintiffs have the burden of proving the underlying civil rights violation was caused

20  by an official policy or custom of the public entity. Stated another way, the damages

21  alleged to have been suffered resulted from a "permanent and well-settled"

22  municipal practice. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 106 S.Ct. 915

23  (1988) (plurality opinion).

24        Plaintiff's claims against the County necessarily hinge upon her contention

25  Caropino violated plaintiff's constitutional rights. Even if plaintiff's rights were

26  violated (which they were not), her claims against the County must fail because she

27  does not provide competent evidence which would support her *Monell* allegations

28  separate and apart from the bare allegation of *respondeat superior* liability. See,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  SAC, ¶6.

2  **G.**  **The County's Comprehensive Investigation and the Alleged Prior**

3  **Incidents of Sexual Assault by Caropino, and the District**

4  **Attorney's Declination to File Charges**

5  Upon learning  Caropino allegedly assaulted plaintiff, the County initiated a

6  comprehensive investigation to determine whether the Deputy had assaulted other

7  women. This issue will be more fully addressed in the second phase of trial.

8  The Orange County District Attorney's Office, through Brett Brian, Sr.

9  Deputy District Attorney, determined there was insufficient evidence to prove

10  criminal charges beyond a reasonable doubt. This finding was based on the

11  following: (1) Numerous interviews with female contacts, where the majority had no

12  complaints; (2) Caropino's telephone records revealed no clear evidence; (3) A

13  crime lab analysis of Plaintiff's vehicle for forensic evidence; (4) Interviews with the

14  Deputies that responded to the domestic incident call, as well as the patrol

15  supervisor; and (5) An interview of  Caropino where he acknowledged meeting

16  women on duty, further stating sexual intercourse with plaintiff was consensual and

17  occurred when he was off duty.

18  **H.**  **The County's Policies**

19  **1.**  **The County has no policy which allows or authorizes the**

20  **alleged violations of federally protected rights.**

21  **(i)**  **The County Has Written Policies Which Prohibit**

22  **the Violation of Federally-Protected Rights**

23  The County takes a number of measures to prevent violations of federally

24  protected rights. It has written policies which prohibit the use of excessive force,

25  searches and seizures not based on probable cause, the submission of inaccurate

26  information when obtaining search warrants, falsification of reports, suppression of

27  evidence material to an investigation and discrimination.

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1          **(ii)     The County Has No Policy Which Authorizes the**

2                    **Falsification of Reports**

3          The County has no policy which authorizes or allows law enforcement

4    officers to falsify reports or to suppress information material to an investigation.  If

5    reports are falsified, or if information material to an investigation is suppressed, it

6    was contrary to the County's polices.

7          **(iii)    The County Does Not Condone the**

8                    **Unconstitutional Infringement of Citizens'**

9                    **Rights**

10         The County takes a number of measures to prevent violations of federally

11   protected rights.  The County has no policy which authorizes or allows the violation

12   of a citizen's rights under the Fourth or Fourteenth Amendments.

13         **(iv)     The County Selects its Law Enforcement**

14                   **Personnel In Accord with All State-Mandated**

15                   **Requirements**

16         The County has at all times relevant to this case selected and retained its law

17   enforcement personnel in accordance with all state-mandated requirements and

18   directives. Before a Deputy is hired, he or she is tested and interviewed, and a

19   thorough background check is conducted, which includes a careful review the

20   application, the documentation submitted, the letters of reference, and interviews

21   with persons who know the applicant. If the applicant has prior law enforcement

22   experience, those employment records are reviewed.  Applicants are also

23   psychologically screened. Each applicant must successfully complete a P.O.S.T.-

24   approved academy or hold the necessary P.O.S.T. certificates for training previously

25   received.  Upon being hired as a deputy, the new employee must successfully

26   complete an extensive in-field training program in which experienced deputies take

27   the new employee through selected phases of police work and evaluate his or her

28   progress and competence.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                    16                          8:16-cv-00591-SVW-PLA
                    UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**(v)** **Deputies Must Maintain Certain Proficiency**
**Levels**

Deputies employed by the County are required to maintain proficiency levels in various areas of law enforcement. In addition to mandated training, deputies receive periodic training in various subjects, including search and seizure, use of force, entry into a residence (including consent), cultural and gender awareness, deputy safety, legal liability, etc. Deputies are routinely supervised and their performance is evaluated.  If violations of County policies are discovered, the deputy is counseled, given additional training, or disciplined.  The nature of the discipline imposed varies with the severity of the violation of policy, and many times has included termination from employment.  If areas of deficiency are noted, arrangements are made for additional training and/or experience to remedy the situation.  Caropino underwent such extensive training.

