Jeremy D. Jass, SBN 279466
jeremy@jasslaw.com
JASS LAW
4510 E. Pacific Coast Highway, Suite 400
Long Beach, CA 90804
Telephone: (562) 340-6299
Facsimile: (562) 340-6422

Attorneys for Plaintiff, ALEXA CURTIN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN,<br><br>            Plaintiff,<br><br>    vs.<br><br>COUNTY OF ORANGE; NICHOLAS LEE CAROPINO, individually and as Deputy Sheriff for the County of Orange; and DOES 1 through 50,<br><br>            Defendants. | Case No.: 8:16-CV-00591-SVW-PLA<br><br>Assigned to Hon. Stephen V. Wilson<br><br>**PLAINTIFF ALEXA CURTIN'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM STIPULATION; SUPPORTING MEMORANDUM**<br><br>**[Fed. R. Civ. P. 60]**<br><br>[*Filed concurrently with Declaration of Jeremy D. Jass and [Proposed] Order*]<br><br>**DATE:       July 31, 2017**<br>**TIME:        1:30 p.m.**<br>**DEPT.:      Courtroom 10A**<br><br>FSC:          July 24, 2017<br>Trial:         August 1, 2017 |

1

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

1  PLEASE TAKE NOTICE that on July 31, 2017, at 1:30 p.m., or as soon
2  thereafter as the matter may be heard, in Courtroom 10A of the United States
3  District Court, Central District of California, located at 350 W. 1st Street, Los
4  Angeles California 90012, pursuant to Federal Rules of Civil Procedure, Rule 60,
5  Plaintiff Alexa Curtin moves the Court for its Order granting her relief from the
6  Stipulation as to Discovery and Admissibility of Plaintiff's Emotional Distress
7  Damages, filed with the Court on November 30, 2016 (Docket ["Dkt"] No. 21), and
8  upon which the Court issued an Order on February 10, 2017 that Plaintiff shall not
9  seek damages for "post-traumatic stress disorder," as well as "unusually severe
10 emotional distress," among other claims not at issue here. (Dkt 36.)

11 This motion is based on the supporting Declaration of Jeremy D. Jass, filed
12 concurrently herewith, and the attached exhibits. This motion is made following
13 the conference of counsel pursuant to Local Rule 7-3, which took place on June 8,
14 June 13, June 20, June 22, and June 23, 2017. *See* Declaration of Jeremy D. Jass
15 filed concurrently herewith, ¶¶ 7-11, Exhibit "F".

17 DATED: July 3, 2017                JASS LAW

20                                    __/s/ Jeremy D. Jass_____
21                                    Jeremy D. Jass
                                      *Attorney for Plaintiff*,
22                                    ALEXA CURTIN

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

I. PLAINTIFF'S INTRODUCTORY STATEMENT............................................1

II. BACKGROUND PROCEEDINGS ..................................................................4

III. THIS COURT SHOULD EXERCISE ITS DISCRETAION AND MODIFY OR WITHDRAW THE PARTIES' STIPULATION AND THE COURTS ORDER THEREON TO PREVENT MANIFEST INJUSTICE AND ALLOW PLAINTIFF TO FULLY PRESENT HER CASE TO THE JURY ..................5

   A. The Fear And Anxiety That Plaintiff Experienced During Her Deposition While Recounting Her Rape Prompted Her To Want To Avoid Participating In An Independent Medical Exam And Thus Reliving Those Memories At The Hands Of An Expert Hired By Defendants. ......7

   B. The County Will Not Be Prejudiced Given That The County Has Already Conducted Extensive Discovery Concerning Plaintiff's Psychological Injury, And That Plaintiff Has Agreed To Undergo An IME As Of June 7, 2016 And Will Continue To Make Herself Available For Such An Examination, Any Alleged Prejudice Caused By The Modification........10

IV. CONCLUSION ................................................................................................13

# **TABLE OF AUTHORITIES**

**CASES**

*Common Cause S. Christian Leadership Conference of Greater Los Angeles v. Jones*
   213 F. Supp. 2d 1110 (C.D. Cal. 2002) ................................................................... 6

