Jeremy D. Jass, Esq., SBN 279466
**JASS LAW**
4510 E. Pacific Coast Hwy., Suite 400
Long Beach, CA 90804
Tel: (562) 340.6299
Fax: (562) 340.6422
Email: Jeremy@jasslaw.com

Holly N. Boyer, Esq., SBN 221788
**ESNER, CHANG & BOYER**
234 East Colorado Boulevard, Suite 975
Pasadena, CA 91101
Tel.:   (626) 535-9860
Fax:   (626) 535-9859
Email: hboyer@ecbappeal.com

Daniel K. Balaban, Esq., SBN 243652
**BALABAN & SPIELBERGER, LLP**
11999 San Vicente Boulevard, Suite 345
Los Angeles, CA 90049
Tel.:   (424) 832-7677
Fax:   (424) 832-7702
Email: daniel@dbaslaw.com

Attorneys for
ALEXA CURTIN

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN,<br><br>                    Plaintiff,<br>      vs.<br><br>COUNTY OF ORANGE;<br>NICHOLAS LEE CAROPINO,<br>individually and as Deputy Sheriff for<br>the County of Orange; and DOES 1<br>through 50,<br><br>                    Defendants. | Case No.: 8:16-CV-00591-SVW-PLA<br>The Hon. Stephen V. Wilson<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE ANY ALLEGED MISCONDUCT, PERSONNEL FILES, AND ANY INVESTIGATIONS OF DEPUTIES DWAYNE CHAPPLE, CHRISTOPHER EIBEN, CAMERON MATHIS AND NICHOLAS CAROPINO**<br><br>Pre-Trial Conference: July 24, 2017<br>Trial: August 1, 2017 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Alexa Curtin ("Plaintiff") hereby provides her Opposition to Defendant's Motion In Limine No. 5 To Exclude Any Alleged Misconduct, Personnel Files, And Any Investigations Of Deputies Dwayne Chapple, Christopher Eiben, Cameron Mathis And Nicholas Caropino.

DATED: July 3, 2017                    **JASS LAW**

                                By:    /s/ Jeremy D. Jass
                                       Jeremy D. Jass, Esq.
                                       Attorneys for Plaintiff
                                       ALEXA CURTIN

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………i

I.  **INTRODUCTION** ..................................................................................1

II. **DEFENDANT'S MOTION IS SPECULATIVE, OVERBROAD AND VAGUE AND AMBIGUOUS** ...........................................................3

III. **PRIOR COMPLAINTS AGAINST DEPUTY CAROPINO AND ANY INVESTIGATIONS THEREOF ARE EXPRESSLY RELEVANT AND ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE** ..........3

A. Deputy Caropino's Sexual Assault of Plaintiff Ms. Curtin. ......................... 4

B. Four Other Women Were Similarly Sexually Assaulted By Deputy Caropino During The Year Prior To The Attack On Plaintiff. ...................................... 5

C. Evidence of Deputy Caropino's Prior Sexual Assaults Are Relevant  And Admissible. ........................................................................................................7

D. Evidence of Deputy Caropino's Prior Sexual Assaults Against Other Victims Are Expressly Admissible Under FRE Rule 415. ........................... 8

E. Evidence of Deputy Caropino's Prior Sexual Assaults Against Other Victims Are Also Admissible Under FRE Rule 404(b)............................... 11

F. Evidence of Deputy Caropino's Prior Sexual Assaults Are Further Relevant and Admissible as to the *Monell* Claim Against the County. ...................... 13

IV. **EVIDENCE OF DEPUTY CHAPPLE'S PRIOR MISCONDUCT IS RELEVANT AND ADMISSIBLE** ...............................................17

V.  **THE PERSONNEL FILES AND RELATED DOCUMENTS ARE RELEVANT ANDADMISSIBLE** ................................................18

VI. **DEFENDANT WILL NOT BE UNFAIRLY PREJUDICED IF THIS EVIDENCE IS ADMITTED BUT PLAINTIFF WILL BE UNFAIRLY PREJUDICED IF THIS EVIDENCE IS EXCLUDED** ............................19

VII.**CONCLUSION** ................................................................................20

i
**TABLE OF CONTENTS**

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*U.S. v. Curtin*

(9th Cir. 2007) 489 F.3d 935,944 ................................................... 12

*Adams v. Kraft*

(N.D. Cal. 2011) 828 F.Supp.2d 1090 ........................................... 12

*Blind-Doan v. Sanders*

(9th Cir. 2002) 291 F.3d 1079 .................................................... 8, 9

*Boyd v. City & County of San Francisco*

(9th Cir. 2009) 576 F3d 938, 944 ................................................. 12

*City of St. Louis v. Praprontik*

(1988) 485 U.S. 112 ................................................................. 15

*Cleveland v. KFC Nat'l Mgmt. Co.*

(N.D. Ga. 1996) 948 F.Supp 62, 64-65 ......................................... 10

*Dang v. Cross*

(9th Cir.2005) 422 F.3d 800 ...................................................... 12

*Doe v. Smith*

(7th Cir. 2006) 470 F.3d 331 ...................................................... 9

*Doe ex rel. Rudy-Glanzer v. Glanzer*

( 9th Cir. 2000) 232 F.3d 1258……………………………….……………...…9, 10

*Edwards v. Thomas*

(N.D. Ill. 1999) 31 F. Supp. 2d 1069 ............................................. 13

*Gillette v. Delmore*

(9th Cir.1992) 979 F.2d 1342 ..................................................... 15

*Gomez v. Vernon*

(9th Cir. 2001) 255 F.3d 1118 .................................................... 16

