Jeremy D. Jass, Esq., SBN 279466
**JASS LAW**
4510 E. Pacific Coast Hwy., Suite 400
Long Beach, CA 90804
Tel: (562) 340.6299
Fax: (562) 340.6422
Email: Jeremy@jasslaw.com

Holly N. Boyer, Esq., SBN 221788
**ESNER, CHANG & BOYER**
234 East Colorado Boulevard, Suite 975
Pasadena, CA 91101
Tel.: (626) 535-9860
Fax: (626) 535-9859
Email: hboyer@ecbappeal.com

Daniel K. Balaban, Esq., SBN 243652
**BALABAN & SPIELBERGER, LLP**
11999 San Vicente Boulevard, Suite 345
Los Angeles, CA 90049
Tel.: (424) 832-7677
Fax: (424) 832-7702
Email: daniel@dbaslaw.com

Attorneys for
ALEXA CURTIN

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXA CURTIN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE; NICHOLAS LEE CAROPINO, individually and as Deputy Sheriff for the County of Orange; and DOES 1 through 50,<br><br>Defendants. | Case No.: 8:16-CV-00591-SVW-PLA<br>The Hon. Stephen V. Wilson<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE ALL REPORTS PREPARED BY THE OFFICE OF INDEPENDENT REVIEW**<br><br>Pre-Trial Conference: July 24, 2017<br>Trial Date: August 1, 2017 |

Plaintiff Alexa Curtin ("Plaintiff") hereby provides her Opposition to Defendant's Motion *In Limine* No. 13 To Exclude All Reports Prepared By The Office Of Independent Review.

DATED: July 3, 2017

**JASS LAW**

By: /s/ Jeremy D. Jass
Jeremy D. Jass, Esq.
Attorneys for Plaintiff
ALEXA CURTIN

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………i

I. **INTRODUCTION** ..........................................................................1

II. **THE OIR REPORTS ARE RELEVANT** ............................................2

A. The OIR Reports Are Relevant To Plaintiff's *Monell* Claims.......................2

B. The OIR Reports Reveal Other Cases Of Deputy Dishonesty, Adherence To The Code Of Silence, And Engagement In Misconduct Which Does Not Result In Termination..........................................................................6

III. **THE OIR REPORTS ARE NOT INADMISSIBLE SUBSEQUENT REMEDIAL MEASURES FOR PURPOSES OF THIS CASE** ................12

IV. **EVEN IF THE OIR REPORTS ARE SUBSEQUENT REMEDIAL MEASURES FOR PURPOSES OF THIS CASE (WHICH THEY ARE NOT), THEY ARE STILL ADMISSIBLE IN A SECTION 1983 CASE** ..........................................................................13

V. **THE OIR REPORTS FALL WITHIN THE HEARSAY EXCEPTIONS FOR PUBLIC RECORDS AND ARE ADMISSIBLE UNDER FRCP RULE 803(8)(C)**..........................................................................15

VI. **INTRODUCTION OF THE REPORTS WOULD NOT BE UNDULY PREJUDICIAL TO DEFENDANT, BUT THEIR EXCLUSION WOULD BE UNDULY PREJUDICIAL TO PLAINTIFF**........................................16

VII. **CONCLUSION**..........................................................................16

# TABLE OF AUTHORITIES

**Cases**

*City of St. Louis v. Praprontik*
(1988) 485 U.S. 112 .......... 4

*Foley v. City of Lowell, Mass.*
(1st Cir. 1991) 948 F.2d 10 .......... 14, 15

*Gallagher v. City of West Covina*
C.D.Cal. 2002) 2002 WL 826603 .......... 14

*Gillette v. Delmore*
(9th Cir.1992) 979 F.2d 1342 .......... 4

*Gomez v. Vernon*
(9th Cir. 2001) 255 F.3d 1118 .......... 5

*Grandstaff v. City of Borger*
(5th Cir. 1985) 767 F.2d 161 .......... 4

*Green v. Baca*
(C.D. Cal. 2005) 226 F.R.D. 624 .......... 1, 12, 13

*Henderson v. City & Cnty. of San Francisco*
(N.D. Cal. Dec. 1, 2006) C05-234 VRW, 2006 WL 3507944 .......... 3

