Jeremy D. Jass, Esq., SBN 279466
**JASS LAW**
4510 E. Pacific Coast Hwy., Suite 400
Long Beach, CA 90804
Tel: (562) 340.6299
Fax: (562) 340.6422
Email: Jeremy@jasslaw.com

Holly N. Boyer, Esq., SBN 221788
**ESNER, CHANG & BOYER**
234 East Colorado Boulevard, Suite 975
Pasadena, CA 91101
Tel.:   (626) 535-9860
Fax:   (626) 535-9859
Email: hboyer@ecbappeal.com

Daniel K. Balaban, Esq., SBN 243652
**BALABAN & SPIELBERGER, LLP**
11999 San Vicente Boulevard, Suite 345
Los Angeles, CA 90049
Tel.:   (424) 832-7677
Fax:   (424) 832-7702
Email: daniel@dbaslaw.com

Attorneys for
ALEXA CURTIN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ALEXA CURTIN,

                    Plaintiff,

        vs.

COUNTY OF ORANGE;
NICHOLAS LEE CAROPINO,
individually and as Deputy Sheriff
for the County of Orange; and DOES
1 through 50,

                    Defendants.

Case No.: 8:16-CV-00591-SVW-PLA
The Hon. Stephen V. Wilson

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION *IN
LIMINE* NO. 8 TO EXCLUDE
TESTIMONY OF LESTER
ZACKLER, M.D., AS VIOLATIVE
OF THE PARTIES' STIPULATION
AND THIS COURT'S ORDER;
DECLARATION OF JEREMY JASS**

Pre-Trial Conference: July 24, 2017
Trial Date: August 1, 2017

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Alexa Curtin ("Plaintiff") hereby provides her Opposition to Defendant's Motion *In Limine* No. 8 To Exclude Testimony Of Lester Zackler, M.D., As Violative Of The Parties' Stipulation And This Court's Order.

DATED: July 3, 2017                    **JASS LAW**

By:   /s/ Jeremy D. Jass
       Jeremy D. Jass, Esq.
       Attorneys for Plaintiff
       ALEXA CURTIN

# **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES……………………………………………………………i

I.  INTRODUCTION ...........................................................................................1

II. FACTUAL BACKGROUND ..........................................................................1

III. THE COURT HAS BROAD AUTHORITY TO GRANT PLAINTIFF'S
     REQUEST TO SET ASIDE THE STIPULATION AND ADHERENCE
     TO THE STIPULATION WILL RESULT IN MANIFEST INJUSTICE
     TO PLAINTIFF ..............................................................................................5

   A. The Fear And Anxiety That Plaintiff Experienced During Her Deposition
      While Recounting Her Rape Prompted Her To Want To Avoid Participating
      In An Independent Medical Exam And Thus Reliving Those Memories At
      The Hands Of An Expert Hired By Defendants..............................................7

   B. Given That The County Has Already Conducted Extensive Discovery
      Concerning Plaintiff's Psychological Injury, And That Plaintiff Has Agreed
      To Undergo An IME As Of June 7, 2016 And Will Continue To Make
      Herself Available For Such An Examination, Any Alleged Prejudice Caused
      By The Modification Is Outweighed By The Manifest Injustice That Exists
      Should The Stipulation Remain. ....................................................................9

IV. CONCLUSION ...............................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Common Cause S. Christian Leadership Conference of Greater Los Angeles v. Jones*

    (C.D. Cal. 2002) 213 F. Supp. 2d 1110, 1112 .................................................... 5

*McMorgan & Co. v. First California Mortgage Co.*

    (N.D.Cal.1996) 931 F.Supp. 699, 703 ................................................................ 6

*Mechmetals Corp. v. Telex Computer Products, Inc.,*

    (9th Cir. 1983) 709 F.2d 1287, 1294 ................................................................. 6

*Morrison v. Zangpo*

    (N.D. Cal. 2008) No. C-08-1945 EMC, 2008 WL 4449585 ............................. 6

*Seymour v. Summa Vista Cinema, Inc.*

    (9th Cir.1987) 809 F.2d 1385, 1388 .................................................................. 6

*Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*

    (N.D. Cal. 2015) No. 14-CV-00930-JCS, 2015 WL 5675861 ......................... 6

*Zivkovic v. Southern California Edison Co.*

    (9th Cir. 2002) 302 F.3d 1080, 1087 ................................................................. 6


**Statutes**

42 U.S.C., § 1983 ......................................................................................................... 1


**Rules**

Local Rule 7-1 ........................................................................................................ 1, 5

Local Rule 52-4.1 ......................................................................................................... 5

FRCP 35…………………………………………………………………………..2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant County of Orange ("County") seeks to exclude the testimony of Plaintiff's expert Dr. Zackler, as violative of the parties' Stipulation and this Court's order. The issue in dispute concerns discovery and admissibility of emotional distress damages suffered by Plaintiff.  Pursuant to Local Rule 7-1, the parties filed a stipulation with the court, (Dkt 21), in which Plaintiff waived any claim for "unusually severe emotional distress" in exchange for Defendant withdrawing an IME. Plaintiff also agreed not to elicit testimony at trial from any expert witness regarding emotional distress.  (See Dkt 21.)  In response to the filed stipulation, and also pursuant to Local Rule 7-1, the Court entered an Order on the Stipulation, (Dkt 36), in which it ruled that Plaintiff shall not seek damages for "post-traumatic stress disorder," as well as "unusually severe emotional distress," among other claims not at issue here.  (Dkt 36.)

Plaintiff now seeks to clarify and/or modify the Order on the Stipulation to permit Dr. Zackler to testify as to the severe emotional distress Plaintiff suffered as a result of the attack. For the reasons set forth below, this Court should allow Plaintiff's expert, Dr. Zackler, to testify regarding Plaintiff's emotional distress.

## II.   FACTUAL BACKGROUND

While Plaintiff's operative claims are based in 42 U.S.C., § 1983, at its core, this case is about a sexual assault and rape.  Acting under color of his authority, Orange County Sheriff's Deputy Nicholas Lee Caropino sexually assaulted and raped Ms. Curtin.  However, at the time he acted, instead of using physical force to rape Ms. Curtin, Deputy Caropino used his power and authority as a law enforcement officer to intimidate Ms. Curtin, forcing her into nonconsensual sex and sexual acts not though violence but through fear. As a consequence, instead of carrying physical scars apparent on her body, the scars Plaintiff carries from the night she was raped are entirely psychological.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

As Plaintiff's treating physician testified when the County Deposed him on this topic and as Plaintiff herself testified when the County pursued questions concerning her injuries during her deposition, Plaintiff now suffers from serious psychological injuries, including Post Traumatic Stress Disorder.  Indeed, as a result of her deposition, and her desire not to be subjected to further questioning concerning the harm she suffered, Plaintiff did not want to submit herself to an Independent Medical Examination ("IME") by Defendant regarding her psychological injuries, per FRCP 35.

As such, at Defendant's suggestion Plaintiff stipulated to waive "extraordinary emotional distress damages" in order to avoid reliving her nightmare and having all aspects of her personal life dissected during her IME. The District Court entered an Order on the Stipulation, finding that Plaintiff shall not seek damages for "post-traumatic stress disorder," as well as "unusually severe emotional distress," among other claims not at issue here.  Dkt. 36.

Plaintiff has filed, or will file, a Joint Stipulation Re: the November 30, 2016 Stipulation As to Discovery and Admissibility of Plaintiff's Emotional Distress Damages, in which Plaintiff requests that the stipulation upon which the order is based be modified or withdrawn to permit Plaintiff to pursue the full extent of the emotional distress damage she suffered as a result of the brutal rape by Deputy Caropino. Specifically, Plaintiff seeks to present expert testimony at trial from Dr. Zackler, a neuropsychiatrist, to describe the emotional trauma she suffered.  As explained, since the filing of the stipulation and the order entered by the Court in February (just four months ago), there have been numerous developments in this case.

