Jeremy D. Jass, SBN 279466
jeremy@jasslaw.com
JASS LAW
4510 E. Pacific Coast Highway, Suite 400
Long Beach, CA 90804
Telephone: (562) 340-6299
Facsimile: (562) 340-6422

Attorneys for Plaintiff
ALEXA CURTIN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE; NICHOLAS LEE CAROPINO, individually and as Deputy Sheriff for the County of Orange; and DOES 1 through 50,<br><br>Defendants, | Case No.: 8:16-cv-00591-SVW<br><br>**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date:     July 24, 2017<br>Time:    3:00 p.m.<br>Crtrm:   10A<br><br>Action Filed: March 30, 2016<br>Pre-Trial Conf.: July 24, 2017<br>Trial Date: August 1, 2017 |

1

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

Plaintiff, ALEXA CURTIN, hereby provides her Updated Memorandum of Contentions of Fact and Law:

## CONTENTIONS OF LAW AND FACT

### I. CLAIMS

#### A. Summary of Claims

Claim 1: Deputy Caropino violated Alexa Curtin's Fourth Amendment right to be free from excessive force and unlawful seizures, and her right to bodily integrity, by detaining her against her will and forcing her to perform sexual acts with Deputy Caropino.

Claim 2: Deputy Caropino violated Alexa Curtin's Fourteenth Amendment due process rights, and right to bodily integrity, by detaining her against her will and forcing her to perform sexual acts with Deputy Caropino.

Claim 3: The County of Orange violated Alexa Curtin's by maintaining, enforcing, and applying a custom, practice, policy and usage tending to encourage, promote sanction, tolerate and ratify the abuse of authority, use of unreasonable search and seizure, and denial of due process rights against by law enforcement personnel it employs in the Orange County Sheriff's Department.

#### B. Elements of Claims

Claim 1: Ms. Curtin must prove that: (1) Deputy Caropino acted under color of law; (2) Deputy Caropino's acts deprived Ms. Curtin of her rights to be free from excessive force and unreasonable seizures, and right to bodily integrity, under the Fourth Amendment; (3) Ms. Curtin was harmed; and (4) Deputy Caropino's actions caused Ms. Curtin's harm. Ninth Circuit Model Jury Instructions 9.2, 9.22, 9.23.

Claim 2: Ms. Curtin must prove that: (1) Deputy Caropino acted under color of law; (2) Deputy Caropino's acts shock the conscience and deprived Ms. Curtin

of her due process rights, and right to bodily integrity, under the Fourteenth Amendment; (3) Ms. Curtin was harmed; and (4) Deputy Caropino's caused Ms. Curtin's harm. Ninth Circuit Model Jury Instructions 9.2, 9.22, 9.23.

<u>Claim 3:</u> Ms. Curtin must prove that: (1) Deputy Caropino acted under color of law; (2) Deputy Caropino's acts deprived Ms. Curtin of her rights under the United States Constitution; (3) Deputy Caropino acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the County of Orange; and (4) County of Orange's official policy or longstanding practice or custom caused the deprivation of plaintiff's rights by Deputy Caropino; OR

(1) A final policymaker for County of Orange acted under color of law; (2) the acts of a final policymaker for the County of Orange deprived Ms. Curtin of her rights under the United States Constitution; (3) A final policy maker for the County of Orange had final policymaking authority from defendant County of Orange concerning these acts; (4) When a final policy maker for the County of Orange engaged in these acts/failed to act he or she was acting as final policymaker for defendant; and (5) the acts/failure to act of a final policy maker for the County of Orange caused the deprivation of the plaintiff's rights; that is, the final policymaker's acts or failure to act is so closely related to the deprivation of plaintiff's rights as to be the moving force that caused the ultimate injury; OR

