Holly N. Boyer, SBN 221788
   *hboyer@ecbappeal.com*
Shea S. Murphy, SBN 255554
   *smurphy@ecbappeal.com*
ESNER, CHANG & BOYER
234 E. Colorado Blvd., Ste. 975
Pasadena, CA  91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859

Attorneys for Plaintiff
ALEXA CURTIN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN,<br><br>               Plaintiff,<br><br>     vs.<br><br>COUNTY OF ORANGE; NICHOLAS LEE CAROPINO, individually and as Deputy Sheriff for the County of Orange; and DOES 1 through 50,<br><br>              Defendants. | Case No.: 8:16-CV-00591-SVW-PLA<br>Assigned to Hon. Stephen V. Wilson<br><br>**PLAINTIFF ALEXA CURTIN'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMET OF ISSUES; MEMORANUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 56]**<br><br>*[Filed concurrently with Statement of Uncontroverted Facts and Conclusions of Law; Notice of Lodging and Index of Supporting Evidence; [Proposed] Order]*<br><br>**DATE:**    **July 31, 2017**<br>**TIME:**    **1:30 p.m.**<br>**DEPT.:**    **Courtroom 10A**<br><br>FSC:    July 24, 2017<br>Trial:    August 1, 2017 |

1

**PLEASE TAKE NOTICE** that on July 31, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10A of the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiff Alexa Curtain will and hereby does move the Court for partial summary judgment as to the following claims and issues:

1.     The uncontroverted facts demonstrate that Deputy Nicholas Caropino was acting under the color of his authority at all times during his interactions with Plaintiff Alexa Curtin on the subject night of the incident.

2.     The uncontroverted facts demonstrate that Deputy Nicholas Caropino's sexual assault and rape of Plaintiff Alexa Curtin violated her constitutional rights under the Fourth and/or Fourteenth Amendments.

This Motion is made following pre-filing conference of counsel, which took place on June 8, June 13, June 20, June 22, and June 23, 2017, pursuant to U.S. District Court, Central District Local Rule 7-3 and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Holly N. Boyer, filed concurrently herewith, and the attached exhibits.

Dated: July 3, 2017                    ESNER, CHANG & BOYER


_____/s/ Holly N. Boyer_____
Holly N. Boyer
*Attorney for Plaintiff*,
ALEXA CURTIN

**PLAINTIFF ALEXA CURTIN'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGET OF ISSUES; MEMORANUM OF POINTS AND AUTHORITIES**

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.     PRELIMINARY STATEMENT ...................................................1

II.    INTRODUCTION ...................................................................1

III.   STATEMENT OF THE FACTS ..................................................2

IV.    PLAINTIFF'S CLAIMS ..........................................................4

V.     LEGAL STANDARD ON PARTIAL SUMMARY JUDGMENT ...............4

VI.    THE UNCONTROVERTED FACTS ESTABLISH THAT DEPUTY
       CAROPINO WAS ACTING UNDER THE COLOR OF HIS AUTHORITY
       AT THE TIME HE SEXUALLY ASSAULTED AND RAPED
       PLAINTIFF ........................................................................6

VII.   PARTIAL SUMMARY JUDGMENT IS FURTHER WARRANTED ON
       THE ISSUE THAT PLAINTIFF SUFFERED A CONSTITUTIONAL
       VIOLATION OF HER RIGHTS ...............................................11

       A.    Caropino's Rape and Sexual Abuse of Plaintiff Violated Her
             Fourteenth Amendment Right............................................13

       B.    Caropino's Rape and Sexual Abuse of Plaintiff Violated Her Fourth
             Amendment Rights...........................................................14

VIII.  EVIDENCE OF PRIOR SEXUAL HARASSMENT, SEXUAL ASSAULTS
       AND RAPES COMMITTED BY DEPUTY CAROPINO PRIOR TO HIS
       RAPE OF PLAINTIFF FURTHER SUPPORTS PARTIAL SUMMARRY
       JUDGMENT........................................................................17

IX.    CONCLUSION ....................................................................21

i

# TABLE OF AUTHORITIES

**CASES**

*Baxter v. Palmigiano*
    425 US 308 (1976) ........................................................................................ 9

*Blind-Doan v. Sanders*
    291 F.3d 1079 (9th Cir. 2002) ...................................................................... 18

*California v. Campbell*
    138 F.3d 772 (9th Cir.1998) .......................................................................... 4

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ...................................................................................... 4

*Cheng v. Commissioner Internal Revenue Service*
    878 F.2d 306 (9th Cir.1989) .......................................................................... 6

*Chew v. Hybl*
    C 96-03459 CW, 1997 WL 33644581 (N.D. Cal. Dec. 9, 1997) ................... 5

*Costa v. Nat'l Action Fin. Servs.*
    No. CIV S-05-2084 FCD/KJM, 2007 WL 4526510, at *2 (E.D.Cal. Dec. 19, 2007) .......................................................................................................... 4

*County of Sacramento v. Lewis*
    523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ........................... 13

*Dan Vang v. Vang Xiong X. Toyed*
    944 F.2d 476 (9th Cir. 1991) .................................................................. 6, 7, 8

*Doctors Med. Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*
    2011 WL 1438156 (E.D. Cal. Jan. 14, 2011) ................................................ 6

*First Nat'l Ins. Co. v. F.D.I.C.*
    977 F.Supp. 1051 (S.D.Cal.1977) .................................................................. 5

