**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANA ALDEN FOX, SB# 119761
 E-Mail: Dana.Fox@lewisbrisbois.com
DAWN M. FLORES-OSTER, SB# 155722
 E-Mail: Dawn.Flores-Oster@lewisbrisbois.com
BARRY HASSENBERG, SB# 71136
 E-Mail: Barry.Hassenberg@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant COUNTY OF
ORANGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN, | CASE NO. 8:16-cv-00591-SVW-PLA |
| | The Hon. Stephen V. Wilson |
| Plaintiff, | |
| | **OPPOSITION TO PLAINTIFF'S** |
| vs. | **MOTION FOR PARTIAL** |
| | **SUMMARY JUDGMENT OF** |
| COUNTY OF ORANGE; and DOES 1 | **ISSUES** |
| through 50, | |
| | *[Filed concurrently with Response to* |
| Defendants. | *Separate Statement [Unredacted];* |
| | *Response to Separate Statement* |
| | *[Redacted]; Request for Judicial* |
| | *Notice; Hand-Delivered Submission of* |
| | *CDs In Support of Defendant's* |
| | *Opposition; Objection to the* |
| | *Declaration of Jeffrey Noble;* |
| | *Objection to the Declaration of L.D.;* |
| | *Declarations of Barry Hassenberg and* |
| | *Robert Fonzi in Support thereof]* |
| | |
| | **Date:  July 31, 2017** |
| | **Time: 1:30 p.m.** |
| | **Dept.: Courtroom 10A** |
| | |
| | FPTC Date:    July 24, 2017 |
| | Trial Date:    August 1. 2017 |

///

///

///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

1   Defendant, COUNTY OF ORANGE ("defendant") hereby submits its Opposition to

2   plaintiff Alexa Curtin's ("plaintiff") Motion for Partial Summary Judgment of issues

3   ("Motion").

4

5   DATED: July 17, 2017                LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8                                       By:    _s/s Dawn M. Flores-Oster_
                                               Dana Alden Fox
9                                              Barry Hassenberg
                                               Dawn M. Flores-Oster
10                                             Attorneys for Defendant COUNTY OF
                                               ORANGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION. ........................................................................ 1

II.    PLAINTIFF FAILED TO PROVIDE THE REQUISITE 28 DAY
       NOTICE AND FAILED TO ADEQUATELY MEET AND CONFER. ......... 2

III.   LEGAL STANDARD. ................................................................. 3

IV.    PLAINTIFF'S NOTICE IS NOT TIED TO ANY CLAIM FOR
       RELIEF AGAINST COUNTY DEFENDANT, AND, IF THE
       MOTION IS GRANTED, PLAINTIFF CANNOT SIMPLY
       PROCEED TO ADJUDICATE DAMAGES. ..................................... 4

V.     CAROPINO'S ANSWER DENYING HE WAS ACTING UNDER
       COLOR OF LAW IS A BINDING JUDICIAL ADMISSION, AND
       CREATES A TRIABLE ISSUE OF FACT AS TO PLAINTIFF'S
       ALLEGEDLY UNOPPOSED ASSERTIONS OF SEXUAL
       ASSAULT. .............................................................................. 8

VI.    THERE ARE TRIABLE ISSUES OF FACT RELATIVE TO
       WHETHER CAROPINO WAS ACTING UNDER COLOR OF
       AUTHORITY ......................................................................... 10

VII.   THERE IS NO RECOGNIZED PRINCIPLE OF LAW REFERRED
       TO AS A "NATURAL AND CONTINUOUS EXTENSION OF
       EXTENSIVE PRECEDING INTERACTIONS" ............................... 17

VIII.  THE COURT SHOULD NOT DRAW A REASONABLE
       INFERENCE AGAINST COUNTY DEFENDANT FROM
       CAROPINO'S FIFTH AMENDMENT ASSERTION. ....................... 19

IX.    THE DECISONAL AUTHORITY ON WHICH PLAINTIFF BASES
       HER UNSUPPORTED CONTENTION THERE WAS A VIOLATION
       OF THE FOURTH AND FOURTEENTH AMENDMENT
       VIOLATIONS IS DISTINGUISHABLE. ....................................... 22

X.     CONCLUSION ...................................................................... 23

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## Federal Court Cases

*Aguilera v. Baca,*
    394 F. Supp. 2d 1203 (C.D. Cal. Sept. 15, 2005) ..........................................18

*Allen v. City of Portland,*
    73 F.3d 232 (9th Cir. 1995).............................................................................18

*American Title Ins. Co. v. Lacelaw Corp.,*
    861 F.2d 224 (9th Cir. 1988).........................................................................8, 9

*Ayala v. Cnty. of Imperial,*
    2017 U.S. Dist. LEXIS 16508 (S.D. Cal. Feb. 3, 2017) .................................7

*Barsamian v. City of Kingsburg,*
    597 F. Supp. 2d 1054 (E.D. Cal. Jan. 28, 2009) ............................................5

*Baxter v. Palmigiano,*
    425 U.S. 308 (1976) ......................................................................................21

*Blair v. City of Pomona,*
    223 F.3d 1074 (9th Cir. 2000).........................................................................8

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
    531 U.S. 288 (2001) ......................................................................................11

*Brown v. Texas,*
    443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979) .................................18

*Canton v. Harris,*
    489 U.S. 378 (U.S. Feb. 28, 1989) .................................................................7

*Celotex Corporation v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................3

*Chew v. Hybl,*
    1997 U.S. Dist. LEXIS 24547 (N.D. Cal. 1997)............................................4

*Dang Vang v. Toyed,*
    944 F.2d 476 (9th Cir. 1991)......................................................12, 13, 14, 15

*DeShaney v. Winnebago Cy. Dep't of Social Serv.,*
    489 U.S. 189 (1989) ................................................................................22, 23

*Doe ex rel. Rudy-Glanzer v. Glanzer,*
    232 F.3d 1258 (9th Cir. 2000)........................................................................20

*Ferguson v. Neighborhood Housing Services,*
    780 F.2d 549 (6th Cir. 1986)...........................................................................8

*Fontana v. Haskin,*
    262 F.3d 871 (9th Cir. 2001)..........................................7, 18, 19, 22, 23

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1
ii
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*Gantt v. City of Los Angeles,*
   717 F.3d 702 (9th Cir. 2013) ................................................................ 6

*Gutierrez v. Holder,*
   662 F.3d 1083 (9th Cir. Nov. 7, 2011) .................................................. 21

*Hashagen v. United States,*
   283 F.2d 345 (9th Cir. 1960) .............................................................. 19

*Hawkins v. Holloway,*
   316 F.3d 777 (8th Cir. 2003) ................................................................ 6

*Hechavarria v. City & County of San Francisco,*
   2010 U.S. Dist. LEXIS 97764, 8 (N.D. Cal. Sept. 17, 2010) ................ 4

*In re Brocade Sec. Litig.,*
   2008 U.S. Dist. LEXIS 38885 (N.D. Cal. May 13, 2008) ..................... 4

*In re Fordson Engineering Corp.,*
   25 Bankr. 506 (Bankr. E.D. Mich. 1982) .............................................. 9

