

NO FEE DUE
GOV'T CODE § 6103

1   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
2   DANA ALDEN FOX, SB# 119761
       E-Mail: Dana.Fox@lewisbrisbois.com
3   DAWN M. FLORES-OSTER, SB# 155722
       E-Mail: Dawn.Flores-Oster@lewisbrisbois.com
4   BARRY HASSENBERG, SB# 71136
       E-Mail: Barry.Hassenberg@lewisbrisbois.com
5   633 West 5th Street, Suite 4000
    Los Angeles, California 90071
6   Telephone: 213.250.1800
    Facsimile: 213.250.7900

7   Attorneys for Defendant COUNTY OF
    ORANGE

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  ALEXA CURTIN,                    CASE NO. 8:16-cv-00591-SVW-PLA

13           Plaintiff,

14       vs.                         **DEFENDANT COUNTY OF
                                     ORANGE'S RULE 26
15  COUNTY OF ORANGE; and DOES 1-    DISCLOSURE OF EXPERT
    through 50,                      WITNESSES**

16
             Defendants.
17                                   The Hon. Stephen V. Wilson

18                                   Action Filed:  March 30, 2016
                                     PTC Date:      July 24, 2017
19                                   Trial Date:    August 1. 2017

20

21  TO ALL INTERESTED PARTIES AND THEIR ATTORNEY OF RECORD:

22       Pursuant to Federal Rules of Civil Procedure 26, Defendant COUNTY OF

23  ORANGE hereby respectfully submits this disclosure of expert witnesses.  In

24  submitting this disclosure, Defendant COUNTY OF ORANGE reserves the right to

25  amend and supplement this disclosure.

26       **Retained Expert:**

27       1.     Robert Fonzi, P.O. Box 1154, Yucaipa, California, 92399, Telephone:

28  (951) 312-9679.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Attached as Exhibit "1" to this designation is a copy of Mr. Fonzi's Rule 26

2  Report dated June 30, 2017, and Curriculum Vitae which lists all of Mr. Fonzi's

3  Qualifications. Mr. Fonzi's fee schedule, as well as a list of all other cases in which

4  Mr. Fonzi has testified as an expert by trial or by deposition, is also included in

5  Exhibit "1".  Defendant COUNTY OF ORANGE reserves the right to augment the

6  scope of Mr. Fonzi's testimony to include rebuttal of any opinions proposed to be

7  offered by witnesses disclosed, designated, or called by any other party that fall

8  within the scope of Mr. Fonzi's expertise.

9    Defendant COUNTY OF ORANGE further designates the following

10  individual within the meaning of Rule 26:

11  **<u>Non-Retained Experts:</u>**

12    1.    Dr. Jeffery Yusim – Dr. Yusim will testify regarding his treatment of

13  Alexa Curtin.  His opinions are expected to be in conformity with his deposition

14  testimony.

15    2.    Sergeant Margaret Sheehan – Sergeant Sheehan will testify regarding

16  Sheriff Department Policies and Procedures.  Her opinions are expected to be in

17  conformity with her deposition testimony related to the training of its employees on

18  the intake, investigation, and general handling of sex cases; including but not limited

19  to academy training, field training, supplemental training and required courses or

20  classes.

21    3.    Lieutenant Sean Howell – Lieutenant Howell will testify regarding

22  Sheriff Department Policies and Procedures.  His opinions are expected to be in

23  conformity with his deposition testimony related to searching, handcuffing,

24  transporting, and general handling of detainees, arrestees, persons in custody, and

25  field contacts of the opposite sex; the steps taken to ensure said polices are compiled

26  with; and the repercussions for violating said polices.

27    Defendant COUNTY OF ORANGE reserves the right, under Rule 26, to

28  designate, disclose, and call experts to contradict or rebut the opinions of those

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  experts disclosed, designated or called by plaintiff.

2

3  DATED: July ⧸ , 2017

4

5

DANA ALDEN FOX
DAWN M. FLORES-OSTER
BARRY HASSENBERG
LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8  By:

9  Barry Hassenberg
   Attorneys for DEFENDANT COUNTY

10  OF ORANGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4818-0641-2619.1                    3                 8:16-cv-01499 DOC (DFMx)
DEFENDANT COUNTY OF ORANGE'S RULE 26 DISCLOSURE OF EXPERT WITNESSES
Exhibit A Page 00010

# EXHIBIT 1

## Robert Fonzi & Associates
### Training and Consulting
robert.fonzi@yahoo.com

**P.O. Box 1154, Yucaipa, CA  92399**
**951-312-9679**

June 30, 2017

Lewis Brisbois Bisgaard Smith LLP
633 West 5th Street, Suite 4000
Los Angeles, CA  90071

Attention:  Barry Hassenberg
Re:  *Curtin v. County of Orange*
Case No.:  8:16-cv-00591-SVW-PLA

Dear Mr. Hassenberg,

  In accordance with the Federal Rules of Civil Procedure 26(a)(1)(B), this report sets forth my opinions with respect to Orange County Sheriff's Department's police practices; specifically, whether or not, the Orange County Sheriff's Department provides adequate supervision, policies and/or procedures, in regards to investigations and allegations of misconduct by any employee who abuses their position as deputy sheriffs, while employed with the County of Orange.

  It is my understanding that additional discovery materials may still be pending.  I reserve the right to obtain additional discovery that may assist in my further evaluation of this matter. Additionally, I reserve the right to add, change and/or delete any of my opinions based on additional discovery, at which time a supplemental report may be submitted.  I will make myself available for deposition upon reasonable request by plaintiffs, prior to the discovery cut-off date at a mutually agreeable date and time.

## I. Brief Summary of Qualifications:

I am retired as Undersheriff from the San Bernardino County Sheriff's Department.  As Undersheriff, I was responsible for all administrative and operational commands within the Sheriff's Department while directing day to day operations.  In the absence of the Sheriff, I acted on his behalf at all internal and external meetings and events. Administrative duties included but were not limited to:  directing, planning, coordinating, and managing all functions within the Sheriff's Department.

Additional responsibilities included:  directing and supervising subordinate executive and command staff.  Coordinated and commanded subordinate personnel in the management of administrative support services and criminal operations.  Interpreted and anticipated implications of proposed legislative/regulatory changes regarding correctional facilities. Developed, directed and implemented policy and procedural changes resulting from legislative changes, procedures, or departmental philosophy.

1

Prior to my position as Undersheriff, I was an Assistant Sheriff with the San Bernardino County Sheriff's Department. As the Assistant Sheriff, I was responsible for all support operations within the organization. Administrative duties included: directing, planning, coordinating, and managing all functions within a major area of assigned responsibility for the Sheriff's Department.

Prior to my position as Assistant Sheriff, I was a Deputy Chief with the San Bernardino County Sheriff's Department with responsibilities over several bureaus that included Administrative Services, Court Security, Training Division, Detentions and Corrections.

Prior to my promotion to Deputy Chief, I was the commanding officer for the Sheriff's Employee Resources Division, which provides a broad range of services for the Sheriff's Department. Under my command, this unit conducted background investigations, participated in state-wide recruiting, was responsible for the department's payroll and benefits, coordinated hiring through County Human Resources and provided services for department personnel through the Sheriff's Employee Assistance Team (SEAT).

In my assignment as commanding officer for the West Valley Detention Center prior to my Deputy Chief position, I was responsible for various issues involving personnel matters, disciplinary actions and policies and procedures in adherence with applicable state and federal laws.

I served as the Chief of Police for the City of Yucaipa (a contract city with the San Bernardino County Sheriff's Department). My responsibilities included station operations, personnel management, criminal investigations, use of force training, and management of support staff. As the Chief of Police, I served on a number of community projects, committees, and participated in city events.

I am a 32-year veteran with the San Bernardino County Sheriff's Department and the San Diego Police Department. I have several years of patrol experience in the Ontario, San Bernardino, and San Diego areas. My experience includes patrol operations, criminal investigations, internal affairs, civil liabilities, training, canine coordinator and corrections.

I am most recognized in the area of peace officer training. With over 19 years of experience, I have trained approximately 10,000 law enforcement officers from all over the country. My expertise is extensive in the use of force and police procedures. I have testified as an expert witness in numerous civil and criminal trials in both state and federal court.

**II.**    **Curriculum Vitae and Court Testimony:**  I have attached my curriculum vitae, which outlines my training, knowledge, and experience. Additionally, I have attached a list of court testimony within the past five years.

**III.**   **Compensation:**  A copy of my fee schedule, which outlines my compensation for professional services, is attached.

2

IV.   **Materials Reviewed:** As of the date of this report, I have reviewed the following reports, materials, and documents:

1. Plaintiff's Initial Complaint and
2. Plaintiff's First and Second Amended Complaint
3. Deposition of Alexa Curtin
4. Plaintiff's Responses to Special Interrogatories (Set One)
5. Plaintiff's Responses to Requests for Production of Documents (Set One)
6. Defendant County of Orange's Responses to Plaintiff's RFP (Set One)
7. Deposition of Virgil Asuncion
8. Deposition of Nicholas Caropino
9. Deposition of Nicole Halaby.
10. Deposition of Jennie D' Errico
11. Deposition of Lynne Curtin
12. Deposition of Michael Devecchio
13. Deposition of Jeffrey Yusim, M.D.
14. Deposition of Catherine Fevery
15. Deposition of Alexa Curtin with Exhibits
16. Deposition (rough draft) of PMK Lieutenant Sean Howell
17. Deposition of PMK Sergeant Margie Sheehan
18. Deposition of Raquel Curtin
19. Deposition (rough draft) of Dwayne Chapple
20. Deposition (rough draft) of Steven Kea
21. Deposition (rough draft) of James Vogel
22. Defendant's Responses to Plaintiff's First Set of Interrogatories
23. Personnel Complaint Policy
24. Defendant's Responses to RFP
25. Defendant's Responses to Interrogatories.
26. Defendant's Responses to Supplemental Response to Interrogatories
27. Defendant's Responses to Supplemental Response to RFP
28. Documents bate stamped 000001 – 000774
29. Documents bate stamped 000795 – 002689
30. Documents (Part 1 of 4) to Documents (Part 4 of 4)
31. Audio recorded interviews
32. Applicable policies and procedures

Note: I am informed and believe that I have received all Disclosures and Discovery Responses produced in this case, as well as all deposition transcripts that have been completed prior to the date of this report. The foregoing list underscores those records to which I devoted substantial consideration. In the event that any items reviewed were inadvertently omitted from the foregoing list, this expert will gladly supplement this list upon questioning under oath and reserves the right to supplement this list in a supplemental report.

**Summary of Opinions:** The following opinions are based on my review of the above listed materials in addition to my training, knowledge, and experience. I am prepared to testify and/or explain my opinions regarding the police procedures given rise to this litigation. I do not intend to offer my opinions as to the ultimate issues in this action, though I reserve the right to offer opinions based on my areas of expertise even if such opinions embrace the ultimate issues in the incident.

3

**Right to amend:** I reserve the right to amend these opinions based upon additional testimony and/or discovery documents.

