Holly N. Boyer, SBN 221788
    *hboyer@ecbappeal.com*
Shea S. Murphy, SBN 255554
    *smurphy@ecbappeal.com*
ESNER, CHANG & BOYER
234 E. Colorado Blvd., Ste. 975
Pasadena, CA  91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859

Attorneys for Plaintiff, ALEXA CURTIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN,<br><br>              Plaintiff,<br><br>    vs.<br><br>COUNTY OF ORANGE; NICHOLAS LEE CAROPINO, individually and as Deputy Sheriff for the County of Orange; and DOES 1 through 50,<br><br>              Defendants. | Case No.: 8:16-CV-00591-SVW-PLA<br><br>Assigned to Hon. Stephen V. Wilson<br><br>**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

1

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................1

II.    THE COUNTY'S PROCEDURAL ARGUMENTS
       CONCERNING INADEQUATE NOTICE AND FAILURE TO
       MEER AND CONFER ARE MISPLACED...................................3

III.   THE ISSUES OF WHETHER DEPUTY NICHOLAS
       CAROPINO WAS ACTING UNDER THE COLOR OF
       AUTHORITY AT ALL TIMES DURING HIS
       INTERACTIONS WITH PLAINTIFF, AND WHETHER HE
       VIOLATED HER CONSTITUTIONAL RIGHTS WHEN HE
       SEXUALLY ASSAULTED AND RAPED HER ARE
       APPROPRIATE FOR PARTIAL SUMMARY JUDGMENT.................4

IV.    THE COUNTY FAILS TO OFFER ANY EVIDENCE
       DISPUTING THAT OFFICER CAROPINO ACTED UNDER
       THE COLOR OF AUTHORITY WHEN HE SEXUALLY
       ASSAULTED AND RAPED PLAINTIFF IN VIOLATION OF
       HER CONSTITUTIONAL RIGHTS.................................................6

       A.    The County's Reliance On Deputy Caropino's
             Unverified Denials To Allegations In His "Proposed"
             Answer Do Not Constitute Binding Judicial Admissions
             Sufficient To Create A Triable Issue of Fact And The
             Adverse Inference From Deputy Caropino's Assertion of
             His Fifth Amendment Right Is Entirely Appropriate. ..........6

       B.    The County Fails To Set Forth Any Evidence Disputing
             The Fact That Deputy Caropino Acted Under The Color
             Of Authority At All Times During His Interactions With
             Plaintiff.....................................................................11

       C.    The County Likewise Fails To Set Forth Any Specific
             Facts Creating A Genuine Issue Of Fact As To Whether
             Deputy Caropino's Rape Of Plaintiff Violated Her
             Constitutional Rights. ..................................................15

V.     LASTLY, THE COUNTY'S EVIDENTIARY OBJECTIONS
       TO THE DECLARATIONS OF JEFFREY NOBLE AND L.D.
       LACK MERIT AND SHOULD BE OVERRULED ...................19

       A.    Declaration of Jeffrey Noble.............................................19

       B.    Declaration of L.D., One of Several Victims of Caropino. ...............21

VI.    CONCLUSION ...................................................................23

i

# TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ...................................................................7, 12

*Baxter v. Palmigiano*
    425 US 308 (1976) ............................................................................11

*Cerro Gordo Charity v. Fireman's Fund American Life Insurance*
    819 F.2d 1471 (8th Cir.1987)...........................................................9

*Chang v. Cty. of Santa Clara*
    5:15-CV-02502-RMW, 2016 WL 3880999 (N.D. Cal. July 18, 2016)........13

*Cheng v. Commissioner Internal Revenue Service*
    878 F.2d 306 (9th Cir.1989)..............................................................5

*Cohen v. Trump*
    200 F. Supp. 3d 1063 (S.D. Cal. 2016) ............................................7

*Dang Vang v. Vang Xiong X. Toyed*
    944 F.2d 476 (9th Cir. 1991) ...........................................................12

*Doctors Med. Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*
    CV F 10-0452 LJO SKO, 2011 WL 1438156 (E.D. Cal. Jan. 14, 2011) .......5

*Doe ex rel. Rudy-Glanzer v. Glanzer*
    232 F.3d 1258 (9th Cir. 2000)..........................................................11

*Doe v. City of San Diego*
    35 F. Supp. 3d 1195 (S.D. Cal. 2014) .............................................5

*Enzo Biochem, Inc. v. Applera Corp.*
    599 F.3d 1325 (Fed. Cir. 2010 ..........................................................8

*First Nat'l Ins. Co. v. F.D.I.C.*
    977 F.Supp. 1051 (S.D.Cal.1977) ....................................................5

*Fontana v. Haskin*
    262 F.3d 871 (9th Cir. 2001).............................................................18

*Gibson v. City of Chicago*
    910 F.2d 1510 (7th Cir. 1990)...........................................................12

*In Brink's, Inc. v. City of New York*
    717 F.2d 700 (2d Cir.1983)................................................................9

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*Int'l Oddities v. Record*
    CV 12-3934-CAS VBKX, 2013 WL 3864050 (C.D. Cal. July 22, 2013) ..... 7

*Jones v. Wellham*
    104 F.3d 620 (4th Cir. 1997) ........................................................................21

*LiButti v. United States*
    107 F.3d 110 (2d Cir. 1997) .........................................................................10

*Martinez v. Colon*
    54 F.3d 980 (1st Cir. 1995) .........................................................................12

*McDade v. West*
    223 F.3d 1135 (9th Cir. 2000) .....................................................................12

*Minter v. Wells Fargo Bank, N.A.*
    762 F.3d 339 (4th Cir. 2014) .........................................................................7

*Nationwide Life Ins. Co. v. Richards*
    541 F.3d 903 (9th Cir. 2008) .......................................................................10

*RAD Services, Inc. v. Aetna Casualty and Surety Co.*
    808 F.2d 271 (3rd Cir.1986) ...........................................................................9

*Stengel v. Belcher*
    522 F.2d 438 (6th Cir. 1975) .......................................................................12