The County has no policy of not providing adequate training; rather, it routinely provides training to deputies relevant to their assignments. The deputies involved in the present incident had extensive training, which included federal constitutional limits on use of force, search and seizure, and preservation of evidence.  If any deputy violated federal law, it was not caused by a lack of adequate training.

In the Orange County Sheriff-Coroner Department's Policy Manual (Adoption date 2016/09/01), several policies are particularly pertinent. Under 1018.55 (a), "Prohibited Acts or Omissions," "[t]he following acts or omissions by employees are prohibited: . . . 8. Using or disclosing one's status as an employee of the Department in any way that could be reasonably perceived as an attempt to gain influence or authority for non-departmental business or activity . . .11. Unwelcome solicitation of a personal or sexual relationship while on duty or through the use of official capacity. . . 12. Engaging in on-duty sexual relations including, but not limited to sexual intercourse, excessive displays of public affection or other sexual contact . . .

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                                17                          8:16-cv-00591-SVW-PLA
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

21. The unauthorized use of any badge, uniform, identification card or other department equipment or property for personal gain or other improper purpose. . . 25. Criminal, dishonest, infamous or disgraceful conduct adversely affecting the employer/employee relationship, whether on or off duty. . . 35. Violating any misdemeanor or felony statute . . . (and) 36. Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members."

Additionally, Policy No. 1018.56, "Explorer Advisor Conduct" provides "[a]dvisors should avoid being alone with an Explorer of the opposite sex." (No. 4.) No. 8 prevents "one-on-one transportation of an Explorer of the opposite sex." Likewise, under "Nepotism and Conflicting Relationships," personal relationships are forbidden.

## IV.   **EVIDENTIARY ISSUES AND DISPUTE**

### A.   **Motion *in Limine* No. One  to Exclude Exhibits Or Witnesses, Including Expert Witnesses Not Identified In Plaintiff's F.R.C.P. Rule 26 Report or Never Produced In Discovery**

In accord with F.R.C.P. Rule 37, documents or testimony not identified in a party's Rule 26 Report is excluded pursuant to F.R.C.P. Rule 37. Courts may forbid the use at trial of any information required to be disclosed that is not properly disclosed. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

### B.   **Motion *In Limine* No. Two To Exclude Any Argument, Evidence Or Testimony Of Other Alleged Complainants Of Sexual Assault Due To The County's Lack Of Notice**

Plainly stated, Plaintiff has not produced any evidence which supports or which tends to support actual notice on the part of the County. Without such evidence, this evidence cannot be admitted as it is unduly prejudicial, and irrelevant

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  to the *Monell* claim.

2  **C.**   **Motion *In Limine* No. Three To Exclude Argument, Evidence.**

3  **Testimony, Or Reference To Negligence Principles Or**

4  **Comparative Fault In The Context Of A Section 1983 Action**

5  Time and time again, decisional authority has confirmed negligence is not a

6  principle of law which pertain in a section 1983 action. See, for example, *Dougherty*

7  *v. City of Covina*, 654 F.3d 892, 900 (9th Cir. Cal. 2011): "Mere negligence in

8  training or supervision, however, does not give rise to a *Monell* claim."

9  **D.**   **Motion *In Limine* No. Four To Exclude Any Reference To**

10  **Speculative Interpretation Of Missing Time Or Inaudible Audio**

11  **Which Captures Interaction Between Plaintiff And Caropino**

12  Based on standard principles of prejudice and irrelevancy, speculative

13  interpretations proffered by Plaintiff regarding the significance of inaudible audio or

14  "missing" time must be excluded, as they serve no purpose to the trier.

15  **E.**   **Motion *In Limine* No. Five To Exclude Alleged Misconduct,**

16  **Personnel Files And IA Investigations of Deputies Dwayne**

17  **Chapple, Christopher Eiben, Cameron Mathis And Nicholas**

18  **Caropino (Phase 1 And Phase 2)**

19  The items of evidence sought to be excluded by way of this Motion do not

20  further any claim the County violated plaintiff's rights under *Monell*, lacks probity,

21  and is unduly prejudicial. Revelation of the evidence would also unduly infringe on

22  the rights of the other deputies who were not even present at the time of the alleged

23  incident.

24  **F.**   **Motion *In Limine* No. Six To Exclude Any Opinions of Jeffrey**

25  **Noble And Roger Clark Based On Post Deposition Review Of**

26  **Evidence (Phase 1 And  Phase 2)**

27  As is set forth in the Motion, defendant filed this Motion to assure no post-

28  deposition opinions are revealed at the time of trial by either Mr. Noble or Mr.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                    19                                    8:16-cv-00591-SVW-PLA
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1 Clark. Because neither of their depositions have yet been taken, defendant

2 respectfully reserves the right to augment this motion with additional reasons why

3 their testimony should be excluded, if any such reasons exist.