*McMorgan & Co. v. First California Mortgage Co.*
   931 F.Supp. 699 (N.D.Cal.1996) ............................................................................. 7

*Mechmetals Corp. v. Telex Computer Products, Inc.*
   709 F.2d 1287 (9th Cir. 1983) .................................................................................. 7

*Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*
   No. 14-CV-00930-JCS, 2015 WL 5675861, at *10 (N.D. Cal. 2015) ..................... 7

*Zivkovic v. Southern California Edison Co.*
   302 F.3d 1080 (9th Cir. 2002) .................................................................................. 7

**RULES**

Federal Rules of Civil Procedure, Rule 60 ................................................................. 6

Local Rule 7-1 ............................................................................................................. 5

## I. PLAINTIFF'S INTRODUCTORY STATEMENT

While Plaintiff's operative claims are based on 42 U.S.C., § 1983, at its core, this case is about a sexual assault and rape. Acting under color of his authority, Orange County Sheriff's Deputy Nicholas Lee Caropino sexually assaulted and raped Ms. Curtin. However, instead of using physical force to rape Ms. Curtin, Deputy Caropino used his power and authority as a law enforcement officer to intimidate Ms. Curtin, forcing her into nonconsensual sex and sexual acts not through violence but through fear. As a consequence, instead of carrying physical scars apparent on her body, the scars Plaintiff carries from the horror she experienced are entirely psychological.

As Plaintiff's treating physician testified when the County Deposed him on this topic and as Plaintiff herself testified when the County pursued questions concerning her injuries during her deposition, Plaintiff now suffers from serious psychological injuries, including Post Traumatic Stress Disorder. During her deposition, Plaintiff explained that she had not sought treatment from a psychologist or psychiatrist following her rape because "I don't like talking about it because I relive it and, like, I feel like the pain that I was in at that time and it was scared, and I'm scared that I'm going to run into him or he is going to find me…" *See* Declaration of Jeremy D. Jass ["Jass Decl."], ¶ 2, Exhibit "A," (hereinafter "Plaintiff's Depo.,") at 20:4-13; see also 128:18-25.)

As a result of her deposition, and a strong desire not to relive the experience by being subjected to yet more questioning concerning the harm she suffered, Plaintiff was reluctant to submit herself to a Federal Rule of Civil Procedure 35 Independent Medical Examination ("IME") regarding her psychological injuries. At Defendant's suggestion, Plaintiff stipulated to waive "extraordinary emotional distress damages" in order to avoid reliving her nightmare and having all aspects of her personal life dissected during her IME. The Court entered an Order on the Stipulation, finding that Plaintiff shall not seek damages for "post-traumatic stress

1

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

disorder," as well as "unusually severe emotional distress," among other things not at issue in this motion. (Dkt. 36.)

Through this motion, Plaintiff requests that the stipulation upon which the order is based be modified or withdrawn to permit Plaintiff to pursue the full extent of the emotional distress damage she suffered as a result of the brutal rape by Deputy Caropino. Specifically, Plaintiff seeks to present expert testimony at trial from Dr. Lester Zackler, a neuropsychiatrist, and Dr. Yusim, the treating physician, to describe the emotional trauma she suffered. As explained, since the filing of the stipulation and the order entered by the Court in February (just four months ago), there have been numerous developments in this case.

At the time Plaintiff entered into the stipulation she did not fully appreciate the horrifying scope and reprehensibility of the County's and Deputy Caropino's conduct. Indeed, since the stipulation, the County was ordered to produce significant discovery revealing the extent of the wrongdoing by the County and its role in condoning and indeed fostering an environment wherein Deputy Caropino was empowered to abuse his authority and rape Plaintiff.