*Grandstaff v. City of Borger*

(5th Cir. 1985)767 F.2d 161  .................................................... 15

*Henderson v. City & Cnty. of San Francisco*
    (N.D. Cal. Dec. 1, 2006) C05-234 VRW, 2006 WL 3507944 ........................................... 14

*Henry v. County of Shasta*
    (9th Cir. 1997) 132 F3d 512 ................................................................................................ 16

*Huddleston v. United States*
    (1988) 485 U.S. 681, 685 ..................................................................................................... 11

*Jepsen v. Florida Bd. of Regents*
    (5th Cir. 1980) 610 F.2d 1379, 1384-85 ............................................................................ 18

*Kelly v. New West Federal Savings*
    (1996) 49 Cal.App.4th 659, 669 ............................................................................................ 3

*Kerr v. United States Dist. Ct. for N.D. Cal.*
    (9th Cir. 1975) 511 F.2d 192, 198 ...................................................................................... 18

*Larez v. City of Los Angeles*
    (9th Cir. 1991) 946 F.2d 630 .............................................................................................. 16

*Leer v. Murphy*
    (9th Cir.1988) 844 F.2d 628 ............................................................................................... 13

*McRorie v. Shimoda*
    (9th Cir. 1986) 795 F.2d 780 .............................................................................................. 16

*Monell v. Dept. of Social Services of City of New York*
    (1978) 436 U.S. 658 .................................................................................................... 13, 14

*Oviatt by and through Waugh v. Pearce*
    (9th Cir. 1992) 954 F.2d 1470 ............................................................................................ 15

*Shaw v. State of California Dept of Alcoholic Beverage Control*
    (9th Cir.1986) 788 F.2d 600 ............................................................................................... 13

*Smith v. Wade*, 461 U.S. 30, 56
    (1983) 103 S.Ct. 1625, 75 L.Ed.2d 632 ............................................................................. 12

*Taylor v. Superior Court*
    (1979) 24 Cal.3d 890 ........................................................................................................... 13

**TABLE OF AUTHORITIES**

*Thompson v. City of Los Angeles*
    (9th Cir. 1989) 885 F.2d 1439 ................................................................ 16

Town of Cottageville
    (D.S.C. Aug. 29, 2014) 2014 U.S. Dist. LEXIS 120619 ...................... 8

*Ulrich v. City & County of San Francisco*
    (9th Cir.2002) 308 F.3d 968 .................................................................. 14

*United State v. Rogers*
    (7th Cir. 2007) 587 F.3d 816 ................................................................... 9

*United States v. $133,420.00 in U.S. Currency*
    (9th Cir. 2012)  672 F.3d 629, 641 ........................................................ 11

*United States v. Barnason*
    (S.D.N.Y. 2012) 852 F.Supp.2d, 367, 374-75 .................................... 10

*United States v. Cherer*
     (9th Cir. 2008) 513 F.3d 1150, 1157 .................................................. 11

*United States v. Cruz-Garcia*
    (9th Cir. 2003) 344 F.3d 951 ................................................................ 19

*United States v. Hadley*
    (9th Cir.1990) 918 F.2d 848, 851 ........................................................ 12

*United States v. McGuire*
    (7th Cir. 2010) 627 F.3d 622 ................................................................ 20

*United States v. Roberts*
    (10th Cir. 1999) 185 F.3d 1125, 1140-43 ............................................ 12

*United States v. Sioux*
    (9th Cir. 2004) 362 F.3d 1241 ............................................................... 9

Velasquez v. City of Long Beach
    (9th Cir. 2015) 793 F.3d 1010 ............................................................... 7

*Weeks v. Baker & McKenzie*
    (1998) 63 Cal.App.4th 1128 ................................................................ 13

iii

**TABLE OF AUTHORITIES**

*Zaustinsky v. University of Cal.*

    (N.D. Cal. 1983) 96 F.R.D. 622,625 .................................................................. 18

**<u>Statutes</u>**

Cal. Civ.Code § 3294 ........................................................................................ 13

**<u>Rules</u>**

FRCP 26 ............................................................................................................ 18

FRE 404 ................................................................................. 1, 3, 8, 11, 12

FRE 413 ............................................................................................................ 8

FRE 414 ............................................................................................................ 8

FRE 415 ............................................................................................. 1, 3, 8, 9

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Not surprisingly, Defendant County of Orange seeks to exclude *all* evidence of prior misconduct, the *entire* personnel files, and *all* investigations of Deputies Dwayne Chapple, Christopher Eiben, Cameron Mathis, and, even Defendant Deputy Nicholas Caropino (the deputy who raped the Plaintiff in this case).

**Defendant's motion should be <u>denied</u> on the following grounds:**

**(1)** Defendant's motion is speculative, overbroad, vague and ambiguous as it does not identify *all* the *specific* evidence it seeks to exclude. Defendant seeks exclusion of broad categories of evidence such as "other alleged incidents," "any investigations," "prior bad acts" and "personnel files and related documents." These broad categories include both relevant and admissible evidence and issues with specific evidence can be more properly addressed by objection at trial.

**(2)** Defendant Deputy Caropino raped and sexually assaulted the Plaintiff in this case. Therefore, Caropino's prior sexual assaults against other victims are *expressly* admissible under FRE 415 and FRE 404(b). None of the cases cited in Defendant's motion involve any similar claims of rape or prior sexual assaults. This evidence is also relevant and admissible as to the *Monell* claim against the County.

**(3)** Caropino disputes Plaintiff's claim that he raped her. There is evidence that Caropino lied during the course of multiple investigations into his sexual assaults—including the investigation involving Plaintiff. This evidence goes to Caropino's credibility (as he and Plaintiff are the only witnesses of the rape in this case) and to the *Monell* claim against the County.