*Henry v. County of Shasta*
(9th Cir. 1997) 132 F3d 512 .......... 5

*Larez v. City of Los Angeles*
(9th Cir. 1991) 946 F.2d 630 .......... 5

*Leer v. Murphy*
(9th Cir.1988) 844 F.2d 628 .......... 2

*McRorie v. Shimoda*
(9th Cir. 1986)795 F.2d 780 .......... 5

*Monell v. Dept. of Social Services of City of New York*
(1978) 436 U.S. 658 .......... 2

*Montiel v. City of Los Angeles et al.*, (9th Cir.1993) 2 F.3d 335 .......... 14, 16

*Oviatt by and through Waugh v. Pearce* (9th Cir. 1992) 954 F.2d 1470 .......... 4

*Shaw v. State of California Dept of Alcoholic Beverage Control* (9th Cir.1986) 788 F.2d 600 .......... 2

*Thompson v. City of Los Angeles* (9th Cir. 1989) 885 F.2d 1439 .......... 5

*Ulrich v. City & County of San Francisco* (9th Cir.2002) 308 F.3d 968 .......... 3

*United States v. Cruz-Garcia* (9th Cir. 2003) 344 F.3d 951 .......... 16

**Rules**

FRCP Rule 803 .......... 1, 15

FRE 803 .......... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant County of Orange seeks to exclude all Office of Independent Review Reports ("OIR Reports") on the grounds that they are: (1) irrelevant; (2) inadmissible as subsequent remedial measures; (3) inadmissible hearsay; and (4) unfairly prejudicial to the County.

**Defendant's motion should be denied on the following grounds:**

**(1)** The OIR Reports are relevant to Plaintiff's *Monell* claim that her injuries are a result of the Orange County Sheriff's Department's (1) failure to reasonably train their deputies regarding sexual misconduct and/or (2) a policy, practice and custom of failing to adequately address untruthful police officers. The OIR Reports reveal that the Orange County Sheriff's Department has a problem with deputies and sexual misconduct. The OIR Reports also reveal a well-settled, widespread practice or custom of protecting fellow deputies that engage in such misconduct and a complete failure by the County to appropriately discipline such deputies.

**(2)** The OIR Reports are not inadmissible subsequent remedial measures for purposes of this case, as Defendant admits that the OIR Reports do not reflect the subject incident. It is therefore logically impossible for the OIR Reports to reflect subsequent remedial measures pertaining to this case. *Green v. Baca* (C.D.Cal. 2005) 226 F.R.D. 624, 634-635. Even if the OIR Reports are subsequent remedial measures (which they are not), they are admissible in Section 1983 cases such as this. *Id.*

**(3)** The OIR Reports fall within the hearsay exceptions for public records and are admissible under FRCP Rule 803(8)(C).

**(4)** The OIR Reports will not *unfairly* prejudice the County, but their exclusion will unfairly prejudice Plaintiff and prevent her from presenting relevant evidence that supports her *Monell* claim against the County.

## II. THE OIR REPORTS ARE RELEVANT

### A. The OIR Reports Are Relevant To Plaintiff's *Monell* Claims.

As part of her *Monell* claim, Plaintiff alleges that her injuries are a result of the Orange County Sheriff's Department (1) failure to reasonably train their deputies regarding sexual misconduct and/or (2) a policy, practice and custom of failing to adequately address untruthful police officers. The OIR Reports reveal that the Orange County Sheriff's Department has a problem with deputies and sexual misconduct. The OIR Reports also reveal a well-settled, widespread practice or custom of protecting fellow deputies that engage in such misconduct and a complete failure by the County to appropriately discipline such deputies. As set forth below, this evidence is essential for Plaintiff's Section 1983 claims.