At the time Plaintiff entered into the stipulation she did not fully appreciate the horrifying scope and reprehensibility of the County's and Deputy Caropino's conduct.  Indeed, since the stipulation the County was ordered to produce significant discovery revealing the extent of the wrongdoing by the County and its

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

role in condoning and indeed fostering an environment wherein Deputy Caropino was empowered to abuse his authority and rape Plaintiff.

Specifically, the evidence the County produced reveals that the rape and sexual assault Plaintiff suffered at the hands of Deputy Caropino was by no stretch of the imagination limited to her or just a "few" others. In fact, evidence now demonstrates that there were at least eight other women who were raped, sexually assaulted or sexually harassed by Deputy Caropino alone, under similar or in some instances virtually identical circumstances. Moreover, the compelled discovery revealed that Deputy Caropino was able to use his power and authority as a law enforcement officer to sexually assault and rape these women because existing Sherriff's Department policies appeared to have facilitated Deputy Caropino, and possibly other deputies, in engaging in such conduct while at the same time insulating him from the consequence of their actions.  For example, even though reports and allegations that Deputy Caropino had committed another act of sexual violence had been received by the Sherriff's Department before Plaintiff's rape, instead of being placed on administrative leave or conducting an immediate administrative investigation, Deputy Caropino was left on the street with a badge and a gun to continue his horrifying pattern of behavior while a separate criminal investigation was conducted.

Further, as of April 2016, Deputy Caropino is now being represented in this action (although not by the County) and is participating in discovery.  It is anticipated that Deputy Caropino will assert that the rape was consensual – just as he claims it was with all of his other victims.

In light of this newly revealed evidence, and in light of the fact her actionable injury against these parties lies in the psychological harm she suffered, Plaintiff wants to have the opportunity to put on evidence of the entire psychological harm that she suffered.

Permitting Plaintiff to present evidence concerning the severe emotional

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

distress she suffered, including Dr. Yusim's diagnosis of PTSD and expert testimony from Dr. Zackler is appropriate given the extensive discovery that the County has already conducted with respect to Plaintiff's psychological injury.

At the time the stipulation was executed, Plaintiff had already been thoroughly deposed regarding her psychological injuries. Additionally, following the stipulation, the County deposed Plaintiff's treating physician extensively inquiring about the extraordinary psychological harms that Plaintiff had suffered, his diagnosis of PTSD and the medication he prescribed her. The County also pursued this line of questioning during their deposition of both Plaintiff's mother as well as her sister. As such, other than an IME, discovery has been thoroughly conducted on this issue.

With additional counsel joining the case and representing Plaintiff, and given the significant revelations of wrongdoing revealed by the County, Plaintiff is willing to undergo an IME and requests an opportunity to modify the prior stipulation to allow her to present the full extent of her injuries to the jury. In fact, Plaintiff has repeatedly offered to undergo an examination beginning June 7, 2017. While Plaintiff understands that there may be some prejudice to the County for the delay in taking her IME, Plaintiff has offered to accommodate a modified schedule in the exchange of expert reports and will do whatever else she can to lessen any alleged prejudice as deemed appropriate by the magistrate.

An amendment to the Order is further appropriate because it would not alter the nature of the claims Plaintiff is pursuing, and would not alter the proceedings before this court in any meaningful way. Indeed, the evidence Plaintiff seeks to introduce goes only to the extent of the injury she suffered. The injury suffered here is almost entirely if not entirely psychological.

Plaintiff should be permitted to set forth the truth of her harm in its entirety.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

### III.   THE COURT HAS BROAD AUTHORITY TO GRANT PLAINTIFF'S REQUEST TO SET ASIDE THE STIPULATION AND ADHERENCE TO THE STIPULATION WILL RESULT IN MANIFEST INJUSTICE TO PLAINTIFF

Local Rule 7-1 provides that "[w]ritten stipulations affecting the progress of the case shall be filed with the Court, be accompanied by a separate order as provided in Local Rule 52-4.1, and *will not be effective* until approved by the judge, except as authorized by statute or the F.R.Civ.P."  The Stipulation as prepared by the parties was signed on November 30, 2016 (Dkt 21), and the Court issued an Order thereafter on February 10, 2017 (Dkt 36).