(1) The acts of Deputy Caropino deprived the plaintiff of her particular rights under the United States Constitution; (2) Deputy Caropino acted under color of state law; (3) the training policies of defendant County of Orange were not adequate to train its police officers to handle the usual and recurring situations with which they must deal; (4) the defendant County of Orange was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately; and (5) The failure of the defendant County of Orange to provide adequate training caused the deprivation of the plaintiff's rights by Deputy Caropino; that is, the defendant's failure to train is so closely related to the

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

(1) Deputy Caropino acted under color of law; (2) Deputy Caropino's acts deprived Ms. Curtin of her rights under the United States Constitution; (3) A final policy maker for the County of Orange acted under color of state law; (4) A final policy maker for the County of Orange had final policymaking authority from defendant County of Orange concerning the acts of Deputy Caropino; and (5) A final policy maker for the County of Orange ratified Deputy Caropino's acts, that is, A final policy maker knew of and specifically made a deliberate choice to approve Deputy Caropino's acts and the basis for it. Ninth Circuit Model Jury Instructions 9.5, 9.6, 9.7, 9.8.

## II.   SUMMARY OF EVIDENCE

### A.   The Assault

In or about the time of April to June 2016, Ms. Curtin was married to Michael Devecchio. At about that time they were experiencing some troubles in their marriage but were attempting to reconcile their differences. One evening during this time they were at Mr. Devecchio's home in Dana Point and they began to argue. The police were called and deputies from the Orange County Sheriff's Department responded, including Deputy Caropino.

The deputies detained both Ms. Curtin and Mr. Devecchio and conducted an investigation. Ultimately, the deputies concluded that no crime had occurred, but that the couple should not spend the night together. Deputy Caropino ordered Ms. Curtin to get into his patrol car so he could drive her to her vehicle, which was parked around some distance from the home. Deputy Caropino placed Ms. Curtin in the back seat of the patrol car and drove her to the location of her vehicle.

Once there, he got her out of the patrol vehicle and continued his detainment of her by searching her purse and vehicle. He found some of Ms. Curtin's underwear in her vehicle and asked her why her panties were wet. He then told her

that she was not free to leave and that if she did leave, "She would be in a lot of trouble," and that he was going to return.

Ms. Curtin followed Deputy Caropino's orders not to leave and waited in her car. After some time, Deputy Caropino returned and ordered Ms. Curtin to let him into her vehicle. He then said to Ms. Curtin, "Since you are still here, I am going to fuck the shit out of you." Deputy Caropino stated to Plaintiff, "Show me your pussy." Plaintiff was afraid and feared for her own safety, and she complied with all of Deputy Caropino's commands. Then Deputy Caropino groped Plaintiff's vagina and digitally penetrated her while commenting on her anatomy. Deputy Caropino then pulled his pants down and shoved Plaintiff's head down towards his genitals and forced her to orally copulate him despite her pleas to stop because he was hurting her.

Next, Deputy Caropino ordered Plaintiff to straddle him while he sat in the passenger seat of Plaintiff's vehicle. Plaintiff was still in fear for her safety and knew that many in law enforcement carry guns, even when out of uniform, complied with the Deputy Caropino's commands. While in this position, the Deputy Caropino had nonconsensual sexual intercourse with Plaintiff. Deputy Caropino partially ejaculated inside of Plaintiff's vagina, and partially on the passenger seat of Plaintiff's vehicle.

Deputy Caropino then pulled up his pants, and asked Plaintiff for her cellular phone number so he could text her and to do this again. Still afraid, Plaintiff gave Deputy Caropino an incorrect phone number. Then the Deputy Caropino returned to his personal vehicle and left.

Plaintiff was violated, traumatized, emotionally drained, in shock, and fearing for her own safety. Specifically, Plaintiff feared that given the Deputy Caropino's position, he would find her and harm her again. Due to Deputy Caropino's atrocious actions, Plaintiff has suffered physical and emotional injuries. Plaintiff's injuries continue.