*Fontana v. Haskin*
    262 F.3d 871 (9th Cir. 2001) .................................................................. passim

*Gutierrez v. Holder*
    662 F3d 1083 (9th Cir. 2011) ........................................................................ 9

*Hechavarria v. City & Cty. of San Francisco*
    No. C 10-0525 CRB, 2010 WL 3743651, at *1 (N.D. Cal. Sept. 17, 2010) ..... 5

*In re Brocade Sec. Litig.*
    C 05-02042 CRB, 2008 WL 2050847 (N.D. Cal. May 13, 2008) ................... 5

*Jones v. Williams*
    297 F.3d 930 (9th Cir. 2002)................................................................................1

*Mary M. v. City of Los Angeles*
    54 Cal.3d 202 (Cal. 1991).................................................................................10

*McDade v. West*
    223 F.3d 1135 (9th Cir. 2000) ............................................................................6

*Naffe v. Frey*
    789 F.3d 1030 (9th Cir. 2015) ............................................................................6

*National Union Fire Ins. Co. of Pittsburgh, Penn. v. Argonaut Ins. Co.*
    701 F.2d 95 (9th Cir. 1983)................................................................................5

*Ramirez-Lluveras v. Pagan-Cruz*
    857 F. Supp. 2d 221 (D.P.R. 2012) ....................................................................5

*Robi v. Five Platters, Inc.*
    918 F.2d 1439 (9th Cir.1990).............................................................................6

*Screws v. United States*
    325 U.S. 91 (1945)..............................................................................................7

*Seeley v. Chase*
    443 F.3d 1290 (10th Cir. 2006) ........................................................................18

*Soremekun v. Thrifty Payless, Inc.*
    509 F.3d 978 (9th Cir. 2007)..............................................................................4

*Tormasi v. Hayman*
    No. CIV. 08-4950, 2012 WL 762480, at *4 (D.N.J. Mar. 7, 2012) .................5

*United States v. Classic*
    313 U.S. 299 (1941)..........................................................................................11

*Van Ort v. Estate of Stanewich*
    92 F.3d 831 (9th Cir. 1996)................................................................................7

**STATUTES**

Federal Rules of Civil Procedure 56...............................................................4, 5, 6

**RULES**

Federal Rules of Evidence Rule 415 ..................................................................18

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

Separate and apart from the instant motion for partial summary judgment, Plaintiff has filed an Application for Leave to File Motion Under Seal in light of the Defendant County of Orange's designation of nearly every document produced and deposition taken as confidential.  As noted in the Application, should any procedural deficiencies or defects exist concerning the application to file under seal and the application be rejected, Plaintiff requests that the *redacted* version of her Motion for Partial Summary Judgment be considered without reference to the redacted material and deemed filed as of today, July 3, 2017.  In accord with this request, and in an abundance of caution, Plaintiff files the instant Motion for Partial Summary Judgment which is identical in form and substance as the redacted version of the motion for partial summary judgment included with the Application for Leave to File Motion Under Seal.

As explained below, it is Plaintiff's position that even setting aside the documents and evidence deemed confidential by the County, the non-confidential evidence is sufficient to warrant partial summary judgment.

### II.    INTRODUCTION

Sheriff Deputy Nicholas Caropino, a deputy officer with the Orange County Sheriff Department, used his position of power and authority as a peace officer to brutally rape Plaintiff Alexa Curtin on June 27, 2014.  Such misconduct undeniably violated 42 U.S.C. § 1983, which creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

As now explained, there can be no dispute that Deputy Caropino used and misused his authority as a police officer to sexually abuse Plaintiff.  It was precisely the position of power he had been entrusted with that led to the sexual exploitation of Plaintiff.  Since the facts demonstrate that Deputy Caropino acted

1

under color of his authority at all times during the sexual abuse, this is the first issue as to which Plaintiff seeks partial summary judgment.  The facts also permit only one conclusion that the brutal rape violated Plaintiff's constitutional rights.  This is the second issue as to which Plaintiff seeks partial summary judgment.

Partial summary judgment in favor of Plaintiff and against Defendants Nicholas Caropino and the County is therefore appropriate.

## III.    STATEMENT OF THE FACTS

In the early morning hours of June 27, 2017 sheriff's deputies, including Deputy Caropino, responded to dispute between Ms. Curtin and her husband.  Fact 1.  After investigating, the deputies concluded no crime had occurred, and the couple should part ways for the night.  Facts 1-12.  Deputy Caropino then placed Ms. Curtin in his patrol car and drove her to her car, which was parked nearby.  Facts 13-17.  When they arrived at Ms. Curtin's car, she was told to get out of the patrol car, and lean against the hood of the car with her hands behind her back.  Facts 21.  Deputy Caropino then searched her purse and would not let her leave because he could not find her driver's license.  Facts 21-27.  Apparently not finding her license, Deputy Caropino searched the interior of Plaintiff's vehicle.  Facts 28-30.  In searching the car, Deputy Caropino found a pair of Ms. Curtin's underwear and asked her why her "panties" were "wet."  Fact 33.  Plaintiff testified that she was shocked and confused.  Fact 34.