*LaLonde v. County of Riverside,*
   204 F.3d 947 (9th Cir. 2000) ................................................................ 3

*Lugar v. Edmondson Oil Co., Inc.,*
   457 U.S. 922 (1982) .................................................................... 11, 12

*Makaeff v. Trump University, LLC,*
   736 F.3d 1180 (9th Cir. 2013) ............................................................. 3

*Mazzetti v. Bellino,*
   2014 U.S. Dist. LEXIS 116797 (E.D. Cal. Aug. 21, 2014) ................ 19

*McDade v. West,*
   223 F.3d 1135 (9th Cir. 2000) ........................................................... 11

*Minter v. Wells Fargo Bank, N.A.,*
   762 F.3d 339 (4th Cir. 2014) ............................................................... 9

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) ............................................................................ 8

*Monell v. Department of Social Services,*
   436 U.S. 658 (1978) ............................................................................ 6

*Robins v. Harum,*
   773 F.2d 1004 (9th Cir. 1985) ........................................................... 18

*Murphy v. Chicago Transit Authority,*
   638 F. Supp. 464 (N.D. Ill. 1986) ................................................ 14, 15

*Nationwide Life Ins. Co. v. Richards,*
   541 F.3d 903 (9th Cir. 2008) ............................................................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

iii
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*Ouzts v. Maryland Nat'l Ins. Co.,*
   505 F.2d 547 (9th Cir. 1974)......................................................................7

*Pierce v. Multnomah County,*
   76 F.3d 1032 (9th Cir. 1996)....................................................................18

*RAD Services, Inc. v. Aetna Casualty and Surety Co.,*
   808 F.2d 271 (3rd Cir. 1986)....................................................................20

*Ramirez-Lluveras v. Pagan-Cruz,*
   857 F. Supp. 2d 221 (D.P.R. Apr. 23, 2012)............................................4

*Sanchez v. City of Fresno,*
   2014 U.S. Dist. LEXIS 67863 (E.D. Cal. May 16, 2014)..........................6

*Savin v. City & Cty. of S.F.,*
   No. 16-cv-05627-JST, 2017 U.S. Dist. LEXIS 96720 (N.D. Cal. June
   22, 2017)...................................................................................................11

*Screws v. United States,*
   325 U.S. 91 (1945) ..................................................................................12

*SEC v. Graystone Nash, Inc.,*
   25 F.3d 187 (3d Cir. 1994)......................................................................20

*Shields v. Tracy,*
   2005 U.S. Dist. LEXIS 49157 (E.D. Cal. June 21, 2005).........................6

*Sialoi v. City of San Diego,*
   823 F.3d 1223 (9th Cir. 2016)..................................................................17

*Rendell-Baker v. Kohn,*
   457 U.S. 830 (1982) ................................................................12, 13, 14

*Taylor v. List,*
   880 F.2d 1040 (9th Cir. Nev. July 17, 1989) .....................................8, 21

*Terry v. Ohio,*
   392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) ..............................18

*United States v. I.E.V.,*
   705 F.3d 430 (9th Cir. 2012)....................................................................18

*United States v. Lanier,*
   520 U.S. 259, 117 S.Ct. 1219, 137 L. Ed. 2d 432 (1997) .........................6

*Van Ort v. Estate of Stanewich,*
   92 F.3d 831 (9th Cir. 1996)...............................................7, 11, 12, 13

*Washington v. Lambert,*
   98 F.3d 1181 (9th Cir. 1996)....................................................................18

*West v. Atkins,*
   487 U.S. 42 (1988) ..................................................................................11

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*White v. Arco/Polymers, Inc.*,
   720 F.2d 1391 (5th Cir. 1983)...................................................................9

*Ybarra v. Reno Thunderbird Mobile Home Village*,
   723 F.2d 675 (9th Cir. 1984)..................................................................21

State Court Cases

*Mary M. v. City of Los Angeles*,
   54 Cal.3d 202 (1991)....................................................................15, 16

*Tormasi v. Hayman*,
   No. CIV. 08-4950 (D.N.J. 2012)...............................................................3

Federal Statutory Authorities

42 U.S.C. § 1983.................................................................................11

State Rules and Regulations

Local Rule 6-1 ......................................................................................2

Local Rule 7-3 ......................................................................................3

Additional Authorities

2002 *Cal. App. Unpub. LEXIS* (Ct. App. Apr. 16, 2002)...................15, 16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION.**

This Motion should never have been brought. It is rife with triable issues. Plaintiff's representations and analyses of the status of law are bereft of accuracy. The alleged uncontroverted facts fail to correspond to the evidence in purported support of that fact. Referenced evidence is missing, or misquoted. In many instances, the alleged uncontroverted fact is, in actuality, not a fact at all, but an improper legal conclusion. Proffered evidence is wholly objectionable, and repeatedly violates the rule against hearsay; in other instances significant, dispositive evidence equally available to plaintiff is completely ignored.  Further, defendant's liability expert, Robert Fonzi, speaks directly to the contentions offered by plaintiff's liability expert, Jeffrey Noble (whose declaration is also wholly objectionable), and easily disputes them, thereby creating additional triable issues.

Moreover, plaintiff did not provide adequate notice of the Motion when she did not serve defendant with both sealed documents and unredacted documents, including the Motion and the Statement of Uncontroverted Facts. She did not, as is mandated by the Central District Local Rules and Rule 56, adequately meet and confer where there was a meaningful exchange of facts and decisional authority. This Motion is set to be heard the day before trial, was filed late the day before a National holiday, and is supported by draft deposition transcripts.

Even more confounding, in an effort to overcome the plain and indisputable conclusion plaintiff was *not* detained, and therefore did *not* suffer a violation of her rights under the Fourth Amendment, plaintiff unabashedly creates, out of whole cloth, a legal principle that finds no support in the law, namely, that plaintiff was the victim of a "natural and continuous extension of extensive preceding interactions," whatever that indecipherable phrase is meant to convey.

Perhaps most importantly, plaintiff maintains she can, based on the two issues on which she seeks this Court's adjudication, namely, that (1) Deputy Nicholas

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

1

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Caropino ("Caropino") was acting under the color of his authority at all times during

2    his interactions with Plaintiff Alexa Curtin on the subject night of the incident, and

3    (2) that the uncontroverted facts demonstrate Caropino's sexual assault and rape of

4    Plaintiff Alexa Curtin violated her constitutional rights under the Fourth and

5    Fourteenth Amendments, proceed directly to the question of damages. These

6    obfuscatory statements, which have no nexus to any claim asserted in the operative

7    Complaint, belie an enormous misapprehension of plaintiff's burden of proof

8    against Caropino and the County in this §1983 action, improperly circumvent the

9    critical question of notice and causation, and presuppose the existence of deficient

10   policies although none are ever identified. Further, the evidence is unquestionably

11   disputed, particularly as it pertains to the color of law argument.

12       In short, the Motion is precipitously close to one which is frivolous and

13   proffered in bad faith, and should be, it is respectfully suggested, denied in the first

14   instance, on both procedural and substantive grounds.