## V.  Summary of plaintiff's allegations:

1.  In the month of April 2014 (actual date of incident June 28, 2014), upon arriving at Plaintiff's vehicle, Deputy Caropino searched Plaintiff's purse and vehicle. Plaintiff had some of her clothing in her vehicle.  While searching Plaintiff's vehicle Deputy Caropino found some of Plaintiff's underwear and began inappropriately questioning Plaintiff about her underwear; asking if the underwear belonged to her, how many pairs she had, why she needed the underwear, etc.

    Ultimately, Deputy Caropino told Plaintiff that he had to leave but he would return. Deputy Caropino further advised her that she was not free to leave and if she did leave she would be in a lot of trouble.  He ordered her to remain in her vehicle at that location.

    Approximately 20 minutes later, Deputy Caropino returned and pulled up behind Plaintiff's vehicle.  This time he was in his personal vehicle, and out of uniform. Deputy Caropino entered Plaintiff's vehicle and sat in the passenger seat.  Plaintiff was still sitting in the driver's seat of her vehicle.  Deputy Caropino began issuing orders to Plaintiff.  Based on information and belief Deputy Caropino said, "Since you are still here, I am going to fuck the shit out of you." While in plaintiff's vehicle Deputy Caropino had nonconsensual intercourse with Plaintiff.

2.  The conduct against the Plaintiff was the result of the policy, practice and custom of the Orange County Sheriff's Department to inadequately supervise and discipline law enforcement officers who abuse their position as law enforcement officers in order to commit these heinous acts, and then rely on their status to shield themselves from any culpability.

3.  The inadequate supervision and discipline of Sheriff's deputies by the County of Orange has led to the unnecessary and illegal violations of citizens' Constitutional rights. The policy, practice and custom of the County of Orange is that when deputies violate a citizens' Constitutional rights, other deputies do not intervene to Defendants, and each of them, acted under color of state law as law enforcement deputies of the Orange County Sheriff's Department. The Defendants' actions were reckless and callously indifferent to the Plaintiff's federal and state protected rights.

4.  Plaintiff is informed and believes, and based thereon alleges, that in April of 2014, and for some time prior thereto, Defendants COUNTY, and DOES 26 through 50, inclusive, with deliberate indifference towards the civil rights of persons residing in or passing through the County of Orange, and/or the City of Dana Point, knowingly and willfully did maintain, enforce, and apply a custom, practice, policy and usage tending to encourage, promote, sanction, tolerate and ratify the abuse of authority, and the use of unreasonable seizure, unnecessary and excessive force by law enforcement personnel they employed in the Orange County Sheriff's Department.

4

The conduct against the Plaintiff was the result of the policy, practice and custom of the Orange County Sheriff's Department to inadequately supervise and discipline law enforcement officers who abuse their position as law enforcement officers in order to commit these heinous acts, and then rely on their status to shield themselves from any culpability. The inadequate supervision and discipline of Sheriff Deputies by the County of Orange has led to the unnecessary and illegal violations of citizens' Constitutional rights.

5. The policy, practice and custom of the County of Orange with respect to allegations of Constitutional violations reported by citizens, is to conduct a minimal investigation designed to exonerate the deputy involved rather than discover the true facts of the incident. As a result of this code of silence adhered to by Orange County Sheriff's Deputies and the inadequate investigation of allegations of Constitutional violations, deputies reasonably conclude that their violation of citizens' constitutional rights will not result in discipline, termination, or criminal prosecution against them. The above policies and practices have resulted in a culture of violence and sexual exploitation in which the violations of constitutional rights are accepted and customary parts of police work in the County of Orange.

6. Deputy Caropino and DOES 1 through 25 and each of them, intentionally and maliciously deprived Plaintiff of her rights secured to her by the Fourth, and Fourteenth Amendments to the United States Constitution in that Defendants and each of them, subjected Plaintiff to unreasonable seizure of her person, even though no strong government interest compelled the need for the deputy to conduct such a seizure and sexual assault of Plaintiff.

## VI. Opinions:

1. Based on my review of the listed materials and the evidence provided thus far, it is my opinion, as determined by standard police practices, that there is no evidence to support a failure to provide adequate supervision, policies and/or procedures by the Orange County Sheriff's Department. On the contrary, my review of the listed materials has determined that the Orange County Sheriff's Department has numerous policies, procedures, and guidelines that supports their active investigations into allegations of misconduct by its members.

**According to Lieutenant Howell,**
Q. And any time there's a change you require the deputies to sign into this Lexi pole system and sign off that they reviewed the change?
A. Absolutely.
Q. Anything other than that?
A. we also continue to have bulletins had a that are briefing items and we have specifically had briefing items on fraternization and those briefing items are read by supervisor and all the deputies that are in briefing are current and we have rosters and every division has policies in place.

A. There's also a section that we have that's in our database, the computer system and that's called CRM.

5

A. That is originally for business based which is (CRM) customer relationship management system, our department molded that and turned it into a system we can use for a law enforcement agency. We use that system to document uses of force, pursuits, and then there's also a section on their accommodation and complaints. So if a citizen comes up to a desk and wants to give a compliment of deputies doing a great job, we can use that system. If somebody comes up and complains about misconduct, we can also use that system as well we enter it there and tracks it on a database and then an e-mail system's in place where everybody would be able to review it.

**Rule of Conduct:**
**1018.55 Prohibited acts or omission:**
Unwelcome solicitation of a personal or sexual relationship while on duty or through the use of official capacity.

Engaging in on-duty sexual relations including, but not limited to sexual intercourse, excessive displays of public affection or other sexual contact.

Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members.

**Complaint policy:** The Orange County Sheriff's Department Personnel Complaint Procedure: The Orange County Sheriff Coroner Department has a strict policy of maintaining good Law Enforcement community relations. To achieve this goal, it is imperative that all complaints against members of the department be thoroughly investigated. We want to know when our service needs to be improved and we also want to provide a means for citizens to redress grievances against the departmental members.

**1020.1 Purpose and Scope:** The purpose of this policy is to provide guidelines for the department to professionally and thoroughly give the appropriate supervisory attention to public feedback received regarding Departmental service or individual performance. This policy explains the required actions for the collection, processing and preservation of complaints to ensure the proper attention is given to the incident.

**1020.1.1 Personnel Complaints:** Public complaints will be used to help shape programs, priorities, training, and discipline in order to provide the best law enforcement service to the community.

2. Based on my review of the listed materials it is my opinion, as determined by standard police practices, that when there are allegations of misconduct against a member of the Orange County Sheriff's Department, they are mandated by policy and ethical standards to investigate. The investigation must be in accordance with established policies, practices and the law.

6

Police officers have the same constitutional rights as any citizens. Internal Affairs (I.A.) investigations into misconduct, including criminal allegations, is governed by state and federal law.  Additionally, the investigation is mandated to comply with employee rights, (i.e. AB 3300, commonly referred to as the **Public Safety Officer Procedural Bill of rights or POBAR**[1]) as well as taking into consideration the seriousness of the allegation(s).

3. Based on my review of the listed materials, it is my opinion the allegations alleging that the Orange County Sheriff's Department ignored and/or failed to provide adequate supervision, policies, procedures, and failed to investigate a situation involving misconduct is unfounded. There has been no evidence to support a failure to provide adequate supervision, policies and/or procedures by the Orange County Sheriff's Department. On the contrary, my review of the listed materials has determined that the Orange County Sheriff's Department has numerous policies, procedures, and practices that supports investigations into allegations of misconduct.

There has been no evidence to support the allegation(s) that the conduct by former Deputy Caropino (involving Alexa Curtin) was a direct result of the policy, practice and/or custom of the Orange County Sheriff's Department. Additionally, there is no evidence to support that the Orange County Sheriff's Department provided inadequate supervision and failed to discipline its deputies who abuse their position and who commit heinous acts. The lack of evidence provided thus far renders the allegations as unfounded.

The Lamb investigation was separate from the Curtin incident, while the allegations suggest that if the Sheriff's Department had suspended and/or terminated former Deputy Caropino's employment he would not have been in a position to violate Curtin's rights. The Lamb investigation and the administrative procedures followed by the Orange County Sheriff's Department was constant with established policies and practices that is commonly utilized by many law enforcement agencies. This procedure is a process that I have personally followed during my career with the San Bernardino County Sheriff's Department. The timeline and administrative action taken by the Sheriff's Department was predicated on the date the complaint for damages was filed (brought to the County's attention and later to the Sheriff Department), which was approximately five months after the date of the incident.

It was Lamb's unwillingness to make herself available for an interview that prolonged the process. During the Lamb investigation, Detective Quilantan attempted to contact Lamb and her attorney, fifteen (15) times between March 12, 2014, to September 2, 2014, to interview her (Lamb) with respect to her compliant. On September 3, 2014, Detective Quilantan was finally able to interviewed Lamb about her allegations.

---

[1] **AB 3300, also known as the Public Safety Officer Procedural Bill of rights or POBAR:** (in part) California Government Code Section 3300-3311 is known and may be cited as the Public Safety Officers Procedural Bill of Rights Act. 3301. The Legislature hereby finds and declares that the rights and protections provided to peace officers constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that to all public safety officers wherever situated within the State of California.

The fact that the Lamb investigation took several months to complete is not uncommon for a variety of reasons and issues. It's often difficult to contact victim(s), witness(s), and inquire into any evidence that may be available. As previously mentioned, the rights of all parties involved is important and must be taken into consideration. It's not uncommon for a law enforcement agency to receive false allegations and/or allegations that are inconclusive. Therefore, management decisions and criminal investigations are often guided by the quality of information available (i.e. victim statements, evidence, etc.).

In matters that may have criminal and administrative implications, the criminal investigation will always take priority over an administrative investigation. There is no hard standing rule that requires and/or mandates that both investigations run concurrently.

In matters involving criminal and administrative investigations, it's important to mention that information and/or evidence gathered in the criminal investigation may be used in the administrative investigation. However, the administrative investigation is prohibited from co-mingling and/or sharing any information and/or evidence that is gathered. Therefore, it is a common practice for law enforcement agencies to toll an administrative investigation pending the conclusion of a criminal investigation so that the information and evidence can be taken into consideration. It's also important to mention that a criminal investigation may reveal information and/or evidence that is useful and important to the administrative investigation. Therefore, in many case this is why the criminal investigation proceeds first. The management decision as to which investigation shall proceed first or concurrently, involves a great of discretion and is made on a case by case basis.

4.  Based on my review of the listed materials and the evidence provided thus far, it is my opinion the allegations that the Orange County Sheriff's Department maintains and/or encourages a custom and practice to conduct marginal investigations that are intentionally designed to exonerate an employee, as opposed to discover true facts of an incident is unfounded.  There has been no evidence supporting this allegation nor is it constant with the extensive investigation that resulted in the termination of Deputy Caropino.

The investigation into the Lamb complaint took place immediately after it was received in late February 2014. The investigation was immediately assigned to both criminal investigators as well as internal affairs for an administrative investigation. It's important to mention that Lamb never filed an official citizen complaint with the Orange County Sheriff's Department.  The only report of the incident involving former Deputy Caropino was Lamb's claim for damages, which is a separate process from filing a citizen's complaint directly with the Sheriff's Department. The claim for damages (filed with the County) will delay the Sheriff's Department from having any knowledge that there has been a compliant involving their personnel, as opposed to a citizen complaint.