*United States v. 4003-4005 5th Ave.*
    55 F.3d 78 (2d Cir.1995) ..............................................................................10

*United States v. Dist. Council of New York City & Vicinity of United Bhd. of
    Carpenters & Joiners of Am.*
    832 F. Supp. 644 (S.D.N.Y. 1993) .................................................................9

*United States v. Hawkins*
    59 F.3d 723 (8th Cir. 1995) .........................................................................23

*United States v. Hearst*
    563 F.2d 1331 (9th Cir. 1977) .....................................................................21

*United States v. Sheffey*
    57 F.3d 1419 (6th Cir. 1995) .......................................................................20

*Van Ort v. Estate of Stanewich*
    92 F.3d 831 (9th Cir. 1996) .................................................................12, 14

*Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*
    278 F.3d 523 (5th Cir. 2002) .......................................................................21

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

**RULES**

2

Federal Rules of Evidence 803 ...................................................................22

3

Federal Rules of Evidence, Rule 703 .............................................21, 22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

## I.     INTRODUCTION

2      Setting aside the exaggerated hyperbole and improper rhetoric threaded

3 throughout the County of Orange's Opposition, the County fails to present *any*

4 *evidence* disputing the numerous facts established by Plaintiff.  Reviewing the

5 County's response to Plaintiff's statement of uncontroverted facts, it is undisputed

6 that in response to a domestic abuse call, Deputies Chapple and Caropino arrived

7 at the front door of Plaintiff's husband's residence.  Undisputed Material Fact

8 "UMF" No. 1-7.  The Deputies took Plaintiff and her husband outside to speak to

9 them separately, with Deputy Caropino speaking to Plaintiff for about 20 minutes.

10 UMF Nos. 8-10.  After concluding that no crime had occurred and that the couple

11 should part ways for the night, the deputies then drove Plaintiff to her car, which

12 was parked a few blocks away.  UMF Nos. 12-20.  The County does not dispute

13 that the deputies drove her to her car *knowing* that Plaintiff's license had been

14 suspended and that she was under the influence.  UMF Nos. 17-20.

15      While the County largely disputes the facts that thereafter followed, the

16 disputes are entirely superficial.  Indeed, the primary "evidence" proffered by the

17 County is an unverified proposed answer wherein Deputy Caropino denies

18 Plaintiff's allegations.  As explained below, an answer is *not evidence* and

19 pursuant to Rule 56(e), does not create a triable issue of fact.  The only other

20 evidence offered is an entertainment casting video which *predates the incident*

21 (and thus has no relevance to the actions of Deputy Caropino and which

22 presumably is referenced and submitted as evidence only to embarrass Plaintiff

23 and portray her in a negative light) and two snippets of video from the dash-cam,

24 one concerning whether Plaintiff agreed to allow Deputy Caropino to search for

25 her license and registration, and the other where Plaintiff confirms the deputies'

26 assurance that they would check on her after leaving her husband's house

27 following the domestic abuse incident.

28      Further, when the dash-cam video is reviewed in its entirety (*see* Exhibit 1

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

to Boyer Decl. in support of Reply), it is revealed that this latter snippet relied on by the County occurred well-before Deputy Caropino searched Plaintiff's bag, found her "wet panties," told her he was going to "fuck the shit out of her" and before he ordered her to remain at her car or she would be in "big trouble." *See* Boyer Decl. *Even if* the comment occurred after Deputy Caropino told Plaintiff that he was going to come back to rape her and that if she left she would be in trouble, such a fact is of no consequence to the issues sought to be adjudicated as the comment was made in the presence of Deputy Chapple and thus likely to alert him of Deputy Caropino's threats. Either way, the comment in no way disputes the myriad facts laid out by Plaintiff.

Thus, reviewing the dash-cam video in its entirety only underscores the absence of triable issues. Indeed, the dash-cam video reveals that after Deputies Chapple and Caropino left Plaintiff at her car (at 00:45:08), Deputy Caropino drove Deputy Chapple to the Dana Point Sub Station and *dropped him off*. Boyer Decl. Deputy Caropino then raced back to Plaintiff's vehicle. Boyer Decl. The video shows the high speed at which Deputy Caropino drove to immediately return to Plaintiff – establishing that after dropping Deputy Chapple off at 00:48:18, Deputy Caropino arrived at Plaintiff's location, *alone, in uniform and in his patrol car,* at 00:50:47. Boyer Decl. With the audio and rear camera now disabled, the dash cam video reveals that Deputy Caropino parked his patrol car just in front of Plaintiff's car, exited his car and remained outside of his patrol car for at least six minutes (00:50:47- 00:56:51). This fact is undisputed. See UMF No. 51. The County offers no explanation as to why Deputy Caropino would immediately return to Plaintiff's vehicle after dropping Deputy Chapple off at the station. Either at this time, or after Deputy Caropino left Plaintiff and clocked out for the night, Deputy Caropino raped Plaintiff.

Notably, the County *does not dispute* that after initially denying that he had sex with Plaintiff to IA investigators, Deputy Caropino later admitted that he had

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

sex with her, stating that she was doped up, intoxicated and asleep in the back of her car.  See UMF Nos. 79-80, 82-83.

These uncontroverted facts, *coupled with* the extensive evidence cited by Plaintiff in her separate statement including evidence from other victims collaborating Plaintiff's testimony as well as evidence from the County's own employees, supports Plaintiff's *prima facie* showing that Deputy Caropino acted under color of authority when he sexually assaulted and raped Plaintiff in violation of her constitutional rights.  As the County has presented *no evidence* disputing these uncontroverted facts, partial summary judgment is appropriate.