4    **G.    Motion *In Limine* No. Seven To Exclude Portions of Defendant**

5        **Nicholas Caropino's Termination Letter And Revised Motion In**

6        **Limine No. 2 (Phase 1 And Phase 2)**

7        Defendant seeks to exclude a single portion of the termination letter submitted

8 to Mr. Caropino which discusses the County's alleged liability. Principles of

9 relevance and undue prejudice would serve to exclude that discrete portion.

10   **H.    Motion *In Limine* No. Eight To Exclude Testimony of Dr. Zackler**

11        **As Violative of The Parties' Stipulation (Phase 1 And Phase 2)**

12        Plaintiff advised of her intent to be relieved of a critical Stipulation which was

13 the subject of an extensive meet and confer effort by the parties. In that Stipulation,

14 it was agreed in exchange for the plaintiff waiving her right to anything more than

15 garden variety emotional distress, defendant would refrain from conducting a mental

16 examination and would further refrain from delving further into her mental health

17 status. The Stipulation was filed with the Court, and became an Order of this Court

18 in February of 2017. See, Docket Nos. 21 and 36.

19        Very recently, plaintiff has advised she no longer wishes to be subject to the

20 Stipulation, and will be filing a Motion under Rule 37 before the Magistrate to be

21 relieved of the Stipulation, despite the proximity to trial, and despite the fact

22 defendant relied on the terms of the Stipulation throughout the pendency of the

23 litigation and indeed refrained from opposing a number of plaintiff's Motions *in*

24 *Limine* based on its existence  Defendant intends to vigorously oppose the Motion.

25 / / /

26 / / /

27 / / /

28 / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                                                8:16-cv-00591-SVW-PLA
                                    20
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**I.     Motion _In Limine_ No. Nine To Exclude Any Reference To The Criminal Matter of The People of The State of _California v. Scott Dekraai_ And The Matter Of John Chamberlain (Phase 1 And Phase 2)**

Plaintiff seeks to improperly employ very old, and completely irrelevant matters involving misconduct at the Theo Lacey jail to demonstrate misconduct in the case at bar. Relying on a well-known trope, plaintiff will try to suggest there was a "code of silence" which was the moving force behind plaintiff's allegations, despite the fact no evidence exists to support such a proposition.

**J.     Motion _In Limine_ No. Ten To Exclude Any Speculative Argument Plaintiff's Alleged Incident Would Have Been Avoided If Caropino Had Immediately Been Placed On Administrative Leave (Phase 1 And Phase 2)**

Plaintiff's argument is based on pure speculation, and is bereft of any evidentiary or foundational support. It is therefore irrelevant, unduly prejudicial, and should be excluded from consideration by the trier of fact.

**K.     Motion _In Limine_ No. Eleven To Exclude Any Reference To Investigator Virgil Asuncion Having Socialized With Nicholas Caropino While Off-Duty**

Plaintiff seeks to argue that because the IA Investigator, Virgil Ascuncion, socialized with defendant Caropino nearly eight years ago, he was unable to perform a fair and impartial IA investigation. Because the "evidence" is remote in time, it is both irrelevant and prejudicial.

**L.     Motion _In Limine_ No. Twelve To Exclude Any Reference To Rape**

In this motion, defendant conducts an examination of the differences between Model Jury Instruction No 9.20- Unreasonable Seizure of Person which addresses the elements necessary to prove a violation of the Fourth Amendment where the nature and extent of the force need not be proven (defendant vigorously disputes

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1                                        21                        8:16-cv-00591-SVW-PLA
UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  whether there was a Fourth Amendment violation in the first instance), with

2  Instruction 9.25, which is the instruction to be used in an excessive force scenario,

3  and the nature of the seizure must be identified through the *Graham* factors,

4  Defendant does not seek to exclude the allegation plaintiff was sexually assaulted,

5  but objects to the word "rape," which is highly evocative and unnecessary.

6      **M.**    **Motion *In Limine* No. Thirteen To Exclude All Reports Prepared**

7          **By The Office of Independent Review**

8       Plaintiff contends IA investigations involving matters which do not pertain, or

9  in any manner inform, the case at bar, should be excluded on the grounds they are

10  irrelevant and prejudicial.

11      **N.**    **Motion *In Limine* No. Fourteen To Exclude Testimony By**

12          **Defendant Caropino As To Those Questions In Which He Asserted**

13          **The Fifth Amendment Privilege At Deposition And In Written**

14          **Discovery**

15       Defendant Caropino relied on his rights under the Fifth Amendment and

16  refused to answer a number of questions at deposition and in response to written

17  discovery. Case law confirms, to avoid surprise at trial,  Defendant Caropino should

18  be prevented from testifying at trial.