Specifically, the evidence the County produced reveals that the rape and sexual assault Plaintiff suffered at the hands of Deputy Caropino was by no stretch of the imagination limited to her or just a "few" others. In fact, evidence now demonstrates that there were at least eight other women who were raped, sexually assaulted or otherwise sexually harassed just by Deputy Caropino, under similar or in some instances virtually identical circumstances. Moreover, the compelled discovery revealed that Deputy Caropino was able to use his power and authority as a law enforcement officer to sexually assault and rape these women because existing Sherriff's Department policies appeared to have facilitated Deputy Caropino, and possibly other deputies, in engaging in such conduct while at the same time insulating him from the consequence of their actions. For example, even though reports and allegations that Deputy Caropino had committed another act of

1  sexual violence had been received by the Sherriff's Department before Plaintiff's
2  rape, instead of being placed on administrative leave or conducting an immediate
3  administrative investigation, Deputy Caropino was left on the street with a badge
4  and a gun to continue his horrifying pattern of behavior while the department waited
5  for the completion of a separate criminal investigation.

6  Further, at the time the stipulation was entered with the County, Deputy
7  Caropino had not made an appearance in this case. However, as of April 2016,
8  Deputy Caropino has appeared, is now being represented in this action (although
9  not by the County) and is participating in discovery. It is anticipated that Deputy
10 Caropino will assert that the rape was consensual—just as he claims it was with all
11 of his other victims—a position he took when asked about the incidents by IA
12 investigators, which was recently revealed in discovery.

13 In light of this newly revealed evidence, and in light of the fact her actionable
14 injury against these parties lies in the psychological harm she suffered, Plaintiff
15 wants to have the opportunity to put on evidence of the entire psychological harm
16 that she suffered. Not just to show damages, but also to show that while she may
17 not have physically resisted Caropino as he raped her, she did so out of fear of him
18 and his position as a law enforcement officer, and that the harms she suffered at his
19 and the County's hands are every bit as real and profound.

20 Permitting Plaintiff to present evidence concerning the severe emotional
21 distress she suffered, including Dr. Yusim's diagnosis of PTSD and expert
22 testimony from Dr. Zackler, is appropriate given the extensive discovery that the
23 County has already conducted with respect to Plaintiff's psychological injury. At
24 the time the stipulation was executed, Plaintiff had already been thoroughly deposed
25 regarding her psychological injuries. Additionally, following the stipulation, the
26 County deposed Plaintiff's treating physician, extensively inquiring about the
27 extraordinary psychological harms that Plaintiff had suffered, his diagnosis of
28 PTSD and the medication he prescribed her. The County also pursued this line of

3

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

questioning during their deposition of both Plaintiff's mother as well as her sister. As such, other than an IME, discovery has been thoroughly conducted on this issue.

With additional counsel joining the case and representing Plaintiff, and given the very recent revelations of significant wrongdoing by the County, as well the very recent appearance and participation of Deputy Caropino, Plaintiff is willing to undergo an IME and requests modifying the prior stipulation to allow her the opportunity to present the full extent of her injuries to the jury. In fact, beginning June 7, 2017, Plaintiff has repeatedly offered to the County to undergo an examination. While Plaintiff understands that there may be some prejudice to the County for the slight delay in taking her IME—the order on stipulation was entered a little over four months ago—Plaintiff has offered to accommodate a modified schedule in the exchange of expert reports and will do whatever else she can to lessen any potential prejudice as deemed appropriate by the Court.

Finally, an amendment or withdrawal of the Order would not alter the nature of the claims Plaintiff is pursuing, and would not alter substantive proceedings before this Court in any meaningful way. Indeed, the evidence Plaintiff seeks to now introduce goes only to the extent of the injury she suffered, which, as noted, is almost entirely if not entirely psychological.

For these several reasons, Plaintiff should be permitted to set forth the truth of her harm in its entirety.

## II. BACKGROUND PROCEEDINGS

Pursuant to Local Rule 7-1, the parties filed a stipulation with the Court on December 5, 2016. (Dkt 21.) In the stipulation, Plaintiff waived any claim for "unusually severe emotional distress" in exchange for Defendant withdrawing an IME. Plaintiff also agreed not to elicit testimony at trial from any expert witness regarding emotional distress. (See Dkt 21.) In response to the filed stipulation, and also pursuant to Local Rule 7-1, the Court entered an Order on the Stipulation on February 10, 2017, (Dkt 36), in which it ruled that Plaintiff shall not seek damages

1  for "post-traumatic stress disorder," as well as "unusually severe emotional
2  distress," among other claims not at issue here. (Dkt 36.)

3        On March 13, 2017, this Court entered its Order Re: Plaintiff's Motion to
4  Compel (Dkt 52) in which the Court ordered Defendants "to provide all responsive
5  information and documents in its possession, custody, or control" regarding the
6  discovery requests the County had refused to respond to, "no later than March 27,
7  2017." (Dkt 52, at 15.) Defendants began complying with the court's order and
8  providing documents, starting on March 27, 2017, when the County produced some
9  of the documents they were ordered to produce. Thereafter, on March 29, 2017, the
10 County produced additional documents the Court ordered produced. Finally, on
11 June 15, 2017, the County served Supplemental Responses to this first set of
12 discovery.

13       On March 17, 2017, Deputy Caropino filed a motion to set aside the then
14 pending default against him. (Dkt 67.) Thereafter, on April 10, 2017, the Court set
15 aside default against Deputy Caropino. (Dkt 96.)

16       On April 4, 2017, additional counsel for Plaintiff associated into the case.
17 (Dkt 91-93.)

18 **III. THIS COURT SHOULD EXERCISE ITS DISCRETAION AND**
19      **MODIFY OR WITHDRAW THE PARTIES' STIPULATION AND THE**
20      **COURT'S ORDER THEREON TO PREVENT MANIFEST**
21      **INJUSTICE AND ALLOW PLAINTIFF TO FULLY PRESENT HER**
22      **CASE TO THE JURY**

23       Local Rule 7-1 provides that "[w]ritten stipulations affecting the progress of
24 the case shall be filed with the Court, be accompanied by a separate order as
25 provided in L.R. 52-4.1, and *will not be effective* until approved by the judge, except
26 as authorized by statute or the F.R.Civ.P." The Stipulation as prepared by the
27 parties was signed on November 30, 2016 (Dkt 21), and the Court issued an Order
28 thereafter on February 10, 2017 (Dkt 36).

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

1  Instead of approving or incorporating the language of the stipulation written
2  by the parties, the Court's "Order Dismissing Claims and Excluding Evidence of
3  Specific Issues or Damages" expressly sets forth terms to be imposed on the parties
4  and the litigation with respect to certain issues and damages. (Dkt 36.) Given Local
5  Rule 7-1, for the purposes of this motion the operative legal document is not the
6  stipulation filed by the parties, but, rather, the order the Court entered thereafter.

7  The pertinent portion of the Order at issue here concerns the exclusion of
8  evidence and claim for damages for "post-traumatic stress disorder" and "unusually
9  severe emotional distress." (Dkt 36.) While the Court did not preclude *any* expert
10 testimony on the issue of emotional distress damages, to the extent the County relies
11 on the underlying stipulation to preclude any expert testimony, and to the extent the
12 Court did exclude evidence of PTSD and "unusually severe emotional distress,"
13 Plaintiff seeks clarification and/or modification of the underlying stipulation and
14 subsequent order to permit Dr. Zackler and Dr. Yusim to testify as to Plaintiff's
15 emotional distress damages suffered as a result of the rape.

16 Under Federal Rules of Civil Procedure, Rule 60, "[o]n motion and just
17 terms, the court may relieve a party or its legal representative from a final judgment,
18 order, or proceeding for the following reasons: . . . (6) any other relief that justifies
19 relief." FED. R. CIV. P. 60(6). Further, as explained in *Common Cause S. Christian*
20 *Leadership Conference of Greater Los Angeles v. Jones*, 213 F. Supp. 2d 1110,
21 1112 (C.D. Cal. 2002), "[a] request to set aside a stipulation is permitted under
22 prevailing law, if, for example, adherence to such a stipulation would have resulted
23 in manifest injustice to a party, or if a party entered into the stipulation by
24 inadvertence. *See Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1388 (9th
25 Cir.1987) *amended by* 817 F.2d 609 (9th Cir.1987); *McMorgan & Co. v. First*
26 *California Mortgage Co.,* 931 F.Supp. 699, 703 (N.D.Cal.1996)." Indeed, "[t]he
27 Court has broad discretion in deciding whether to hold the parties to a stipulation."
28 *McMorgan & Co.,* 931 F. Supp. at 703, citing *Seymour*, 809 F.2d at 1388; see

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

*Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *see Mechmetals Corp. v. Telex Computer Products, Inc.*, 709 F.2d 1287, 1294 (9th Cir. 1983) ("A pretrial order is not an inexorable decree and may, under proper circumstances, be modified [to prevent manifest injustice] ...").)

"'In determining what constitutes manifest injustice, courts may consider (1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether the evidence contrary to the [stipulation] is substantial.' [*Morrison v. Zangpo*, No. C-08-1945 EMC, 2008 WL 4449585,] at *4 [(N.D. Cal. 2008)] (quoting *State Farm Fire & Cas. v. McDevitt*, No. C-00-2240 EDL, 2001 WL 637419, at *8 (N.D. Cal. 2001)) (alteration in original)." *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2015 WL 5675861, at *10 (N.D. Cal. 2015). Additionally, where, as here, the stipulation is procedural rather than factual, the fourth factor is inapplicable. (*Id.*)

As now explained, a manifest injustice exists to the extent the stipulation and subsequent order preclude Plaintiff from presenting expert testimony from Dr. Zackler and Dr. Yusim concerning the emotional distress she suffered.

### A. The Fear And Anxiety That Plaintiff Experienced During Her Deposition While Recounting Her Rape Prompted Her To Want To Avoid Participating In An Independent Medical Exam And Thus Reliving Those Memories At The Hands Of An Expert Hired By Defendants.

When Plaintiff Alexa Curtin was deposed on October 4, 2016, she was asked extensively about being raped by Deputy Caropino, and the extraordinary emotional trauma and distress that resulted. *See* Plaintiff's Depo., at 14:12-19:22. The visceral extent to which the experience she endured affected her was revealed when she stated, in response to the County's question why she had not seen a psychologist

1 or psychiatrist: "I don't like talking about it because I relive it and, like, I feel like
2 the pain that I was in at that time and it was scared, and I'm scared that I'm going
3 to run into him or he is going to find me, …" (Plaintiff's Depo. 20:4-13; see also
4 128:18-25.)

5     Following her deposition, on November 1, 2016, the County served a notice
6 of mental examination with Dr. Debra Cresswell. The County also advised Plaintiff
7 of its need to conduct a urological examination and a gynecological examination.
8 As demonstrated by her deposition testimony about the fear she felt, Plaintiff at that
9 time did not feel strong enough to undergo such examinations, and relive the
10 experience of her rape yet again.

11     As such, on November 30, 2016, Plaintiff entered into a stipulation with the
12 County. (Dkt 21.) In that stipulation, the County agreed not to pursue either the
13 mental or physical examinations and Plaintiff agreed not to seek damages for loss
14 of interest in sex, post-traumatic stress disorder, unusually severe emotional
15 distress, the cost of future mental healthcare, bladder infections or other urological
16 issues, painful sex or loss of ability to engage in and/or enjoy sexual activity. (See
17 Dkt 21.) The stipulation was filed with the Court on December 5, 2016, and the
18 Court issued its Order on February 10, 2017. (Dkt 36.)

19     Plaintiff does not now assert that she suffered any "physical" harm as a result
20 of the rape she experienced. She does not contend that Deputy Caropino used
21 violence or force during his sexual assault and rape, and she does not contend that
22 she has injuries which would otherwise require a physical examination.
23 Nevertheless, over the ensuing four months, and specifically following the County's
24 compelled disclosure of discovery, Plaintiff has come to view the nature of her
25 injury in the context of the developments in the case, including Deputy Caropino's
26 appearance and participation in discovery, as well as evidence which demonstrates
27 the true extent of the horrific behavior engaged in by Deputy Caropino and the
28 extent to which the County's own policies played an enormous role in her harm.

8

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

1       Specifically, Plaintiff learned that in addition to herself, Deputy Caropino alone had victimized numerous other similarly situated women prior to Plaintiff's rape, in circumstances which often bore striking resemblance to the ones she confronted the night she was raped. Plaintiff learned of the existence of these women through investigation reports provided by the County stemming from an unrelated government claim filed months before she was raped which alleged that Deputy Caropino had sexually assaulted other women. Incredibly, and much to her horror, despite the fact that the County had been able to identify these victims through its investigation of Deputy Caropino, because the County's policies delayed *any and all* administrative action on these allegations until after a separate criminal investigation was completed, these discoveries came too late. At the time Deputy Caropino raped Plaintiff, despite the County being fully aware of an unrelated pending government claim detailing acts of sexual violence, it took no action with respect to Deputy Caropino, allowing him to continue to use the authority he held with his badge and gun to victimize women in the community he was supposed to be protecting.

      Because the County resisted producing this evidence until after the Court compelled the disclosure of this discovery, (Dkt 52), it was only in late March 2017, and in fact through June 2017 as it made additional disclosures and supplemented its responses, that the County actually produced the hundreds of documents which revealed the numerous official and an unofficial practices and policies within the County which set the stage for Deputy Caropino to sexually assault and rape countless women, including Plaintiff. In the wake of these revelations, and with additional counsel associated in the case on behalf of Plaintiff on April 4, 2017, Plaintiff has found the strength to bring the full weight of her injuries to bear, and to represent the numerous other women who were subject to the sexual violence of Deputy Caropino and possibly others.

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

**B. The County Will Not Be Prejudiced Given That The County Has Already Conducted Extensive Discovery Concerning Plaintiff's Psychological Injury, And That Plaintiff Has Agreed To Undergo An IME As Of June 7, 2016 And Will Continue To Make Herself Available For Such An Examination, Any Alleged Prejudice Caused By The Modification.**

Permitting Plaintiff to present evidence concerning the severe emotional distress she suffered, including Dr. Yusim's diagnosis of PTSD and expert testimony from Dr. Zackler, will not meaningfully prejudice the County for three reasons.

*First*, the County has already conducted extensive discovery with respect to Plaintiff's psychological injury. As noted above, Plaintiff was deposed on October 4, 2016 and during her deposition she explained the emotional trauma and distress she has experienced as a result of the rape by Deputy Caropino. *See* Plaintiff's Depo. 14:12-19:22. Plaintiff explained that following the assault she started getting reoccurring panic attacks, night terrors and social anxiety, and began seeing her treating physician, Dr. Jeffrey Yusim. *See* Plaintiff's Depo. 14:12-19:22. She testified that as a result of the assault, Dr. Yusim diagnosed her with PTSD and prescribed anti-anxiety mediation and Xanax. *See* Plaintiff's Depo., 12:15-13:1.

During her deposition, Plaintiff testified that she had suffered panic attacks prior to the incident but they became more frequent following the assault. *See* Plaintiff's Depo., 15:21-24. Counsel for the County extensively asked Plaintiff about her emotional distress symptoms and prescribed medication, as well as her prior mental health (including her panic attacks), and prior use of anti-anxiety medication. *See* Plaintiff's Depo. 25:18-26:1; 26:14-28:19; 128:6-129:14; 135:10-19; 140:12-141:22.

As noted above, after Defendants served a notice of mental examination with Dr. Debra Cresswell, and also advised of their need to conduct a urological

10

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

examination and a gynecological examination, Plaintiff did not feel strong enough to undergo such examinations. On November 30, 2016, a stipulation was reached by the parties, which was then filed with the Court on December 5, 2016. (Dkt. 21.)

Following the stipulations, the parties continued with discovery and the deposition of Dr. Yusim took place on December 2, 2016. During his deposition, Defense counsel inquired of his treatment of Plaintiff and about the emotional distress she suffered. Jass Decl., ¶ 4, Exhibit "B," Deposition of Jeffrey Yusim, M.D. (hereinafter "Yusim Depo."). His noted and medical records were produced to the County. *See* Yusim Depo., 13:4-10. Dr. Yusim explained that based on his visits with Plaintiff, he diagnosed her as having severe anxiety panic disorder, depression and post-traumatic stress disorder. *See* Yusim Depo., 18:11-13; 22:3-6; 32:7-12; 35:7-12; 39:21-22; 45:3-6; 49:5-8, 50:15-18, 53:16-21. He further testified as to the medication prescribed to Plaintiff. *See* Yusim Depo., 17:8-18:17; 27:8-23; 33:24-39:11. Dr. Yusim explained the effect of the rape on Plaintiff's emotional well-being, noting "[w]ith my experience, if someone has that kind of trauma in their life, it is something that will change their life forever." *See* Yusim Depo., 64:10-12.

The emotional trauma suffered by Plaintiff as a result of the rape was further explored by the County in the depositions of Plaintiff's mother Lynn Curtin, sister Raquelle Curtin, as well as her friend Jennie D'Errico. *See* Jass Decl., ¶ 4, Exhibit "C," Deposition of Lynn Curtin, 29:15-30:13, 30:22-32:4; 32:13-23; 52:19-53:3; 56:1-15; Jass Decl., ¶ 5, Exhibit "D," Deposition of Raquelle Curtin, 27:9-28:2; Jass Decl., ¶ 6, Exhibit "E," Deposition of Jennie D'Errico, 86:21-87:17.

*Second*, beginning June 7, 2017, Plaintiff has repeatedly offered to undergo an IME, and has repeatedly expressed her willingness to work with the County to find a convenient time for the County to conduct such examination. Specifically, at a deposition of one of the County's employees, Plaintiff's counsel informed counsel for the County that Ms. Curtin had recently been evaluated by a

1 Neuropsychiatrist, Dr. Zackler, and discussed the issue of withdrawing the
2 stipulation concerning expert testimony at trial to allow Dr. Zackler to testify and
3 present evidence concerning the emotional distress Plaintiff suffered as a result of
4 the rape.  Plaintiff's counsel highlighted that to avoid any potential prejudice, *"we
5 are willing to immediately submit Ms. Curtin for a mental exam with an expert of
6 your choice,"* and offered a staggered expert designation schedule so that the
7 County would have time to review Dr. Zackler's report and serve a rebuttal expert
8 report.

9       Counsel for the County responded that the County would not agree and would
10 vigorously oppose any effort to modify or alter the stipulation.  Since June 7, 2017,
11 Plaintiff's counsel has continuously offered to make Plaintiff available for an IME
12 as well as modify any exchange of expert reports on the issue.  The County
13 continues to refuse.

14       *Third*, while Plaintiff understands that there has been some delay in taking
15 Plaintiff's IME due to the stipulation, the delay has been small.  It has only been
16 four months since the Court entered its order regarding the Stipulation.  Moreover,
17 due to the extensive delays in the County's production of documents, it wasn't until
18 the end of March and into April that Plaintiff received the discovery materials
19 revealing the widespread policies and practices that enabled Deputy Caropino to
20 rape Plaintiff and so many other women.  Plaintiff felt strong enough to undergo an
21 evaluation by a neuropsychiatrist.

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court modify or set aside both the Stipulation jointly filed by the parties with the Court on November 30, 2016 (Dkt 21), and the Court's February 10, 2017 Order issued thereon (Dkt 36).

Dated: July 3, 2017          JASS LAW

                               */s/ Jeremy D. Jass*
                               Jeremy D. Jass
                               *Attorney for Plaintiff*,
                               ALEXA CURTIN

**PLAINTIFF'S MOTION FOR RELIEF FROM STIPULATION**