**(4)** Deputy Chapple was Deputy Caropino's partner on the night of the rape and Chapple authored the subject police report which omitted key pieces of information  (such as the fact that Chapple and Caropino drove Plaintiff to her car and left her there).  Evidence that Deputy Chapple was previously disciplined for giving false or misleading information during an internal investigation and that he was also previously disciplined for engaging in

the "Code of Silence" is relevant and admissible. This evidence goes to Chapple's credibility and to the *Monell* claim against the County.

**(5)** With regard to personnel files and related documents, these documents are not protected by an *absolute* privilege of confidentiality—as corroborated by the fact that this Court has previously heard arguments on this issue and ordered Defendant to produce these documents. The Court correctly recognized that any prejudice suffered by Defendant through the disclosure of these documents is outweighed by the probative value to Plaintiff's use of the personnel files. These files are Plaintiff's only means of demonstrating key pieces of misconduct relating to issues of credibility and the *Monell* claim against the County.

**(6)** Deputies Eiben and Mathis also responded to the subject domestic violence call involving Plaintiff on the night of the subject incident. They claim not to have witnessed or been aware of any misconduct relating to Caropino. Plaintiff is entitled to question their credibility. However, due to Defendant's failure to identify the officers engaged in misconduct in the OIR Reports (See Plaintiff's Opposition to Defendant's MIL No. 13), it is possible that relevant evidence of Eiben and Mathis's previous untruthfulness and/or misconduct is currently unknown to the Court and Plaintiff. Such evidence, if it exists, is highly relevant and exceedingly probative to the issue of credibility and the *Monell* claim against the County. Therefore, the Court should defer issuing, in a vacuum, a blanket *in limine* order on this issue at this time.

**(7)** Finally, while Defendant argues that the evidence discussed above may be prejudicial, relevant evidence by its very nature is damaging and prejudicial. However, this evidence is not *unfairly* prejudicial to Defendant. Plaintiff will be *unfairly* prejudiced if the court grants Defendant's motion as she will be deprived of presenting key pieces of evidence to the jury. Any undue prejudice to the Defendants can be avoided by this Court's limiting instruction to the jury, if such instruction ever becomes necessary.

2

## II.     DEFENDANT'S MOTION IS SPECULATIVE, OVERBROAD AND VAGUE AND AMBIGUOUS

The purpose of a motion in limine is to preclude the presentation of *specific* evidence deemed to be inadmissible and prejudicial. *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669. Defendant's motion is speculative, overbroad, vague and ambiguous as it does not identify *all* the *specific* evidence it seeks to exclude. Defendant seeks exclusion of broad categories of evidence such as "other alleged incidents," "any investigations," "prior bad acts" and "personnel files and related documents." These broad categories include both relevant and admissible evidence and issues with specific evidence can be more properly addressed by objection at trial.

## III.    PRIOR COMPLAINTS AGAINST DEPUTY CAROPINO AND ANY INVESTIGATIONS THEREOF ARE EXPRESSLY RELEVANT AND ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE

In mid-2014, Defendant Caropino sexually assaulted Plaintiff Alexa Curtin. Caropino forcefully digitally penetrated Ms. Curtin, forced her to perform oral sex on him, and forced sexual intercourse.  At all times, Caropino acted under color of authority, as an Orange County Sheriff's Deputy. At least four other women were similarly victimized by Deputy Caropino during the year prior to the attack on Plaintiff, with one of the victims making a complaint against him with the County *months before* Caropino attacked Ms. Curtin.

Evidence of the prior attacks is admissible under FRE 415 and as such evidence is germane and relevant to the issue of *Monell* liability against the County. Separate from FRE 415 is FRE 404(b), which provides that evidence of crimes, wrongs or other acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FRE 404(b).  These instances, and any other instances of prior similar sexual attacks by Deputy Caropino should be admissible at trial.

This issue has been extensively briefed in (1) Plaintiff's First Amended

3

Motion In Limine No. 1 To Admit Evidence And Testimony Re Defendant Caropino's Other Alleged Sexual Assaults [Dkt. 63]; and (2) Plaintiff's Opposition To Defendant's Motion In Limine No. 2 To Exclude Any Argument, Evidence Or Testimony Of Other Alleged Complainants Of Sexual Assault Due To The County's Lack Of Notice [Dkt. 79]. For purposes of brevity, Plaintiff refers the Court to Dkt. 63 and 79 and briefly summarizes her arguments herein.

### A. <u>Deputy Caropino's Sexual Assault of Plaintiff Ms. Curtin.</u>

In the early morning hours of June 27, 2017 sheriff's deputies, including Deputy Caropino, responded to dispute between Ms. Curtin and her husband. After investigating, the deputies concluded no crime had occurred, and the couple should part ways for the night. Then, Deputy Caropino placed Ms. Curtin in his patrol car and drove her to her car.

Once there, he got her out of the patrol vehicle and further detained her. He searched her purse, vehicle, and contents of the vehicle including luggage and clothing. He asked Ms. Curtin why the panties he found were wet. He then told her that she was not free to leave and that if she did leave, "She would be in a lot of trouble," and that he was going to return.

Ms. Curtin followed Deputy Caropino's orders not to leave and waited in her car. After some time, Deputy Caropino returned and ordered Ms. Curtin to let him into her vehicle. He then said to Ms. Curtin, "Since you are still here, I am going to fuck the shit out of you." Deputy Caropino told Plaintiff, "Show me your pussy." Plaintiff was afraid and feared for her own safety, and she complied with all of Deputy Caropino's commands. Then Deputy Caropino groped Plaintiff's vagina and digitally penetrated her while commenting on her anatomy. Deputy Caropino then pulled his pants down and shoved Plaintiff's head down towards his genitals and forced her to orally copulate him despite her cries of pain.

Next, Deputy Caropino ordered Ms. Curtin to straddle him while he sat in the passenger seat of her vehicle. She was still in fear for her safety and knew that many

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

in law enforcement carry guns, even when out of uniform, and complied with the Deputy Caropino's commands. While in this position, the Deputy Caropino forced sexual intercourse with Ms. Curtin. Before leaving, Deputy Caropino then pulled up his pants, and asked Plaintiff for her cellular phone number so he could text her and to do this again.  Still afraid, Plaintiff gave Deputy Caropino an incorrect phone number. Ms. Curtin was 21 years old at the time of the incident.

## B. Four Other Women Were Similarly Sexually Assaulted By Deputy Caropino During The Year Prior To The Attack On Plaintiff.

Ms. Curtin was not Caropino's only victim. Evidence reveals that Caropino sexually assaulted at least four other women in the year prior to his attack on plaintiff:

**Jane Doe #1**. In June of 2013 Deputy Caropino sexually assaulted Ms. Doe #1 in her vehicle while detaining her during a DUI investigation. Ms. Doe #1 complied with Deputy Caropino's commands out of fear of harm to her person and out of fear that he would abuse his position to wrongfully arrest her.

Ms. Doe #1 is prepared to testify that at about 1:00 a.m. in Dana Point, she was heading home from Fred's Mexican Café.  On her way home, she went through the drive through of Del Taco and could see a Sheriff's Deputy standing at the cash register looking at her. After eating her food, Ms. Doe #1 was pulled over leaving Del Taco. Deputy Caropino walked up to her car and said, "I saw that look you gave me," and asked her if she would ever date a cop.  Ms. Doe #1 said, "No." Deputy Caropino then asked Ms. Doe #1  if she had been drinking, she initially said no, but Deputy Caropino incessantly asked her again if she had been drinking. She felt Deputy Caropino was doing this to scare her, and she was in fact fearful of him. She then admitted that she had a couple of margaritas at Fred's Mexican Café. At that point, Deputy Caropino told her that he had turned all of his recording devices off, which further frightened Ms. Doe #1. Deputy Caropino then asked if Ms. Doe #1  was "wet" and that he wanted to feel her. He then reached in through the driver side window and forced his hand

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

under her underwear to fondle her genitals. Deputy Caropino then said, "I want to fuck you right now," and told Ms. Doe #1 to follow him. Still fearful that Deputy Caropino would harm her or take her to jail, she complied. She followed him to a parking lot, where he parked his squad car next to hers and directed her to get into the backseat of her car. He then engaged in non-consensual sexual intercourse with her in the backseat of her car. Before leaving, Deputy Caropino asked Ms. Doe #1 for her phone number and she gave it to him. A few days later he started sending her vulgar threatening text messages that Ms. Doe #1 did not reciprocate. Ms. Doe #1 was 21 years old at the time of the incident.

**Jane Doe #2.** Ms. Doe #2 filed a government claim against the County of Orange and Deputy Caropino in late February of 2014. In her claim, Ms. Doe #2 states that in September of 2013, while she was under arrest and sitting in the back of a squad car, Deputy Caropino uncuffed her hands and forced her to touch his penis through his uniform. Deputy Caropino intimidated her, coerced her, and sexually assaulted her. He then called and text messaged her once she was released from custody and showed up at her home while on duty and in uniform to have nonconsensual sex with her. Ms. Doe #2 was 18 years old at the time of the incident.

**Jane Doe #3.** In or about November of 2013 Deputy Caropino sexually assaulted Ms. Doe #3 in her home. Ms. Doe #3 complied with Deputy Caropino's commands out of fear of harm to her person and out of fear that he would abuse his position to wrongfully arrest her or interfere with her custody of her children.

Jane Doe #3 is prepared to testify that in or about November 2013 Deputy Caropino showed up at her house unannounced in full uniform and entered her home. Caropino had been to Doe #3's home before for child custody calls for service. Caropino was questioning and interrogating Doe #3 in her living room kitchen area for approximately 20-30 minutes. Doe #3 was felt intimidated and scared of Caropino's size and authority, and she attempted to escort him to the door, hoping he would follow her lead and leave. At this time Caropino grabbed Doe #3 and began groping and

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

kissing her forcefully. Doe #3 was frightened by Caropino's aggression, strength, and the fact that he was in full uniform with his gun and other police weapons on his person. Too scared to resist, Doe #3 felt it was safer not to resist Caropino's sexual aggression. Caropino then took Doe #3 upstairs into her bedroom and engaged in non-consensual sexual intercourse with Doe #3. Before leaving, Caropino asked for Doe #3's phone number. Doe #3 was scared and gave a fake number to Caropino.

**Other Victims**. In addition to Jane Doe #1, Jane Doe #2, and Jane Doe #3 above, Caropino has additional victims. In or about June 2013, Caropino engaged in a non-consensual encounter with a young woman who ran away from home. In or about June 2013, Caropino while responding to a citizen's call for service, began flirting with the citizen's daughter's friend and gave that young woman his personal cell phone number. In or about August 2013, in exchange for not giving a young woman a traffic citation he asked for her phone number, repeatedly texted her, and had her meet him for coffee. In or about August 2013, Caropino asked for the phone of a young woman who he had initiated a traffic stop on, and when she gave him her phone, he input his phone number into her phone and began sending her inappropriate text messages. In or about November 2014, Caropino responded to a call for internet harassment and took down the victim's contact information and began sending the victim inappropriate text messages and emails.

It appears that Defendant Caropino does not dispute that these sexual encounters took place, but alleges they were all consensual.

## C. Evidence of Deputy Caropino's Prior Sexual Assaults Are Relevant And Admissible.

Evidence of Caropino's prior acts of sexual assault are relevant and admissible in this case and should not be excluded. In *Velasquez v. City of Long Beach* (9th Cir. 2015) 793 F.3d 1010, the plaintiff represented that the officer in particular had received "ten citizen complaints regarding his conduct, that three of these complaints involved excessive force, and that the officer had over

multiple internal affairs incidents of force since 2007. *Id.* at 1027. The district court granted Defendant's motion in limine to "preclude reference complaints, Internal Affairs, and discipline in which "Defendants had argued that such evidence was irrelevant to establishing Velasquez's Monell claims, in addition to causing prejudice and constituting inadmissible character evidence." *Id.* at 1028, n. 15.

The Court of Appeals reversed the district court's decision finding that the "excluded evidence was relevant, indeed *critical*, to prove that the City was aware of [the officer's] alleged tendency to use excessive force." *Id.* (Emphasis added.) See also *Reeves v. Town of Cottageville* (D.S.C. Aug. 29, 2014) 2014 U.S. Dist. LEXIS 120619, *4 (evidence of officer's prior misconduct "obviously admissible with respect to [plaintiffs] claim that [City] and the police department negligently hired, retained, and supervised [officer], as well as her claim for municipal liability pursuant to 42 U.S.C. § 1983.")

Thus, there is no question as to whether evidence of Defendant Caropino's prior misconduct is relevant to Plaintiff's claims here.

### D. <u>Evidence of Deputy Caropino's Prior Sexual Assaults Against Other Victims Are Expressly Admissible Under FRE Rule 415.</u>

The Federal Rules of Evidence specifically provide that evidence of other offenses of sexual assault may be admissible in a civil case predicated on a claim of sexual assault.  FRE 415(a); *Blind-Doan v. Sanders* (9th Cir. 2002) 291 F.3d 1079, 1082 .  Pursuant to FRE 415, "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party *committed any other sexual assault* or child molestation. The the evidence of Deputy Caropino's prior sexual assaults falls within the ambit of admissible evidence under Rules 413 and 414."

While Defendant will argue that this evidence must be analyzed under Rule 404, Rule 415 "was passed to make an exception to FRE 404(b)" and its ban on propensity

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

evidence. *Doe ex rel. Rudy-Glanzer v. Glanzer* (9th Cir. 2000) 232 F.3d 1258, 1268 ; *see also United States v. Sioux* (9th Cir. 2004) 362 F.3d 1241, 1244 (holding that Rules 413 through 415 "supersede Rule 404(b)'s restriction"); *Blind-Doan v. Sanders* (9th Cir. 2002)  291 F.3d 1079, 1082-83 (reversing magistrate judge's exclusion of defendant's other sexual assaults because judge did not apply Rule 415); *Doe v. Smith* (7th Cir. 2006) 470 F.3d 331, 347-48 (reversing exclusion of defendant's other sexual misconduct in civil rights case).

FRE 415 applies if "the defendant [is] accused of an offense of sexual assault or child molestation; second, the evidence being proffered [ ] relate[s] to the commission of another offense of sexual assault or child molestation; and last, the evidence [is] relevant" *Glanzer*, 232 F.3d at 1268. The evidence should be admitted unless its probative value is substantially outweighed by the risk of unfair prejudice to the defendants. *Id.*

Evidence of the prior sexual assaults (both known and unknown) qualifies here. Defendant is accused of sexually assaulting Ms. Curtin. The evidence relates to Defendant sexually assaulting other women. The evidence is relevant to show Defendant's propensity to sexually assault women and to buttress Ms. Curtin's credibility (and impeach Defendant).

In a sexual assault case, it "is generally accepted that a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in FRE 401 & 402." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000); *see also United State v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2007)("Congress has said that…it is not improper to draw the inference that the defendant committed this sexual offense because he has the propensity to do so.").

In addition to propensity, such evidence is also relevant to credibility.  Here, Defendant denies that he sexually assaulted Plaintiff and asserts that the act was at all

times consensual. Credibility is therefore at issue. "Courts have previously held that evidence of prior sex crimes can be admitted to bolster or undermine witnesses credibility." *United States v. Barnason* (S.D.N.Y. 2012) 852 F.Supp.2d, 367, 374-75 (citing cases); *see also Cleveland v. KFC Nat'l Mgmt. Co.* (N.D. Ga. 1996) 948 F.Supp 62, 64-65 (noting that Rules 412 through 415 "were specifically adopted to prevent such a lopsided swearing contest of plausibility and credibility").

Thus, the evidence here is exactly the kind of case that Rule 415 was designed for. There are no third-party witnesses. There is no DNA evidence. The Defendant says it was consensual. It is a credibility contest between the victim and her attacker. Congress recognized that and emphasized that "knowledge that the defendant has committed rapes on other occasions is frequently critical in assessing the relative plausibility of these claims and accurately deciding cases that would otherwise become unresolvable swearing matches." Molinari St. (Cong. Rec. H8991-92, Aug. 21, 1994). That is particularly true when the defendant is a law enforcement officer, people who the jury may otherwise see as inherently credible.

The Court in *Glanzer, supra,* held that courts should consider several factors when doing the Rule 403 balancing, including: (1) "the similarity of the prior acts to the acts charged" in the case; (2) "the closeness in time of the prior acts to the acts charged"; (3) "the frequency of the prior acts"; (4) "the presence of lack of intervening circumstances"; and (5) "the necessity of that evidence beyond the testimonies already offered at trial…" 232 F.3d at 1268-69.

Those factors weigh in favor of admitting the other sexual assault complaints. The similarity of the acts is especially compelling. For example:

- All of the attacks stemmed from a detainment or arrest of the victims by Defendant Caropino.
- All of the attacks of the victims were young, vulnerable females that were under the influence of alcohol.
- All of the attacks occurred on or in the property of the victims.

10

- In all of the attacks Defendant Caropino asked for or obtained the victim's telephone number.
- All of the attacks occurred in the late hours of the night or early morning.
- During all of the attacks Defendant Caropino intentionally turned off his recording devices.

The evidence is reliable.

The defense strategy appears to be to: deny Ms. Curtin's allegations, hold Deputy Caropino up as a model law enforcement officer, attack Ms. Curtin as a desperate, drug-addicted liar, and use the Fifth Amendment to shield the jury from hearing about any other complaints. The Court should not reward such tactics. *See, e.g., United States v. $133,420.00 in U.S. Currency* (9th Cir. 2012) 672 F.3d 629, 641 (refusing to let Fifth Amendment privilege be used as a sword and a shield in federal litigation).

## E. Evidence of Deputy Caropino's Prior Sexual Assaults Against Other Victims Are Also Admissible Under FRE Rule 404(b).

Separate from FRE 415 is FRE 404(b), which provides that evidence of crimes, wrongs or other acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FRE 404(b). The Ninth Circuit has held that evidence may be admitted pursuant to Rule 404(b) if "(1) the evidence tends to prove a material point; (2) the other act evidence is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the other act is similar to the offense charged." *United States v. Cherer* (9th Cir. 2008) 513 F.3d 1150, 1157. The importance of admitting 404(b) evidence was described in *Huddleston v. United States* (1988) 485 U.S. 681, 685: "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *See U.S. v. Curtin* (9th Cir.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

2007) 489 F.3d 935,944  ("Rule 404(b) is a rule of inclusion – not exclusion).

The evidence regarding other victims of Deputy Caropino is necessary to prove Plaintiff's remaining claims against Caropino, including establishing the necessary intent, opportunity, motive, plan and pattern of his conduct.  To counter Defendants' anticipated argument that this was simply a one-time incident, Plaintiff must be able to present evidence that the abuse she suffered was part of a *pattern* of sexual abuse by Deputy Caropino while employed with the County.  See *United States v. Hadley* (9th Cir.1990) 918 F.2d 848, 851  (approving use of evidence that in prior acts defendant performed similar acts of sexual gratification on victims); *Boyd v. City & County of San Francisco* (9th Cir. 2009) 576 F3d 938, 944 (evidence of past lawsuits against police relevant to show attempt to commit "suicide by cop" and knowledge that his family could receive substantial damages from such a suit); *United States v. Roberts* (10th Cir. 1999) 185 F.3d 1125, 1140-43  (evidence that an accused committed similar prior sexual abuse on other victims has been held admissible to demonstrate a *common scheme* or plan under Rule 404(b)).

The evidence is further relevant under Rule 404(b) to support Plaintiff's claim for punitive damages.  "To recover punitive damages against an individual officer in a § 1983 case, a plaintiff must show that the officers' conduct is 'motivated by *evil motive* or intent' or 'involves reckless or callous indifference to the federally protected rights of others.' *Smith v. Wade*, 461 U.S. 30, 56 (1983) 103 S.Ct. 1625, 75 L.Ed.2d 632; accord *Dubner,* 266 F.3d at 969. The Ninth Circuit has further explained that '[t]he standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases,' which extends to 'malicious, wanton, or oppressive acts or omissions.' *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir.2005) (citing *Wade*, 461 U.S. at 49, 103 S.Ct. 1625)." *Adams v. Kraft* (N.D. Cal. 2011) 828 F.Supp.2d 1090, 1117-18.

Here, and as echoed above, the evidence sought to be excluded is relevant to the issue of motive and intent – a necessary predicate to the imposition of punitive

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

damages.  See *Sanchez v. Brokop*, 398 F. Supp. 2d 1177, 1183-84 (D.N.M. 2005) (prior acts against others admissible to demonstrate element of malice in claim for punitive damages); *Weeks v. Baker & McKenzie*, 63 Cal.App.4th 1128, 1162 (1998) (evidence of defendant employee's conduct towards other employees was relevant in demonstrating *liability* for punitive damages) [1]; *Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1074 (N.D. Ill. 1999) (an officer's intent to do harm is at issue in a Section 1983 action alleging punitive damages and thus Rule 404(b) evidence concerning evil intent or malicious motive admissible).

### F.   Evidence of Deputy Caropino's Prior Sexual Assaults Are Further Relevant and Admissible as to the *Monell* Claim Against the County.

Section 1983 requires a claimant to prove that a person acting under color of state law committed an act that deprived her of some right, privilege, or immunity protected by the Constitution or federal law.  *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir.1988). Counties and their law enforcement departments are "persons" within the meaning of the statute.  *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690 (1978); *Shaw v. State of California Dept of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir.1986).  A person deprives another of a federal right within the meaning of § 1983 if "he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation."  *Leer*, 844 F.2d at 633 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)).  Municipalities cannot be held vicariously liable under section 1983 for the actions of their employees.  *Monell v.*

---

[1] The standard for awarding punitive damages under California law is similar to federal law. Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294.  "Malice may be shown where the defendant exhibits 'the motive and willingness to vex, harass, annoy, or injure,' [citation], or a 'conscious disregard of the rights and safety of others,' [citation]." *Taylor v. Superior Court*, 24 Cal.3d 890, 894 (1979).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

*Dept. of Social Services of the City of N.Y.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To impose liability on a government entity, a plaintiff must show that "the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir.2002) (quoting *Monell*, 436 U.S. at 694)). "Municipal liability under 1983 may be premised upon an officially promulgated policy, a single decision by an official with final decisionmaking authority, a custom or persistent practice or a deliberately indifferent training or supervision." *Henderson v. City & Cnty. of San Francisco*, C05-234 VRW, 2006 WL 3507944 (N.D. Cal. Dec. 1, 2006); *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir.2002); see also 9th CIR. MODEL JURY INSTR. Nos. 9.4 [*Monell* claim based on "official policy" or widespread "practice and custom"], 9.5 [acts by final policymaker]; 9.6 [ratification by a final policymaker], 9.7 [failure to train or supervise].

The evidence in this case reveals an unwritten practice and policy within the County where deputies protect fellow deputies from investigation and consequences of their wrongdoing. The failures of the County to report misconduct by fellow officers and appropriately discipline officers that have committed misconduct resulted in a *de facto* policy permitting deputies to act with impunity in sexual misconduct against females. Further, the express policies of the County were woefully inadequate, failing to mandate reporting of misconduct and patently inept at preventing the very type of misconduct engaged in by Caropino.

In addition to the unwritten practice and policy, the County has a written

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

policy that prohibits, "*unwelcome* solicitation of a personal or sexual relationship while on duty or through the use of official capacity." A plain reading of this policy means that to avoid being found in violation of the policy a deputy merely needs to claim that any solicitation of a sexual relationship was welcomed. The evidence of prior sexual attacks and inappropriate sexual behavior and solicitation further proves that Caropino's conduct was not welcomed by any of his victims.

The evidence of prior similar sexual attacks by Caropino is admissible and relevant to support Plaintiff's *Monell* claim against the County. As will be explained by Plaintiff's police expert, the County was aware of Caropino's sexually deviant tendencies and yet failed to do anything in response. The evidence reveals a well-settled, widespread practice or custom of protecting fellow deputies that engage in such misconduct and a complete failure by the County to appropriately discipline such deputies.

Acquiescence in a custom or practice that routinely disregards the constitutional rights of citizens may *itself* be sufficient to establish a policy or practice sufficient for *Monell* liability. See *City of St. Louis v. Praprontik,* 485 U.S. 112, 130 (1988) (potential section 1983 liability "if a series of decisions by subordinate official manifested a 'custom or usage' of which the supervisor must have been aware"); *Oviatt by and through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (policymaker's inaction in face of problem constituted policy for purposes of section 1983 liability); see also *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (prior incidents of misconduct tend to prove a pattern or custom and policymaker's accession to it).

Despite the supposed existence of a formal policy against officer misconduct, the evidence reveals *numerous incidents* of sexual misconduct by officers which went unpunished. "The lack of appropriate discipline is evidence of custom." *Anthony, supra,* 898 F.Supp. at 1452; *Gillette v. Delmore,* 979 F.2d 1342, 1349 (9th Cir.1992), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993). A

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

plaintiff may prove "the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Navarro*, at 714, citing *Gillette, supra,* 979 F.2d at 1348.  Once such a showing is made, a municipality may be liable for its custom "*irrespective of whether official policy-makers had actual knowledge of the practice at issue*."  *Navarro*, at 714-715, citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

The evidence concerning the prior sexual assault victim of Caropino who reported the attack to the County months prior to the attack against Plaintiff is particularly relevant to the *Monell* claim. It is established that a department's handling of a misconduct claim may be "highly probative" in proving the existence of a municipal policy or custom under Section 1983. See *Henry v. County of Shasta*, 132 F3d 512, 519 (9th Cir. 1997).  A "[p]olicy or custom may be *inferred* if officials took no steps to reprimand or discharge the [officers involved], or if they otherwise failed to admit the [officers'] conduct was in error." *Id*. (citing *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)); see also *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991).  In *Henry,* the plaintiff's constitutional rights were violated after being stopped for a traffic violation.    The officers involved were not reprimanded and plaintiff also demonstrated that, after bringing suit, several other officers employed by the county similarly detained other traffic violators.  *Henry,* 132 F3d at 519.  The Ninth Circuit concluded that when a municipality "turn[s] a blind eye to severe violations of inmates' constitutional rights-despite having received notice of such violations-a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Id*., see also *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that correctional department administrators may not take a "blind-eye" approach and that condoning unconstitutional acts by the failure to investigate or correct the repeated violations constitutes a policy or custom under *Monell*.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

Thus, evidence of prior sexual attacks and incidents by Deputy Caropino is relevant to Plaintiff's *Monell* claim and should thus be admissible at trial.

## IV. EVIDENCE OF DEPUTY CHAPPLE'S PRIOR MISCONDUCT IS RELEVANT AND ADMISSIBLE

Deputy Chapple was Deputy Caropino's partner on the night of the subject incident. Chapple authored the subject police report and intentionally omitted a key piece of information from the report: that Caropino and Chapple took Ms. Curtin to her car, at which point she was instructed not to drive or leave the scene. Even though he knew it to be false, Chapple falsely wrote in his report that Ms. Curtin left the area in her own vehicle.

Evidence that Deputy Chapple was previously disciplined for giving false or misleading information during an internal investigation and that he was also previously disciplined for engaging in the "Code of Silence" is relevant and admissible. This evidence goes to Chapple's credibility and to the *Monell* claim against the County. Such evidence is present in this case:

First, evidence shows that Deputy Chapple was disciplined for giving false or misleading information during an Internal Affairs interview. The Orange County Sheriff's Department found that Deputy Chapple lied during an Internal Affairs interview when he denied sending seven text messages to female student. Deputy Chapple denied sending text messages to the student the day prior to the interview, before finally admitting his misconduct and untruthfulness. On February 5, 2013, Deputy Chapple was given a letter of reprimand for his actions and untruthful statements. Deputy Chapple was also disciplined for engaging in the Code of Silence. Deputy Chapple was suspended for 12 hours.

Second, evidence shows that Deputy Chapple previously admitted that he witnessed another deputy assault a prisoner in the jail.  Deputy Chapple admitted he did not report the incident to a supervisor. The sheriff's department did refer the case for prosecution, but the District Attorney declined.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

Shockingly not only was Deputy Chapple not terminated from his employment for lying and engaging in the "code of silence" during the same review period, but in his performance review Deputy Chapple receive high marks from his supervisor and was ultimately promoted to patrol.   Anyone who reads Deputy Chapple's personnel file would believe Deputy Chapple was a hard-working, competent officer and among the OCSD's best and brightest.   Unfortunately, nothing could be further from the truth and what is worse, supervisors and managers condoned Deputy Chapple's behavior and knew the truth but failed to take meaningful action.

## V.   THE PERSONNEL FILES AND RELATED DOCUMENTS ARE RELEVANT AND ADMISSIBLE

The court should allow the information from personnel files to be used in court. FRCP 26(c) provides that a court may limit discovery to protect from annoyance, embarrassment, oppression, or undue burden or expense. Federal common law recognizes a *qualified* (not absolute) privilege for official information. *Kerr v. United States Dist. Ct. for N.D. Cal*., 511 F.2d 192, 198 (9th Cir. 1975), Government personnel files are considered official information. See, e.g., *Zaustinsky v. University of Cal*., 96 F.R.D. 622,625 (N.D. Cal. 1983), To determine whether the information sought is *privileged*, courts must weigh the *potential benefits* of disclosure against the *potential disadvantages*. If the latter is greater, the privilege bars discovery. *Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1384-85 (5th Cir. 1980).

In this case, the personnel files and related documents are not protected by an *absolute* privilege of confidentiality—as corroborated by the fact that this Court has previously heard arguments on this issue and ordered Defendant to produce these documents. The Court correctly recognized that any prejudice suffered by Defendant through the disclosure of these documents is outweighed by the probative value to Plaintiff's use of the personnel files and related documents.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

These files are Plaintiff's only means of demonstrating key pieces of misconduct relating to issues of credibility and the *Monell* claim against the County.

Plaintiff is simply seeking to use the personnel files this Court ordered Defendant to produce, for this trial and no other purpose. A balancing of the benefits of disclosure against potential disadvantages, there are no disadvantages to disclosure, as the documents have already been produced and plaintiff is only seeking to use the information that is relevant to this matter.

As to Deputies Chapple and Caropino, this information is relevant and admissible for the reasons set forth above.

As to Deputies Eiben and Mathis (who also responded to the subject domestic violence call involving Plaintiff), this issue is premature for ruling. Deputies Eiben and Mathis claim not to have witnessed or been aware of any misconduct relating to Caropino. Plaintiff is entitled to question their credibility. However, due to Defendant's failure to identify the officers engaged in misconduct in the OIR Reports (See Plaintiff's Opposition to Defendant's MIL No. 13), it is possible that relevant evidence of Eiben and Mathis's previous untruthfulness and/or misconduct is currently unknown to the Court and Plaintiff. Such evidence, if it exists, is highly relevant and exceedingly probative to the issue of credibility and the *Monell* claim against the County. Therefore, the Court should defer issuing, in a vacuum, a blanket *in limine* order on this issue at this time.

## VI.   DEFENDANT WILL NOT BE *UNFAIRLY* PREJUDICED IF THIS EVIDENCE IS ADMITTED BUT PLAINTIFF WILL BE *UNFAIRLY* PREJUDICED IF THIS EVIDENCE IS EXCLUDED

Finally, Defendants will not be unfairly prejudiced if this evidence is admitted. All relevant evidence is prejudicial, particularly when it involves previous misconduct, untruthfulness or sexual misconduct. But Rule 403 "excludes only evidence where the prejudice is 'unfair' – that is based on something other than its persuasive weight." *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003). That is not the case

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**

here.

Furthermore, Defendant opened the door to this evidence by calling Ms. Curtin a liar. *United States v. McGuire*, 627 F.3d 622 (7th Cir. 2010).The witnesses in this case are law enforcement officers. In many people's eyes, officers are inherently credible. If Defendant is going to attack Ms. Curtin as a liar, then the jury should be able to judge the weight of that testimony based on the officers' credibility. Plaintiff will be *unfairly* prejudiced if the court grants Defendant's motion as she will be deprived of presenting key pieces of evidence to the jury. Any undue prejudice to the Defendants can be avoided by this Court's limiting instruction to the jury, if such instruction ever becomes necessary.

## VII.  **CONCLUSION**

For the above reasons, Plaintiff requests that this Court deny Defendant's Motion *In Limine* No. 5.


DATED: July 3, 2017                    **JASS LAW**

                                By:    /s/ Jeremy D. Jass
                                       Jeremy D. Jass, Esq.
                                       Attorneys for Plaintiff
                                       ALEXA CURTIN

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5**