Section 1983 requires a claimant to prove that a person acting under color of state law committed an act that deprived her of some right, privilege, or immunity protected by the Constitution or federal law. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir.1988). Counties and their law enforcement departments are "persons" within the meaning of the statute. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690 (1978); *Shaw v. State of California Dept of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir.1986). A person deprives another of a federal right within the meaning of § 1983 if "he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Leer*, 844 F.2d at 633 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)). Municipalities cannot be held vicariously liable under section 1983 for the actions of their employees. *Monell v. Dept. of Social Services of the City of N.Y.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

To impose liability on a government entity, a plaintiff must show that "the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir.2002) (quoting *Monell*, 436 U.S. at 694)). "Municipal liability under 1983 may be premised upon an officially promulgated policy, a single decision by an official with final decisionmaking authority, a custom or persistent practice or a deliberately indifferent training or supervision." *Henderson v. City & Cnty. of San Francisco*, C05-234 VRW, 2006 WL 3507944 (N.D. Cal. Dec. 1, 2006); *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir.2002); see also 9th CIR. MODEL JURY INSTR. Nos. 9.4 [*Monell* claim based on "official policy" or widespread "practice and custom"], 9.5 [acts by final policymaker]; 9.6 [ratification by a final policymaker], 9.7 [failure to train or supervise], 9.8 [failure to prevent violations of law].

The evidence in this case reveals an unwritten practice and policy within the County where deputies protect fellow deputies from investigation and consequences of their wrongdoing. The failures of the County to report misconduct by fellow officers and appropriately discipline officers that have committed misconduct resulted in a *de facto* policy permitting deputies to act with impunity in sexual misconduct against females. Further, the express policies of the County were woefully inadequate, failing to mandate reporting of misconduct and patently inept at preventing the very type of misconduct engaged in by Caropino.

In addition to the unwritten practice and policy, the County has a written policy that prohibits, "*unwelcome* solicitation of a personal or sexual relationship while on duty or through the use of official capacity." A plain reading of this policy means that to avoid being found in violation of the policy a deputy merely needs to claim that any solicitation of a sexual relationship was welcomed.

Evidence of other cases where deputies may have been dishonest, engaged in the code of silence, or engaged in sexual misconduct and where their employment was not terminated is admissible and relevant to support Plaintiff's *Monell* claim against the County. As will be explained by Plaintiff's police expert, the evidence in the OIR Reports support Plaintiff's claim that the Orange County Sheriff's Department (1) fails to reasonably train their deputies regarding sexual misconduct and/or (2) has a policy, practice and custom of failing to adequately address untruthful police officers. The OIR Reports reveal that the Orange County Sheriff's Department has a problem with deputies and sexual misconduct. The OIR Reports also reveal a well-settled, widespread practice or custom of protecting fellow deputies that engage in such misconduct and a complete failure by the County to appropriately discipline such deputies.

Acquiescence in a custom or practice that routinely disregards the constitutional rights of citizens may *itself* be sufficient to establish a policy or practice sufficient for *Monell* liability. See *City of St. Louis v. Praprontik,* 485 U.S. 112, 130 (1988) (potential section 1983 liability "if a series of decisions by subordinate official manifested a 'custom or usage' of which the supervisor must have been aware"); *Oviatt by and through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (policymaker's inaction in face of problem constituted policy for purposes of section 1983 liability); see also *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (prior incidents of misconduct tend to prove a pattern or custom and policymaker's accession to it).

Despite the supposed existence of a formal policy against officer misconduct, the evidence reveals *numerous incidents* of sexual misconduct by officers which went unpunished. "The lack of appropriate discipline is evidence of custom." *Anthony, supra,* 898 F.Supp. at 1452; *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir.1992), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993). A plaintiff may prove "the existence of a custom or informal policy

with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Navarro*, at 714, citing *Gillette, supra*, 979 F.2d at 1348. Once such a showing is made, a municipality may be liable for its custom "*irrespective of whether official policy-makers had actual knowledge of the practice at issue*." *Navarro*, at 714-715, citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

It is established that a department's handling of a misconduct claim may be "highly probative" in proving the existence of a municipal policy or custom under Section 1983. See *Henry v. County of Shasta*, 132 F3d 512, 519 (9th Cir. 1997). A "[p]olicy or custom may be *inferred* if officials took no steps to reprimand or discharge the [officers involved], or if they otherwise failed to admit the [officers'] conduct was in error." *Id*. (citing *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)); see also *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991).

In *Henry*, the plaintiff's constitutional rights were violated after being stopped for a traffic violation. The officers involved were not reprimanded and plaintiff also demonstrated that, after bringing suit, several other officers employed by the county similarly detained other traffic violators. *Henry*, 132 F3d at 519. The Ninth Circuit concluded that when a municipality "turn[s] a blind eye to severe violations of inmates' constitutional rights-despite having received notice of such violations-a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Id.*, see also *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that correctional department administrators may not take a "blind-eye" approach and that condoning unconstitutional acts by the failure to investigate or correct the repeated violations constitutes a policy or custom under *Monell*.)

Thus, evidence of other cases where deputies may have been dishonest, engaged in the code of silence, or engaged in sexual misconduct and where their employment was not terminated is admissible and relevant to support Plaintiff's

*Monell* claim against the County and should thus be admissible at trial.

**B. The OIR Reports Reveal Other Cases Of Deputy Dishonesty, Adherence To The Code Of Silence, And Engagement In Misconduct Which Does Not Result In Termination.**

Plaintiff's police practice expert, Mr. Jeffrey Noble, was a police officer for 28 years and was a former Deputy Chief of Police with the Irvine Police Department. Mr. Noble is a highly experienced and respected expert in police practices and will testify that, amongst other things: (1) the failure of the Orange County Sheriff's Department's Internal Affairs to immediately investigate the prior allegations against Caropino and remove him from the field to protect the public was unreasonable and inconsistent with generally accepted police practices; (2) Deputy Caropino's sexual contact with Plaintiff was contrary to generally accepted police practices; (3) a reasonably police officer would know that they are acting under the color of their authority during all their contacts with Plaintiff under these circumstances, (4) the danger to Plaintiff that resulted in her being a victim of a sexual assault was created by the Orange County Sheriff's Department; (5) the Orange County Sheriff's Department fails to reasonably train their deputies regarding sexual misconduct; (6) the Orange County Sheriff's department has a policy, practice and custom of failing to adequately address untruthful police officers; (7) that based on the reports from the Office of Independent Review, there are other cases where deputies may have been dishonest, engaged in the code of silence, or engaged in sexual misconduct and where their employment was not terminated.

The OIR Reports reveal that the Orange County Sheriff's Department has a problem with deputies and sexual misconduct. The OIR Reports also reveal a well-settled, widespread practice or custom of protecting fellow deputies that engage in such misconduct and a complete failure by the County to appropriately discipline such deputies. An example of some of the evidence in the OIR Reports follows:

(1) Last fall, an officer from another agency raised a concern about how he and his partner had been treated at a Sheriff's Department facility. He alleged that, after mildly objecting to loud and unprofessional banter that he overheard while waiting to process an arrestee, he was subjected to hostility from multiple deputies that exacerbated the problem and reflected an unsettling "This is our house" mentality. Though one deputy eventually acknowledged making some of the initial vulgar comments, others not only denied hearing or recalling what was said (or otherwise engaging in unprofessional behavior), but also faulted the visiting officer for his attitude. The Department's investigation included witness statements and surveillance video that corroborated the complaining officer's claims. It also called into question the veracity of several deputies who were subjects of the investigation. OIR has recommended significant discipline for seven of the involved parties, and the Department has moved forward with suspensions; in one instance it also released a deputy who was still a probationary employee.

(2) A deputy responded to a call for service from a homeowner regarding disposal of a gun that a relative with a criminal history had left behind. The deputy mishandled the call, taking only part of the weapon with him and failing to book even that piece into evidence. He then initially misrepresented his actions when confronted by a sergeant. Though the Department was eventually able to collect the remainder of the gun from the homeowner, and the deputy acknowledged his mistake and provided the additional piece, the Department nonetheless placed him on administrative leave and initiated an investigation into his conduct. That investigation is complete. Although the deputy accepted responsibility, several factors militated against leniency in the case. These 3 included past history of misconduct, as well as the significance of his failing in judgment and the compounding of that by false statements to his sergeant. OIR has recommended discharge,

and the final determination is pending.[1]

(3) A female jail deputy allegedly became involved in an inappropriate personal relationship with a female inmate. In the midst of the subsequent investigation, which provided some corroboration in the form of witness statements and other evidence, the female – who was in still in her probationary period as a first-year officer – was released from employment

(4) A male deputy allegedly developed a dating relationship with a female whom he met while she was serving time on a jail work crew. Though her sentence was complete, the relationship nonetheless violated the Department's Fraternization policy, which limits permissible contact with inmates and those who were recently incarcerated. Other related policy violations came to light in the context of the Internal Affairs investigation. OIR has reviewed the case file and recommended discharge; the final outcome is pending.[2]

(5) An investigation into a pattern of inappropriate on-duty contacts with prostitutes by a patrol deputy involved the review of dozens of recordings from that officer's car surveillance camera. That investigation is complete, and OIR has recommended discharge for the subject deputy. Additionally, however, one of the recorded incidents involved potential misconduct by a back-up deputy, who allegedly disregarded contraband he found in a search of a female detainee's possession and deferred to the other deputy's handling of the stop. That prompted a second investigation, which is now complete, and OIR has recommended a "sustained" determination. The final outcome is pending.

(6) A female deputy recently left the Department after approximately one

---

[1] April 29, 2013 OIR Report.

[2] January 2014 OIR Report.

year of employment. As part of her "exit interview," she made several allegations about mistreatment by senior deputies at her work assignment, a pattern of hazing that she believed constituted a hostile work environment. The Department has initiated a personnel investigation and, in the interim, has re-assigned some of the named parties and taken a division-wide look at the potential issues of "culture" raised by the allegations.[3]

(7) A deputy at one of the jails repeatedly adjusted his own schedule without permission – working through his meal period and then leaving the facility before the end of his shift. In spite of being warned about the behavior, he persisted in doing it, and the Department opened a misconduct investigation. Based on a past disciplinary history and his lack of compliance, he received a significant suspension.

(8) A deputy's alleged untruthfulness to the Grand Jury during an investigation from several years ago came to light in the context of another case in which he was a potential witness. The Department received access to evidence, previously sealed, that established the specific details of the statements and proved that the misconduct had occurred. OIR has recommended discharge; the final discipline is pending.[4]

(9) Additionally, OIR is concerned about the possibility that force is being "underreported." In five separate cases in recent months that have made their way to Internal Affairs (and two of which were also criminal referrals), significant physical contact with inmates went unreported initially and came to light only through inmate complaints and/or unrelated video review. During the resultant investigations, several of the involved deputies (and a sergeant in one instance) took

[3] January 2013 OIR Report.

[4] May 2014 OIR Report.

the position that the contact did not rise to the level of reportable force. While accountability in those cases has occurred in the form of discipline, the incidents raise the question of whether similar "misunderstandings," or more intentional avoidance of the reporting requirement, is occurring.[5]

(10) In a case that originated as an inmate's complaint of unnecessary force, the Department conducted a criminal investigation into the actions of one of its deputies. Though the District Attorney's Office declined to prosecute, the subsequent administrative investigation led to the discharge of the deputy who had used force, failed to report it, and ultimately offered a justification for the force that was refuted by other evidence. A key factor in the sustaining of the allegation was the testimony of a witness deputy, who had originally said nothing but later cooperated with the investigation. That deputy received minor discipline for his initial failure to take appropriate action. More substantial was the discipline received by a second deputy who was in the corridor at the time of the incident, who denied having seen any misconduct and said he was looking in the other direction at the time of the force.

(11) The Department conducted a criminal investigation into allegations of inappropriate contact, including sexual misconduct, by a deputy who regularly encountered prostitutes during his patrol responsibilities. While the criminal investigation did not corroborate the charges to the extent that the District Attorney had a basis to prosecute, the Department's Internal Affairs unit did an extremely thorough review of the deputy's PVS recordings. An investigator watched dozens of hours of video and identified multiple instances in which the deputy appeared to detain prostitutes for questioning, often parking in remote locations in order to have the conversations. This evidence directly contradicted several of the statements made by the

[5] August 2012 OIR Report.

deputy during the criminal investigation, and he did not have convincing explanations for the discrepancies when interviewed administratively. Although the most serious sexual allegations were not directly proven, the IA case established a pattern of troubling behavior and a lack of truthfulness by the officer. While the final decision is pending, OIR has recommended termination, and was extremely impressed with the thoroughness of the IA investigation.[6]

(12) A jail deputy who was found to have developed an inappropriate relationship with an inmate and that inmate's girlfriend, and to have facilitated various favors for the inmate accordingly.

(13) A patrol deputy who failed to properly book a recovered weapon into evidence, and then gave false statements about it.

(14) Inappropriate timekeeping by a supervisor, so as to benefit the members of his team regarding their overtime and vacation pay (investigation pending).

(15) An on-duty deputy damaged his county vehicle by hitting a curb at approximately 50 miles per hour. He then failed to report the accident to his supervisor, instead simply bringing the car to his substation and reporting the damage (including flat tires) to an employee in the equipment room so it could be repaired. The Department's subsequent investigation led to a suspension for both the careless driving and the failure to report properly

The above examples from the OIR Reports confirm that these reports contain evidence which is relevant to Plaintif's *Monell* claims and is, therefore, admissible evidence. Defendant asserts that the subject incident is not reflected in the OIR Reports, but Defendant has not revealed the identity of the officers mentioned in the OIR Report so that Plaintiff can confirm whether or not the

---

[6] October 2012 OIR Report.

deputies involved in her incident had previously been involved in reported misconduct, dishonesty, engagement in the code of silence, or sexual assault.

## III. **THE OIR REPORTS ARE NOT INADMISSIBLE SUBSEQUENT REMEDIAL MEASURES FOR PURPOSES OF THIS CASE**

Defendant *admits* that the OIR Reports do not contain or discuss the subject incident. Therefore, it is *logically* impossible for the OIR Reports to reveal subsequent remedial measures pertaining to the subject incident in this lawsuit. Not only do the OIR Reports contain no subsequent remedial measures pertaining to the subject incident, the majority of the incidents in the OIR Report actually appear to have taken place *prior* to the subject incident. As this court has previously noted under similar circumstances, "it is patently clear it was not in response to" the subject incident:

> "The reports plaintiff intends to introduce appear to have been prepared prior to the incident that is the subject of this lawsuit. Rule 407, by its terms, requires that the measures take place "subsequent" to the incident before they may be excluded. The Ninth Circuit dealt with a similar set of facts in *In re Aircrash in Bali*, 871 F.2d 812 (9th Cir.), cert. denied, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989). There, the district court permitted plaintiffs, who represented the estates of persons killed in an airplane crash in Bali, Indonesia, to introduce evidence at trial of a report prepared by defendant Pan Am "on Pan Am's safety record and problems, which was apparently completed just before the Bali crash." *Id.* at 816. Pan Am argued that the evidence should have been excluded under Rule 407. The circuit court rejected the argument, stating: "Since the Thomas Report, a comprehensive report many months in the making, was dated only one day after the Bali crash, it is patently clear it was not a response to the crash. We find no basis for treating the Thomas Report as a subsequent remedial measure." *Id.*
>
> *Green v. Baca* (C.D. Cal. 2005) 226 F.R.D. 624, 635

Here, there is no reasonable basis for distinguishing the OIR Reports, from the reports at issue in the *Aircrash in Bali* or the *Green* case. This Court has

previously held the same, recognizing that not all remedial measures are inadmissible, especially when the remedial measure was not "subsequent" or "in response" to the subject incident:

> "There is no reasonable basis for distinguishing the Merrick Bobb reports, which were prepared prior to the incident in question,15 from the reports at issue in the *Aircrash in Bali* case. See also *Bogosian v. Mercedes–Benz of N. America*, 104 F.3d 472, 481 (1st Cir.1997) ("Federal Rule of Evidence 407 ... does not apply where, as here, the modification took place before the accident that precipitated the suit"); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 686 (5th Cir.1991) ("In the instant case, the issue of the warning placard and the revised manual goes to warnings which were changed by the involved manufacturer after the sale but prior to the accident"); *Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 460 (4th Cir.1990) ("Resolution of the question is dispositive because, if the event was the sale of the pipe, the remedial measure was 'subsequent' and therefore evidence of it was inadmissible, while if the event was the bursting of the pipe, the remedial measure was not 'subsequent' and therefore evidence of it was admissible"). The court, accordingly, concludes that Rule 407 does not provide a basis for the exclusion of the Bobb reports."
>
> *Green v. Baca* (C.D. Cal. 2005) 226 F.R.D. 624, 635–36

Therefore, the OIR Reports are not inadmissible subsequent remedial measures for purposes of this case and should not be excluded.

## IV. EVEN IF THE OIR REPORTS ARE SUBSEQUENT REMEDIAL MEASURES FOR PURPOSES OF THIS CASE (WHICH THEY ARE NOT), THEY ARE STILL ADMISSIBLE IN A SECTION 1983 CASE

Courts have also ruled that subsequent remedial measures investigative reports regarding activities of police or Sheriff's Departments are admissible at Section 1983 trials. *Green v. Baca* (C.D.Cal. 2005) 226 F.R.D. 624, 634-635. The *Green* court held, at 635-636, that investigative reports on activities of Sheriff's Departments were admissible based on several grounds: (1) Admissible because of relevance to the liability issue of whether defendant had an unconstitutional policy and custom that led to plaintiff's over detention; (2) Admissible and not excludable

under FRE Rule 403, because their probative value outweighs the danger of unfair prejudice or any jury confusion; (3) Admissible non-hearsay as a party admission, where author of reports was acting as sheriffs agent in preparing the reports [FRE Rule 801(d)(2)(D)]; and (4) Admissible under the hearsay exception for public records [FRE Rule 803(8)(C); *Gallagher v. City of West Covina*, 2002 WL 826603 (C.D.Cal. 2002); *Montiel v. City of Los Angeles*, 2 F.3d 335, 341 (9th Cir. 1993)]. All these grounds are present in the present case before the court.

In *Foley v. City of Lowell, Mass.* (1st Cir. 1991) 948 F.2d 10, 14, the Court specifically states that subsequent actions are admissible to provide insight into policy in force at the time of the incident:

> "..we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident. *See, e.g., Bordanaro*, 871 F.2d at 1167 ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.").[3]We do not mean to imply that all post-event evidence is automatically admissible in a section 1983 "custom or policy" case. Rather, the question that must be asked when post-event evidence is proffered is whether the evidence sufficiently relates to the central occurrence. *See Sherrod v. Berry*, 827 F.2d 195, 204–05 (7th Cir.1987) (admission of evidence regarding separate suit brought against police officer upheld even though incident giving rise to separate suit occurred one month after the event upon which current litigation was based), *vacated on other grounds*, 835 F.2d 1222 (7th Cir.), *remanded for new trial*, 856 F.2d 802 (7th Cir.1988) (en banc); *see also* Fed.R.Evid. 401 (evidence is relevant so long as it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *cf. United States v. Mena*, 933 F.2d 19, 25 n. 5 (1st Cir.1991) ("events that occur after an offense has been perpetrated may be relevant in an assessment of what transpired at the earlier time").

*Foley v. City of Lowell, Mass.* (1st Cir. 1991) 948 F.2d 10, 14

The *Foley* Court also noted that multiple events similar in nature can suggest the existence of a policy of tolerance, especially where there is no evidence of any policy revision or other change in course during the subsequent interval:

> "Indeed, the lack of restraint the police officers exhibited on both occasions itself suggested the existence of an official policy of tolerating imbrutage. *See Carter v. District of Columbia,*795 F.2d 116, 124 (D.C.Cir.1986) ("Egregious instances of misconduct, relatively few in number but following a common design, may support an inference that the instances would not occur but for municipal tolerance of the practice in question."); *Skibo v. City of New York*, 109 F.R.D. 58, 65 (E.D.N.Y.1985) ("Tolerance of unconstitutional conduct is tantamount to encouragement of such conduct and is therefore a basis for municipal liability."). The incidents occurred in fairly close temporal proximity. There was no evidence of any policy revision or other change in course during the subsequent interval. On the facts of this case, it was well within the trial court's discretion to conclude that the Finnegan incident was competent, if indirect, evidence of a preexisting municipal policy of indifference.
>
> *Foley v. City of Lowell, Mass.* (1st Cir. 1991) 948 F.2d 10, 14–15

Therefore, even if the OIR Reports are subsequent remedial measures for purposes of this case (which they are not), they are still admissible.

## V. **THE OIR REPORTS FALL WITHIN THE HEARSAY EXCEPTIONS FOR PUBLIC RECORDS AND ARE ADMISSIBLE UNDER FRCP RULE 803(8)(C)**

The OIR Reports are also admissible under FRCP Rule 803(8)(C) because they fall within the hearsay exceptions for public records and reports which includes "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency ..." FRE 803(8) (C). "Public records falling under Rule 803(8) (C) are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence.' " *Montiel v. City of Los Angeles et al.,* 2 F.3d 335 (9th

Cir.1993) (citing *Keith v. Volpe*, 858 F.2d 467, 481 (9th Cir.1998)) (Christopher Commission Report examining excessive force in the LAPD should have been presumed trustworthy by district court). Defendant County has not met its burden of showing that the OIR Reports are untrustworthy. Thus, the OIR Reports are admissible under FRCP Rule 803(8) (C).

## VI. INTRODUCTION OF THE REPORTS WOULD NOT BE UNDULY PREJUDICIAL TO DEFENDANT, BUT THEIR EXCLUSION WOULD BE UNDULY PREJUDICIAL TO PLAINTIFF

Defendant's motion *in limine* to exclude the OIR Reports simply ignores that nature of this lawsuit, as this evidence is relevant to proving Plaintiff's *Monell* claim against the County. Defendants will not be unfairly prejudiced if this evidence is admitted. All relevant evidence is prejudicial, particularly when it involves previous misconduct, untruthfulness or sexual misconduct. But Rule 403 "excludes only evidence where the prejudice is 'unfair' – that is based on something other than its persuasive weight." *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003). That is not the case here. Plaintiff will be *unfairly* prejudiced if the court grants Defendant's motion as she will be deprived of presenting key pieces of evidence to the jury pertaining to her claims against Defendants. Any undue prejudice to the Defendants can be avoided by this Court's limiting instruction to the jury, if such instruction ever becomes necessary.

## VII. CONCLUSION

For the above reasons, Plaintiff requests that this Court deny Defendant's Motion *In Limine* No. 13.

DATED: July 3, 2017

**JASS LAW**

By: /s/ Jeremy D. Jass
Jeremy D. Jass, Esq.
Attorneys for Plaintiff
ALEXA CURTIN