Instead of approving or incorporating the language of the stipulation written by the parties, the District Court's "Order Dismissing Claims and Excluding Evidence of Specific Issues or Damages" expressly sets forth terms to be imposed on the parties and the litigation with respect to certain issues and damages.  Dkt 36.  Given Local Rule 7-1, for the purposes of this motion the operative legal document is not the stipulation filed by the parties, but, rather, the order the District Court entered thereafter.

The pertinent portion of the Order at issue here concerns the exclusion of evidence and claim for damages for "post-traumatic stress disorder" and "unusually severe emotional distress."  Dkt 36.  While the Court did not preclude *any* expert testimony on the issue of emotional distress damages, to the extent the County relies on the underlying stipulation to preclude any expert testimony, and to the extent the Court did exclude evidence of PTSD and "unusually severe emotional distress," Plaintiff seeks clarification and/or modification of the underlying stipulation and subsequent order to permit Dr. Zackler to testify as to Plaintiff's emotional distress damages suffered as a result of the rape.

As explained in *Common Cause S. Christian Leadership Conference of Greater Los Angeles v. Jones*, 213 F. Supp. 2d 1110, 1112 (C.D. Cal. 2002), "[a] request to set aside a stipulation is permitted under prevailing law, if, for example,

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

adherence to such a stipulation would have resulted in manifest injustice to a party, or if a party entered into the stipulation by inadvertence. *See Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1388 (9th Cir.1987) *amended by* 817 F.2d 609 (9th Cir.1987); *McMorgan & Co. v. First California Mortgage Co.,* 931 F.Supp. 699, 703 (N.D.Cal.1996) ('The Court has broad discretion in deciding whether to hold the parties to a stipulation.').''   Indeed, "[t]he Court has broad discretion in deciding whether to hold the parties to a stipulation." *McMorgan & Co.,* 931 F. Supp. At 703, citing *Seymour*, 809 F.2d at 1388; see *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). "A pretrial order is not an inexorable decree and may, under proper circumstances, be modified [to prevent manifest injustice] ..." *Mechmetals Corp. v. Telex Computer Products, Inc.*, 709 F.2d 1287, 1294 (9th Cir. 1983).

"'In determining what constitutes manifest injustice, courts may consider (1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether the evidence contrary to the [stipulation] is substantial.' (*Morrison v. Zangpo*, No. C-08-1945 EMC, 2008 WL 4449585 (N.D. Cal. 2008) (quoting *State Farm Fire & Cas. v. McDevitt*, No. C-00-2240 EDL, 2001 WL 637419, at *8 (N.D. Cal. 2001)) (alteration in original)." *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2015 WL 5675861, at *10 (N.D. Cal. 2015) Additionally, where, as here, the stipulation is procedural rather than factual, the fourth factor is inapplicable. (*Id.*)

Applying this legal framework here, a manifest injustice exists to the extent the stipulation and subsequent order preclude Plaintiff from presenting expert testimony from Dr. Zackler concerning the emotional distress she suffered.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

A. **The Fear And Anxiety That Plaintiff Experienced During Her Deposition While Recounting Her Rape Prompted Her To Want To Avoid Participating In An Independent Medical Exam And Thus Reliving Those Memories At The Hands Of An Expert Hired By Defendants.**

When Plaintiff Alexa Curtin was deposed on October 4, 2016, she was asked extensively about her experience of being raped at the hands of Deputy Caropino, and the extraordinary emotional trauma and distress that resulted. (Plaintiff's Depo. 14:12-19:22.) The visceral extent to which the experience she endured affected her was revealed when she stated, in response to the County's question why she had not seen a psychologist or psychiatrist: "I don't like talking about it because I relive it and, like, I feel like the pain that I was in at that time and it was scared, and I'm scared that I'm going to run into him or he is going to find me, …" (Plaintiff's Depo. 20:4-13; see also 128:18-25.)

Following her deposition, on November 1, 2016, the County served a notice of mental examination with Dr. Debra Cresswell. The County also advised Plaintiff of its need to conduct a urological examination and a gynecological examination. As demonstrated by her deposition testimony about the fear she felt, Plaintiff at that time did not feel strong enough to undergo such examinations, and relive the experience of her rape yet again.

As such, on November 30, 2016, Plaintiff entered into a stipulation with the County. (Dkt 21.) In that stipulation, the County agreed not to pursue either the mental or physical examinations and Plaintiff agreed not to seek damages for loss of interest in sex, post-traumatic stress disorder, unusually severe emotional distress, the cost of future mental healthcare, bladder infections or other urological issues, painful sex or loss of ability to engage in and/or enjoy sexual activity. (See Dkt 21.) The stipulation was filed with the court on December 5, 2016, and the Court issued its Order on February 10, 2017. (Dkt 36.)

Plaintiff does not now assert that she suffered any "physical" as a result of

7

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

the rape she experienced. She does not contend that Deputy Caropino used violence or force during his sexual assault and rape or, and she does not contend that she has injuries which would otherwise require a physical examination. Nevertheless, over the ensuing four months, and specifically following the County's compelled disclosure of discovery, Plaintiff has come to view the nature of her injury in the context of evidence which demonstrates the true extent of the horrific behavior engaged in by Deputy Caropino, and the extent to which the County's own policies played an enormous role in her harm.

Specifically, Plaintiff learned that in addition to herself, Caropino alone had victimized numerous other similarly situated women prior to Plaintiff's rape, in circumstances which often bore striking resemblance to the ones she confronted the night she was raped. Plaintiff learned of the existence of these women through investigation reports provided by the County stemming from an unrelated government claim filed months before she was raped which alleged that Deputy Caropino had sexual assault another women. Incredibly, and much to her horror, despite the fact that the County had been able to identify these victims through its investigation of Deputy Caropino, because the County's policies delayed any administrative action on these allegations, including an investigation, until after a separate criminal investigation was completed, these discoveries came too late. At the time Deputy Caropino raped Plaintiff, despite the County being fully aware of an unrelated pending government claim detailing acts of sexual violence, it took no action with respect to Deputy Caropino, allowing him to continue to use the authority he held with his badge and gun.

Because the County resisted producing this evidence until after it the Court compelled the disclosure of this discovery, (Dkt 52), it was only in late March, 2017, that the County actually produced the hundreds of documents which revealed the numerous official and an unofficial, practices and policies within the County which set the stage for Deputy Caropino to sexually assault and rape countless

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

women, including Plaintiff.  In the wake of these revelations, and with additional counsel associated in the case on behalf of Plaintiff on April 4, 2017, Plaintiff has found the strength to bring the full weight of her injuries to bear, and to represent the numerous other women who were subject to the sexual violence of Deputy Caropino and possibly others.

**B.** **Given That The County Has Already Conducted Extensive Discovery Concerning Plaintiff's Psychological Injury, And That Plaintiff Has Agreed To Undergo An IME As Of June 7, 2016 And Will Continue To Make Herself Available For Such An Examination, Any Alleged Prejudice Caused By The Modification Is Outweighed By The Manifest Injustice That Exists Should The Stipulation Remain.**

Permitting Plaintiff to present evidence concerning the severe emotional distress she suffered, including Dr. Yusim's diagnosis of PTSD and expert testimony from Dr. Zackler is further appropriate given the extensive discovery that the County has already conducted with respect to Plaintiff's psychological injury and Plaintiff's repeated offer to undergo an examination beginning June 7, 2017.  While Plaintiff understands that there may be some prejudice to the County for the delay in taking her IME, Plaintiff has offered to accommodate a modified schedule in the exchange of expert reports and will do whatever else she can to lessen any alleged prejudice.

As noted above, Plaintiff was deposed on October 4, 2016 and during her deposition she explained the emotional trauma and distress she has experienced as a result of the rape by Deputy Caropino.  (Plaintiff's Depo. 14:12-19:22.)  Plaintiff explained that following the assault she started getting reoccurring panic attacks, night terrors and social anxiety, and began seeing her treating physician, Dr. Jeffrey Yusim.  (Plaintiff's Depo. 14:12-19:22.)  She testified that as a result of the assault, Dr. Yusim diagnosed her with PTSD and prescribed anti-anxiety mediation and Xanax.  (Plaintiff's Depo., 12:15-13:1.)

During her deposition, Plaintiff testified that she had suffered panic attacks

9

prior to the incident but they became more frequent following the assault. (Plaintiff's Depo., 15:21-24.)  Counsel for the County extensively asked Plaintiff about her emotional distress symptoms and prescribed medication, as well as her prior mental health (including her panic attacks), and prior use of anti-anxiety medication. (Plaintiff's Depo. 25:18-26:1; 26:14-28:19; 128:6-129:14; 135:10-19; 140:12-141:22.)

As noted above, after Defendants served a notice of mental examination with Dr. Debra Cresswell, and also advised of their need to conduct a urological examination and a gynecological examination, Plaintiff did not feel strong enough to undergo such examinations and on November 30, 2016, a stipulation was reached by the parties.  Dkt. 21.

Following the stipulations, the parties continued with discovery and the deposition of Dr. Yusim took place on December 2, 2016.  During his deposition, Defense counsel inquired of his treatment of Plaintiff and about the emotional distress she suffered.  (Yusim Depo.)   His noted and medical records were produced to the County.  (Yusim Depo, 13:4-10.)  Dr. Yusim explained that based on his visits with Plaintiff, he diagnosed her as having severe anxiety panic disorder, depression and post-traumatic stress disorder.  (Yusim Depo, 18:11-13; 22:3-6; 32:7-12; 35:7-12; 39:21-22; 45:3-6; 49:5-8, 50:15-18, 53:16-21.)   He further testified as to the medication prescribed to Plaintiff.  (Yusim Depo, 17:8-18:17; 27:8-23; 33:24-39:11.)   Dr. Yusim explained the effect of the rape on Plaintiff's emotional well-being, noting "[w]ith my experience, if someone has that kind of trauma in their life, it is something that will change their life forever." (Yusim Depo., 64:10-12.)

The emotional trauma suffered by Plaintiff as a result of the rape was further explored by the County in the depositions of Plaintiff's Lynn Curtin, her sister, Raquelle Curtin, as well as her friend Jennie D'Errico.  (Deposition of Lynn Curtin, 29:15-30:13, 30:22-32:4; 32:13-23; 52:19-53:3; 56:1-15; deposition of Raquelle

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

Curtin, 27:9-28:2; deposition of Jennie D'Errico, 86:21-87:17.)

Following the County's production of documents revealing the widespread policies and practices that enabled Deputy Caropino to rape Plaintiff and so many other women in late March 2017, Plaintiff felt strong enough to undergo an evaluation by a neuropsychiatrist.

On June 7, 2017, at a deposition of one of the County's employees, Plaintiff's counsel informed defense counsel that Ms. Curtin had recently been evaluated by a Neuropsychiatrist, Lester Zackler, and discussed the issue of withdrawing the stipulation concerning expert testimony at trial to allow Dr. Zackler to testify and present evidence concerning the emotional distress Plaintiff suffered as a result of the rape.  Plaintiff's counsel highlighted that to avoid any potential prejudice, "*we are willing to immediately submit Ms. Curtin for a mental exam with an expert of your choice,*" and offered a staggered expert designation schedule so that the County would have time to review Dr. Zackler's report and serve a rebuttal expert report.

Counsel for the County responded that the County would not agree and would vigorously oppose any effort to modify or alter the stipulation.  Since June 7, 2017, Plaintiff's has continuously offered to make Plaintiff available for an IME as well as modify any exchange of expert reports on the issue.  The County continues to refuse.

## IV.   CONCLUSION

For the above reasons, Plaintiff requests that this Court deny Defendant's Motion *In Limine* No. 8.

DATED: July 3, 2017                          **JASS LAW**

By:   /s/ Jeremy D. Jass_____
Jeremy D. Jass, Esq.
Attorneys for Plaintiff
ALEXA CURTIN

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**