5

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

### B. Deputy Caropino's *Modus Operandi*

Unfortunately for the community, Ms. Curtin was not the only person Deputy Caropino sexually assaulted. Recently, **Jane Doe #1** contacted plaintiff's counsel to relay her own encounter with Deputy Caropino. She explained that in June of 2013 Deputy Caropino sexually assaulted her in her vehicle while detaining her during a DUI investigation. Ms. Doe #1 complied with Deputy Caropino's commands out of fear of harm to her person and out of fear that he would abuse his position to wrongfully arrest her.

Ms. Doe #1 is prepared to testify that at about 1:00 a.m. in Dana Point in approximately June of 2013, she was heading home from Fred's Mexican Café. On her way home she went through the drive through of Del Taco. While waiting at the window to pick up her food she saw a Sheriff's Deputy standing at the cash register looking at her. Ms. Doe #1 then got her food and parked in the parking lot to eat. Once she had finished eating she was pulled over by Deputy Caropino. When Deputy Caropino walked up to the car the first thing he said to her was, "I saw that look you gave me," and asked her if she would ever date a cop. Ms. Doe #1 said, "No." Deputy Caropino then asked Ms. Doe #1 if she had been drinking, she initially said no, but Deputy Caropino incessantly asked her again if she had been drinking. She felt Deputy Caropino was doing this to scare her, and she was in fact fearful of him. She then admitted that she had a couple of margaritas at Fred's Mexican Café. At that point, Deputy Caropino told her that he had turned all of his recording devices off, which further frightened Ms. Doe #1. Deputy Caropino then asked if Ms. Doe #1 was "wet" and that he wanted to feel her. He then reached in through the driver side window and forced his hand under her panties to fondle her genitals. Deputy Caropino then said, "I want to fuck you right now," and told Ms. Doe #1 to follow him. Still fearful that Deputy Caropino would harm her or take her to jail, she complied. She followed him to a parking lot, where he parked his squad car next to hers and directed her to get into the backseat

6

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

of her car. He then proceeded to have non-consensual sexual intercourse with her in the backseat of her car. Before leaving, Deputy Caropino asked Ms. Doe #1 for her phone number and she gave it to him. A few days later he started sending her vulgar threatening text messages that Ms. Doe #1 did not reciprocate.

Through independent investigation, Plaintiff found a prior government claim filed against Deputy Caropino by another victim of his. Referring to this woman as **Jane Doe #2**, she filed a government claim against the County of Orange and Deputy Caropino in late February of 2014. In her claim, this young woman states that while she was under arrest for DUI and sitting in the back of a squad car, Deputy Caropino uncuffed her hands and forced her to touch his penis through his uniform. Deputy Caropino intimidated her, coerced her, and sexually assaulted her. He then called and text messaged her once she was released from custody and showed up at her home while on duty and in uniform to have non-consensual sex with her in violation of her 4th, 8th, and 14th amendment rights. She indicates that she suffered physical trauma, psychological trauma, fear, intimidation, pain and suffering.

It appears that the County received this claim on February 28, 2014, *four months* before Deputy Caropino raped Ms. Curtin, and failed to take any action to prevent Deputy Caropino from committing additional sexual assaults. Thus, further promoting and emboldening a culture and practice of protecting Deputies and the Department from claims of misconduct and therefore ratifying Deputy Caropino's sexual misconduct.

**Jane Doe #3** is prepared to testify that in or about November 2013 Deputy Caropino showed up at her house unannounced in full uniform and entered her home. Caropino had been to Doe #3's home before for child custody calls for service. Caropino was questioning and interrogating Doe #3 in her living room kitchen area for approximately 20-30 minutes. Doe #3 was felt intimidated and scared of Caropino's size and authority, and she attempted to escort him to the door, hoping he

would follow her lead and leave. At this time Caropino grabbed Doe #3 and began groping and kissing her forcefully. Doe #3 was frightened by Caropino's aggression, strength, and the fact that he was in full uniform with his gun and other police weapons on his person. Too scared to resist, Doe #3 felt it was safer not to resist Caropino's sexual aggression. Caropino then took Doe #3 upstairs into her bedroom and engaged in non-consensual sexual intercourse with Doe #3. Before leaving, Caropino asked for Doe #3's phone number. Doe #3 was scared and gave a fake number to Caropino.

**Other Victims**. In addition to Jane Doe #1, Jane Doe #2, and Jane Doe #3 above, Caropino has additional victims. In or about June 2013, Caropino engaged in a non-consensual encounter with a young woman who ran away from home. In or about June 2013, Caropino while responding to a citizen's call for service, began flirting with the citizen's daughter's friend and gave that young woman his personal cell phone number. In or about August 2013, in exchange for not giving a young woman a traffic citation he asked for her phone number, repeatedly texted her, and had her meet him for coffee. In or about August 2013, Caropino asked for the phone of a young woman who he had initiated a traffic stop on, and when she gave him her phone, he input his phone number into her phone and began sending her inappropriate text messages. In or about November 2014, Caropino responded to a call for internet harassment and took down the victim's contact information and began sending the victim inappropriate text messages and emails.

It appears that Defendant Caropino does not dispute that these sexual encounters took place, but alleges they were all consensual.

## III.  SUMMARY OF APPLICABLE LAW

Deputy Caropino's acted under color of authority, in his capacity as a Sheriff's Deputy, in his actions of forcing Ms. Curtin to perform sexual acts with him against her will. So, his actions constitute and unreasonable seizure and violate Ms. Curtin's due process rights and right to bodily integrity and are actionable

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

under 42 U.S.C. § 1983. *Fontana v. Haskin*, 262 F.3d 871, 880-82 (9th Cir. 2001)(holding that sexual assault by police officer violates federal civil rights laws.)

Because Deputy Caropino acted under color of authority, and in his capacity as a Sheriff's Deputy, the County of Orange is liable for his actions. *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 206 (1991)(en banc)(holding that police department could be liable for officer's sexual misconduct); *See Deocampo v. Potts*, 836 F.3d 1134 (9th Cir. 2016); *Williams v. Horvath*, 548 P.2d 1125, 1132-34 (Cal. 1976) (en banc).

The County is further liable for Plaintiff's damages for ratifying Deputy Caropino's conduct when the County failed to promptly act when first finding out about Deputy Caropino's sexual misconduct in February of 2014. The County acted consistent with a policy, practice, custom or usage to protect the department and deputies first and ignored the complaints against Deputy Caropino for at least 9 months, giving him the opportunity to continue to prey on the vulnerable young women of Orange County. Such failure to discipline and act on complaints against officers is sufficient to hold a municipality liable under a *Monell* claim. *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).

Further, the County has policies that are deliberately indifferent to the constitutional rights of Plaintiff and citizens of Orange County. Those policies include, but are not limited to: inexplicably tolling administrative investigations into deputy misconduct, tolling administrative action (placing on leave) against deputies they knew or should have known are risks to the community, and a vague policy that only "unwelcome solicitation" of sexual relationship while on duty that creates a danger of allowing deputies to avoid consequences by claiming their actions were welcome.

Additionally, the County is liable under §1983 when it acts with deliberate indifference in "creating the foreseeable danger to a plaintiff leading to the

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1 deprivation of plaintiff's constitutional rights." *Wood v. Ostrander*, 879 F.2d 583
2 (9th Cir. 1989); *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir.
3 1998). Here, the County created the danger to Plaintiff by leaving her in a
4 vulnerable state in a vehicle, that they knew she could not drive, on the side of the
5 road in the middle of the night. The deputies even told her she could not drive
6 away, and Caropino returned knowing Plaintiff was intoxicated and could not
7 lawfully flee. That is when he raped her. The deputies removed Plaintiff to a
8 location where she faced greater danger be leaving a vulnerable young woman on
9 the street, who was intoxicated and unable to drive. The County had a duty to
10 protect Plaintiff, but they placed her in danger.

## IV.   DEFENSES

It appears that the main defense is that of consent. The 9th circuit has already made clear that the consent defense is unavailable to allegations of sexual assault when there is an imbalance of power between a law enforcement officer and a detainee. *Wood v. Beauclair*, 692 F. 3d 1041, 1047 (9th Cir. 2012)(holding that sexual contact between a prison guard and inmate is presumed nonconsensual given the disparity of power; just as power inequities between adults and minors, teachers and students, and owners and slaves foster opportunities for sexual abuse.) Defendants' conduct is presumed nonconsensual.

The County says it reserves the right to argue that Deputy Caropino was acting outside the scope of his authority when he sexually assaulted Ms. Curtin.

The argument is baseless. California law is clear: "Sexual assaults by police officers are fortunately uncommon; nevertheless, the risk of such tortious conduct is broadly incidental to the enterprise of law enforcement, and thus liability for such acts may appropriately be imposed on the employing public entity." *Mary M.*, 54 Cal. 3d at 218. Further, California Government Code § 825 requires a public entity to indemnify its employee for compensatory damages awarded under 42 U.S.C. 1983 and attorney's fees the employee is ordered to pay under 42 U.S.C.

10

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1988. *See Deocampo v. Potts*, 836 F.3d 1134 (9th Cir. 2016); *Williams v. Horvath*, 548 P.2d 1125, 1132-34 (Cal. 1976) (en banc). The County may be held liable for Deputy Caropino's misconduct.

The County also claims that it is not liable under a *Monell* liability theory. The make this argument despite the fact that they were given notice of Deputy Caropino's proclivities towards sexual misconduct at least four months before Plaintiff was raped. Yet the County allowed Deputy Caropino to remain out on patrol, exposing our community's daughters and wives to this serial rapist. With these facts and circumstances, it won't be hard for the jury to conclude that the County had a policy, custom or usage of protecting its deputies and the department and ignoring complaints against its deputies and the department to the extent that they ratified Deputy Caropino's conduct. Such failure to discipline or remove a deputy that is known to engage in such egregiously harmful behavior towards young vulnerable citizens has been held to equal ratification sufficient to hold a municipality liable under *Monell. See Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).

The County is further liable under *Monell* for the following policies that lead to the constitutional violations of plaintiff: inexplicably tolling administrative investigations into deputy misconduct, tolling administrative action (placing on leave) against deputies they knew or should have known are risks to the community, and a vague policy that only "unwelcome solicitation" of sexual relationship while on duty that creates a danger of allowing deputies to avoid consequences by claiming their actions were welcome.

Moreover the County is liable for creating the danger that led to Plaintiff's constitutional violaitons. *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989); *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998).

The County is liable for Plaintiff's damages on her *Monell* claim.

**V.    ADDITIONAL ISSUES**

11

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

### A. **Bifurcation**

The Court has bifurcated the *Monell* claim from the individual claim against Defendant Caropino. Plaintiff has filed for Default Judgment against Defendant Caropino.

### B. **Jury Trial**

Both sides have requested a jury trial.

### C. **Fees**

If Ms. Curtin prevails, she will seek attorneys' fees and costs under 42 U.S.C. §1988.

### D. **Abandoned Claims**

No claims have been or will be abandoned.

### E. **Witness and Exhibits Lists**

These will be submitted under separate cover.

### F. **Evidentiary Issues**

The parties are meeting and conferring regarding evidentiary issues and will include certain objections in the Pre-Trial Conference Order. Other evidentiary issues have been raised in the parties' motions *in limine* and will be resolved at the Pre-Trial Conference.

Dated:  July 3, 2017                                                **Jass Law**

/s/ Jeremy Jass
_____
Jeremy Jass, Esq.
*Attorney for Plaintiff*,
ALEXA CURTIN

**PLAINTIFF ALEXA CURTIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**