Deputy Caropino then instructed Plaintiff not to leave.  Fact. 37-38, 48.  Plaintiff testified that he told her "'Do not leave.  If you leave, you're going to get into trouble.  I could find you,' something along those lines.  It was really threatening, and so I remained there."  Fact. 37-38.  As Plaintiff explained, Deputy Caropino told her that if she left she would be in "big trouble" and "I suggest you stay here, because when I get back here, I'm going to fuck the shit out of you."  Fact. 37-38.  Plaintiff testified that "at that time I was just completely in shock.  This man has a gun.  My life is in danger …"  Fact 39.  Deputy Caropino did not

2

tell Plaintiff how long it would be before he would be coming back.  Fact 41.
After he drove away, Plaintiff called and texted family and friends to come get her
but because of the early hour, no one was responding.  Facts 42-43.  Plaintiff was
terrified to leave and violate the officers' orders.  Facts 39-51.

Approximately 20 to 30 minutes later, while Plaintiff was still trying to
reach someone to help her, she testified that there was a "bang, bang" with a
flashlight on her car window.  Fact 52.  Deputy Caropino returned to Plaintiff's
car, banged on the window with his flashlight and shined the flashlight through her
car window.  Fact 53.  Plaintiff testified that Deputy Caropino was wearing a
white, sleeveless undershirt and she could not recall what the pants looked like, but
recalled that they were long pants and he was wearing a belt. Fact 56.  Plaintiff
rolled down her window.  Fact 57.  Deputy Caropino instructed her to "unlock the
door" and told her "I'm going to fuck the shit out of you." Fact 58.

Deputy Caropino then violently sexually assaulted and raped Plaintiff.  Facts
60-69.  Deputy Caropino began by digitally penetrating Plaintiff and eventually put
his entire fist inside her vagina, and penetrated her vagina with his fist despite her
cries of pain.  Facts 61-62.  Deputy Caropino then pulled his pants down and
shoved Plaintiff's head down towards his genitals and forced her to orally copulate
him, causing her to choke.  Facts 63-65.  Next, Deputy Caropino ordered Plaintiff
to "'get on top of me,'" and he forcefully put Plaintiff on top of him, straddling
him until he ejaculated in her and on the seat of her car.  Fact 65.  As Deputy
Caropino was raping Plaintiff, with her straddled over him, he was saying "take
this, bitch" and other such degrading statements.  Fact 66.  Before leaving, Deputy
Caropino pulled up his pants, and asked Plaintiff for her phone number so he could
text her and they could do this again.  Fact 68.  Still afraid, Plaintiff gave Deputy
Caropino an incorrect phone number.  Fact 68.  Plaintiff was 21 years old at the
time of the incident.  Fact 1.

/ / /

## IV.   PLAINTIFF'S CLAIMS

The operative pleading in this matter is the Second Amended Complaint (Dkt. 29), in which Plaintiff Alexa Curtin asserts a claim for Violation of Civil Rights (42 U.S.C. § 1983) against Defendant Nicholas Caropino and a *Monell* Claim (42 U.S.C. § 1983) against Defendant County of Orange.

## V.   LEGAL STANDARD ON PARTIAL SUMMARY JUDGMENT

A motion for partial summary judgment is governed by the same standard as a motion for summary judgment. *California v. Campbell*, 138 F.3d 772, 780-81 (9th Cir.1998); *Costa v. Nat'l Action Fin. Servs.*, No. CIV S-05-2084 FCD/KJM, 2007 WL 4526510, at *2 (E.D.Cal. Dec. 19, 2007). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id*. Further, it is not sufficient for the opposing party simply to raise issues as to the credibility of the

4

moving party's evidence: "(N)either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *National Union Fire Ins. Co. of Pittsburgh, Penn. v. Argonaut Ins. Co.* 701 F.2d 95, 97 (9th Cir. 1983).

As the undisputed facts demonstrate that Deputy Caropino was acting under the color of authority at all times during his rape and sexual assault of Plaintiff, partial summary judgment of Plaintiff's claim for violation of 1983 as against Officer Caropino *on this element* is warranted.  See FED.R.CIV.P. 56(a) ("[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought"); *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D.Cal.1977) (a court "may grant summary adjudication as to specific issues if it will narrow the issues for trial."); see also *Tormasi v. Hayman,* No. CIV. 08-4950, 2012 WL 762480, at *4 (D.N.J. Mar. 7, 2012) (granting plaintiff's motion for partial summary judgment on issue that defendant was acting under color of state authority and noting that "no reasonable jury could find otherwise."); *Ramirez-Lluveras v. Pagan-Cruz,* 857 F. Supp. 2d 221, 227-230 (D.P.R. 2012) (partial summary judgment granted in favor of plaintiff on the issue of whether there was a constitutional violation, and whether the defendant was acting under the color of state law); *Hechavarria v. City & Cty. of San Francisco,* No. C 10-0525 CRB, 2010 WL 3743651, at *1 (N.D. Cal. Sept. 17, 2010), aff'd, 463 F. App'x 632 (9th Cir. 2011) (court granted partial summary judgment in favor of defendant on issue of whether the defendant was acting under color of authority); *In re Brocade Sec. Litig.*, C 05-02042 CRB, 2008 WL 2050847 (N.D. Cal. May 13, 2008) (court granted plaintiff's motion for partial summary judgment finding that the only inference that can be drawn from the undisputed facts is that the employee was acting in the course and scope of his employment with defendant); *Chew v. Hybl,* C 96-03459 CW, 1997 WL 33644581 (N.D. Cal. Dec. 9, 1997) (court granted partial summary judgment for plaintiff on

5

1  the issue of the defendant's vicarious liability).

2       Further, partial summary judgment of the element that Plaintiff suffered a

3  constitutional violation under her claim for violation of 1983 is appropriate under

4  Federal Rule 56.  See FED.R.CIV.P. 56(a).

5       Should the Court grant partial summary judgment as to both issues of color

6  of authority and violation of Plaintiff's constitutional rights, Plaintiff seeks partial

7  summary judgment of the issue of liability, with the amount of damages to be

8  proved at trial.  See *Doctors Med. Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*,

9  2011 WL 1438156 (E.D. Cal. Jan. 14, 2011) ("under F.R.Civ.P. 56(g), a summary

10  judgment/ adjudication motion, interlocutory in character, may be rendered on the

11  issue of liability alone.); see also *Robi v. Five Platters, Inc.,* 918 F.2d 1439 (9th

12  Cir.1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309

13  (9th Cir.1989).

14  **VI.  THE UNCONTROVERTED FACTS ESTABLISH THAT DEPUTY**

15  **CAROPINO WAS ACTING UNDER THE COLOR OF HIS**

16  **AUTHORITY AT THE TIME HE SEXUALLY ASSAULTED AND**

17  **RAPED PLAINTIFF**

18       A state employee generally acts under color of law when "a state employee

19  ... wrongs someone 'while acting in his official capacity or while exercising his

20  responsibilities pursuant to state law.'"  *Naffe v. Frey,* 789 F.3d 1030, 1036 (9th

21  Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)); see, e.g., *Dan Vang v.*

22  *Vang Xiong X. Toyed,* 944 F.2d 476, 480 (9th Cir. 1991) (upholding jury

23  determination that defendant acted under color of law when he sexually assaulted

24  women looking for employment while meeting with them under pretext of

25  providing services pursuant to his job); *McDade v. West*, 223 F.3d 1135, 1149 (9th

26  Cir. 2000) (holding employee acted under color of law when she accessed a

27  government database during work hours using a computer and password issued by

28  her employer).

1    An officer may act under color of law if the officer used his "government

2    position to *exert influence and physical control*" over a plaintiff, particularly if the

3    plaintiff was "in awe of government officials." *Dan Vang*, 944 F.2d at 480.

4    Further, an officer acts under color of law "if he had purported to act under color of

5    law, *even if his goals were private and outside the scope of authority*." *Van Ort v.*

6    *Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996); see also *Screws v. United*

7    *States*, 325 U.S. 91, 111 (1945) (holding that "[i]t is clear that under 'color' of law

8    means under 'pretense' of law"); see also *Van Ort*, 92 F.3d at 838 (holding that

9    defendant "also might have been acting under color of law if he had purported to or

10   pretended to act under color of law, even if his goals were private and outside the

11   scope of authority.")."

12    *Dang Vang* is instructive.  There, the Ninth Circuit upheld a jury

13   determination that a public employee, whose job was to interview and find refuges

14   suitable employment, was acting under color of state law when he allegedly raped

15   several women.  *Dang Vang, supra*, 944 F.2d at 479–80.  After noting that "[i]t is

16   firmly established that a defendant in a § 1983 suit acts under color of state law

17   **when he abuses the position given to him by the state**," and thus a person acts

18   under color of state law, if he "exercise[s] power 'possessed by virtue of state law

19   and *made possible only because the wrongdoer is clothed with the authority of*

20   *state law,*'" the Court upheld the jury's finding that the rapes occurred while the

21   public employee was acting under the color of authority.  *Id*. at 479–80, citing

22   *West*, 487 U.S. at 49.  "Xiong ***came into contact with the plaintiffs and used his***

23   ***position in the state government*** *to deprive these women of their constitutional*

24   *right to be free from sexual assault.*  The Supreme Court said in *Lugar v.*

25   *Edmondson Oil Co. Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) that

26   **"'misuse of power, possessed by virtue of state law and possible only because**

27   **the wrongdoer is clothed with the authority of state law, is action taken**

28   **"under color of state law**.""'" *Id*.

---

7

The same is true here. Similar to *Vang*, Deputy Caropino came into contact with and had extensive interactions with Plaintiff arising entirely from his employment as an officer, and he "used his government position to exert influence and physical control over [Plaintiff] in order to sexually assault [her]." *Vang*, 944 F.3d at 480. As outlined in Plaintiff's separate statement of uncontroverted facts, it was through his authority as an officer that Deputy Caropino detained Ms. Curtin at her car, ordered her to remain at the car until he returned, and eventually ordered her to let him in the car where he thereafter raped and assaulted her. Facts 6-14, 21-24, 28-30, 33-41, 52-69. Plaintiff detailed the repeated acts of authority and order directed over Plaintiff during the entire encounter. Id. At the time Deputy Caropino left Plaintiff's vehicle, he ordered her not to leave, threatening that she would be in "big trouble" and that he could find her if she left. Facts 37-38. Plaintiff was afraid for her life and was unsure when he would return, or even if he had actually left or was watching her from afar. Facts 37-45.

When he returned to her location, he approached her vehicle and began banging on the window with his flash light, and shined his light into her vehicle. Facts 52-58. When Plaintiff rolled down her car window, Deputy Caropino ordered her to unlock the door. Facts 57-58. Once inside the vehicle, his orders only increased as he brutally assaulted and raped her in her car. Facts 60-68. Under no reasonable view of the facts could Deputy Caropino's authority as an officer of the law and the control he had as such be divorced from the sexual assault and rape.

As testified to by Plaintiff's Police Practices Expert, Jeffrey Noble, *at all times during his interaction with Plaintiff*, Deputy Caropino was acting under color of authority as an Orange County sheriff's deputy. *See* Exhibit C, Declaration of Noble, ¶ 11-12. The fact that Deputy Caropino took off his uniform shirt and returned in his own car does not transmute the circumstances wherein Deputy Caropino used his position and authority as an officer to sexually assault and rape

Plaintiff.  Plaintiff was well aware that he was an officer and the looming threat of his power as an officer of the law.  As highlighted by Mr. Noble, "The fact that the sexual assault and rape occurred while Caropino was not wearing his uniform shirt and had driven his personal vehicle does not remove these actions from being under the color of his authority as a Sheriff's Deputy.  Indeed, these acts constituted a natural and continuous extension of the extensive preceding interactions he had with Plaintiff where he was clearly and unequivocally acting under the color of his authority. Given the entire interaction, a reasonable person would believe they were still acting as a law enforcement officer and had the authority of their office." Id.

In addition to these facts, the Court may consider Deputy Caropino's invocation of his Fifth Amendment at his deposition to support an adverse inference that Deputy Caropino raped Plaintiff while under the color of authority. At the deposition of Deputy Caropino, when asked if he had abused his authority as an officer and raped Plaintiff, Deputy Caropino invoked his Fifth Amendment right and refused to answer the questions.  Facts 71-74.  An adverse inference may be drawn in a civil case from a defendant's invocation of the Fifth Amendment. *Baxter v. Palmigiano*, 425 US 308, 318 (1976) (Fifth Amendment does not forbid adverse inferences against parties to civil action when they refuse to testify in response to probative evidence offered against them); *Gutierrez v. Holder*, 662 F3d 1083, 1091 (9th Cir. 2011).  Deputy Caropino's invocation of his Fifth Amendment privilege in response to questions at his deposition concerning whether he was acting under the color of authority at all times during his interactions with Plaintiff warrants the *inference* that he was indeed acting under color of the law.  Such evidence therefore further supports partial summary judgment on this issue.

While the non-confidential evidence is alone enough to warrant a finding that Deputy Caropino, the evidence identified as confidential by the County further

9

1  demonstrates the absence of any triable issue of fact as to whether Deputy

2  Caropino was acting under the color of his authority as a sheriff deputy at the time

3  of the assault and rape. ████████████████████████

4  ████████████████████████████████████████

5  ████████████████████████████████████████

6  ████████████████████████████████████████

7  ███████████████████████████████████████

8  █████████████████████████████████████████

9  ███████████████████████████████████████

10 ████████████████████████████████████████

11 ██████████████████████████████████████

12 █████████████████████████████████████████

13 ████████████████████████████████████████

14 ███████████████████████████████████████

15 █████████████

16  ██████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ██████████████████████████████████████

20 ███████████████████████████████████████

21 █████████████████████████████████████████

22 ███████████████████

23      The evidence therefore demonstrates that Deputy Caropino was acting under

24 the color of authority at the time he raped Ms. Curtin.  *See also Mary M. v. City of*

25 *Los Angeles*, 54 Cal.3d 202, 213 (Cal. 1991) (under a similar analysis of course

26 and scope of employment, the California Supreme Court held that an officer's rape

27 of a woman who had been detained on a traffic stop may be within the course and

28 scope of his employment as an officer; "Sergeant Schroyer was acting within the

1  scope of his employment when he detained plaintiff for erratic driving, when he

2  ordered her to get out of her car and to perform a field sobriety test, and when he

3  ordered her to get in his police car.  Then, misusing his authority as a law

4  enforcement officer, he drove her to her home, where he raped her.  When plaintiff

5  attempted to resist Sergeant Schroyer's criminal conduct, he continued to assert his

6  authority by threatening to take her to jail.")

7      Where the misuse of power that is possessed by virtue of state law and only

8  possible because the actor is clothed with the authority of state law, the action is

9  taken "under color of state law."  *United States v. Classic,* 313 U.S. 299, 326

10  (1941).

11  **VII.  PARTIAL SUMMARY JUDGMENT IS FURTHER WARRANTED**

12  **ON THE ISSUE THAT PLAINTIFF SUFFERED A**

13  **CONSTITUTIONAL VIOLATION OF HER RIGHTS**

14      It is well established that sexual misconduct by law enforcement officers

15  against members of the public unquestionably implicates the violation of

16  constitutional rights.  *See Fontana v. Haskin,* 262 F.3d 871 (9th Cir. 2001).

17  However, the nature of the constitutional right that is implicated by the police

18  sexual misconduct depends upon the context in which the sexual misconduct

19  occurs.  As the Ninth Circuit explained in *Fontana,* "[s]exual misconduct by a

20  police officer toward another generally is analyzed under the Fourteenth

21  Amendment; sexual harassment by a police officer of a criminal suspect during a

22  continuing seizure is analyzed under the Fourth Amendment."  *Id.*, at 882.  In other

23  words, whether a given instance of police sexual misconduct should be analyzed

24  under a Fourth Amendment standard or Fourteenth Amendment standard depends

25  upon whether the misconduct occurred in connection with a continuing seizure.

26      As now explained, Caropino's undisputed sexual assault and rape of Plaintiff

27  gives rise to a constitutional violation under either the Fourth Amendment or the

28  Fourteenth Amendment standard.  As such, whether or not Caropino's rape and

11

sexual assault of Plaintiff was committed as a part of an ongoing seizure of Plaintiff as contemplated under the Fourth Amendment, a constitutional violation occurred, and partial summary judgment on this issue is warranted.

In *Fontana*, the plaintiff, who had been involved in a car accident, was taken into custody by law enforcement officers who had reason suspect that she was under the influence of alcohol. *Fontana*, 262 F.3d at 875. While transporting her to a police station, the plaintiff was subject to sexual abuse and harassment by the defendant law enforcement officer, including, among other things, "telling plaintiff she had nice legs; telling plaintiff that he could be her 'older man'; putting his arm around plaintiff; massaging her shoulders." *Id.* Plaintiff sued, asserting among other claims, a 42 U.S.C., § 1983 claim based on a violation of her fourth and fourteenth amendment rights. *Id.*, at 875-76.

Reversing a dismissal on the pleadings, the Ninth Circuit addressed the defendant officer's argument that summary judgment of the plaintiff's § 1983 claim was alternatively warranted because "his alleged sexual behavior did not violate any of [the plaintiff's] Constitutional rights." *Id.*, at 878. Rejecting this argument, the Ninth Circuit first noted that because the sexual abuse and harassment occurred after the plaintiff had been arrested and was being subject to a continued seizure, it was appropriately analyzed under the Fourth Amendment. *Id.* The court then unequivocally concluded that if the plaintiff's allegations were proved, they would "establish that [the defendant officer] violated [the plaintiff's] Fourth Amendment rights…." *Id.*, at 881. Nevertheless, the Ninth Circuit also explained "[i]f this case had not involved an arrest, it appropriately would have been analyzed under Fourteenth Amendment substantive due process analysis." *Id.*, at 881 n. 6. The Court then concluded that "[e]ven were we to apply the Fourteenth Amendment analysis, we would reverse the summary judgment." *Id.*, at 882 n. 7. Following Fontana's analysis here leads to an analogous legal conclusion: that partial summary judgment of either a Fourth Amendment or

Fourteenth Amendment violation is warranted.

    **A.**    **Caropino's Rape and Sexual Abuse of Plaintiff Violated Her Fourteenth Amendment Right.**

As explained in *Fontana*, "[m]ost cases that involve unwanted sexual contact or harassment by public officials have been analyzed under the substantive due process right to be free from violations of bodily integrity under the Fourteenth Amendment.  Cases involving rape and sexual harassment by police officers are usually analyzed in this manner." *Fontana*, 262 F.3d at 882 n. 6.  Assuming, *arguendo*, that Plaintiff's Fourteenth Amendment rights are implicated, *Fontana* provides the relevant analysis: "Under the Fourteenth Amendment's substantive due process prong, we use the 'shocks the conscience' test. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  The threshold question is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' *Id.* at 848 n. 8, 118 S.Ct. 1708." *Fontana*, 262 F.3d at 882 n. 7; see *Id.*, at 881 citing *Rochin v. California*, 342 U.S. 165, 169 (1952).

As the United States Supreme Court explained: "The conscience-shocking concept points clearly away from liability, or clearly toward it, only at the ends of the tort law's culpability spectrum: Liability for negligently inflicted harm is categorically beneath the constitutional due process threshold, see, *e.g.*, *Daniels v. Williams*, 474 U.S. [372,] 328, 106 S.Ct. [662,] 663 [(1986)], while **conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level**, see *id.*, at 331, 106 S.Ct., at 665." *Cty. of Sacramento*, 523 U.S. at 834 (emphasis added).

Applying the "shocks the conscience" in analogous if significantly less egregious facts, the Ninth Circuit in *Fontana* explained that "[the defendant officer's] sexual predation was 'unjustifiable by any government interest.' [*Cty. Of*

*Sacrament*, 523 U.S.] at 849, 118 S.Ct. 1708.  It was an 'arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.'  *Id.* at 845 (quoting *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884)).  [The defendant officer's] behavior, if proved, was egregious and outrageous and shocks the conscience as a matter of law."  *Fontana*, 262 F.3d at 882.

Unlike in *Fontana*, where the defendant officer's misconduct involved a litany of sexually inappropriate comments as well as touching and massaging, *see Id.*, 262 F.3d at 875, here Caropino's conduct is *incomparably worse, viler, and more shocking*.  (Facts 12-14, 21-24, 28-30, 33-45, 52-69.)  Without rehashing the behavior laid out in Plaintiff's Separate Statement and discussed above, it goes without saying that Caropino's sexual assault and rape of Plaintiff entirely eclipses the conduct at issue in *Fontana*, and has absolutely no governmental interest whatsoever.  There can be no conscience that is not shocked by the conduct at issue in this case.

**B.    Caropino's Rape and Sexual Abuse of Plaintiff Violated Her Fourth Amendment Rights.**

Alternatively, assuming that Caropino raped and sexually abused Plaintiff because she remained in her vehicle as she followed Caropino's orders which he gave as a deputy sheriff, and was thus still subject to his seizure, (Facts 33-45), Caropino's conduct unquestionably violated Plaintiff's Fourth Amendment rights.

The Ninth Circuit detailed the applicable analysis in *Fontana*, explaining that "[a]ssessing the Constitutionality of police action during a seizure involves 'a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting Garner, 471 U.S. at 8, 105 S.Ct. 1694)."  However, there is "***no 'countervailing governmental interest' to justify sexual misconduct***.  '[W]here

14

1    there is no need for force, *any* force used is constitutionally unreasonable.'

2    *Headwaters Forest* [*v. Cty. of Humboldt*], 240 F.3d [1185,] 1199 [(9th Cir. 2000)]

3    (emphasis in original)." *Fontana*, 262 F.3d at 880 (emphasis added).

4        Fontana's analysis, which applied this Fourth Amendment standard to facts

5    which contain striking parallels to those present in this case, bears repeating in its

6    entirety:

7        [The defendant officer] engaged in unreasonable, non-consensual,

8        inappropriate touching and propositioning.  [The plaintiff] alleges that

9        she was helpless, handcuffed, and frightened and, thus, in a vulnerable

10       position when [the defendant officer] began to prey upon her.  She

11       had just been in a disorienting, high speed car accident at two o'clock

12       in the morning.  The highway patrol officers responding to the scene

13       conducted field sobriety tests, arrested and handcuffed her, and took

14       her from her car presumably to drive her to jail. She plausibly claims

15       to have been so frightened by [the defendant officer's] acts that she

16       feared she was being taken to an unknown destination, rather than the

17       police station.  [The defendant officer's] alleged acts—both the

18       physical touching as well as the comments he is alleged to have

19       made—if they occurred as described, were an abuse of power and,

20       under the circumstances, unreasonable intrusions into [the plaintiff']

21       bodily integrity in violation of the Fourth Amendment."

22   *Id.*, at 880–81.

23       No less can be concluded here.  At the time Caropino performed his

24   horrifying acts of sexual violence against Plaintiff, Plaintiff was in a directly

25   comparable position of vulnerability to the plaintiff's in *Fontana*.  Here, Plaintiff

26   first came into contact with Caropino when he had arrived in response to a

27   domestic violence call. Facts 6-12.  Plaintiff was a suspect in Deputy Caropino's

28   investigation, and sought to follow Deputy Caropino's instructions.  Facts 13, 21,

15

22, 24, 37, 38, 40.  She followed his orders when Caropino ordred her into his patrol car, and then transported her to her vehicle.  Fact 13. She followed his orders when he instructed her to get out of his vehicle and lean against the hood of the patrol car with her hand behind her back.  Facts 21, 22.  She also followed his orders when he ordered her to give him her car keys, and then told her that he would not let her leave until he saw her license and registration.  Fact 22.  She then looked on as Deputy Caropino searched her purse and then searched her car.  Fact 23, 24, 28-30.

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

        At this time, Plaintiff began to be subject to increasingly lurid and terrifying sexual conduct by Caropino.  Specifically, following the search of her car, Caropino confronted Plaintiff stating "I couldn't find your license or registration but I did find some' – 'a pair of wet panties.  Can you explain this to me?"  Fact 33.  This shocked and terrified Plaintiff.  Fact 34.  Then, Deputy Caropino gave Plaintiff her keys back, but ordered her to remain, stating: "'Do not leave.  If you leave, you're going to get into trouble.  I could find you,'" Fact 37, 38.  He then said: "when I get back here, I'm going to fuck the shit out of you."  Fact 38.  This terrified Plaintiff, "at that time I was just completely in shock.  This man has a gun.  My life is in danger …"  Fact 39.

Terrified, Plaintiff continued to follow Deputy Caropino's orders and remained at her car, believing that he had never really left, and was watching her. Facts 41-45.  Though Plaintiff attempted to get help by calling family members, she was unable to reach anyone.  Id.  She then heard a banging on her window, and had a flashlight shined on her.  Facts 52-56.  When she rolled her window down, Deputy Caropino was there and he said: "unlock the door" and "I'm going to fuck the shit out of you."  Facts 58.  Deputy Caropino then proceeded to rape and sexually assault Plaintiff.  Facts 59-69.

When asked about all of these events, Deputy Caropino took the fifth to every question. Facts 71-74. ████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

Analogous to *Fontana*, Deputy Caropino's undisputed conduct here had no countervailing governmental interest. Rather, it was an unquestionable abuse of power and, under the circumstances, a horrifying and entirely unreasonable intrusions into Plaintiff's bodily integrity in violation of the Fourth Amendment. See *Fontana*, 262 F.3d at 881.

## VIII.  EVIDENCE OF PRIOR SEXUAL HARASSMENT, SEXUAL ASSAULTS AND RAPES COMMITTED BY DEPUTY CAROPINO PRIOR TO HIS RAPE OF PLAINTIFF FURTHER SUPPORTS PARTIAL SUMMARRY JUDGMENT

In further support of the conclusion that Deputy Caropino was acting under color of his authority at the time he raped Plaintiff and that this rape constituted a violation of her constitutional rights under the Fourth and Fourteenth Amendment

17

is evidence of prior rapes and sexual misconduct involving Deputy Caropino prior to Plaintiff.  Specifically, prior to his raping and sexually assaulting Plaintiff, Deputy Caropino used his position of authority as a sheriff's deputy to sexually assault and rape *multiple other women*.

The Federal Rules of Evidence specifically provide that evidence of other offenses of sexual assault may be admissible in a civil case predicated on a claim of sexual assault.  Fed. Rules of Evid. Rule 415(a); *Blind-Doan v. Sanders*, 291 F.3d 1079, 1082 (9th Cir. 2002).  Pursuant to Rule 415, "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, *the court may admit evidence that the party committed any other sexual assault* or child molestation. The evidence may be considered as provided in Rules 413 and 414."  Fed. Rules of Evid. Rule 415(a).

In *Blind-Doan*, a detainee sued a police officer after he sexually assaulted her.  While booked in jail, the officer had escorted the plaintiff back to her cell and according to the victim he told her he was going to "teach her a lesson" and inserted his police baton into her vagina.  *Blind-Doan*, 291 F.3d at 1081.  The officer denied the assault occurred.  At trial, the victim listed seventeen witnesses who would testify as to relevant prior sexual assaults by the officer.  Included among such testimony was testimony from one victim who alleged that "'prior to being booked at the Taft jail, Officer Sanders took her into a small room at the jail and tried to get her to have sex with him in exchange for letting her go free."  *Id*. at 1082.  The district court granted the defendant's motion in limine to exclude all of Plaintiff's evidence of prior sexual misconduct.  *Id*. at 1081. Reversing the district court's order in *Blind-Doan*, the Ninth Circuit highlighted the similarity between the sexual misconduct Plaintiff was proffering and the and relevance of the other attacks to dispute the officer's denial of the assault, the Court held that such evidence was admissible under FRE 415.  See also *Seeley v. Chase*, 443 F.3d 1290 (10th Cir. 2006) [even an *attempted* prior sexual assault may be admissible under

Rule 415; in permitting testimony from numerous victims, the Court noted
"[t]estimony of the other four women allegedly assaulted by Chase *is chilling*" -
testimony that the officer stopped a motorist twice, handcuffed her, asked if she
would have sex with him, and rubbed her breasts, and testimony that on another
occasion he took a juvenile to his car, pulled her pants and underwear down, and
shined a flashlight on her genitals, was sufficient to establish that officer took a
substantial step toward sexually assaulting the victims, warranting admission of
that testimony, as evidence of other acts of sexual assault under Rule 415].

Here too Deputy Caropino has taken the position, at least in the Internal
Affairs investigation, that his sexual encounters with these victims, including
Plaintiff, was *consensual*.  However, as in *Blind-Doan*, the evidence detailing the
similar non-consensual attacks on numerous other victims supports Plaintiff's
version of the events, and directly contradicts Deputy Caropino's contention that
his rape of Plaintiff was, in fact, consensual.

To begin with, perhaps most troubling of the prior victims is the sexual
assault and rape of T.L. in September 2013.  Fact 88.  Deputy Caropino arrested
T.L. for driving under the influence and after transporting her to the jail, and while
in the parking lot, Deputy Caropino ordered T.L. to touch his erect penis.  Id.  He
then took her cell phone and put his phone number in it.  Later on that same day,
arrived at her house in uniform and sexually assaulted and raped her.  Facts 88-95.
T.L. filed a government claim against the County of Orange and Deputy Caropino
in late February of 2014.  Fact 87.  T.L. was 18 years old at the time of the
incident.[1]  The sexual assault and rape of T.L. is therefore relevant and admissible
under FRE 415 given the similarities with the attack on Plaintiff.

---

[1] Amazingly, as reflected in the timeline detailed in the report of Plaintiff's Police
Expert, Jeffery Noble, despite knowing of T.L.'s claim *for months prior to the rape
of Ms. Curtin*, the County did nothing to remove Deputy Caropino from patrol.



11   A third victim named Jane Doe L.D. encountered Deputy Caropino in or

12   around June 2013, when, on her way home, she went through a Del Taco in Dana

13   Point.  Fact 106.  While in the drive through, L.D. saw Deputy Caropino in his

14   deputy sheriff's uniform, who she did not know, standing at the cash register

15   looking at her.  Fact 107.  After eating her food in her car in the parking lot of the

16   del taco, she was pulled over as she left the parking lot by Deputy Caropino who

17   was driving a patrol vehicle.  Fact 109.  Deputy Caropino approached L.D.s car

18   and began to engage in conversation with sexual overtones.  Fact 110. L.D. was

19   scared of Deputy Caropino, but when she resisted his advances, Deputy Caropino

20   began to question her about any alcohol she had consumed that night.  Facts 111-

21   13.  Deputy Caropino then tell her that he turned off all of his recording devices,

22   which scared her further, and proceeded to make sexually explicit comments to

23   L.D., reaching into her car and grope her genitals, and telling her to follow him.

24   Facts 113-14. L.D. understood that she was pulled over and was not free to go, and

25   believed that Caropino would use his position of power and authority to further

26   detain and arrest her unless she complied with his request.  Fact 115-16.  As such,

27   L.d. followed Caropino to a parking lot where he raped her.  Facts 117-18.

28       These victims, among others, of Deputy Corapino portray a pattern and

practice by which Caropino would target young vulnerable women, and use his position of power and authority to coerce them into having nonconsensual sex or sexual contact with him.  See Noble Report, 29-30.  Evidence detailing the similar non-consensual attacks on other victims further supports Plaintiff's uncontroverted version of the events.  The sheer similarity in the attack on Plaintiff with the other attacks supports admissibility.  The evidence of Deputy Caropino's prior sexual assaults falls within the ambit of admissible evidence under Rule 415 and is therefore admissible.

## IX.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant the instant motion in its entirety and enter partial judgment in her favor and against Defendants.

Dated: July 3, 2017                    ESNER, CHANG & BOYER


                                         /s/ Holly N. Boyer
                                       Holly N. Boyer
                                       *Attorney for Plaintiff,*
                                       ALEXA CURTIN

21