15   **II.    PLAINTIFF FAILED TO PROVIDE THE REQUISITE 28 DAY**

16   **NOTICE AND FAILED TO ADEQUATELY MEET AND CONFER.**

17       Plaintiff did not give proper notice under Local Rule 6-1 for her partial

18   summary judgment motion. On the eve of trial, Plaintiff files a partial summary

19   judgment motion on July 3, 2017, at 9:37 p.m., the day before a national holiday.

20   Plaintiff notices the motion for hearing on July 31, 2017—the day before trial.

21   Pursuant to Local Rule 6-1, Defendant's opposition to Plaintiff's partial summary

22   judgment motion is due 21 days before the hearing date—Monday, July 10, 2017.

23   Plaintiff, however, filed and served only a redacted version of her partial summary

24   judgment motion and statement of uncontroverted facts and conclusions of law. At

25   approximately 5:00 p.m. on Wednesday, July 5, 2017, Plaintiff served Defendant

26   with unredacted versions, and this did not occur until after Defendant met and

27   conferred on this application and alerted Plaintiff's counsel to the error. Indeed,

28   Defendant could not meaningfully respond and oppose her motion without the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

2

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  unredacted version of the motion or statement of uncontroverted facts and

2  conclusions of law. Defendant is entitled to a full and complete notice period to

3  adequately oppose the motion, and defendant will request that the Court strike it.

4      Further, pursuant to Local Rule 7-3, Plaintiff failed to meaningfully meet and

5  confer on her partial summary judgment motion. Pursuant to Local Rule 7-3,

6  counsel must first contact opposing counsel to discuss thoroughly, preferably in

7  person, the substance of any contemplated motion and any potential resolution. The

8  meet and confer must take place at least seven days prior to the filing of the motion.

9  Plaintiff simply mentioned the summary judgment motion without partaking in any

10  meaningful discussion of issues, decisional authority or facts upon which the motion

11  would be based. The Court's attention is respectfully directed to defendant's *Ex*

12  *Parte* Application requesting that the Court strike plaintiff's Motion, Docket No.

13  144, at ¶¶ 4-5 of the Declaration of Dawn M. Flores-Oster.

14  **III.   LEGAL STANDARD.**

15      Rule 56 of the Fed. Rules of Civ. Proc. authorizes motions for partial

16  summary judgment only when there is no genuine issue as to any material fact. The

17  moving party bears the initial burden of establishing the absence of a triable issue of

18  material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).

19  "Conversely, to avoid summary judgment, the nonmovant need only designate

20  specific facts showing that there is a genuine issue for trial." *Makaeff v. Trump*

21  *University, LLC*, 736 F.3d 1180, 1189 (9th Cir. 2013). "If conflicting inferences

22  may be drawn from the facts, the case must go to the jury." *LaLonde v. County of*

23  *Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). There is a genuine issue of material

24  fact whether Defendant Caropino ("Caropino") acted in the course and scope of his

25  authority at the time plaintiff alleges she was sexually assaulted by him, and

26  plaintiff's motion must be denied.

27      Plaintiff's citation to *Tormasi v. Hayman*, No. CIV. 08-4950, at *4 (D.N.J.

28  2012) is inapposite, in that the defendant proffered no argument contesting color of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1                                3
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  law. See, also, *Ramirez-Lluveras v. Pagan-Cruz*, 857 F. Supp. 2d 221, 229-30

2  (D.P.R. Apr. 23, 2012) (defendant effectuating an arrest); *Hechavarria v. City &*

3  *County of San Francisco*, 2010 U.S. Dist. LEXIS 97764, **5-6, 8 (N.D. Cal. Sept.

4  17, 2010) (court determined it could not as a matter of law find defendant acted

5  under color of law); *In re Brocade Sec. Litig.*, 2008 U.S. Dist. LEXIS 38885 (N.D.

6  Cal. May 13, 2008) (course and scope case unrelated to the Constitution); *Chew v.*

7  *Hybl*, 1997 U.S. Dist. LEXIS 24547 (N.D. Cal. 1997) (a vicarious liability action).

8  **IV.    PLAINTIFF'S NOTICE IS NOT TIED TO ANY CLAIM FOR RELIEF**

9  **AGAINST COUNTY DEFENDANT, AND, IF THE MOTION IS**

10  **GRANTED, PLAINTIFF CANNOT SIMPLY PROCEED TO**

11  **ADJUDICATE DAMAGES.**

12  Plaintiff apparently believes she can establish the liability of both defendants

13  the County and Caropino by and through this Motion, "with the amount of damages

14  to be proved at trial." (*See* Motion, p. 6:5-8.) This is a completely unsupported and

15  inaccurate interpretation of the law, and plaintiff's identification of the issues to be

16  adjudicated as set forth in the Notice portion of the Motion make it clear she cannot

17  proceed to damages if the Motion is granted—far from it.

18  At page 2 of her Motion, plaintiff states she seeks adjudication of the

19  following issues: "(1) The uncontroverted facts demonstrate that Deputy Nicholas

20  Caropino was acting under the color of his authority at all times during his

21  interactions with Plaintiff Alexa Curtin on the subject night of the incident; and (2)

22  The uncontroverted facts demonstrate … Caropino's sexual assault and rape of

23  Plaintiff … violated her constitutional rights under the Fourth and Fourteenth

24  Amendments." Neither of the "claims and issues" identified are tied to any Claim

25  for Relief identified in the operative Complaint, plaintiff's Second Amended

26  ("SAC"), Docket No. 29, of which there are three: (1)Violation of Civil Rights

27  under section 1983 (Unreasonable Seizure) against Caropino; (2) a substantive due

28  process claim against Caropino; and (3)  a *Monell* claim against the County.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1
4
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Examining 9.20 of the Ninth Circuit Model Civil Instructions ("Model Instructions"), which would appear to be the most closely associated statement of law as to plaintiff's Fourth Amendment claim against Caropino, plaintiff is required not only to prove she was seized, but also whether a "reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his or her business." In distinct contrast, it is undisputed plaintiff requested the deputies return to her vehicle in an hour to "check on her." While in her vehicle, she testified she attempted to contact others to pick her up but was unsuccessful. In other words, a reasonable juror could conclude from an objective perspective plaintiff was under no restriction to leave because she asked someone to pick her up (presumably, had she made contact, she would, and could, have left), or, that she willingly wished to stay and have the Deputies return to "check up on her."[1] Plaintiff cannot unequivocally prove Caropino acted "under the color of his authority" because it is disputed whether she was free to leave.

Examining 9.5 of the Model Instructions, which identified the factors necessary to prove a *Monell* claim, at factors three and four, plaintiff must also prove the County both "acted pursuant to an expressly adopted official policy or a

_____

[1]  In furtherance of that proposition, plaintiff's assessment of her ability to leave must be examined under an objective finding. "The dispositive inquiry is whether, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave.' *Zamudio*, 43 Cal. 4th at 341. . . .When, as here, an individual has no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. *Id*. . . . .'The test is objective, not subjective; it looks to the intent of the police as objectively manifested to the person confronted.' *Id*. . . . .Thus, an 'officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant.'" *Barsamian v. City of Kingsburg,* 597 F. Supp. 2d 1054, 1065 (E.D. Cal. Jan. 28, 2009).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1                                             5
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

widespread or longstanding practice or custom of the defendant," and the "defendant's official policy or widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by the defendant's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the plaintiff's injury." Indeed, liability against an entity can only arise from constitutional violations caused by an official custom or policy of the entity. *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which is plaintiff's burden to prove. *Sanchez v. City of Fresno*, 2014 U.S. Dist. LEXIS 67863 (E.D. Cal. May 16, 2014). Yet, not a *single* allegedly uncontroverted fact even remotely addresses the existence of a policy or procedure, let alone a deficient one. Likewise, plaintiff does not ask the Court to determine if the (unnamed) policy was a moving force behind the alleged injury. Given the absence of those issues in the Notice, plaintiff cannot therefore proceed directly to damages.

Notably, plaintiff also never requests the Court adjudicate any of the factors necessary to prove an alleged Fourteenth Amendment violation. For example, she must ask the Court Caropino's actions "shocks the conscience," but plaintiff does not ask the Court to adjudicate that issue in her favor. *See, e.g.*, *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013). To the extent she does, the Fourth Amendment, however, appears to be the preferred analysis. *See Shields v. Tracy*, 2005 U.S. Dist. LEXIS 49157, 24-25 (E.D. Cal. June 21, 2005). In *Shields*, the Court held:

> Allegations of sexual assault by a governmental officer may, in some circumstances, serve as the basis of a substantive due process claim. *Hawkins v. Holloway*, 316 F.3d 777, 784 (8th Cir. 2003). However, Shields's claim is best analyzed under the Fourth Amendment. "[I]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.", 523 U.S. at 843 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L. Ed. 2d 432 (1997)). Noting this rule, the Ninth Circuit has held that while sexual misconduct by a police officer toward another is generally analyzed under the Fourteenth Amendment,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

6

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  such allegations of sexual misconduct by a police officer during a
2  continuing seizure are more properly analyzed under the Fourth
   Amendment. *Fontana v. Haskin*, 262 F.3d 871, 881-82 (9th Cir. 2001).

3     As discussed above, plaintiff argues her claim should be analyzed under the

4  Fourth Amendment, since she claims she was seized at the time of the incident.

5  Consequently, although she pleads it, the Fourteenth Amendment has no

6  application. Further, purely private conduct is not covered under § 1983. *See Ouzts*

7  *v. Maryland Nat'l Ins. Co*., 505 F.2d 547, 550 (9th Cir. 1974); *see also Van Ort v.*

8  *Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (plaintiffs "had no

9  constitutional right to be free from [off-duty deputy's] deprivations of their

10 constitutional rights").

11    Plaintiff also argues that "evidence of prior rapes and sexual misconduct

12 involving Deputy Caropino prior to Plaintiff" further supports the conclusion

13 Caropino acted under color of law at the time he allegedly raped plaintiff. (Motion,

14 pp. 17-18.) Again, while plaintiff certainly contends this evidence is admissible, she

15 fails to appreciate she must first prove the unifying proposition there was a deficient

16 policy or practice which was in place at the time of each of the alleged assaults, and

17 that the deficient policy or procedure was the moving force behind the each of the

18 alleged assaults to hold the County accountable. In no manner does plaintiff even

19 make a passing effort to do so, thereby failing to establish the predicate, essential

20 fact which would at least *theoretically* render the alleged other assaults admissible.[2]

21

_____

22 [2] As to the question of the admissibility of these alleged other assaults, plaintiff
   consistently employs a "knew or should have known" standard to prove notice,
23 which is a principle firmly based in negligence. Negligence, however, has no
   application in a §1983 action. See, for example, *Ayala v. Cnty. of Imperial*, 2017
24 U.S. Dist. LEXIS 16508 (S.D. Cal. Feb. 3, 2017), discussing pleading standards on a
   Motion to Dismiss: "A lesser flaw is the FAC's repeated use of a 'knew or should
25 have known' standard for *Monell* liability. Normally 'should have known' indicates
   a negligence standard. But negligence is not enough to establish a claim under §
26 1983. *Dougherty*, 654 F.3d at 900." As the Supreme Court commented in *Canton v.*
   *Harris*, 489 U.S. 378, 392 (U.S. Feb. 28, 1989) "plainly, adequately trained officers
27 occasionally make mistakes; the fact that they do says little about ... the legal basis
   for holding the city liable…. To adopt lesser standards of fault and causation would
28 (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

It is an indisputable proposition local governments may not be sued "for an injury inflicted solely by its employees or agents," and it is only "when execution of a government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). If the alleged deprivation cannot be attributed to conduct performed as official policy of the governmental body, no *Monell* cause of action can be stated. *Blair v. City of Pomona*, 223 F.3d 1074 (9th Cir. 2000).

## V.    CAROPINO'S ANSWER DENYING HE WAS ACTING UNDER COLOR OF LAW IS A BINDING JUDICIAL ADMISSION, AND CREATES A TRIABLE ISSUE OF FACT AS TO PLAINTIFF'S ALLEGEDLY UNOPPOSED ASSERTIONS OF SEXUAL ASSAULT.

As stated in *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988), "Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." *Ferguson v. Neighborhood Housing Services*, 780 F.2d 549, 551 (6th Cir. 1986) (citations omitted). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with

---

open municipalities to unprecedented liability under § 1983.  In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident. See *Oklahoma City v. Tuttle*, 471 U.S., at 823 (opinion of Rehnquist, J.). Thus, permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities -- a result we rejected in *Monell*, 436 U.S., at 693-694."  See, and compare, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. Nev. July 17, 1989), confirming a supervisor must have "participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." "Knew or should have known" is not the applicable standard.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

8

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   the need for proof of the fact." *In re Fordson Engineering Corp.*, 25 Bankr. 506, 509

2   (Bankr. E.D. Mich. 1982). Factual assertions in pleadings and pretrial orders, unless

3   amended, are considered judicial admissions conclusively binding on the party who

4   made them. *See White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983);

5   *Fordson, 25 Bankr.* at 509."

6       The *American Title* case then addressed a question of first impression:

7   whether "statements of fact contained in a brief may be considered admissions of

8   the party in the discretion of the district court." *Id*. The statement at issue was one

9   made in a party's trial brief. The court concluded the district court has discretion to

10  consider statements of fact in a brief as a party's admission. *Id*. at 227. Thus, facts

11  that are admitted by a party (either in pleadings or briefs) are judicial admissions

12  that bind the party throughout the litigation and have the "effect of withdrawing a

13  fact from issue and dispensing wholly with the need for proof of the fact." *Minter v.*

14  *Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014). "A statement in a

15  party's answer is a binding judicial admission and cannot be controverted by that

16  party." *Viacom Int'l, Inc. v. MGA Entm't, Inc.*, 2016 U.S. Dist. LEXIS 93259, at *14

17  (C.D.Cal. July 18, 2016, No. CV 15-9621-R).

18      In *VIA Design Architects, PC v. U.S. Dev. Co., LLC*, 2014 U.S. Dist. LEXIS

19  156075, at *15-17 (E.D. Va. Nov. 4, 2014, No. 2:13cv555), the court engaged in a

20  lengthy discussion of the subject of judicial admissions when it concluded that one

21  of the parties had made a binding admission of fact (that it was a party to the

22  contract at issue) in its answer and counterclaim where it "admitted entering into the

23  contract, but denied that it had breached same."

24      In his Motion to be Relieved of Default, Caropino filed a verified Answer

25  which the Court adopted when granting the unopposed Motion.  (See Docket Nos.

26  67 and 96.) In it, Caropino judicially admits the following denials, by paragraph: 16.

27  Denies ordering plaintiff into patrol vehicle and driving her to her vehicle; 17.

28  Denies searching purse and vehicle and questioning plaintiff about her underwear;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

9

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

18. Denies telling plaintiff to stay in her vehicle and she was not free to leave; 20. Denies returning to plaintiff's vehicle out of uniform and in his personal vehicle. 21. Denies entering plaintiff's vehicle and telling her "I am going to fuck the shit out of you." 22. Denies groping and digitally penetrating plaintiff. 23. Denies forcing plaintiff to perform oral copulation. 24. Denies having nonconsensual sexual intercourse with plaintiff. 25. Denies partially ejaculating in plaintiff and the seat of plaintiff's car. 26. Denies asking plaintiff for her telephone number so they could "do this again." 9. Denies acting in course and scope with employment for the County. 31- 39. Denies *Monell* liability re: training, scope, etc., and 29. Denies plaintiff was unarmed, defenseless and resisted. The Court can consider these denials as judicial admissions which create triable issues of fact surrounding the alleged assault. See Uncontroverted Fact Nos. 4, 13, 24, 27, 28, 29, 30, 33, 37, 38, 39, 40, 44, 53, 54, 56, 58, 59, 60, 61, 63, 64, 65, 66, 67, 68, 69, 73, 74, 77, 78, 87 and 135. Additional triable issues of fact are therefore created.

## VI. <u>THERE ARE TRIABLE ISSUES OF FACT RELATIVE TO WHETHER CAROPINO WAS ACTING UNDER COLOR OF AUTHORITY</u>

Plaintiff argues that uncontroverted facts establish Caropino "acted under color of authority" at the time he allegedly sexually assaulted her. Plaintiff claims that "it was through his authority as an officer that Deputy Caropino detained Ms. Curtin at her car, ordered her to remain at the car until he returned, and eventually ordered her to let him in the car where he thereafter raped and assaulted her." (Motion, p. 8; Facts 6-14, 21-24, 28-30, 33-41, 52-69.) According to plaintiff, "[t]he fact that Deputy Caropino took off his uniform shirt and returned in his own car does not transmute the circumstances wherein Deputy Caropino used his position and authority as an officer to sexually assault and rape Plaintiff." (Motion, pp. 8-9.) Plaintiff is wrong on the facts and law. There are triable issues of fact whether Caropino acted under color of law. Plaintiff also mistakenly cites to "on-duty" case

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

10

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  authority to establish color of state law even though plaintiff concedes that Caropino
2  alleged acts occurred while off-duty.

3      To establish a prima facie case under 42 U.S.C. § 1983, the plaintiff must
4  demonstrate proof that (1) the action occurred "under color of law" and (2) the
5  action resulted in a deprivation of a constitutional right or a federal statutory right.
6  *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).

7      "The traditional definition of acting under color of state law requires that the
8  defendant in a § 1983 action have exercised power possessed by virtue of state law
9  and made possible only because the wrongdoer is clothed with the authority of  state
10 law." *McDade*, 223 F.3d at 1139-40 (additional quotations and citations omitted).
11 "'It is firmly established that a defendant in a § 1983 suit acts under color of state
12 law when he abuses the position given to him by the State. Thus, generally, a public
13 employee acts under color of state law while acting in his official capacity or while
14 exercising his responsibilities pursuant to state law.'" *Id*. at 1140 (quoting *West v.*
15 *Atkins*, 487 U.S. 42, 49-50 (1988)).

16     If a government officer does not act within his scope of employment or under
17 color of state law, then that government officer acts as a private citizen. *Van Ort v.*
18 *Estate of Stanewich*, 92 F.3d at 835; *see also Savin v. City & Cty. of S.F.*, No. 16-cv-
19 05627-JST, 2017 U.S. Dist. LEXIS 96720, at *12 (N.D. Cal. June 22, 2017)
20 ("government employment is not sufficient on its own to show that an individual
21 was acting under color of state law"). The acts, therefore, must be performed while
22 the officer is acting, purporting, or pretending to act in the performance of his or her
23 official duties. *See Van Ort v. Estate of Stanewich*, 92 F.3d at 838; *see also*
24 *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 309
25 (2001) ("[S]tate action is an element of a § 1983 claim."). "[M]isuse of power,
26 possessed by virtue of state law and possible only because the wrongdoer is clothed
27 with the authority of state law, is action taken 'under color of state law.'" *Lugar v.*
28 *Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982) (additional quotations and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  citations omitted).

2      The Court also has required that the acts of state employees be under
3  "pretense" of some state law. *Screws v. United States*, 325 U.S. 91, 111 (1945).
4  "The pretense is lacking if the wrongful act is 'not in any way related to the
5  performance of the duties of the state employee.'" *Dang Vang v. Toyed*, 944 F.2d
6  476, 479 (9th Cir. 1991) (additional citation omitted). "The ultimate issue in
7  determining whether a person is subject to suit under § 1983 is the same question
8  posed in cases arising under the Fourteenth Amendment: is the alleged infringement
9  of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S.
10 830, 838 (1982) (quoting *Lugar*, 457 U.S. at 937).

11     Here, there are triable issues of fact of what occurred during the time
12 Caropino was off-duty. For example, defendant produced evidence establishing that
13 it was plaintiff that requested Deputies return to check on her. It is reasonably
14 argued that at plaintiff's request, Caropino returned to check on her when he was
15 off-duty. Defendant also relies on computer-generated evidence showing Caropino
16 "clocked out" before the alleged assault occurred. Caropino's verified answer
17 disputes all of plaintiff's alleged claims of sexual assault. Finally, Plaintiff's own
18 Complaint confirms the proposition the investigation had concluded at the time of
19 the alleged assault, and that Caropino was in his own vehicle, and out of uniform.
20 (*See* SAC, at ¶¶15, 20.)

21     *Van Ort v. Estate of Stanewich*, 92 F.3d 831, an off-duty case, is instructive.
22 In *Van Ort*, officers conducted a narcotics search at the plaintiffs' home. During the
23 course of the search, the defendant officer required one of the plaintiffs to open a
24 safe, which contained cash, jewelry and coins. The defendant officer returned to the
25 home later and robbed plaintiffs of the contents of the safe. During the robbery, the
26 police entered and shot and killed the defendant officer not knowing who he was.
27 Plaintiffs sued the decedent officer's estate, the county and sheriff's office under §
28 1983 and several state law claims. The trial court granted the county's summary

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

12

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   judgment motion on plaintiffs' federal and state law claims for vicarious, respondeat

2   superior liability. After a jury trial, the jury returned a special verdict finding the

3   county's official policies were deliberately indifferent and deprived plaintiffs of

4   their constitutional rights. The jury also returned a verdict against the decedent

5   officer's estate. The trial court granted the county's judgment as a matter of law the

6   officer was not acting under color of law and the evidence did not support the jury's

7   findings of causality and deliberate indifference. Plaintiffs appealed. *Id*. at 831-35.

8       The Ninth Circuit affirmed the district court's finding that the officer did not

9   act under color of state law. "The district court was not required to find that

10  Stanewich acted under color of state law merely because he was a law enforcement

11  officer." *Van Ort*, 92 F.3d at 838. "Only if [the officer's] actions were in some way

12  related "to the performance of his official duties," [citation], could his acts be fairly

13  said to be under color of state law." *Id*. The court also rejected plaintiffs' argument

14  that because one of the plaintiff's recognized him as a police officer, that

15  recognition somehow rendered his acts under color of state law. "Merely because

16  [the plaintiff] recognized [the officer], however, would not make the attack under

17  color of law." *Id*. at 839.

18      Likewise, here, Caropino first met plaintiff when he on-duty and performing

19  his official duties. Caropino left, but returned when he was off-duty, in civilian

20  clothing and in his own vehicle. Indeed, merely because plaintiff recognized

21  Caropino as an officer when he allegedly returned to plaintiff's car does not make

22  the sexual assault under color of law. *Van Ort*, 92 F.3d at 838.

23      Plaintiff's reliance on *Dang Vang v. Toyed*, 944 F.2d 476, an on-duty case, is

24  misplaced. *Dang Vang* does not support plaintiff's contention that Caropino acted

25  under color of state law. In *Dang Vang*, the plaintiffs, Hmong refugees from Laos,

26  sued a Washington State employee under § 1983, asserting he raped them during the

27  course of his employment. *Id*. at 478. The defendant was responsible for

28  interviewing and finding refugees suitable employment. The defendant would

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  contact the plaintiffs under the pretext of potential employment opportunities. The

2  defendant raped each plaintiff during these meetings related to the provision of

3  services pursuant to his state employment. The trial resulted in a verdict in

4  plaintiffs' favor. The defendant appealed asserting there was insufficient evidence to

5  support a jury conclusion that the defendant acted under color of state law. *Id.*

6      The Ninth Circuit held that there was sufficient evidence to support the jury's

7  conclusion that a Washington state employee "responsible for interviewing and

8  finding refugees suitable for employment" acted under color of law when he raped

9  refugees who had contacted him in order to find employment. *Dang Vang*, 944 F.2d

10 at 479. The court concluded that "[t]he jury could have found that each plaintiff was

11 raped during a meeting with [the defendant] related to the provision of services

12 pursuant to his state employment." *Id.* at 480. As a result, the court decided that "the

13 evidence was sufficient to lead the jury to conclude [the defendant] *acted in abuse of*

14 *his state authority*, and to find that he acted under color of state law in raping the

15 plaintiffs . . ." *Id.* (emphasis in original).

16     The Ninth Circuit distinguished the facts of *Dang Vang* from another case,

17 *Murphy v. Chicago Transit Authority*, 638 F. Supp. 464 (N.D. Ill. 1986). *Dang*

18 *Vang*, 944 F.2d at 479-80. In *Murphy*, an attorney employed by the Chicago Transit

19 Authority sued her coworkers under § 1983 for sexual harassment at her workplace.

20 *Murphy*, 638 F. Supp. at 465-66. The *Murphy* court acknowledged that the

21 defendant coworkers "engaged in their abusive and offensive conduct while at their

22 place of employment" and that they "were capable of harassing plaintiff only

23 because their jobs enabled them to have frequent encounters with her." *Id.* at 468.

24 However, the court noted, this "does not mean that defendants' actions were pursued

25 under color of state law." *Id.* The court found that "the humiliating comments and

26 harassing behavior had nothing to do with, and bore no similarity to, the nature of

27 the staff attorney job." *Id.* Because "the abusive conduct was not in any way related

28 to the duties and powers incidental to the job of CTA staff attorney," the court

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

14

1   concluded that the defendants were not acting under color of law. *Id.*

2   Unlike *Dang Vang*, this is an "off-duty" case; at a minimum, triable issues of

3   fact exist. When the alleged assault occurred, Caropino was not on-duty, was not in

4   uniform and did arrive in his patrol car. There is evidence demonstrating that

5   Caropino did not detain Curtin at her car, nor did he order her to remain at the car

6   until he returned. Instead, Caropino went to see plaintiff **at her specific request**. He

7   arrived while off-duty, wearing a white shirt and in his own vehicle. Caropino's

8   alleged wrongful act is no way related to the performance of the duties as an officer.

9   Thus, it is disputed whether Caropino was acting under color of law. *Dang Vang*,

10  944 F.2d at 947.

11  Plaintiff also relies on *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 213

12  (1991), another on-duty case, to claim that the evidence "demonstrates that Deputy

13  Caropino was acting the color of authority at the time he raped Ms. Curtin."

14  (Motion, p. 10.) *Parker v. California Hwy. Patrol*, A094347, 2002 *Cal. App. Unpub.*

15  *LEXIS* 118 (Ct. App. Apr. 16, 2002) ("*Parker*") is instructive in distinguishing *Mary*

16  *M.*, an on-duty case, to an off-duty case, such as the case at bar. In *Parker*, an on-

17  duty California Highway Patrol (CHP) officer stopped the plaintiff for speeding.

18  The officer gave the plaintiff a traffic citation, and after learning that her driver's

19  license was suspended, informed her that her car would have to be impounded. The

20  plaintiff asked the officer if he could drive her to her grandmother's home in a

21  nearby city. The officer said he could not, but she could either go with the tow truck

22  or he could take her to the CHP station where she could call the relative. The

23  plaintiff chose to go with the officer, who drove directly to the station and let the

24  plaintiff out in the parking lot. Before he let her out, however, the officer agreed to

25  meet the plaintiff in 15 minutes at the supermarket across the street. When the

26  officer met the plaintiff, he was off duty, wearing civilian clothing and driving his

27  personal car. After the officer completed some personal errands, he drove the

28  plaintiff to a construction site and sexually assaulted plaintiff. He then drove the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

15

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  plaintiff to her grandmother's house. *Id*. at *2-*3. Based on these facts, the trial

2  court granted the defendant CHP's summary judgment motion determining the CHP

3  is not vicariously liable for the officer's actions. The plaintiff appealed. Id. at *4.

4       The Court of Appeal determined that the officer was not acting within the

5  scope of his employment as a police officer at the time he committed the assault.

6  The appellate court reasoned that "[t]here is a natural resistance to finding that rape,

7  assault, or harassment is usual, typical of, or broadly incidental to any employer's

8  business, or that it should be regarded as an inherent risk. It is 'startling' to think

9  otherwise." *Parker*, at *10. "There is a special reluctance to treat such conduct by

10  police officers as within the scope of employment, for it seems inconceivable that

11  the business of combating crime should encompass torts that amount to the

12  intentional commission of crime." *Id*.

13       The appellate court distinguished *Mary M. v. City of Los Angeles*, 54 Cal.3d

14  202, 213, and determined "that a decisive factor in *Mary M*. was *the fact that the*

15  *officer was on duty at the time he committed the rape*. It was that fact which gave

16  him the power to arrest the detainee. The officer was acting as the visible 'official

17  representative of the state, with all of its coercive power.'" *Parker*, at *14 (italics

18  added). Thus, "vicarious liability correlates directly to the officer's actual status as a

19  working employee." Id. at *14-*15. Indeed, "the implicit premise is that when an

20  officer's power is at its zenith, so is the vulnerability of a member of the public. In

21  short, vicarious liability lies only for torts committed against a member of the public

22  by a police officer who is on duty." *Id*. at *15. Thus, the officer's sexual assault,

23  which occurred off duty, "was completely antithetical to [the officer's] sworn duty, .

24  . . completely at odds with the most elemental reasons for the CHP's existence" and

25  was unforeseeable. *Id*. at *16. Thus, the CHP cannot be held vicariously liable for

26  the officer's sexual assault against the plaintiff. *Id*. at *19.

27       Likewise, here, Caropino met Plaintiff when he was on-duty. However, at

28  plaintiff's request, Caropino returned to check on her when he was off-duty.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1
16
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Caropino's alleged off-duty sexual assault is completely antithetical to his sworn

2   duty and completely at odds with the most elemental reasons for the Sheriff's

3   Department's existence. In no manner can it be reasonably claimed Caropino was

4   performing a duty as a law enforcement officer when the alleged assault occurred.

5   He was not combatting crime, and he was not conducting an investigation or

6   effectuating an arrest. In short, he was not acting as an official representative of the

7   state, despite plaintiff's subjective (and irrelevant) sentiments on the matter. It

8   would be unprincipled to suggest Caropino's actions are fairly attributable to the

9   County; instead, the County should be provided with the opportunity to present its

10  position to the trier of fact.

11  **VII.   THERE IS NO RECOGNIZED PRINCIPLE OF LAW REFERRED TO**

12  **AS A "NATURAL AND CONTINUOUS EXTENSION OF EXTENSIVE**

13  **PRECEDING INTERACTIONS"**

14  Without citation to authority, plaintiff argues the fact that Caropino was not in

15  uniform, returned in his own car and was off-duty at the time of the assault is

16  irrelevant, and the Court, as a matter of law, must determine Caropino was acting

17  under color of state law. According to plaintiff's expert, these facts do "not remove

18  these actions from being under the color of his authority as a Sheriff's Deputy."

19  (Noble Decl., ¶¶ 11-12.) Plaintiff's expert claims these acts "constituted a natural

20  and continuous extension of the extensive preceding interactions he had with

21  Plaintiff where he was clearly and unequivocally acting under the color of his

22  authority." (*Id*.) Plaintiff did not provide authority for this creative principle of law

23  because none exists.

24  There are only two types of seizures: investigatory stops, or so called "*Terry*

25  stops" and arrests which trigger a Fourth Amendment reasonableness analysis. *See*

26  *generally Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016):

27  "Although police generally need probable cause to search or seize a person, there

28  exists a limited exception for brief investigatory stops 'where a police officer

4822-6589-1659.1

17

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    observes unusual conduct which leads him reasonably to conclude in light of his

2    experience that criminal activity may be afoot.' *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.

3    Ct. 1868, 20 L. Ed. 2d 889 (1968). In contrast to a full-blown arrest, an investigatory

4    stop need only be justified by reasonable suspicion. *United States v. I.E.V.*, 705 F.3d

5    430, 434-35 (9th Cir. 2012). 'There is no bright-line rule to determine when an

6    investigatory stop becomes an arrest.' *Washington v. Lambert*, 98 F.3d 1181, 1185

7    (9th Cir. 1996)." *See also Aguilera v. Baca,* 394 F. Supp. 2d 1203, 1214 (C.D. Cal.

8    Sept. 15, 2005): "There are two types of seizures under the Fourth Amendment: (1)

9    investigatory stops or detentions and (2) arrests. *Allen v. City of Portland*, 73 F.3d

10   232, 235 (9th Cir. 1995). An investigatory stop or detention occurs when an officer

11   briefly seizes an individual for questioning based upon a 'reasonable suspicion,

12   based on objective facts, that the individual is involved in criminal activity.' *Brown

13   v. Texas*, 443 U.S. 47, 51, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979)."

14          While there exists a principle of law referred to as a "continuing seizure," the

15   maxim has no application to the facts of this case, and it is not clear plaintiff even

16   meant to employ it in her Motion. In *Robins v. Harum*, 773 F.2d 1004, 1010 (9th

17   Cir. 1985), the court analyzed an officer's post-arrest excessive use of force en route

18   to police station as aspect of seizure alleged to be unreasonable: "[W]e are

19   persuaded that once a seizure has occurred, it continues throughout the time the

20   arrestee is in the custody of the arresting officers." *See also Fontana v. Haskin*, 262

21   F.3d 871, 879-80 (9th Cir. 2001) ("The trip to the police station is a 'continuing

22   seizure' during which the police are obliged to treat their suspects in a reasonable

23   manner."). The question is what constitutional protection governs a "particular

24   juncture of the custodial continuum," and "whether the Fourth Amendment

25   continues to provide individuals with protection against the deliberate use of

26   excessive force beyond the point at which arrest ends and pretrial detention begins."

27   *Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996). In the case at bar,

28   however, plaintiff was never under arrest nor was she in custody at the time of the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

18

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  assault. Further, plaintiff does not consider the allegations set forth in her own

2  Complaint where she judicially admits the investigation concluded before the time

3  of the alleged assault, at ¶15 of the SAC: "The Deputies **concluded their**

4  **investigation** and determined that no arrests would be made, but that Plaintiff

5  should not stay there for the night." (Emphasis added).

6        Further, to the extent plaintiff intends to rely on some variant of this principle,

7  it has no application to the Fourteenth Amendment claim she asserts. *See, e.g.*,

8  *Mazzetti v. Bellino*, 2014 U.S. Dist. LEXIS 116797 (E.D. Cal. Aug. 21, 2014)

9  ("Claims of sexual misconduct by law enforcement officers against 'a criminal

10  suspect during a continuing seizure is analyzed under the Fourth Amendment.'")

11  (quoting *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001)).

## VIII. <u>THE COURT SHOULD NOT DRAW A REASONABLE INFERENCE AGAINST COUNTY DEFENDANT FROM CAROPINO'S FIFTH AMENDMENT ASSERTION</u>

15        Plaintiff also claims that this Court "may consider Deputy Caropino's

16  invocation of his Fifth Amendment at his deposition to support an adverse inference

17  that Deputy Caropino raped Plaintiff while under the color of authority." (Motion, p.

18  9.) The Court, however, should not draw such an inference against defendant

19  County because it creates an unfair advantage regarding the County's inability to

20  cross-examine Caropino.

21        It is within the trial court's discretion to decide whether to permit an adverse

22  inference to be drawn from the assertion of the Fifth Amendment privilege in a civil

23  case. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911-912 (9th Cir. 2008).

24  The Fifth Amendment privilege against self-incrimination is considered a personal

25  privilege of the witness. In *Hashagen v. United States*, 283 F.2d 345, 349 (9th Cir.

26  1960), the court noted that, "The right of a person under the 5th Amendment to

27  refuse to incriminate himself is purely a personal privilege of the witness. It was

28  *never* intended to permit him to plead the fact that some third person might be

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  incriminated by his testimony, even though he were the agent of such person."

2  (Italics added).

3      Further, the adverse inference may not be drawn "unless there is a substantial

4  need for the information and there is not another less burdensome way of obtaining

5  that information." *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3d Cir. 1994)

6  ("*Graystone*") (addressing propriety of adverse inference as a consequence of

7  asserting 5th Amendment privilege during deposition). Under some circumstances,

8  "an adverse inference from an assertion of one's privilege not to reveal information

9  is too high a price to pay." *Doe ex rel. Rudy-Glanzer v. Glanzer* 232 F.3d 1258,

10  1265 (9th Cir. 2000) ("*Glanzer*"). The court must balance the competing interests of

11  the person asserting the privilege against the interests of the person against whom it

12  is being invoked and the detriment to the party asserting it should be "no more than

13  is necessary to prevent unfair and unnecessary prejudice to the other side." *Glanzer*,

14  at 1265, quoting *Greystone*, at 192.

15      In *RAD Services, Inc. v. Aetna Casualty and Surety Co.*, 808 F.2d 271 (3rd

16  Cir. 1986), the court noted that in some cases a plaintiff engages in "sharp practices"

17  in asking fact-specific questions of employees or former employees to gain the

18  advantage of adverse inferences against the employer.  By asking certain questions

19  at a deposition, it could be shown that the questioning was intended to take unfair

20  advantage of the employer's inability to cross-examine the employee and create an

21  adverse inference with no opportunity for the employer to explore the facts being

22  adversely inferred. *Id.* at 277-78.

23      The Court should not draw reasonable inferences against County defendant

24  from Caropino's Fifth Amendment assertions. In order to establish her *Monell*

25  claim, plaintiff has to first establish the constitutional violation.  To establish the

26  constitutional violation, Caropino must be found to have acted under color of law.

27  Caropino's Fifth Amendment assertion is a personal privilege and cannot be used

28  against his former employer to establish that Caropino acted under color of law.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

20

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Indeed, plaintiff's counsel's deposition questions demonstrates he was engaging in

2   exactly the "sharp practices" that have been seen as a reason for not allowing an

3   adverse inference to arise. Plaintiff's counsel's questioning was plainly geared

4   toward setting up the adverse inference instruction. Plaintiff's counsel intended to

5   take unfair advantage of the County's inability to cross-examine Caropino and

6   create an adverse inference with no opportunity for the employer to explore the facts

7   being adversely inferred. As such, this Court should not consider Caropino's Fifth

8   Amendment assertion against County defendant.

9        In addition, the County's liability in this case is independently based on a

10   policy and practice *Monell* claim, and not on *respondeat superior* or vicarious

11   liabilty principles, which of course have no application to *Monell* claims. "There is

12   no *respondeat superior* liability under section 1983. Y*barra v. Reno Thunderbird*

13   *Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984)." *Taylor v. List*, 880

14   F.2d 1040, 1045 (9th Cir. Nev. July 17, 1989). "… [A] municipality cannot be held

15   liable solely because it employs a tortfeasor -- or, in other words, a municipality

16   cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v.*

17   *Dep't of Soc. Servs.*, 436 U.S. at 691.  In those instances in which an employee or

18   former employee's assertion of the Fifth Amendment is treated as giving rise to an

19   adverse inference against the employer, one of the reasons for doing so is that a

20   corporation can only speak through its employees. If no adverse inference arose

21   from employee assertions of the Fifth, the employer could unfairly stymie the

22   discovery process by simply discharging employees with the incriminating

23   knowledge.  No such concern applies in the case at bar.

24        Finally, plaintiff cites to *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976),

25   but *Baxter* discusses an adverse inference against a criminal defendant; see also,

26   *Gutierrez v. Holder*, 662 F.3d 1083 (9th Cir. Nov. 7, 2011) (same). These citations

27   do not assist her.

28   / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-6589-1659.1

21

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## IX.   THE DECISONAL AUTHORITY ON WHICH PLAINTIFF BASES HER UNSUPPORTED CONTENTION THERE WAS A VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS IS DISTINGUISHABLE.

Plaintiff argues that partial summary judgment is warranted because she suffered constitutional violations of her rights. According to plaintiff, "Caropino's undisputed sexual assault and rape of Plaintiff give rise to a constitutional violation under either the Fourth Amendment or the Fourteenth Amendment standard." (Motion, p. 11.) Plaintiff is wrong.

First, as discussed herein, it is not undisputed that Caropino's alleged acts were under color of state law. In fact, there are numerous disputed facts on the issue. Second, there are disputed facts whether Caropino ever detained plaintiff; thus, the Fourth Amendment does not apply. Third, since Caropino was not acting under the color of state law, he was acting as a private citizen and therefore the Fourteenth Amendment does not apply. See *DeShaney v. Winnebago Cy. Dep't of Social Serv.*, 489 U.S. 189, 196 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other").

Plaintiff solely relies on *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001), another on-duty case, to assert that Caropino violated her constitutional rights. Fontana, however, is materially distinguishable. In *Fontana*, California Highway Patrol officers responded the scene of an accident. The officers arrested the driver based on suspicion of driving under the influence of alcohol. The arrestee alleged that during the trip to the police station, Officer Haskin, who was also in the back of the vehicle, inappropriately touched the arrestee and made sexual comments. The district court granted Officer Haskin's summary judgment motion as to the plaintiff's civil rights cause and action and the court dismissed the remaining state claims for lack of supplemental jurisdiction. *Id.* at 875-76.

The Ninth Circuit reversed. The court determined that "Haskin --having

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   allegedly committed these acts while on duty, after having arrested Fontana and in

2   the process of accompanying her to jail to be processed --acted under color of law."

3   *Fontana*, 262 F.3d at 878. The court held that the plaintiff's allegations, if proved,

4   establish that Haskin violated the plaintiff's Fourth Amendment rights, and thus,

5   that Haskin is not entitled to summary adjudication. Id. The constitutional guarantee

6   of freedom from unreasonable searches and seizures encompassed the entire period

7   when the arrestee was in custody. *Id*. at 878-80. The court determined the issue

8   should be analyzed under the Fourth Amendment as sexual harassment by the police

9   officer during a continuing seizure, not the Fourteenth. *Id*. at 881-82.

10          *Fontana* is distinguishable. In *Fontana*, the alleged bad conduct occurred not

11   only when the officer was on duty, but when the plaintiff was arrested and when the

12   officer was conducting duties in his official capacity. In the case at hand, plaintiff

13   was not arrested, and the alleged conduct occurred when Caropino was off-duty, not

14   conducting any duties in his official capacity, in civilian clothing, and in his own

15   vehicle. This case has no application here.

16          Partial summary judgment is not warranted. Caropino did not violate

17   plaintiff's constitutional rights because he was not acting under color of law.

18   **X.   CONCLUSION**

19          Based on the foregoing, defendant respectfully requests the Court deny this

20   Motion in its entirety.

21   DATED: July 17, 2017                    LEWIS BRISBOIS BISGAARD & SMITH LLP

22

23

24                                          By:    */s/ Dawn M. Flores-Oster*

25                                                 Dana Alden Fox
                                                   Barry Hassenberg
26                                                 Dawn M. Flores-Oster
                                                   Attorneys for Defendant COUNTY OF
27                                                 ORANGE

28