8

The claim for damages filed by Lamb did not contain sufficient information for a criminal conviction nor sufficient information to take administrative action (i.e. administrative leave and/or terminating Deputy Caropino's employment). The allegations suggest that investigators had sufficient evidence and failed to properly investigate the allegation.

Once again, it was the unwillingness of Lamb that contributed to the timelines of the investigation. The investigators did not have sufficient and/or specific information that would have directed their attention to certain dates. Therefore, it left the investigators with the entire universe to search for evidence. It wasn't until Lamb agreed to an interview on September 3, 2014 (one year after the date of the incident) that investigators were finally able to determine specific dates and locations that ultimately provided leads into evidence that contributed to a management decision relating to former Deputy Caropino's employment. On November 20, 2014, Deputy Caropino was placed on administrative leave and later terminated from his position as a Deputy Sheriff.

5. Based on my review of the listed materials, it is my opinion the allegation that the Orange County Sheriff's Department maintains and/or encourages a custom and practice involving the "code of silence" and inadequate investigations is baseless and unfounded. There has been no evidence supporting this allegation nor is it constant with the extensive investigation that resulted in the termination of (former) Deputy Caropino.

6. Based on my review of the listed materials it is my opinion the allegation that the Orange County Sheriff's Department was deliberately indifferent towards the civil rights of others, who knowingly and willfully did maintain, enforce, and apply a custom, practice, policy tending to encourage, promote, sanction, tolerate and ratify the abuse of authority by law enforcement personnel employed is baseless and unfounded. There has been no evidence supporting this allegation nor is it constant with the extensive investigation that resulted in the termination of (former) Deputy Caropino.

The actions and conduct involving former Deputy Caropino was not within the course and scope of his employment with the Orange County Sheriff's Department. On the contrary, the Sheriff's Department provides training, policies, and procedures that deputies are expected to adhere to.

7. Based on my review of the listed materials, it appears that the plaintiff (Curtin through her attorney) is maintaining a position that the Lamb claim for damages (filed in late February 2014) should have provided the Sheriff's Department with enough factual information that was grounds for placing Caropino on immediate administrative leave in March 2014. Because (former) Deputy Caropino was left on duty, it provided him with the opportunity to assault Curtin. This allegation assumes that the Orange County Sheriff's Department had sufficient information and evidence to make such a decision. Unfortunately, it's unknown why Lamb took several months to file a claim for damages and later was unwilling to be interviewed until September 3, 2014.

Additionally, it is alleged that Investigator Quilantan should have immediately known to pull the video from Deputy Caropino's patrol vehicle from the day after the initial encounter and arrest of Lamb.  It's true that this could have been done by Investigator Quilantan had he been provided the opportunity to interview Lamb.  The interview with Lamb would have provided Investigator Quilantan with specific information (dates, time, and locations) instead of the universe to search.

After the interview with Lamb on September 3, 2014 and the District Attorney's Office declined to prosecute, (former) Deputy Caropino was placed on administrative leave pending further administrative investigation and review.

Internal Affairs, Investigator Asuncion, obtained additional information in November 2014, after the DA decided not to prosecute. Shortly thereafter, Deputy Caropino was immediately place on administrative leave on November 20, 2014. The administrative investigation was predicated on the criminal investigation, which was prolonged due to Lamb's unwillingness to be interviewed.  There has been no evidence that will support that there was information known and immediately available to any of the investigators (criminal or administrative).

The fact that the investigation revealed that Deputy Caropino had gone to Lamb's house and the car video had been turned off for 60 minutes wasn't immediately known to investigators and was within the universe of evidence that was later discovered.  If the evidence had been known to investigators earlier into the investigation it certainly would have been taken into consideration, which is predicated on other information and evidence known at that time.

8. Based on my review of the listed materials, it appears that the plaintiff (Curtin through her attorney) is maintaining a position that Deputy Chappel (who was former Deputy Caropino's trainee) had two (2) prior complaints filed against him, which supports the fact that the Orange County Sheriff's Department had a negative culture within. The two prior complaints against Deputy Chappel (one for inappropriate texting and the other for a delay in reporting a use of force) were not related to the Lamb or the Curtin incident. In both cases, they were handled appropriately. The fact that (former) Deputy Caropino was his field training officer (FTO), even though they were investigating Deputy Caropino for the Lamb incident at the time, is not sufficient evidence to support a custom, policy and/or practice that shows negligence or a failure on the part of the Orange County Sheriff's Department.

Note:  None of my opinions are intended to usurp the province of the jury and are not stated as ultimate issues.  Rather, my opinions involve the consistency of the officers' actions with standard police practices.

## VII.   Basis for opinions:

Note:  Any fact summary is provided for convenience and does not necessarily itemize every single fact relied upon by this expert in the formation of my opinions-conclusions in this matter. It is based on my review of the aforementioned records materials.  I do not contend to have direct personal knowledge of the incident facts.

10

1. **Timeline of events with respect to Taylor Lamb investigation:**
   Date of incident:   September14, 2013

   | | |
   |---|---|
   | Claim filed: | February 27, 2014, a claim for damages was initially submitted by Attorney Scott Hughes on behalf of his client, Taylor Lamb. |
   | | According to Sergeant Thompson (assigned to Internal Affairs), Lamb never filed a formal complaint with the department prior to Hughes filing the claim with the county. |
   | Initial Action | March 5, 2014, at the direction of Commander Solorza, Internal Affairs initiated a personnel investigation into the actions of (former) Deputy Caropino.  It was alleged that on September 4, 2013, Deputy Caropino was involved in sexual misconduct on duty and had an inappropriate relationship with the complainant, Taylor Lamb, after her arrest. |
   | Homicide Detail | March 10, 2014, a criminal investigation was initiated into the allegation regarding (former) Deputy Caropino. Hughes claimed that Lamb was arrested on September 4, 2013 by Deputy Caropino and was forced into sexual acts while Deputy Caropino was on duty (in uniform) and later while he was off duty (out of uniform). |
   | | Hughes further claimed that (former) Deputy Caropino emailed and sent Lamb text messages after her arrest and had sex with her at her residence while on duty. |
   | Lamb interview: | Investigator Quilantan attempted fifteen (15) times to contact Lamb and her attorney from March 12, 2014 to September 2, 2014 in order to interview her regarding her allegations. On September 3, 2014, (one year after the incident) Investigator Quilantan was finally able to interview Lamb. |
   | Admin leave: | After obtaining sufficient evidence, Deputy Caropino was placed on administrative leave on November 20, 2014. |
   | Termination: | August 11, 2015, Deputy Caropino's employment was terminated |

2. **Time line of events with respect to Alexa Curtin incident:**
   Date of incident:   On June 28, 2014, while in Curtin's vehicle Deputy Caropino had nonconsensual intercourse with Alexa Curtin.

3. **According to Lieutenant Howell's deposition testimony: (excerpts)**
   P21
   Q. Was that like -- and part of doing that were you presenting to the command staff to make a recommendation or help determine on specific cases if there would be disciplinary action?

11

A. Both.  We would -- there was a closed committee where they would ask the experts in the room as far as if there's any type of discipline or civil litigation anything give to county counsel if presentation format we would present any time of commonalities

P22
Q. So part of those presentations were sometimes to analyze and come up with conclusions on data presented on potential changes in the department or ways to change policy?
A. Absolutely, yes.
Q. Change personnel or location or something like that?
A. Yes.

P23
Q. How things could have been better handled if at all?
A. Absolutely, yes.
Q. Did that include anything other than officer-involved shootings?
A. Yes.  Everything from a use of force from a deputy in a jail from traffic collision from a deputy going Code 3 on pursuit to a subject being tased during a use of force. So a variety of incidents.

P26 / 27
A. We do not have a specific policy that is ex-conclusive to the other sex.
Q. Do you have a policy that on detaining individuals in general?
A. Yes, we do.

P29
Q. Okay. Is there a policy in Orange County Sheriff's Department regarding transporting individuals of the opposite sex?
A. Yes.  We have that written in our policy.

P30 / 31
Q. So what are some of the things that would be unique for a male deputy transporting a female as opposed to a male deputy transporting a male?
A. Right at the start our transportation policy wants to state over the radio our time and mileage.  We got to make sure it's recorded, which per our policy that recording should be on whether it's male or female.  We need to ensure that and then dispatch will acknowledge the time and mileage and once that particular deputy gets to the other location, he'll then give the ending mileage and time and the dispatcher will acknowledge that that way there's not only a visual recording, there's also an audio confirming the dates and times and how long it took for the travel.

P31
Q. Did you say a visual recording?
A. Yeah.
Q. Like a video in the squad card?
A. We have a camera -- our patrol units have cameras in the back of the vehicle and also in the front.
Q. When you say in the back of the vehicle the cameras facing the backseat?

12

A. It faces the backseat where the arrestees would be or detainees.

P33
Q. What is the purpose of the policy to announce and record the transportation time and mileage of detainee of the opposite sex?

A. The purpose of that is so if somebody makes an allegation that the subject had me detained for x amount hours and drove the X amount of miles, all this can be documented and we can dispute what that would be we can determine exactly and accurately the mileage time and distance.

P34
A. There is a policy on transporting a male detainee.
Q. There's not a policy for a male deputy transporting a male detainee to record and announce his location and mileage?
A. That's correct.
Q. Would it be improper for a male deputy to search a familiar detainee or arrestee if a female deputy was available to conduct the search?
A. If a female is available we want to make sure that gives that opportunity to female search the female in custody.

P37
A. In the deputy's eyes per his safety if he feels he needs to search that female, he would not be violating policy, if it's a safety concern. However, we do our due diligence to try to have a female search, but it's not any violation.
Q. So it sounds like your answer is it depends based on circumstances?
A. Absolutely; absolutely.

P47
Q. What it -- members of the sheriff's department are responsible to obey the laws.
A. Absolutely.
Q. In addition to the rules around regulation of the rules and policies of the department?
A. Yes.
Q. And it is presumed that will be familiar with those laws rules laws policies and procedures?
A. Yes.

P49 / 50
Q. I mean is there a practice that the sheriff's department abides by to ensure the deputies are acting in accordance with this policy?
A. Yes. Making sure that they're familiar with policies and procedures and we ensure that by having this in place.

Q. So how do you ensure that you're familiar with that do you guys require training on that?

13

A. Every year we have to make sure department boys aware of update and change in policy or procedure and looked upon Lexipole to make sure they're aware of any updates so when an employee comes on as a new member of the department they provide all this they received and they also sign that they're aware of it and then there ongoing make sure if there's any changes, employees automatically told to go online and make sure they're aware of any updates or change to the policy.

P50
Q. Okay.  So it sounds like what you're saying is you're first hired given the policy sign on something off I have reviewed?
A. Right.
Q. And any time there's a change you require the deputies to sign into this Lexipole system and sign off that they reviewed the change?
A. Absolutely.

Q. Anything other than that?

A. We also continue to have bulletins had a that are briefing items and we have specifically had briefing items on fraternization and those briefing items are read by supervisor and all the deputies that are in briefing are current and we have rosters and every division has policies in place Stanton sign and receive briefing signed and read.

P52 / 53
Q. Okay.  The second sentence of this policy this policy requires when an employee of any level misconduct of any department employee shall immediately report to the supervisor -- internal affairs bureau this applies to all employees -- through the view in employees work generally a supervisor -- complaint?
A. Initiate the complaint process.  "Furthermore an employee who observes serious misconduct shall take appropriate action to cause the misconduct to immediately cease.  The fact that a supervisor is present and not taking appropriate conduct to stop the misconduct does not relieve other employees present from this obligation."

P53
Q. Do you -- if an employee sees another employee engaging in some prohibited acts, does this policy tell them they must report that?
A. Absolutely, yes.

P55
A. That is originally for business based which is (CRM) customer relationship management system, our department molded that and turned it into a system we can use for a law enforcement agency.  We use that system to document uses of force, pursuits, and then there's also a section on there accommodation and complaints.  So if a citizen comes up to a desk and wants to give a compliment of deputies doing a great job, we can use that system.  If somebody comes up and complains about misconduct, we can also use that system as well we enter it there and tracks it on a database and then an e-mail system's in place where everybody would be able to review it.

14

4. **According to Sergeant Margie Sheehan deposition testimony: (excerpts)**
P16

A. Orange County sheriff's recruits have a specific period the instruction LD 10 in regards to definition of the elements and classifications of sex crimes. That period of instruction is now six hours.

5. **Applicable policies and procedures - Orange County Sheriff-Coroner Department Policy Manual:**

**1001 Code of Professional Conduct and Responsibility for Peace Officers:**
WHEREAS, peace officers are vested with a public trust which requires that they consistently demonstrate the highest degree of integrity and good moral character: and WHEREAS, the need to maintain high standards of moral character , integrity, knowledge, and trust requires the establishment of a Code of Professional Conduct and Responsibility for Peace Officers as a matter of the highest significance to the health, welfare, and safety of the citizens of this state; and WHEREAS, the establishment of a Code of Professional Conduct and Responsibility for Peace Officers, which includes Canons of Ethics and minimum standards, requires the granting of authority to enforce these standards of professional conduct through disciplinary action as necessary for the protection of the health, welfare, and safety of the public; therefore, BE IT RESOLVED that the need to maintain high standards of moral character, integrity, knowledge, and trust require that peace officers establish and conform to a Code of Professional Conduct and Responsibility for Peace Officers.

**General Statement:** Peace Officers are granted a public trust, which requires that they consistently demonstrate the highest degree of integrity. To be worthy of this public trust, and to ensure that their professional conduct is above reproach, members of the peace officer profession must not only conform to   a Code of Ethics but must also abide by these Canons of Ethics and Ethical Standards which constitute this Code of Professional Conduct and Responsibility as a means of internal regulation.

The essence of a profession requires that in addition to prescribing a desired level of performance. it must establish minimum standards of ethical conduct with prescribed rules for internal discipline to ensure compliance. Accordingly, this Code of Professional Conduct and Responsibility is established for the peace officer profession.

Nothing in the Code of Professional Conduct and Responsibility for Peace Officers is intended to limit or supersede any provision of law relating to the duties and obligations of peace officers or the consequences of a violation thereof. Whereas these rules specify certain conduct as unprofessional, this is not to be interpreted as approval of conduct not specifically mentioned.

Nothing in this Code is intended to limit the authority of an agency to adopt and enforce rules and regulations that are more stringent or comprehensive than those that are contained in this Code of Professional Conduct and Responsibility for Peace Officers.

15

**1001.2 Canons of Ethics:** "Canons" are statements, which express in general terms standards of professional conduct expected of peace officers in their relationship with the public, the criminal justice system, and the peace officer profession. They embody the general concepts from which the Ethical Standards and the Disciplinary Rules are derived.

**Canon Four:** Peace Officers will so conduct their public and private lives that they exemplify the high standards of integrity, trust, and morality demanded of a member of the Peace Officer profession.

**Canon Six:** Peace Officers shall assist in maintaining the integrity and competence of the Peace Officer profession.

**Ethical Standards:** "Ethical Standards" are statements that represent the objectives toward which every peace officer shall strive. They constitute principles that can be relied upon by the peace officer for guidance in specific situations.

**Standard 6.4:** Peace officers shall maintain the integrity of their profession through complete disclosure of those who violate any of these rules of conduct, violate any law, or who conduct themselves in a manner which tends to discredit the profession.

**1018.1 Standard of Conduct:** (a) Memebers shall conduct their private and professional lives in such a manner as to avoid bringing discredit upon themselves or the department. (b) Commissioned officers will conform to the Code of Professional Conduct and Responsibilities for Peace Officers (Policy 1001).

**1018.6 Obedience to Law and Regulations:** Members shall observe and obey all laws and ordinances, all rules/regulations. procedures and policies of the department and all orders of the department or commands thereof. In the event of improper action or breach of discipline, it will be presumed that the member was familiar with the law, rule/regulation, procedure or policy in question.

Employees are to report to their immediate supervisor within 24 hours any arrest, incident, or allegation of criminal or other misconduct. which could result in the employee being criminally prosecuted. All allegations of criminal and other misconduct will be immediately documented by the supervisor in memo form to his/her Command Commander/Director.

Employees authorized to carry a handgun, on duty or off duty, must immediately notify their Division Commander if they have been convicted of any domestic violence offense. Defined: "Any use or attempted use of physical force committed against a current or former spouse, parent or person similarly situated."

**1018.43 Fraternization:** (a) Except as permitted by written authority of their Division Commander, no member shall fraternize with, engage the services of, accept services from, or give to or receive favors from any person in department custody or recently released (within one year) from department custody. Any member who is contacted by or on behalf of a recently released (within one year) prisoner shall immediately report same, in memorandum form, to his or her immediate supervisor.

16

(b) Members shall not associate socially with, or fraternize with the spouse or family member of any person in the custody of the department without the express permission of the Sheriff- Coroner.

(c) Except as necessary to carry out their assigned duties, members shall not engage in familiarity with inmates or the families or friends of inmates. Members shall not discuss departmental matters or private affairs concerning themselves or coworkers with inmates.

(d) Members shall not trade or barter with, lend to or borrow from, or engage in any other personal transaction with, any inmate. Members shall not, directly or indirectly, give to or accept from any inmate, or member of the family of any inmate, anything of value or a promise of same.

(e) Members shall not accept from or send to, any inmate any verbal or written message, reading matter, literature, or any item, article, or substance except as necessary in carrying out the member's assigned duties.

**Employees' duty to report misconduct:** The reporting of misconduct and prevention of the escalation of misconduct are areas that demand an employee to exercise courage, integrity, and decisiveness. This policy requires that when an employee, at any level, becomes aware of possible misconduct by another member of this Department. the employee shall immediately report the incident to a supervisor or directly to the Internal Affairs Bureau. This requirement applies to all employees, including supervisory personnel and managers who learn of possible misconduct through the review of an employee's work. Generally, the supervisor accepting the complaint shall initiate the complaint process.

Furthermore, an employee who observes serious misconduct shall take appropriate action to cause the misconduct to immediately cease. The fact that a supervisor is present and not taking appropriate action to stop the misconduct does not relieve other employees present from this obligation

**Rule of Conduct 1018.55 Prohibited acts or omission:** Unwelcome solicitation of a personal or sexual relationship while on duty or through the use of official capacity.

Engaging in on-duty sexual relations including, but not limited to sexual intercourse, excessive displays of public affection or other sexual contact.

Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members

**Orange County Sheriff-Coroner Department Policy Manual 1001 Code of Professional Conduct and Responsibility for Peace Officers:** WHEREAS, peace officers are vested with a public trust which requires that they consistently demonstrate the highest degree of integrity and good moral character: and

17

WHEREAS, the need to maintain high standards of moral character, integrity, knowledge, and trust requires the establishment of a Code of Professional Conduct and Responsibility for Peace Officers as a matter of the highest significance to the health, welfare, and safety of the citizens of this state; and WHEREAS, the establishment of a Code of Professional Conduct and Responsibility for Peace Officers, which includes Canons of Ethics and minimum standards, requires the granting of authority to enforce these standards of professional conduct through disciplinary action as necessary for the protection of the health, welfare, and safety of the public; therefore, BE IT RESOLVED that the need to maintain high standards of moral character, integrity, knowledge, and trust require that peace officers establish and conform to a Code of Professional Conduct and Responsibility for Peace Officers.

**Personnel Complaint Procedure:** The Orange County Sheriff Coroner Department has a strict policy of maintaining good Law Enforcement community relations. To achieve this goal, it is imperative that all complaints against members of the department be thoroughly investigated. We want to know when our service needs to be improved and we also want to provide a means for citizens to redress grievances against the departmental members.

**1020.1 Purpose and Scope:** The purpose of this policy is to provide guidelines for the department to professionally and thoroughly give the appropriate supervisory attention to public feedback received regarding Departmental service or individual performance. This policy explains the required actions for the collection, processing and preservation of complaints to ensure the proper attention is given to the incident.

**1020.1.1 Personnel Complaints:** Public complaints will be used to help shape programs, priorities, training, and discipline in order to provide the best law enforcement service to the community.

Complaints will be classified into one of the following categories:

Service complaint - Any allegation of dissatisfaction with Department service, procedure or practice, not involving a personnel complaint (i.e. response time, vehicle operation while responding code-3, waiting too long to visit an inmate).

Personnel complaint - Any allegation of misconduct or improper job performance against any Department personnel that, if true, would constitute a violation of Department policy, federal, state or local law (Le. rudeness, profanity, excessive force, criminal act). All investigations of personnel complaints shall be considered confidential.

18

**VIII.    Conclusion:**

The foregoing opinions are based upon my review of the materials and information received to date concerning the incident that gave rise to this litigation.  I understand that there may be depositions not yet conducted in the case and/or additional discovery may be produced by any party.  Thus, to that extent, this report should be considered a preliminary report.  Should I receive additional information that materially affects any of these opinions; I will submit a supplemental report and/or be prepared to discuss them during future proceedings, as appropriate.  I will expect to receive in a timely manner any additional materials or information that might affect my opinions in this matter.

This report is signed on this **30th** of June, 2017, in City of Yucaipa, State of California.


**Robert J. Fonzi**

19

**Robert Fonzi & Associates**
Undersheriff (retired)
*Training and Consulting*
robert.fonzi@yahoo.com

P.O. Box 1154, Yucaipa, CA  92399
951-312-9679

## *Robert J. Fonzi*
Curriculum Vitae

**BIOGRAPHY**          (brief summary)

I am a thirty-two-year veteran with the San Bernardino County Sheriff's Department and the San Diego Police Department with several years of patrol experience in the Ontario, San Bernardino, and San Diego areas.  My experience includes patrol, criminal investigations, internal affairs, civil liabilities, jail operations/management, and personnel management with special emphasis on training.

My expertise lies in the use of force, police procedures, and jail operations/management.  I am most recognized in the area of training, with over twenty-five years of experience while training approximately 10,000 law enforcement officers throughout the country.  I have qualified and testified as an expert in over three hundred (300) civil, criminal, and civil service trials in both state and federal courts.  I have provided deposition testimony in over three hundred (300) related matters in the above related fields.

Based on my training, knowledge, and experience, I was recognized as an expert by the San Bernardino County Sheriff's Department's and primary Use of Force Instructor.  My formal education includes an Associate of Arts degree in Criminal Justice and completion of a bachelor's degree program in Vocational Education, Training and Curriculum Design.

I was directly responsible for all use of force training, advanced officer training, in-service, correctional officer training, and FTO (Field Training Officer) programs for the San Bernardino County Sheriff's Training Division for several years.  I also served as the training coordinator and supervisor for the Sheriff's K-9 program.

**SPECIALIZED TRAINING**

- Certified instructor - firearms
- Certified instructor - defensive tactics and weaponless defense
- Certified instructor - impact weapons
- Certified instructor - shooting survival techniques
- Certified instructor - crowd control and tactical formations
- Certified instructor - chemical agents
- Certified instructor - electronic control devices (ECD)
- Certified instructor - lateral vascular neck restraint
- Certified instructor - law enforcement incident command system

20

## CAREER OVERVIEW

Undersheriff, San Bernardino County Sheriff's Department (Retired January 24, 2014)

32 years of Law Enforcement experience

25 years of community college teaching experience

California Community College Teaching Credential

## FORMAL EDUCATION

F.B.I. National Academy, Class #215, December 5, 2003, Quantico, VA

Command College Class #34, November 2003
California Commission on Peace Officers Standards & Training

Bachelor's degree equivalent (completed BA degree program, degree pending) Southern Illinois University, Carbondale, IL - Vocational Education, Training Development, and Curriculum Design.

Associate of Arts Degree, (1986), Administration of Justice, Crafton Hills Community College, Yucaipa, CA

## CALIFORNIA PEACE OFFICER STANDARDS AND TRAINING

| | |
|---|---|
| Deputy Sheriff | 1982 Basic Certificate |
| Senior Deputy | 1987 Intermediate Certificate |
| Sergeant | 1990 Advanced Certificate |
| Sergeant | 1992 Supervisory Certificate |
| Lieutenant | 1999 Management Certificate |

## ASSIGNMENTS, RESPONSIBILITIES, AND EXPERIENCE

**Undersheriff**
March 2012 – January 2014

The County of San Bernardino is the largest county in the continental United States covering approximately 20,000 square miles with a population exceeding 2,000,000. The Sheriff's Department has 41 stations and divisions, including nine county and 14 contract city patrol operations. The Sheriff's department has approximately 3,500 employees and has an annual budget exceeding $450,000,000.

21

As Undersheriff, I was second in command of the Department and assumed the duties of the Sheriff in his absence. I was responsible for all administrative, operational and legislative concerns within the Sheriff's Department while directing daily operations including budgetary and personnel matters. In the absence of the Sheriff, I acted on his behalf at all internal and external meetings and events. My administrative duties included directing, planning, coordinating, and managing all functions within the Sheriff's Department.

Additional responsibilities included directing and supervising executive and command staff. Coordinated and commanded personnel in the management of administrative support services and criminal operations. Interpreted and anticipated implications of proposed legislative/regulatory changes regarding correctional facilities. Attended and participated in statewide committees. Developed and directed the implementation of policy and procedure changes resulting from changes in legislation, procedures, or departmental philosophy. Represented the Sheriff's Department in liaison with other governmental agencies and community groups and participated in related law enforcement organizations.

Administrative duties included supervising, planning, coordinating, budgeting, and managing all functions within the Sheriff's Department.

- Supervised Human Resources activities for the department including hiring and disciplinary actions.
- Directed department operations through subordinate management and supervisory staff. Assisted with policy direction and formulation; reviewed decisions on all complex or politically sensitive issues.
- Represented the Sheriff by making presentations to civic groups, conventions, and legislative committees for the purpose of promoting goodwill on behalf of the department.
- Maintained a liaison between staff, other law enforcement agencies, judges, District Attorneys, and defense attorneys to insure optimal success in crime prevention and enforcement.
- Wrote comprehensive reports and letters to obtain support and provide information for drafting legislation at the state and local level.
- Supervised the preparation of the annual budget; recommended and reviewed proposed changes with the Sheriff; determined staffing needs and priorities.
- Assisted in the direction of the Office of Public Safety and County Fire Warden's Office.
- Reviewed and recommended the investigative path to be followed regarding major criminal activity.
- Reviewed department objectives and effectiveness of all organizational divisions within the Sheriff's Department; suggested and/or directed changes to improve efficiency.

22

**Support Operations – Assistant Sheriff**
January 2011 - March 2012

The Assistant Sheriff's position is the administrative command responsible for Support Operations.  As an Assistant Sheriff, I acted on behalf of the Sheriff in his absence. Administrative duties included directing and supervising subordinate personnel responsible for the management of four major correctional facilities within San Bernardino County.  Coordinated and commanded subordinate personnel in the management of administrative support services and the Frank Bland Regional Training Center. Supervised subordinate personnel responsible for staff development, budget, fiscal matters, personnel, and payroll.

**Detentions and Corrections Bureau - Sheriff's Deputy Chief**
January 2010 – January 2011

As the Bureau Chief, I was responsible for subordinate personnel within four large jail facilities.  The Detention and Corrections Bureau is the largest division within the San Bernardino County Sheriff's Department.  The Bureau is comprised of more than 1,100 dedicated professional staff that includes both safety and civilian employees. Additionally, the department has five Type-I jails capable of holding 288 arrestees, four court holding facilities and four lock-up facilities.

The Bureau provides services to over 6,000 felony and misdemeanant inmates on a daily basis who are incarcerated.  These services include food, hygiene, recreation, medical, dental, mental health, religious, and other support services.  The magnitude of these services provided is significant.  As an example, the Food Services Division produces and serves over 7,350,000 meals each year while Medical Services provide health care in excess of 6,400 inmates monthly.

The Transportation Unit transports over 500 inmates daily throughout the county and travels an average of 1,000,000 miles per year, transporting nearly 300,000 inmates throughout San Bernardino County and the State of California.  Additionally, the United States Marshall transports approximately 13,000 federal inmates from the facility to numerous prisons and court facilities throughout the state.

**Administrative Services Bureau – Sheriff's Deputy Chief**
January 2009 – January 2010

As the Bureau Chief, I was responsible for subordinate personnel over three major divisions, which included the following units:  Training, Aviation, Emergency Operations, Volunteer Forces, and Employee Resources.  The Training Center (which includes the Basic Academy, Advanced Officer, EVOC and Range/Use of Force Units) provides both basic and continuing professional education to law enforcement officers from agencies throughout the County of San Bernardino and Southern California.

Exhibit A Page 00034

The Emergency Operations Division provides operational, logistical, and management support services to field operations during large-scale emergencies. These support services are provided by two units within Emergency Operations; Aviation and Volunteer Forces. The Aviation Unit provides patrol, rescue, and fire operation capabilities. Volunteer Forces provides search and rescue, evacuation, disaster planning, emergency management and Department Operations Center coordination. Volunteer Forces also coordinates all law enforcement mutual aid resources in Mutual Aid Region VI on behalf of the Sheriff.

**Employee Resources Division – Sheriff's Captain**
April 2006 – January 2009

As the commanding officer, I was responsible for all employment/labor issues, grievances, background investigations, hiring, and payroll. The Employee Resources Unit provides a broad range of services for the Sheriff's Department. Under my command, this unit conducted background investigations, participated in state-wide recruiting, and was responsible for the department's payroll and benefits. Additionally, I coordinated hiring and provided a variety of services to department personnel through the Sheriff's Employee Assistance Team (SEAT).

Several categories of business applicants were also required to go through the background process in addition to employment background investigations. Additionally, county residents who want to carry a concealed weapon (CCW) were also required to apply through Employee Resources and pass a background investigation.

**West Valley Detention Center – Sheriff's Captain**
December 2003 – April 2006

As the commanding officer, I was responsible for the largest correctional facility in San Bernardino County with approximately 640 employees. This included the assignment to the West Valley Detention Center as part of the command staff. My direct responsibilities included facility operations and training for the correctional facility. Additional responsibilities included supervision of all correctional staff, personnel matters, grievances, citizen complaints, administrative investigation, use of force, and training.

**Chief of Police for City of Yucaipa – Sheriff's Captain**
May 2000 – December 2003

I served as the Chief of Police for the City of Yucaipa, a contract city with the Sheriff's Department. As the commanding officer, I was responsible for all law enforcement for the unincorporated areas in the county and the City of Yucaipa. This included commanding the Yucaipa Sheriff/Police Station. This dual operation is responsible for law enforcement in the unincorporated areas of Mentone, Forest Falls, Angelus Oaks, and Barton Flats. Additionally, this station serves as the law enforcement agency for the City of Yucaipa.

**Lieutenant -** Yucaipa Sheriff and Police Station in the City of Yucaipa
March 1997 – May 2000

I served as the second in command responsible for all law enforcement for the City of Yucaipa. Additional responsibilities included administrative investigations, use of force, personnel matters, and citizen complaints.

**Lieutenant -** West Valley Detention Center
March 1996 – March 1997

I was responsible for jail operations, management, training, administrative investigations, use of force, personnel matters, and grievances.

**Highland Police Station – Sheriff's Sergeant**
October 1995 – March 1996

I served as a watch commander and patrol supervisor for patrol operations. My duties included watch commander assigned to the Highland Police Station for uniformed patrol personnel. My responsibilities included supervision of all patrol functions, personnel matters, use of force investigations, traffic, training, and administrative duties.

**Advanced Officer/Correctional & Field Training Officer Unit – Sheriff's Sergeant**
October 1990 – October 1995

I supervised the following programs - Basic Academy, Firearms Training Center, Advanced Officer Training, Sheriff's Canine, Correctional Training Officers and Field Training Officers. While assigned to the Training Division, I was responsible for advance, correctional, and field training officer programs. The advance officer training unit provided continuing professional training courses to both safety and reserve employees of the Sheriff's Department, state and federal law enforcement agencies, and California Department of Corrections.

**Firearms Training Center/Use of Force Training Unit – Sheriff's Sergeant**

While assigned to the training division for over 5 years, I developed and supervised the Use of Force Training Unit. The unit was responsible for all use of force training, which included: firearms, defensive tactics, weaponless defense, police baton, chemical agents, electronic devices, and police canine. During this assignment, my direct responsibilities included the training and qualification of department personnel in areas concerning the use of force. Training and qualification required proficiency and competency in the taxonomy of educational objectives relating to training issues involving the use of force.

I was also responsible for the supervision, coordination, management, and curriculum design of all firearms, defensive tactics, weaponless defense, police baton, and canine training for the San Bernardino Sheriff's Department. The training facilitated approximately 2000 officers and included basic academy, advance officers, reserve officers, in-service personnel, military, and civilians. The assignment required the direct supervision of eight full-time instructors and staff support that carried out the responsibilities of the Firearms Training Center/Use of Force Training Unit.

25

### Canine Coordinator – Sheriff's Sergeant

My experience includes being assigned as the Department's canine coordinator for approximately five years.  I was responsible for the supervision and management of all canine training and budget issues.  The supervision required quarterly evaluation and recertification of approximately ten K-9 Handlers and police canines.

### Tactical Analysis Training Committee – Sheriff's Sergeant

My experience includes being assigned as a committee member to the Tactical Analysis Training Committee that reviews and evaluates critical incidents involving the use of force. The committee evaluates an officer's actions and reactions against known standards in an effort to improve training offered by the San Bernardino Sheriff's Department.

### San Bernardino Valley College - Program Coordinator – Sheriff's Sergeant

Responsibilities included coordinating the Extended Basic Law Enforcement Academy at San Bernardino Valley College.  The position required direct supervision and coordination of training and student learning during the ten-month program.  Additionally, I was responsible for teaching all use of force training within the program.  The training included firearms, defensive tactics, weaponless defense, police baton, chemical agents, crowd control/tactical formations, and legal issues concerning the use of force.

### Riverside Community College/Ben Clark Training Center

My experience includes staff instructor for RCC at the Ben Clark Training Center with assignments teaching firearms, defensive tactics, police baton, use of force, and other related patrol procedures.

### Corporal/Detective – Yucaipa Sheriff's Station
July1988 – July 1990

I served as Field Training Officer, patrol supervisor, and detective performing criminal investigations.

### Deputy Sheriff - Professional Standards Division
July1987 – July 1988

My responsibilities included Civil Liabilities and Internal Affairs.

### Deputy Sheriff – Sheriff's Central Station, San Bernardino
October 1981 – July 1987

Performed a full range of law enforcement duties including, corrections, county and statewide prisoner transport, patrol, criminal investigations, preparation of reports, court testimony, suspect and victim interviews.

26

**Police Officer** San Diego Police Department, Western Division
October 1982 – April 1983

Performed a full range of law enforcement duties including, patrol, criminal investigations, preparation of reports, court testimony, suspect and victim interviews.

**Sheriff's Academy**
July1981 – October 1981

Entered the San Bernardino County Sheriff's Department Basic Law Enforcement Academy, Class of 66, and was elected class president/sergeant.

## TEACHING CREDENTIALS & INSTRUCTOR CERTIFICATES

- Community College Teaching Credential - State of California

- Black Belt - International Association of Kung Fu San Soo Self Defense

- Certified Instructor - F.B.I. Defensive Tactics and Weaponless Defense

- Certified Instructor - F.B.I. Police Baton

- Certified Instructor - Impact Weapons

- Certified Instructor - Verbal Judo/Tactical Communication

- Certified Instructor - F.B.I. Firearms Training

- Certified Instructor - Survival Shooting Techniques

- Certified Instructor - Crowd Control Tactics and Field Formations

- Certified Instructor - Lateral Vascular Neck Restraint

- Certified Instructor - Oleoresin Capsicum

- Certified Instructor - Realistic Assault Confrontations

- Certified Instructor - Chemical Agents

- Certified Instructor - Electronic Device/Taser

- Certified Instructor - ASP/Expandable Baton

- Certified Master Instructor to certify instructors in Defensive Tactics and Weaponless

- Defense, Police Baton and PR-24

27

- Certified Instructor - Controlled Force

## PROFESSIONAL ORGANIZATION AFFILIATIONS

| | |
|---|---|
| N.A.C.P. | National Association of Chiefs of Police |
| I.A.C.P. | International Associates of Chiefs of Police |
| C.S.S.A. | California State Sheriff's Association |
| F.B.I.N.A. | FBI National Academy Associates |
| A.C.A. | American Correctional Association |
| A.J.A. | American Jails Association |
| S.E.B.A. | San Bernardino Safety Employee's Benefit Association |
| A.S.L.E.T. | American Society of Law Enforcement Trainers<br>Appointed as "Regional Director of Western States" |
| F.A.T.S. | Firearms Training System<br>Appointed to National Training Advisory Board |
| P.O.R.A.C. | Police Officers' Research Association of California |
| C.P.O.A. | California Police Officer's Association |
| I.A.L.E.F.I. | International Association Law Enforcement Firearms Instructor |
| Kiwanis | Yucaipa/Calimesa Club |
| Footprinters | Chapter #67, past president |

## CALIFORNIA COMMISSION ON PEACE OFFICER STANDARDS AND TRAINING AND CORRECTIONS STANDARD AUTHORITY COMMITTEE APPOINTMENTS

2016 – Subject matter expert
    Use of Force
    San Diego

2012 - Subject matter expert
    Crowd Management and Civil Disobedience Guideline Review
    Sacramento

28

2011 -  C.S.A.
        Adult Titles 24 and 15 Regulations Revision Administrative Workgroup
        Sacramento

1998 -  Continuing Professional Training Steering Committee (CPT)
        P.O.S.T. Training
        Sacramento

1997 -  Subject matter expert (QNA)
        Controlling Violent Subjects Tele-course
        San Diego

1997 -  Subject matter expert
        Vehicle Pullover techniques
        San Diego

1995 -  Subject matter expert
        Officer Safety & Field Tactics
        San Luis Obispo

1994 -  Subject matter expert
        Illegal Possession of Firearms Tele-course
        San Diego

1994 -  Subject matter expert
        Chemical Agents - Training Requirements
        San Diego

1993 -  Subject matter expert
        Chemical Agents - Oleoresin Capsicum
        Ontario

1993 -  Subject matter expert
        Use of Force Training issues
        Costa Mesa

1992 -  Subject matter expert
        Defensive Tactics and Weaponless Defense training issues
        San Diego

1992 -  Subject matter expert
        Uniform Canine training and evaluation standards

1992 -  Subject matter expert
        Uniform Canine training and evaluation standards
        City of Orange

29

## CONTINUED PROFESSIONAL LAW ENFORCEMENT TRAINING

1981    Jail Operations

1981    Traffic Accident Investigations

1983    Correctional Officers Update

1983    Institutional Staff Series I

1984    Correctional Officers Update

1984    H & S 11550 (Under the Influence)

1984    Gang Investigations

1986    Officer Safety/Field Tactics

1986    Correctional Officers Update

1986    IR 3000 Breath Alcohol Analysis

1986    Drug Influence - 11550 H & S

1986    Patrol Officer - Vehicle Stops

1986    Patrol Officer - Auto Theft

1986    Patrol Officer - Search Warrants

1986    Patrol Officer - Crimes Against Property

1986    Patrol Officer - Interview and Interrogation

1986    Patrol Officer - Collection of Evidence

1987    Controlled Substance Influence

1987    11550 - Under the Influence

1988    Patrol Officer - Civil Liabilities

1988    Realistic Assailant Control

1988    Police Civil Liability

1988    Patrol Officer - Domestic Violence

30

1988   Legal Update Regarding Discovery, Personnel and Liability

1988   Principles of Shooting - Semi-Auto Transition

1989   Legislative Update

1989   Criminal Investigator's Course

1990   Driver Awareness Instructor

1990   Developmentally Disabled and Mentally Ill

1990   Peer Support Counseling Training

1990   Missing Persons

1991   Use of Force Issues

1991   Street Survival - The Tactical Edge

1991   Street Survival - The Win Seminar

1991   Exotic Weapons

1991   Police Supervision

1991   Lethal Force Management for Police

1992   Fifth ASLET International Training Seminar

1992   Supervisor's Training - Mobile Field Force

1992   Realistic Assault Confrontation

1993   CopClass "93" Use of Force & Liability

1993   Simunitions Instructor Development Course

1993   C.P.O.A. - Use of force Update

1994   C.P.O.A. - Use of Force - The Rodney King Incident

1994   C.P.O.A. - Officer Involved Shootings

1994   Assertive Supervision

1994   Lateral Vascular Neck Restraint system - update

1995   Eighth ASLET International Training Seminar, Anchorage, Alaska

31

1995   ASP Baton Instructor's Course

1996   Use of Force Update - First Trimester

1996   Ninth ASLET International Training Seminar, Grapevine, Texas

1996   Use of Force Update - Second Trimester

1996   Search Manager's Course

1996   Use of Force Update - Third Trimester

1996   P.O.S.T. Manager's Course

1997   Use of Force Update - First Trimester

1997   STC Correctional Facility Pre-inspection Training.

1997   Use of Force Update - Second Trimester

1997   ASLET Use-of-Force Seminar

1997   Sexual Harassment / Gender Bias

1997   Use of Force Update - Third Trimester

1997   L.E.I.C.S. Train the Trainer

1998   Use of Force Update - Jan

1998   Use of Force Update - April

1998   CPT Steering Committee Training

1998   Use of Force Update - July

1998   Firearms / Deadly Force / Use of Force Symposium

1998   Use of Force Update - Oct

1999   Cycle of Violence

1999   Civil Rights - Color of Law FBI

1999   Use of Force - February

1999   Controlled Force

1999   Advanced Police Management

32

1999    The Challenges of Ethical Leadership

1999    Use of Force Update - June

1999    Use of Force Update - August

2000    Use of Force Update - February

2000    Supervisor Development Course

2000    Use of Force Update - June

2000    Use of Force Update - October

2001    Role of the Police Chief

2001    Use of Force Update - February

2001    Executive Leadership Symposium

2001    Executive Law Enforcement Ethics Symposium

2001    Executive Development Training

2001    Management and Investigations of Hostile Work Environment

2001    Use of Force Update - June

2001    Leadership Development Training

2001    Responses to School Violence

2001    Leadership Development - Target Excellence

2001    Use of Force Update - October

2002    Executive Leadership Symposium

2002    Use of Force Update - February

2002    Faith & Justice Summit

2002    Use of Force Update - June

2002    Use of force Update - October

2003    Use of Force Update - February

2003    Racial Profiling - March

33

2003   Use of Force Update - September

2004   Use of Force Update - February

2004   Use of Force Update - June

2004   Use of Force Update - June

2004   C.S.S.A. - Correctional Facilities Administrator Seminar

2005   Use of force Update - February

2005   Employment Law

2005   Use of Force Update - June

2005   Southern California Jail Managers Association Training (Orn Co.)

2005   Use of Force Update - October

2005   C.S.S.A. Correctional Facilities Administrator Seminar

2006   Use of Force Update – February

2006   Use of Force Update – May

2006   Use of Force Update – September

2007   Use of Force Update – February

2007   Traumas in Law Enforcement – C.O.P.S.

2007   AELE Lethal and Less Lethal Force

2007   Employment & Labor Law Conference

2007   ICS 300 /400 Training Course

2007   Terrorism Early Warning Group Conference

2008   Use of force Update – February

2008   Use of force Update - May

2008   Use of force Update - September

2008   Use of force Update – January

2009   Use of force Update – May

34

2010    A.J.A. National Conference – Portland Oregon

2010    First Aid and CPR update – August

2010    Succession Planning

2011    Use of force update - January

2011    Corrections legal updated with Carrie Hill, Esq

2011    Taser use of force update seminar

2011    Taser (ECD X-26/X2) instructor certification

2011    Use of Force, ECD's, and ICDS

2012    CSSA Second in commands conference

2012    Use of force update - June


**ACCOMPLISHMENTS**      (brief summary)

While assigned to the Training Division, I took the initiative to research and review an alternate chemical agent for department use. The research included the review of various products and delivery systems. I wrote the proposal and made numerous presentations for the approval and authorization to implement pepper spray for the San Bernardino County Sheriff's Department. The proposal included cost analysis for purchasing and training approximately 2000 department personnel. The training program has proven to be one of the most effective in the state of California.

I have demonstrated my management skills in the supervision of the Department's Use of Force Training program. The program required a working knowledge of the materials along with staff assignments of personnel to appropriate positions. The scheduling included approximately 2000 sworn personnel and off site training to various locations within the county. The County of San Bernardino is approximately 22,000 square miles. The scheduling and logistics experienced many problems and conflicts. I was able to resolve many of the problems and issues with appropriate solutions.

I have confronted personnel matters that have resulted in written reprimands and work performance contracts. Additionally, I have developed and administered work performance contracts to individuals who failed to meet the primary proficiency requirements and essential job functions for a deputy sheriff.

I have received numerous requests to lecture on various topics which include: use of force training, chemical agents, and crowd control. Additionally, I have given several proposals to the Office of the Sheriff and the Executive Staff of the San Bernardino County Sheriff's Department. The proposals include Use of Force Training Program, Hobble Restraint, ASP Baton, Cap-Stun, and Canine Operations Manual.

35

I have demonstrated the ability to provide expert witness testimony in numerous civil litigations involving the San Bernardino County Sheriff's Department and Law Enforcement agencies throughout the State of California.  My testimony has earned expert recognition in both state and federal court relating specifically to police procedures and the use of force.

I have participated on several P.O.S.T. committees due to my experience, training, and ability to interact with various agencies on a number of issues.

**Rev: 9/18/16**

36

# Expert Testimony

| Case: | Court / Hearing / Deposition |
|---|---|
| **2011** | |
| Deats vs. County of Orange<br>CV09-6322 PSG (PJWx) | Deposition |
| Nash vs. City of San Bernardino<br>CV 09-08671-RGK (FFMx) | Deposition |
| Nash vs. City of San Bernardino<br>CV 09-08671-RGK (FFMx) | U.S. District Court – Los Angeles |
| Bernat vs. California City<br>Not available | U.S. District Court - Fresno |
| Rivera vs. City of Santa Ana<br>Not available | U.S. District Court – Santa Ana |
| A.K.C. vs. City of Santa Ana<br>SACV-09-01153 CJC (ANx) | Deposition |
| Radwan vs. County of Orange<br>Not available | U.S. District Court – Santa Ana |
| Deats vs. County of Orange<br>CV09-6322 PSG (PJWx) | U.S. District Court – Los Angeles |
| AKC vs. City Santa Ana<br>SACV-09-01153 CJC (ANx) | U.S. District Court – Santa Ana |
| Allen vs. County of Riverside<br>RIC 498184 | Deposition |
| Dubose vs. County of Los Angeles<br>CV09-07832 CAS (AJWx) | U.S. District Court – Los Angeles |
| Hachett vs. City of Calexico<br>Not available | Deposition |
| Ballard vs. City of San Bernardino<br>CV10-02769DMG (AJWx) | Deposition |
| Rodriguez vs. City of Lon Beach<br>SACV10-00271DOC (ANx) | Deposition |
| Nava vs. City of Santa Clara<br>Not available | U.S. District Court – San Jose |

37

Ballard vs. City of San Bernardino                 U.S. District Court – Los Angeles
CV10-02769DMG (AJWx)

Williams vs. County of Los Angeles                 Deposition
CV08-7958JVS (FMOx)

Patino vs. L.A. Unified School Police              State Superior Court – Los Angeles
BC430225

Rodriguez vs. City of Long Beach                   U.S. District Court – Santa Ana
SACV10-00271DOC (ANx)

Krechman vs. County of Riverside                   Deposition
CV10-08705 ODW (DTBx)

Johnston/Codd vs. County of Riverside              Deposition
CV 10-08101 RSWL (JEMx)

Moore vs. City of Desert Hot Springs               Deposition
INC 060070

Krechman vs. County of Riverside                   U.S. District Court – Los Angeles
CV10-08705 ODW (DTBx)

**2012**
Debellis vs. Abdulla                               Deposition
CIVBS 900069

Moore vs. City of Desert Hot Springs               State Superior Court – Indio
INC 060070

Contreras vs. City of San Jose                     Deposition
CV-10-00953 RMW

Mirzaeyan vs., City of Glendale                    Deposition
CV11-01747VBF (JCx)

Samatua vs. City of San Bernardino                 Deposition
CIVDS917832

Dubose vs. County of Los Angeles                   U.S. District Court – Los Angeles
CV09-07832 CAS (AJWx)

Day vs. People of the State                        State Superior Court – San Bernardino
Not available

Bowen vs. County of Riverside                      Deposition
RIC516303

Briones vs. City of San Bernardino                 Deposition
Not available

38

| | |
|---|---|
| Arredondo vs. Co. of Santa Barbra<br>1370977 | Deposition |
| Mirzeayan vs. City of Glendale<br>CV11-01747VBF (JCx) | U.S. District Court – Los Angeles |
| Williams vs. People of the State<br>Not available | State Superior Court – Victorville |
| Riley vs. County of Orange<br>SACV11-00773 JST (ANx) | Deposition |
| R.Z. vs. City of Long Beach<br>SACV-1100536 AG (RNBx)<br>c/w CV11-06379 AG (RNBx) | Deposition |
| Del Castillo vs. City of Santa Ana<br>30-2010-00383134 | Deposition |
| Rosenthal vs. County of Riverside<br>RIC 523816 | Deposition |
| Grobeson vs. City of Los Angeles<br>BC 150151 | Deposition |

**2013**

| | |
|---|---|
| Nida vs. City of Downey<br>CV12-01382 SJO (JEMx) | Deposition |
| Manni vs. City of San Diego<br>11cv0435 W (DHB) | Deposition |
| Williams vs. City of Pasadena<br>BC477905 | Deposition |
| R.Z. vs. City of Long Beach<br>SACV-1100536 AG (RNBx)<br>c/w CV11-06379 AG (RNBx) | U.S. District Court – Santa Ana |
| Lucas vs. City of Visalia<br>09-CV-01015-AWI-JLT | Deposition |
| Muswasua vs. COR<br>RIC 1113335 | State Superior Court – Riverside |
| Chiaese vs. County of Riverside<br>RIC 10012874 | Deposition |
| Rosenthal vs. County of Riverside<br>RIC 523816 | State Superior Court - Murrieta |
| Velasquez vs. City of Santa Clara<br>5:11-CV-03588 PSG | Deposition |

39

Johnson vs. County of Sonoma
CV 11-5811-CRB

**2014**

MH vs. County of Alameda
C11-2868 JST (MEJ)

Chiease vs. County of Riverside
RIC 10012874

Ledezma vs. City of Riverside
ED CV 12-01524 VAP (SP)

Ramirez vs. City of Alhambra
GC046887

Nelson vs. County of Riverside
RIC 10011174

Williams vs. City of Pasadena
BC477905

McDade vs. City of Pasadena
CV12-02892 DMG (JCGx)

Velasquez vs. City Santa Clara
5:11-CV-03588 PSG

Krechman vs. County of Riverside
CV10-08705 ODW (DTBx)

Bosch vs. County of Riverside
EDCV 13-02352-SVW (FFMx)

Solorzano vs. City of Fontana
CIVDS 909991

Howard vs. County of Riverside
ED CV 12-00700 VAP(OPX)

Rendon vs. City of Indio
ED CV 13-00667 VAP (OPx)

Kahsay vs. City of San Diego
37-2013-00031271-CU-PA-CTL

Katz vs. County of Riverside
RIV 1213947

Rivera vs. City of Azusa
2:13-CV-01510-DMG (VBKx)

Kahsay vs. City of San Diego
37-2013-00031271-CU-PA-CTL

Deposition

Deposition

State Superior Court - Temecula

U.S. District Court – Riverside

State Superior Court – Pasadena

Deposition

State Superior Court - Los Angeles

Deposition

U.S. District Court - San Jose

U.S. District Court - Los Angeles

Deposition

State Superior Court - San Bernardino

U.S. District Court – Riverside

U.S. District Court – Riverside

Deposition

State Superior Court - Riverside

Deposition

State Superior Court - San Diego

40

| | |
|---|---|
| Ford vs. City of Beaumont<br>AI #13-13 | Binding Arbitration Hearing |
| Coronado vs. CHP<br>CV11-03560 DMG (JCx) | Deposition |
| Guinn vs. County of San Bernardino<br>DA-2014-0212-06-G1713 | Deposition for Civil Service Hearing |
| Cordero vs. Hemet<br>EDCV 10-01935-JAK-PJW | Deposition |
| RZ vs. COR<br>13-01251 FMO (DTBX) | Deposition |
| Compton vs. COR<br>CV 10-07490 BRO (DTBx) | Deposition |
| Gomez vs. People of the State<br>Not available | State Superior Court – San Bernardino |

**2015**

| | |
|---|---|
| Bondaug vs. City of Santa Clara<br>Case No. 1-12-CV-238152 | Deposition |
| Nelson vs. City of Riverside<br>Case No. EDCV13-01665 | U.S. District Court – Riverside |
| Bondaug vs. City of Santa Clara<br>Case No. 1-12-CV-238152 | State Superior Court – San Jose |
| Doe (Clinton) vs. PathPoint<br>CASE NO. PC052205 | Deposition |
| Rivera vs. City of Oakland<br>Not available | Arbitration Hearing |
| Larson vs. City of Glendale<br>EC055649 | State Superior Court – Burbank |
| Henriquez vs. City of Bell<br>2:14-CV-00196-GW (SSx) | Deposition |
| Salib vs. City of Riverside<br>ED CV 13-1682 MWF (OPx) | Deposition |
| Dunbar vs. City of Riverside<br>EDCV 13-00847 JGB (SPx) | Deposition |
| Salib vs. City of Riverside<br>ED CV 13-1682 MWF (OPx) | U.S. District Court - Los Angeles |
| Morguita- Johnson vs. City of Fresno<br>1:14-CV000127 LJO-SKO | Deposition |

41

| | |
|---|---|
| C. Williams vs. City of Colton<br>No. 14-CV-01426 | Deposition |
| Moradian vs. City of Glendale<br>Case No. CV 14-01178 GW (VBKX) | Deposition |
| Morguita- Johnson vs. City of Fresno<br>1:14-CV000127 LJO-SKO | U.S. District Court - Fresno |
| Moradian vs. City of Glendale<br>Case No. CV 14-01178 GW (VBKX | U.S. District Court – Los Angeles |
| Van Audenhove vs. COR<br>CASE NO.  EDCV 14-00944 FMO (Ex) | Deposition |
| Thomas vs. City of Fullerton<br>No. 30-2012-00581299 | Deposition |
| W. Espinoza vs. County of Riverside<br>CASE NO.  EDCV 14-00085-JGB (SPx) | U.S. District Court – Los Angeles |
| Cicineli vs. City of Fullerton | Arbitration Hearing |
| Ferdinand vs. City of Los Angeles<br>NO. CV-14-7056FMO (JPRx) | Deposition |
| Rodriguez vs. City of Los Angeles<br>NO. CV11-01135 DMG (JEMx) | Deposition |
| Wolfe vs. City of Fullerton | Arbitration Hearing |
| People vs. Lang | State Superior Court - Banning |
| James vs. Granger (DOJ BOF)<br>CASE NO: 1:13-CV-00983-AWI-SKO | Deposition |
| Jordan vs. City of Hawthorne<br>Case No. CV14-07554 ODW (JPRx) | Deposition |

**2016**

| | |
|---|---|
| Stanfill vs. City of Indio | Administrative Appeals Hearing |
| Aguilar vs. City of Azusa<br>Case No: 2:14-CV-09183-GW (JPRx) | Deposition |
| Dolak vs. Torrance<br>Case No. CV 14 07463 BRO-MRW | Deposition |
| Alarcon vs. City of Calexico | Administrative Hearing - Arbitration |
| Hoffman vs. County of Los Angeles<br>CASE NO.: CV 15-03724 FMO (ASx) | Deposition |

42

Dolak vs. Torrance
Case No. CV 14 07463 BRO-MRW

U.S. District Court – Los Angeles

N.W. / Woods vs. City of Long Beach
Case No. EDCV14-01569-VAP (SP)

Deposition

Easley vs. City of Riverside
Case No. EDCV14-0117 THJ (SPx)

U.S. District Court – Los Angeles

Perez vs. Diaz, Nelson, USA
Case No. 3:13-cv-01417 – WQH (BGS)

Deposition

Jackson vs. County of San Bernardino
Case No.: 5:13-CV-01650-JGB-DTB

Deposition

Jones vs, County of San Bernardino
Case No.: 5:15-cv-00080-DTB

U.S. District Court – Riverside

NW Woods vs. City of Long Beach
Case No.: EDCV 14-01569-VAP (SPx)

U.S. District Court – Los Angeles

Chang vs. County of Santa Clara
Case No.: 15-CV-02502 RMW (NC)

Deposition

Palmer vs. City of Santa Monica
Case No. 15-CV-06183

Deposition

Jackson vs. County of San Bernardino
Case No. 5:13-CV-01650-JGB-DTB

U.S. District Court – Riverside

Wyatt vs. County of Riverside
Case No. 5:15-cv-586-CBM - FFM

Deposition

Del Real vs. City of Long Beach
Case No.: CV14-02831 MWF

Deposition

Cobb vs. City of San Diego
Case No. 3:13-cv-01353-BEN(JMA)

US District Court – San Diego

Del Real vs. City of Long, et al.
Case No.: CV14-02831 MWF

U.S. District Court – Los Angeles

Dorsey vs. City of San Diego, et al
Case No. 15-cv-1441-L-vs- (WVG)

Deposition

Palmer vs. City of Santa Monica
Case No. 15-CV-06183

U.S. District Court – Los Angeles

Herrera vs. City of Ontario, et al.
Case No. EDCV 15- 1370 JGB (SPx)

Deposition

Scott vs. City of San Diego
Case No.: 37-2015-00001940-CU-OE-CTL

Deposition

43

| | |
|---|---|
| Arellano vs. City of Santa Ana, et al.<br>Case No. SACV14-1886 N S (DFMx)<br>(consolidated with SACV15-0432) | Deposition |
| Ramos vs. City of Fullerton<br>No case reference | Arbitration Hearing |
| Lopez vs. City of Santa Clara<br>Case No. CV13-3870 CRB (PR) | Deposition |
| Herrera, et al., vs. City of Ontario<br>Case No. EDCV 15- 1370 JGB (SPx) | U.S. District Court – Riverside |
| Lopez vs. City of Santa Clara, et al.<br>Case No.: CV13-3870 CRB (NJV) | U.S. District Court –San Francisco |
| Wyatt vs. County of Riverside, et al.<br>Case No: 15-cv-586-CMB (FFMx) | U.S. District Court – Los Angeles |
| Kirsch vs. County of Santa Barbara | Civil Service Commission |
| Maurer vs. People of the State | Superior Court – West Covina |
| Torres vs. County of San Bernardino<br>Case No.: CV 16-00992 PA (DTB) | Deposition |

**2017**

| | |
|---|---|
| Donaldson vs. USA<br>Case No. 15cv0908-BAS-KSC | Deposition |
| Scott vs.  City of San Diego<br>Case No. 37-2015-00001940-CU-OE-CTL | State Superior Court – San Diego |
| Oppenheimer vs. City of La Habra<br>Case No: 8:16-CV-00018-JVS-DFM | Deposition |
| Hoffman vs. County of Los Angeles<br>Case No.: CV 15-03724 FMO (ASx) | U.S. District Court – Los Angeles |
| Monica vs. City of Santa Clara, et al.<br>Case No.:  5:15-CV-04857 BFL | U.S. District Court – San Jose |
| Arias vs. COLA<br>Case NO.: 2-15-cv-02170 AB (ASx) | U.S. District Court – Los Angeles |
| People vs. Downy | State – Court – San Bernardino |
| Ketron v. City of Santa Monica<br>Case No. 2:16-CV-01478 MWF (PJWx) | Deposition |

44

| | |
|---|---|
| Oppenheimer vs. City of La Habra, et al.<br>Case No.: 8:16-CV-00018-JVS-DFM | U.S. District Court – Santa Ana |
| Garcia v. City of Santa Clara<br>Case No.:  CV10-02424 SI (pr) | Deposition |
| Centeno vs. City of Fresno, et al.<br>Case NO. 1:16-CV-00653-DAD-SAB | Deposition |
| Avila vs. Co. of Madera & State of Ca.<br>Case No. 1:15-cv-00996 JAM-EPG | Deposition |
| Finger vs. County of Riverside, et al.<br>Case No: 14-cv-01585 JGB (KKx) | U.S. District Court – Riverside |
| Moody vs. County of San Bernardino | Civil Service Commission |
| Garcia v. City of Santa Clara<br>Case No.: CV10-02424 SI (pr) | U.S. District Court – San Francisco |

**Note:** There may be some discrepancy in the number of cases contained within this list. The list is only as accurate as records and memory can reflect. There may be other cases not identified, which is due to errors in record keeping.

Rev: 6/22/17

# Robert Fonzi and Associates
## Undersheriff (retired)
### *Training and Consulting*
robert.fonzi@yahoo.com

P.O. Box 1154, Yucaipa, CA. 92399
951-312-9679

## Fee Schedule Agreement

**Case Review, Consultation, & Retainer**          **$6000.00**

This fee is charged upon initiating a case file with the agreement/retainer for consulting. It includes the preliminary case assessment, research materials, fixed office expenses and operating costs. This fee is applied to all activities and professional services performed, i.e., case review, analysis, research, trial preparation, production of exhibits, site visits, and court testimony. (NON-REFUNDABLE)

**Case Review and Preparation**          **$300.00**

This fee is the hourly rate applied to all professional services associated with case review, analysis, research, trial preparation, production of exhibits, site visits, and is applied to the retainer fee as worked is performed.

**Deposition Fee / Court Testimony**          **$2000.00**

This basic fee applies to all hearings and/or court appearances and is in compliance with the Federal and State rules governing "expert witnesses". There is a four-hour minimum with each hour following to be billed at a rate of five hundred ($500) dollars an hour and any part of an hour will be billed as a whole.

**Travel time for Deposition, Trial Testimony and/or standby time: Portal to Portal**
          **Half Day**     **$1000.00**
          **Full Day**     **$2000.00**

Local cost (southern California). Out of state or extended travel will be billed based on time and travel arrangements.

**Travel Expenses**          **Direct billing**

All travel related expenses, including transportation, insurance, and lodging will be billed at actual cost. Automotive expenses including rental, fuel, parking and cleaning will be billed at cost. Meals will be billed on a daily basis at $100 per day, which includes meals, taxes, tips, and incidentals.

**Statement of Account**          **Interest**

Itemized billings (Statement of Professional Services) will be prepared and submitted on a periodic basis consistent with the activities of the account. Payment is due upon receipt of the billing (within 30 days). Late charges may be assessed on overdue accounts at the rate of 1.5% interest per month on the unpaid balance.

**Rev: 04/21/17**

46

## CALIFORNIA STATE COURT PROOF OF SERVICE

Alexa Curtin v. County of Orange; - Case No. : 8:16-cv-00591-SVW-PLA

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071.

On July 7, 2017, I served the following document(s):  DEFENDANT COUNTY OF ORANGE'S RULE 26 DISCLOSURE OF EXPERT WITNESSES

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

### SEE ATTACHED SERVICE LIST

The documents were served by the following means:

☒   (BY U.S. MAIL)  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

☒   Placed the envelope or package for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collection and processing correspondence for mailing.  Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope or package with the postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 7, 2017, at Los Angeles, California.

_____
Connie Placencia

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**SERVICE LIST**
**Alexa Curtin v. County of Orange; Deputy Epson**

2

**USDC No.: 8:16-cv-00591-SVW-PLA**

3   Jeremy D. Jass, Esq.
    JASS LAW

4   4510 E. Pacific Coast Hwy., Suite 400
    Long Beach, CA 90804

5   Tel: 562.340.6299; Fax: 562.340.6422
    Email: Jeremy@jasslaw.com

6   *Attorneys for Plaintiff ALEXA*
    *CURTIN*

7

8   Holly N. Boyer, Esq.
    Shea S. Murphy, Esq.

9   Esner, Chang & Boyer
    234 East Colorado Blvd., Ste. 975

10  Pasadena, CA 91101
    Tel: 626-535-9860; Fax: 626-535-9859

11  Email: hboyer@ecbappeal.com
    Email: smurphy@ecbappeal.com

12  *Co-Counsel for Plaintiff ALEXA*
    *CURTIN*

13  Thomas R. Chapin, Esq.
    Law Office of Thomas R. Chapin

14  232 E. Grand Blvd., Suite 204
    Corona, CA 92882

15  Tel: 951-278-2919; Fax: 951-278-2999
    Email: coronalaw@aol.com

16  *Attorneys for Defendant Nicholas*
    *Carovino*

17

Daniel K. Balaban, Esq.
Balaban & Spielberger, LLP
11999 San Vicente Blvd., Ste. 345
Los Angeles, CA 90049
Tel: 424-832-7677; Fax: 424-832-7702
Email: Daniel@dbaslaw.com
*Co-Counsel for Plaintiff ALEXA*
*CURTIN*

Philip Kent Cohen, Esq.
Philip Kent Cohen, APC
100 Wilshire Bl., Ste. 1300
Santa Monica, CA 90401
Tel: 310-451-9111; Fax: 310-451-9119
Email: pcohen@pcohenlaw.com
*Co-Counsel for Plaintiff ALEXA*
*CURTIN*

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4818-0641-2619.1

8:16-cv-01499 DOC (DFMx)