## II.   THE COUNTY'S PROCEDURAL ARGUMENTS CONCERNING INADEQUATE NOTICE AND FAILURE TO MEER AND CONFER ARE MISPLACED

The County begins its Opposition by arguing that Plaintiff's two-day delay in serving the unredacted version of her motion and statement of uncontroverted facts and an alleged failure to meet and confer warrants denial of the motion in its entirety.  While Plaintiff acknowledged the inadvertent failure to serve the *unredacted* portions sought to be filed under seal and attempted to remedy any prejudice to the County resulting therefrom by extending the deadline for the opposition to July 12, 2017 and shortening her time to file the reply (which the County refused), the County ultimately secured an extension from the Court to file its opposition on July 17, 2017.  Dkt. 169.  Thus, the County had *an additional week* to oppose the motion.  In light of such, it is difficult to appreciate the prejudice caused by the initial two day delay.  Further, and as outlined in Plaintiff's previous opposition to the County's ex parte application to strike the motion, Plaintiff sufficiently met and conferred on the merits of the motion.  See Dkt. 148, 148-1.

Notably, while the County filed its opposition and supporting documents on Monday, July 17th, the County *failed to serve Plaintiff* with the unredacted

version of its opposition to separate statement.  Indeed, Plaintiff did not receive the unredacted version until Friday, July 21, 2017.  See Boyer Decl.

## III.   THE ISSUES OF WHETHER DEPUTY NICHOLAS CAROPINO WAS ACTING UNDER THE COLOR OF AUTHORITY AT ALL TIMES DURING HIS INTERACTIONS WITH PLAINTIFF, AND WHETHER HE VIOLATED HER CONSTITUTIONAL RIGHTS WHEN HE SEXUALLY ASSAULTED AND RAPED HER ARE APPROPRIATE FOR PARTIAL SUMMARY JUDGMENT

While it is at times hard to decipher exactly what the County is arguing, it appears that the County takes issue with Plaintiff's request for partial summary judgment as to whether Deputy Caropino was acting under the color of authority during his interactions with Plaintiff and whether his rape and sexual assault of Plaintiff violated her constitutional rights.  According to the County, the "obfuscatory statements" sought to be adjudicated by Plaintiff "have no nexus to any claim asserted in the operative complaint."  Dkt. 173, at 9.  But, and as mentioned later in its opposition, the County notes that "[t]o establish a prima facie case under 42 U.S.C. § 1983, the plaintiff must demonstrate proof that (1) the action occurred "under color of law" and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right."  See Dkt. 173, at 18.  It is precisely these elements, which as recognized by the County are essential in proving a Section 1983 claim against both Deputy Caropino and the County, as to which Plaintiff seeks partial summary judgment.

Such partial summary judgment would leave only the issue of damages as to the claim against Deputy Caropino.  As to the County, partial summary judgment would eliminate these first two elements of Plaintiff's claim for *Monell* liability.  See Ninth Cir. Model Ins. No. 9.5 re *Monell* Liability [first two elements are whether the officer was acting under color of authority and whether the officer's conduct deprived the plaintiff of a constitutional right].  While the

4

County boasts that "not a *single* allegedly uncontroverted fact even remotely addresses the existence of a policy or procedure, let alone a deficient one," (Dkt 173, at 12-13), that is because Plaintiff did not seek partial summary judgment of the County's *Monell* liability.  The issue of whether the County had a policy or practice that led to the constitutional violation suffered by Plaintiff will still need to be tried before the jury.  Thus, as outlined in her motion, Plaintiff seeks partial summary judgment of the elements of color of authority and constitutional violation by Deputy Caropino only.

Partial summary judgment of these issues is entirely appropriate and the County offers no authority to the contrary.  "Under F.R.Civ.P. 56(g), a summary judgment/adjudication motion, interlocutory in character, *may be rendered on the issue of liability alone*.  'In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others.'"  *Doctors Med. Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*, No. CV F 10-0452 LJO SKO, 2011 WL 1438156, at *11 (E.D. Cal. Jan. 14, 2011), citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir.1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir.1989).  A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial."  *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D.Cal.1977).

In *Doe v. City of San Diego*, 35 F. Supp. 3d 1195, 1204 (S.D. Cal. 2014), which similarly involved an officer using his position of power and authority to sexually assault a woman, the District Court for the Southern District of California granted partial summary judgment in favor of Plaintiff and against the defendant city, finding that the officer sexually assaulted the plaintiff and that at the time of the assault, he was acting with the course and scope of his employment as an officer.  See Exhibit 1 to Boyer Decl.  The issue of damages, as well as *Monell* liability against the City, remained.  The same is true here.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## IV.   THE COUNTY FAILS TO OFFER *ANY* EVIDENCE DISPUTING THAT OFFICER CAROPINO ACTED UNDER THE COLOR OF AUTHORITY WHEN HE SEXUALLY ASSAULTED AND RAPED PLAINTIFF IN VIOLATION OF HER CONSTITUTIONAL RIGHTS

Throughout its opposition, the County repeatedly argues that Plaintiff's motion is "rife with triable issues," going so far as to accuse Plaintiff of filing a motion that is "precipitously close to one which is frivolous and proffered in bad faith."  Dkt. 173, at 1-2.  Tellingly however, these purported disputes are *nowhere* in the County's response to Plaintiff's separate statement.  Indeed, and as explained below, the County has not produced *any evidence* disputing that Deputy Caropino was acting under the color of authority during his interactions with Plaintiff and when he raped and sexually assaulted Plaintiff, in violation of her constitutional rights.  While the County "disputes" several of the facts detailing the rape and use of authority exercised by Deputy Caropino over Plaintiff, the primary evidence relied upon by the County in support of the dispute is Deputy Caropino's *unverified* "proposed" answer to the complaint.  But an unverified answer to a complaint is not evidence of anything.  It's a denial.

For many reasons, the County's opposition fails to raise triable issues of fact defeating partial summary judgment.

### A.   The County's Reliance On Deputy Caropino's *Unverified* Denials To Allegations In His "Proposed" Answer Do Not Constitute Binding Judicial Admissions Sufficient To Create A Triable Issue of Fact And The Adverse Inference From Deputy Caropino's Assertion of His Fifth Amendment Right Is Entirely Appropriate.

According to the County, Deputy Caropino's "verified" Answer denying he was acting under the color of authority and denying that he raped Plaintiff constitutes a "binding judicial admission" sufficient to dispute the overwhelming

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

evidence demonstrating otherwise.  Dkt. 173 at 15-17.  The County is entirely
mistaken.

First, and contrary to the representation of the County, Deputy Caropino's
"proposed" Answer was *not* verified.  The Answer does not attach an affidavit or
sworn statement as required under Federal Rules of Civil Procedure Rule 11.
While the Answer was signed by Deputy Caropino, since at the time he was
representing himself pro-per, the County does not cite any authority holding that
where a party merely signs a pleading, the pleading is "verified."

Second, the cases cited by the County for the proposition that judicial
admissions are binding are inapposite.  All of those cases involve *admissions*—not
denials.  By definition, a denial is not an admission.  On this ground alone, the
County's argument is unavailing.  Further, in the cases cited, the rationale behind
considering statements of facts in a brief as admissions and binding is to
"withdraw[] a fact from issue and dispensing wholly with the need for proof of the
fact."  *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014).  A
denial does not remove a fact from issue; rather, it opens it up for further
adjudication on that issue throughout the litigation.

Third, it is well established that pursuant to Rule 56(e), "a party opposing a
properly supported motion for summary judgment '"*may not rest upon the mere
allegations or denials of his pleading*, but ... must set forth specific facts showing
that there is a genuine issue for trial."'"  *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 248 (1986).  As explained by one District Court, "[o]f course, defendant's
denials in his answer to the allegations supporting plaintiff's claims for relief *does
not relieve defendant of his burden to bring forth evidence in support of these
denials*, where plaintiff offers undisputed evidence that allows it to prove its
claims."  *Int'l Oddities v. Record,* No. CV 12-3934-CAS VBKX, 2013 WL
3864050, at *7 (C.D. Cal. July 22, 2013) (emphasis added); see also *Cohen v.
Trump,* 200 F. Supp. 3d 1063, 1068 (S.D. Cal. 2016) ["Once the moving party has

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"]; *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1337 (Fed. Cir. 2010) ["The requirement that the nonmovant must set forth 'specific facts' means that '[m]ere denials or conclusory statements are insufficient' to survive summary judgment."].

The County therefore cannot rely on a mere denial in an answer as evidence to dispute the uncontroverted facts set forth by Plaintiff.  As detailed in the separate statement, not only are Plaintiff's facts supported by her own testimony, but also the testimony of other County deputies as well as documentary and video evidence produced by the County.  Indeed, the evidence submitted includes statements made by Deputy Caropino himself admitting to having sex with Plaintiff – facts which are undisputed by the County.  See UMF 82 & 83.  Further, the facts are supported by the adverse inference arising out of Deputy Caropino's assertion of his Fifth Amendment privilege at his deposition.

Furthermore, to the extent the County takes issue with the adverse inference drawn from Deputy Caropino's invocation of the Fifth Amendment in response to questions counsel for Plaintiff posed during his deposition, the County's concerns are misplaced.  While the County argues that the Court should not draw such adverse inferences against the County, the County fails to appreciate that the inference is *not against the County,* but against Deputy Caropino.  Plaintiff is not offering the inference to establish that *the County* committed the alleged rape and sexual assault of Plaintiff.  Rather, Plaintiff offers the inference specifically against Deputy Caropino, to support the finding that he used his position of power and authority as a deputy sheriff to sexually assault and rape Plaintiff.

Moreover, the County's assertion that one person's invocation of the Fifth

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   Amendment cannot give rise to an inference against other is entirely unsupported

2   by existing decisional law.  As is well established, an employee's invocation of

3   the Fifth Amendment can and does give rise to inferences against an employer.

4   *See, e.g., In Brink's, Inc. v. City of New York,* 717 F.2d 700 (2d Cir.1983) (In a

5   civil action, adverse inference permissible against employer where employees

6   asserted Fifth Amendment); *RAD Services, Inc. v. Aetna Casualty and Surety*

7   *Co.,* 808 F.2d 271 (3rd Cir.1986) (An employee's invocation of the privilege was

8   admissible against his employer); *Cerro Gordo Charity v. Fireman's Fund*

9   *American Life Insurance*, 819 F.2d 1471 (8th Cir.1987) (Fifth Amendment

10  invocation of a controlling member of a charity was admissible against that

11  charity, finding the witness stood in the same position as the non-party ex-

12  employees in *RAD Services* and *Brink's*); *see also, United States v. Dist. Council*

13  *of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 832

14  F. Supp. 644, 651 (S.D.N.Y. 1993) ("A number of courts have held that the Fifth

15  Amendment invocation of an employee was proper and competent evidence

16  against an employer in civil litigation.")  Nothing the County cites to holds

17  otherwise.

18          The County attempts to dismiss such authority by asserting that "[i]n those

19  instances in which an employee or former employee's assertion of the Fifth

20  Amendment is treated as giving rise to an adverse inference against the employer,

21  one of the reasons for doing so is that a corporation can only speak through its

22  employees.  If no adverse inference arose from employee assertions of the Fifth,

23  the employer could unfairly stymie the discovery process by simply discharging

24  employees with the incriminating knowledge.  No such concern applies in the

25  case at bar."  This argument simply makes no sense.  Beyond being contradicted

26  by the above cited authorities, some courts have in fact even held that a non-party

27  and non-employee's invocation of the Fifth Amendment privilege may be

28  admissible and warrant an adverse inference to be drawn against a party to the

9

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    civil action.  *LiButti v. United States*, 107 F.3d 110, 124-25 (2d Cir. 1997) ("the

2    claim of privilege will not prevent an adverse finding or even summary judgment

3    if the litigant does not present sufficient evidence to satisfy the usual evidentiary

4    burdens in the litigation"); *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 83

5    (2d Cir.1995).  Here, the invocation was *not* by a non-party.  Rather, Deputy

6    Caropino is a party in the civil case.  As such, an adverse inference may be drawn

7    from his invocation of the Fifth Amendment.

8            Further misplaced is the County's argument that this Court "should not

9    draw such an inference against defendant County because it creates an unfair

10   advantage regarding the County's inability to cross-examine Caropino."  Dkt 173,

11   at 19.  Notably, the County was present at Deputy Caropino's deposition and

12   could have posed, but chose not to, any questions it wished.  Moreover, having

13   taken the Fifth at his deposition, it is well established that Deputy Caropino will

14   not now be allowed to testify about the same subject matter at trial, thus

15   foreclosing any opportunity for "cross-examine" Deputy Caropino.  *See*

16   *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008)

17   [explaining that "[t]rial courts generally will not permit a party to invoke the

18   privilege against self-incrimination with respect to deposition questions and then

19   later testify about the same subject matter at trial."]

20           Simply put, the County fails to identify a cogent legal basis for the

21   assertion that it is improper for Deputy Caropino's invocation of the fifth

22   amendment to give rise to an inference against Deputy Caropino.  Failing this,

23   the County attempts to argue that the inference is discretionary, and only

24   appropriate where "there is a substantial need for the information and there is not

25   another less burdensome way of obtaining that information."  Dkt 173, at 27.

26   The core of this case rests on Plaintiff being deprived of her constitutional rights

27   at the hands of Deputy Caropino when he used his position of power and

28   authority as a deputy sheriff to sexually assault and rape her.  This evidence

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

constitutes the heart of the underlying actionable conduct in this case.
Additionally, only two people were present at the time this occurred: Deputy
Caropino and Plaintiff. Far from undermining the inference, the fact that
Caropino has taken the fifth and Plaintiff has clearly and unequivocally stated
that he used his position to sexually assault and rape here provides the very
justification for the inference. *Baxter v. Palmigiano*, 425 US 308, 318 (1976);
*Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

> **B.    The County Fails To Set Forth Any Evidence Disputing The Fact
> That Deputy Caropino Acted Under The Color Of Authority At
> All Times During His Interactions With Plaintiff.**

While the County disputes that Deputy Caropino was acting under the color
of authority during his interactions with Plaintiff, the County fails to set forth *any*
evidence disputing such a finding.  The County's position appears to be that  a
question of fact exists as to whether he acted under the color of authority despite
the fact that the uncontroverted evidence demonstrates that during the at least 85
minute call logged by Deputies Chapple and Caropino wherein they responded to
the domestic abuse call, Deputy Caropino exploited his authority as an officer by
driving Plaintiff to her vehicle, knowing that she was under the influence and held
a suspended license, and then ordering her to remain there until he returned to
rape her and that she would be in "big trouble" if she left, because he allegedly
clocked out for the night before returning to the scene.  The County is mistaken.

First, while while the County offers a purported log to show that Deputy
Caropino ended his shift at 2 a.m. (see County's Ex. A), the dash-cam video
reveals that Deputy Caropino was still driving his patrol vehicle at 2:36 a.m.  *See*
Boyer Decl. Exh. 1, at 01:126:58.  Thus, the scant evidence submitted by the
County does not even demonstrate that Deputy Caropino was in fact off-duty by 2
a.m.  But even assuming he was off-duty, such a fact does not foreclose the
analysis of color of authority.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   "[W]hether or not a police officer is off-duty does not resolve the question

2   of whether he or she acted under color of state law." *Gibson v. City of Chicago*,

3   910 F.2d 1510, 1517 (7th Cir. 1990) (citing *Layne v. Sampley*, 627 F.2d 12, 13

4   (6th Cir.1980); *Greco v. Guss*, 775 F.2d 161, 168–69 (7th Cir.1985)).  "The fact

5   that a police officer is on or off duty, or in or out of uniform is not controlling.  '**It**

6   **is the nature of the act performed, not the clothing of the actor or even the**

7   **status of being on duty, or off duty, which determines whether the officer has**

8   **acted under color of law.'**" *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.

9   1975) (citing *Johnson v. Hackett*, 284 F. Supp. 933, 937 (E.D.Pa.1968) (emphasis

10  added)).

11       *Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006) is instructive.  There, the

12  Ninth Circuit held that a lieutenant employed by the county sheriff's department

13  was acting under color of state law even though he was off-duty and not wearing a

14  uniform in light of the evidence that he invoked his law enforcement status as a

15  "cop" to keep bystanders from interfering with his assault on a motorist who rear-

16  ended his personal vehicle.  *Anderson,* 451 F.3d at 1069-70.  The mere fact that the

17  officer was not "on-duty" did not foreclose a finding that he acted, or purported to

18  act, in the performance of his official duties.  Id., see also *McDade v. West*, 223

19  F.3d 1135, 1140 (9th Cir. 2000); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-

20  40 (9th Cir. 1996); *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995).  The same

21  is true here.

22       As laid out in Plaintiff's statement of uncontroverted facts, detailing her

23  testimony as well as the testimony of Deputy Chapple and the dash-cam video

24  produced by the County, at all times during his interaction with Plaintiff, Deputy

25  Caropino used his authority as an officer to sexually assault and rape Plaintiff.

26  Deputy Caropino "used his government position to exert influence and physical

27  control over [Plaintiff] in order to sexually assault [her]."  *Dang Vang v. Vang*

28  *Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991).  Exploiting his authority as an

1  officer, he ordered Plaintiff to remain in her vehicle until he returned to "fuck the

2  shit out of her."  Facts 6-14, 21-24, 28-30, 33-41, 52-69.  He told her she would be

3  in "big trouble" and that he could find her if she left.  Facts 37-38.  When he

4  returned to her location, he approached her vehicle and began banging on the

5  window with his flash light, and shined his light into her vehicle.  Facts 52-58.

6  When Plaintiff rolled down her car window, Deputy Caropino ordered her to

7  unlock the door.  Facts 57-58.  Once inside the vehicle, his orders only increased

8  as he brutally assaulted and raped her in her car.  Facts 60-68.

9       The fact that Deputy Caropino took off his uniform shirt and returned in his

10  own car does not transmute the circumstances whereby Deputy Caropino used his

11  position and authority as an officer to sexually assault and rape Plaintiff.  *See*

12  Exhibit C, Declaration of Noble, ¶ 11-12.  Even its expert declaration fails to set

13  forth any reasonable analysis concerning color of authority.  The County's expert,

14  Robert Fonzi, who has been excluded by numerous district courts[1], states only

15  "[t]he fact that the alleged sexual assault occurred while Caropino was not

16  wearing his uniform and while driving his personal vehicle supports the fact that

17  he was NOT [sic] acting in his official capacity as a Deputy Sherriff for the

18  County of Orange."  Dkt. 175, at 5.  Even if admissible, this "opinion" falls

19  woefully short of demonstrating triable issues defeating summary judgment.

20       To create an illusory dispute, the County cites a mere snippet in the dash-

21  cam video from the night of the incident wherein Plaintiff allegedly confirms in

22  the presence of both Deputies Chapple and Caropino their promise to check on

23  her.  According to the County, when Deputy Caropino returned to sexually assault

24  and rape Plaintiff he was not acting under the color of authority but "[i]nstead,

25  Caropino went to see plaintiff at her specific request."  Dkt. 173, at 22.  Setting

26  aside the offensiveness of the County's theory that Plaintiff asked him to come

27

28
_____
[1] See *Chang v. Cty. of Santa Clara*, No. 5:15-CV-02502-RMW, 2016 WL 3880999, at *1 (N.D. Cal. July 18, 2016).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

back as part of an alleged consensual, sexual "rendezvous" (as recently described by the County at the status conference), there is absolutely no basis for such an inference from the scant video snippet set forth by the County.  Indeed, when viewed in context it is clear that the comment arose after being driven away from her husband's house following the domestic abuse call and after the officers told her they would check on her, and, *before* Officer Caropino told Plaintiff that he would be back to "fuck the shit out of her." *See* Boyer Decl, Exh. 1.

The County entirely ignores the dash-cam footage showing that after leaving the scene with Deputy Chapple, Deputy Caropino drives Deputy Chapple to the station and drops him off.  *See* Boyer Decl, Exh. 1.  Within seconds of dropping off Chapple, Deputy Caropino speeds back to Plaintiff's location.  The dash-cam footage shows that Deputy Caropino returned, alone and in his patrol car, within five minutes of leaving Plaintiff.  *See* Boyer Decl, Exh. 1. While the rear facing camera was disabled, as well as his audio, Deputy Caropino parks his patrol car just in front of Plaintiff's car, exits his patrol car and spends six minutes outside of his patrol car.  As there is no identifiable reason for Deputy Caropino to immediately return to Plaintiff's location, alone and in his patrol car, the dash-cam video only supports a finding that Deputy Caropino was continuing to use his authority as an officer to exert influence over Plaintiff in order to sexually assault and rape her.

To the extent the County attempts to align the facts here with those in *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996), the County's analysis fails. In that case, the plaintiff could not defeat summary judgment because the only fact that the plaintiff asserted in support of her color of authority argument was merely that she recognized the defendant as a police officer.  *Id.* at 839.  Here, Plaintiff presented far more compelling facts to establish that Caropino exerted his influence and physical control over Plaintiff to rape her than simply her recognition of him as an officer.  The facts detail a situation where Deputy

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Caropino is responding to a domestic abuse call, wherein he tells her husband that
Plaintiff might be going to jail, and wherein he orders her to return to her vehicle
despite knowing that she is under the influence and possesses only a suspended
license.  The looming threat of Deputy Caropino's power over Plaintiff was
threaded throughout their interactions – including when he told her that if she left,
she would be in "big trouble."

Similar to *Anderson* and *Vang,* and the other authorities cited by Plaintiff, at
the time Deputy Caropino violated Plaintiff's constitutional rights, he was acting
or purporting to act in the performance of his official duties as a police officer and
for the purpose of influencing this behavior onto Plaintiff.  Partial summary
judgment is warranted.

### C.   The County Likewise Fails To Set Forth Any Specific Facts Creating A Genuine Issue Of Fact As To Whether Deputy Caropino's Rape Of Plaintiff Violated Her Constitutional Rights.

While the County disputes many of the facts detailing the actual rape and
sexual assault with only the purported denials in Deputy Caropino's alleged
answer, which as noted above is not evidence of anything, it is noteworthy that the
County *does not dispute* that during the investigation into the rape allegations,
Deputy Caropino admitted that he had sex with Plaintiff.  See UMF 83 & 84.  The
issue appears to therefore be whether the sex was consensual.[2]  The overwhelming
evidence is that it was not.  Indeed, the County fails to submit *any evidence*
raising even a triable issue of fact concerning the rape and sexual assault.  As

---

[2] As noted above, the only other evidence offered to demonstrate that the sex was consensual was
an entertainment casting video which *predates the incident*.  Notably, while the County
repeatedly cites this video in its separate statement as allegedly disputing Plaintiff's facts, the
County never even mentions the video or its purported relevance in its opposition.  This is likely
because such evidence is entirely inadmissible.  Setting aside the prejudicial character of the
video, the video apparently introduced to demonstrate that Plaintiff consented to the sexual
assault and rape.  But a victim's prior sexual history cannot be used to show consent.  See FRE
412.  Indeed, the County does not even attempt to comply with FRE 412 concerning the narrow
exceptions for when such evidence would be admissible.

---

15

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

detailed in the motion for partial summary judgment, Deputy Caropino's rape of Plaintiff violated her Fourth and Fourteenth Amendment rights.

With respect to these constitutional rights at issue, it appears that the County does not grasp the legal analysis. The uncontroverted facts establish that Plaintiff was subject to a continuous seizure by Deputy Caropino when she was raped, and therefore his conduct unquestionably violated her Fourth Amendment Right. *Alternatively,* the uncontroverted facts demonstrate that Deputy Caropino violated her substantive due process right to be free from violations of bodily integrity under the Fourteenth Amendment when he raped her. Thus, because Deputy Caropino's conduct violates both Plaintiff's Fourth *and* Fourteenth Amendment rights as a matter of law, even if triable questions of fact exist concerning the seizure of Plaintiff, such facts do not foreclose a finding that the rape violated the Fourteenth Amendment. *See* Dkt 131, at 16-17.

In other words, if Plaintiff was in Caropino's custody when she followed his orders to remain, then he violated her Fourth Amendment rights; if she was not in Caropino's custody for fourth amendment purposes, he nevertheless violated her fourteenth amendment rights when he raped her. Whether or not Caropino's rape and sexual assault of Plaintiff was committed as a part of an ongoing seizure of Plaintiff as contemplated under the Fourth Amendment, or whether the rape occurred outside of any alleged seizure and violated her Fourteenth Amendment right to be free from violations of bodily integrity, a constitutional violation occurred. The County fails to appreciate this analysis.

First, and setting aside the County's mistaken Fourth Amendment analysis, the County fails to raise any disputed fact concerning the violation of Plaintiff's Fourteenth Amendment right. While the County argue that "plaintiff also never requests the Court adjudicate any of the factors necessary to prove an alleged Fourteenth Amendment violation," and that "she must ask the Court [*sic*] Caropino's actions 'shocks the conscience,' but plaintiff does not ask the Court to

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

adjudicate that issue in her favor," (Dkt 173, at 13) such an argument was precisely made in Plaintiff's motion.  Under the subheading "Caropino's Rape and Sexual Abuse of Plaintiff Violated Her Fourteenth Amendment Right," Plaintiff explicitly addressed the Fourteenth Amendment's "shock the conscience" analysis. Dkt 131, at 14.  The County fails to set forth any evidence or argument demonstrating that an officer's rape of a civilian does not shock the conscience. See UMF Nos. 12-14, 21-24, 28-30, 33-45, 52-69.

The County's further contention that the Fourteenth Amendment has no application to this case because "plaintiff argues her claim should be analyzed under the Fourth Amendment, since she claims she was seized at the time of the incident," (Dkt 173, at 7) is again predicated on a flawed understanding of the legal analysis.  As explained above, the fact that Deputy Caropino's conduct constitutes both a violation of Plaintiff's Fourth Amendment rights as well as her Fourteenth amendment rights only further compels partial summary judgment because its obviates any legal effect the existence of factual dispute over Plaintiff's custody has on the legal conclusion that Caropino violated Plaintiff's constitutional rights.  In light of the County's failure to create a dispute concerning the Fourteenth Amendment violation suffered by Plaintiff, partial summary judgment on this issue is warranted.

Second, even considering the Fourth Amendment violation, partial summary judgment is warranted.  The County attempts to create triable issues of fact as to whether Plaintiff was unreasonably seized when Caropino raped her, but it cannot be controverted that Plaintiff was still subject to Caropino's seizure when she remained in her vehicle as she followed Caropino's orders which he gave as a deputy sheriff.  UMF Nos. 33-45.  This conclusion does not change even if the court were to apply Ninth Circuit Model Civil Instruction No. 9.20, which the County proffers in its Opposition.  According to the County, under this instruction, "plaintiff is required not only to prove she was seized, but also

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

whether a 'reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his or her business.'" Dkt. 173, at 5.

The County asserts that triable questions exist whether Plaintiff was in custody because, after Deputy Caropino had used his position of power and authority as a Deputy Sheriff to impermissibly take custody of Plaintiff to transport her to her vehicle, impermissibly search Plaintiff's purse and car, and then threaten her regarding her suspended license, and after he ordered her to remain in her vehicle otherwise she would get into "big trouble," she attempted to call family members from her mobile phone. Dkt 173, at 12. In a footnote, the County contends that this action demonstrated that under an objective standard, Plaintiff felt that she was free to leave. But the only evidence is that Plaintiff was making a cry for help from others because she herself could not terminate her encounter with Caropino.

Further flawed is the County's attempt to distinguish the authority cited by Plaintiff. According to the County, *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001) is misplaced since there the officer's misconduct occurred when the officer was on duty, the plaintiff was arrested, and the officer was conducting duties in his capacity. The County argues that unlike *Fontana*, here Plaintiff was not under arrest at the time of the rape and Deputy Caropino was off-duty. But as explained above, the fact that Deputy Caropino allegedly clocked out before immediately returning to rape plaintiff does not negate that he was acting in his official capacity. Here, Plaintiff was in a directly comparable position of vulnerability to the plaintiff's in *Fontana*.

Accordingly, partial summary judgment on Plaintiff's Fourth Amendment violation claim is warranted.

/ / /

/ / /

/ / /

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## V.   LASTLY, THE COUNTY'S EVIDENTIARY OBJECTIONS TO THE DECLARATIONS OF JEFFREY NOBLE AND L.D. LACK MERIT AND SHOULD BE OVERRULED

### A.   Declaration of Jeffrey Noble.

Defendant asserts numerous objections to the statements contained in the Declaration of Plaintiff's expert, Jeffrey Noble, including that such statements are irrelevant, are legal conclusions, are vague, ambiguous or unintelligible and assumes facts not in evidence.  As shown here, such objections are legally baseless and should be overruled.

According to the County, Mr. Noble's statements in Paragraph 12 that Deputy Caropino's "acts constituted a natural and continuous extension of the extensive preceding interactions he had with Plaintiff where he was clearly and unequivocally acting under the color of his authority" should be excluded as irrelevant, because "[t]here is not legal principle referred to as 'a natural and continuous extension of the extensive preceding interactions.'" The County's objection is perplexing to say the least.  It is Mr. Noble's opinion that at all times during his encounter with Plaintiff Deputy Caropino was acting under the color of authority and that it did not cease when he returned in a white undershirt.  His opinion is directly relevant to Plaintiff's § 1983 claim, specifically with respect to whether Deputy Caropino was acting under color of his authority when he sexually assaulted and raped Plaintiff.

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 703.  Under this broad standard of relevance, Mr. Noble's opinions that all of the interactions between Deputy Caropino and Plaintiff viewed together tend to make more probable that Deputy Caropino was acting under color of authority, an essential element for the § 1983 claim.  As such, Plaintiff has met the standard of relevance, and it is of no

1  consequence whether the specific language used by Mr. Noble mirrors verbatim

2  some standard or principle articulated in case law or a statute.

3       Defendants also argue that the determination of whether a reasonable

4  person would believe a defendant is acting as a law enforcement officer and had

5  the authority of his or her office, is a question for the trier of fact, and that an

6  expert witness cannot give an opinion as to a legal conclusion.  These objections

7  likewise fail.

8       Mr. Noble's opinions are admissible, as they speak to the ultimate issue as

9  to whether Defendant Caropino was acting under color of authority at the time of

10  the incident.  Federal Rules of Evidence, Rule 704, provides that opinions on

11  ultimate issues are admissible when they are helpful to the trier of fact, competent,

12  relevant and not unduly prejudicial.  As established above, Mr. Noble's opinions

13  set forth in his declaration are relevant, and are helpful to the trier of fact in

14  determining whether, under an objective standpoint, a reasonable person would

15  believe Deputy Caropino was still acting under his authority when he raped

16  Plaintiff.  Also, there is nothing in his declaration that runs the risk of unduly

17  prejudicing the jury or confusing the issues, as Mr. Noble's opinions directly go to

18  the heart of the issues in this case.  Further, there is no dispute as to whether Mr.

19  Noble is competent or qualified as an expert.  As such, his opinions on the

20  ultimate issue regarding Deputy Caropino's acting under color of authority are

21  admissible.

22       Moreover, contrary to Defendants' assertions, his opinions are not improper

23  legal conclusions.  The use of terminology, such as "color of authority," or "had

24  the authority," which also happen to embody a legal element in a § 1983 action, is

25  not objectionable because such terms do not have a "separate, distinct and

26  specialized" definition from the common meaning.  See *United States v. Sheffey*,

27  57 F.3d 1419, 1426 (6th Cir. 1995).  This terminology is reasonably clear to a

28  layperson, who would likely understand and assign same meaning as Mr. Noble

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

intended.  *United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir. 1977).

Furthermore, even if Mr. Noble's declaration could be viewed as concerning legal matters, it is well settled that expert witnesses *may* testify concerning legal matters when those matters involve questions of fact.  *Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002).  Here, Mr. Noble's statements, particularly in Paragraphs 12, 13, 14, and 16, are Mr. Noble's opinions concluding an ultimate issue of the case based on his analysis of the facts presented to him.  Accordingly, Mr. Noble's opinions are admissible.

Defendants' additional objection on the grounds that Mr. Noble's opinions assume facts not in evidence should also be overruled.  It is well settled that an expert opinion may be based on hearsay or other inadmissible matter.  Fed. R. Evid., R. 703.  "An expert may base an opinion on facts or date in the case that the expert has been made aware of or personally observed," whether or not they are admissible.  *Id.*

Finally, Defendants bear the burden but failed to make any showing how the terms "wanton infliction of physical harm" is vague, ambiguous or unintelligible, or lacks any application to a § 1983 action, as they assert.  In fact, such terms could hardly be viewed as ambiguous, since such terms have actually been invoked in similar cases, including *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997), involving allegations of rape by a police officer brought pursuant to a § 1983 claim and analyzing such conduct under the Fourth and Fourteenth Amendment.

Based on the foregoing, Defendants' objections to the Declaration of Jeffrey Noble lack merit and should be overruled.

**B.     Declaration of L.D., One of Several Victims of Caropino.**

Again, Defendants assert a series of similar, unmeritorious objections to the Declaration of L.D., another victim sexually assaulted and raped by Deputy

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   Caropino, on the grounds of relevance, hearsay, and speculation.

2         As with the declaration of Mr. Noble, L.D.'s statements contained in her

3   declaration are directly relevant to show that Deputy Caropino's victimized L.D.,

4   affirmatively negating his prior denials of raping L.D. and crude characterization

5   of their interaction as merely a "rendezvous."  L.D.'s declaration is also relevant

6   to establish that Deputy Caropino victimized other young, vulnerable women,

7   evidencing a pattern and practice of using his position of power and authority to

8   coerce these women into have nonconsensual sex or sexual contact with him.

9   Fed. R. Evid. 703.  Additionally, evidence detailing the similar non-consensual

10   attacks on other victims further supports Plaintiff's uncontroverted version of the

11   events.  Accordingly, L.D.'s statements are relevant and therefore admissible.

12   Further, the evidence of Deputy Caropino's prior sexual assaults falls within the

13   ambit of admissible evidence under Rule 415.

14         In addition, Defendants object to L.D.'s declaration on the grounds of

15   hearsay.  This objection is simply unfounded and should be overruled.  First, any

16   references in L.D.'s declaration to statements made by Deputy Caropino are *not*

17   hearsay under Federal Rules of Evidence 801(d)(2), which provides that a

18   statement offered against an opposing party (Caropino) and made by the party

19   (Caropino) is not hearsay.  Second, any statements in the declaration referring to

20   what L.D. stated to Deputy Caropino at the time he raped L.D. are also excluded

21   from the hearsay rule because her statements (a) describe an event or condition,

22   made while or immediately after L.D. perceived it, (Fed. R. Evid. 803(1) ["present

23   sense impression"]), and (b) relate to a startling event or condition, made while

24   L.D. was under the stress of excitement that it caused (Fed R. Evid. 803(2)

25   ["excited utterance"]).  There can be no doubt that Deputy Caropino's assault and

26   rape of L.D. constitutes more than a startling event. Presence sense impression

27   statements are considered trustworthy because the substantial contemporaneity of

28   event and statement minimizes reliability due to defective recollection or

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

conscious fabrication.  *United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir. 1995).

Moreover, L.D.'s statements are far from speculative, as Defendants contend, because her declaration is entirely based on her firsthand knowledge as not only a percipient witness, but the unfortunate victim, of Deputy Caropino's reprehensible sexual misconduct.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant the instant motion in its entirety and enter partial judgment in her favor and against Defendants.


DATED: July 24, 2017                    ESNER, CHANG & BOYER


                                        __*/s/ Holly N. Boyer*_____
                                        Holly N. Boyer
                                        *Attorney for Plaintiff*,
                                        ALEXA CURTIN

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**