19  **V.**   **CLAIMS AND DEFENSES**

20      **A.**    **Claims Asserted Pursuant to 42 U.S.C. Section 1983 (First Claim)**

21          **1.**    **Alleged Excessive Force and Elements Required to Prove**

22       Plaintiff is first required to prove Caropino violated a constitutional right of

23  the Plaintiff which will be adjudicated in Phase 1 of the trial.

24       On that point, plaintiff advised she will attempt to deprive the County of its

25  due process rights to be heard in the First Phase. No legal analysis was provided by

26  plaintiff in support of this position, other than that trial counsel, Dana Alden Fox,

27  would not be defending Mr. Caropino's interests., and therefore could not

28  participate.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1

22

8:16-cv-00591-SVW-PLA

UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

It is the County's position basic principles of due process allow it to participate in Phase 1, given that the issue to be decided in Phase 1—whether Caropino violated Plaintiff's constitutional rights—is an element of the *Monell* claim to be decided in Phase 2. [5] Under plaintiff's theory, the County would be

_____

[5] A *Monell* claim against a government entity has two elements. First, the plaintiff must establish a government officer, "'under color of any law, statute, ordinance, regulation,'" deprived her "'of any rights, privileges, or immunities secured by the Constitution of the United States….'" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-692, 98 S. Ct. 2018, 2036 (1978) [quoting 42 U.S.C. § 1983]. Neither *Monell* nor any other authority imposes liability on a government entity if its officers "inflicted no constitutional harm." *City of L.A. v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir 1996), cert. den., 519 U.S. 1122 [plaintiff may not pursue Monell claim without first establishing constitutional injury].

Second, the plaintiff must prove "some official policy" of the government entity "'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 692 [language of § 1983 does not "impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"]. "A municipality is not liable for all constitutional torts committed by its employees, however: '[A] municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.' The constitutional tort must have been committed 'pursuant to official municipal policy.'" *Crowe v. Cty. of San Diego*, 593 F.3d 841, 880 (9th Cir. 2010) [quoting *Monell*, 436 U.S. at 691]. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-8482-2091.1

23

8:16-cv-00591-SVW-PLA

UPDATED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   precluded from defending against an element of the claim Plaintiff asserts against

2   the County. Due process requires the County be given the right to participate in a

3   trial that will determine whether one of the elements of the *Monell* claim alleged

4   against the County has been met. The fact Mr. Fox could have participated in Phase

5   1 had he represented Mr. Caropino, and now cannot because of a conflict, is an

6   insufficient reason to deprive the County of its right to be heard in Phase 1. Under

7   plaintiff's scenario, plaintiff can put on witnesses, give opening and closing

8   arguments, and prove a constitutional violation, and the County has no opportunity

9   to be heard or defend against the argument.

10         Finally, plaintiff apparently missed the fact this has been defendant's position

11  all along. This issue was addressed hen Caropino endeavored to be relieved of the

12  default. At that time, defendant expressed concern it would not be heard during the

13  First Phase of a prove-up hearing. [Docket No. 73 filed on March 27, 2017]. Thus,

14  plaintiff is precluded from making this provocative and utterly unfair argument.

15         **B.    Affirmative Defenses and Elements Required to Prove**

16         None at the present time.

17  / / /

18  / / /

19  / / /

20  _____

21  custom, whether made by its lawmakers or by those whose edicts or acts may fairly

22  be said to represent official policy, inflicts the injury that the government as an

23  entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

24  694, 98 S. Ct. 2018, 2037-38 (1978). A government "policy 'causes' an injury

25  where it is 'the moving force' behind the constitutional violation…." *Chew v. Gates*,

26  27 F.3d 1432, 1444 (9th Cir. 1994) [quoting *Monell*, 436 U.S. at 694].

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## VI.   EVIDENCE IN SUPPORT OF DEFENDANT'S DEFENSES

1.   Testimony of Plaintiff.

2.   Testimony of witnesses, including Sgt. Margaret Sheehan and Lt. Sean Howell.

3.   Testimony of Defendant's expert Robert Fonzi.

4.   Photos of scene.

5.   Audio and videotape of various interactions between Caropino and Plaintiff.

6.   Audio of dispatchers' radio communications.

7.   Documents evidencing training given to deputies regarding prohibited fraternization.

8.   Documents evidencing criminal investigations and internal affairs investigators conducted after reviewing civilian complaints.

9.   Documents evidencing Orange County Sherriff's Department policies and procedures.

10.   Documents evidencing training of Caropino and Deputies Chapple, Eiben and Mathis.


DATED: July 3, 2017          DANA ALDEN FOX
                             DAWN M. FLORES-OSTER
                             BARRY HASSENBERG
                             LEWIS BRISBOIS BISGAARD & SMITH LLP



                             By:   _____/s/ Barry Hassenberg_____
                                   Dana Alden Fox
                                   Attorneys for Defendant COUNTY OF
                                   ORANGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW