# EXHIBIT 1

## Qualifications and Experience of Gerald G. Knapton

1. My current *curriculum vitae* is attached at the end of this summary.

2. I was educated at Brown University; U.C., Berkeley; and the School of Law at U.C.L.A. I am an attorney at law licensed to practice before all Courts of the State of California, all federal District Courts in California and before the 9th Circuit and the 3rd Circuit Court of Appeals and am a Registered Foreign Lawyer in Hong Kong. I am a senior partner (shareholder) of the law firm Ropers, Majeski, Kohn & Bentley, a professional corporation, which has offices in San Francisco, Redwood City, San Jose, Los Angeles, Boston , New York City, Seattle, Las Vegas, West L.A. and Paris, France.

3. I was admitted to practice law in California in December of 1977 and have been practicing law continuously since that time. Our law firm is a multi-service law firm offering litigation and transactional legal services domestically and internationally and handles a wide range of civil litigation in state and federal courts.

4. The undersigned has, over the years, developed a sub-specialty in litigation management, mediation of fee issues, legal ethics, retainer agreements, professional billing practices and opining on the reasonableness & necessity of legal fees, costs and experts' charges. By the term "litigation management" I mean the entire process of setting guidelines for billing practices for attorneys and budgets so that litigation matters are handled efficiently as well as retrospective reviews of the legal billings of law firms (as well as the work product) to determine their reasonableness and necessity for trial and appellate services. In addition, the undersigned is often called upon to consult, mediate or testify as an expert witness in legal ethics, Brandt Fees, fee matters or fee dispute matters, including a great many motions for fees under fee-shifting language such as "civil rights" and "private attorney general" statutes. I have prepared MCLE articles for "California Lawyer" on fee-shifting fee applications and have lectured at the California State Bar Annual Meetings on how to determine reasonable attorney's fees in a number of contexts.

5.      ***I personally have reviewed far in excess of $4.5 billion dollars in fees and the related work product.***  I review legal and expert bills for professional services for a great variety of clients who have some questions about the charges.  Sometimes it is just a question of reasonableness & necessity or how to allocate among the charges for a variety of legal work and at other times I review bills from opponents and their lawyers that are being submitted as part of a settlement or as part of a motion to shift fees.  Many times I am asked to apportion charges among insurance companies or several clients who have agreements to share some, but not all, of the "reasonable & necessary" charges.

6.      I review legal bills almost every day for law firms, corporations, partnerships, insurance companies, cities, counties, trustees, and individuals.  I have written and lectured on the issue of ethics in billing and on the reasonableness and allocation of legal fees and I have qualified and testified as an expert witness on the reasonableness & necessity of fees on more than 50 occasions before juries and judges both in federal and state court trials and in arbitrations.

7.      From 2001 to 2006 I was a member of the California State Bar's Committee on Mandatory Fee Arbitration ("CMFA"). I was the vice-chair of CMFA from 2003 to 2005 and was Chair of CMFA from 2005 to 2006.  CMFA trains state arbitrators and 43 local bar programs and their arbitrators in how to determine reasonable legal fees in about 5,000 "mandatory fee" arbitrations per year.

8.      The undersigned has reviewed and rendered opinions on the legal and experts' billings and legal work of hundreds of law firms throughout the United States, including many in California.  I have reviewed thousands of bills for defending and prosecuting litigated matters of many kinds and also for many transactional matters.  I have looked at about a thousand fee applications in individual matters and in class actions or complex litigation where one party is claiming fees under the terms of a written agreement, an indemnity agreement or an insurance policy, or fees under settlement agreements, by the "catalyst theory," and also under fee-shifting statutes such as the Anti-

pg. 2

**Exhibit 1, Page 17**

SLAPP, Labor Code, state and federal "Civil Rights," "Private Attorney General Statute" or other fee-shifting statutes or common fund fee spreading doctrines to form my opinions on allocations and reasonableness – as well as on the prevailing market rates for many locations.

9. While I review actual invoices from law firms and see the rates actually charged I have also done fee surveys and as part of my practice I have read and subscribe to almost all of the fee surveys or database compilations available such as the Thomson-Reuters/Westlaw CourtExpress Legal Billing Reports (which are compiled two or three times each year from Bankruptcy Court filings); (Wolters Kluwer company's ) CEB/Datacert/TyMetrix Legal Analytics "Real Rate Report" of 2012, 2013, 2014, 2015 and 2016 (which are extracted from TyMetrix 360 and LegalView actual payments); ALM Legal Intelligence Survey of Law Firm Economics; the AIPLA Report of the Economic Survey (which is compiled in odd numbered years and available in August or September); National Law Journal Survey; the *Laffey Matrix,* now named the *USAO Attorney's Fees Matrix* (published each year by the District of Columbia Office of the United States Attorney in June or July of each year); United States Bureau of Labor Statistics (BLS) and Oregon's Economic Survey Report as well as the Florida and Texas Bars' Surveys/Fact Sheets of rates as part of my work. I am familiar with the legal billing practices of almost all of the major law firms in the United States and have been called upon since 1992 to render opinions regarding the reasonableness of these billing practices, rates and fees. I have written articles on attorneys' fees for the *Los Angeles Daily Journal,* the Recorder, American Bar Association Magazine and several MCLE and "expert advice" articles for *California Lawyer*.

10. In addition to the MCLE articles I have also conducted MCLE programs on legal fees and mediation practices for the Council on Litigation Management and I have spoken on what is required for a fee application for several years past in MCLE seminars by several sponsors to lawyers as the fee portion part of seminars on insurance litigation.

pg. 3

**Exhibit 1, Page 18**

I have lectured on the subject of attorneys' fees at many events including the 2003, 2004, 2005, 2006 and 2008 Annual Meeting of the State Bar of California. I prepared MCLE materials and lecture on fees and ethics at the 2003, 2004, 2005 and 2006 State Bar Meetings. The *League of California Cities* asked me to author an article on fee shifting for the "Directory of Municipal Practitioners" regarding the evaluation of attorneys' fees. I was a contributing editor to Mealey's "Attorney Fees" and have written "expert commentary" at their request.

11. Because I have done work as an expert for proponents and (in other cases) opponents of lawyers' charges, I was jointly retained by both a prominent small city and a large insurance company which were adverse to each other but which agreed to accept my report as binding on them both.

12. I was one of the 3 members of the CMFA sub-committee that drafted the California State Bar of California Sample Written Fee Agreement forms. I frequently consult with lawyers or law firms or clients about various aspects of retainer agreements or fee-sharing arrangements, including budgets and alternatives to hourly billing.

13. Since 1992 I have reviewed many, many thousands of legal invoices and often the work product that was done to generate the legal bills. My practice involves looking at work product and legal bills almost every day from a very wide variety of circumstances:

> Lawyers' bills to corporate (or individual) clients
> Fee applications to shift fees to opponents
> Bankruptcy court fee applications
> Class action legal fee applications (fee-shifting or fee-spreading)
> Expert's charges for litigated cases
> Invoices to educational institutions
> Legal invoices to insurance companies
> Reinsurer LAE submissions to Retrocessionaires

pg. 4

**Exhibit 1, Page 19**

    Legal Bills in "Duty to Defend" situations

    Legal bills in "burning limits" insurance policy contexts

    Bills being shifted by contract

    Bills to insureds being paid by insurance companies

    Bills to cities or other governments

    *Cumis* fee submissions

    *Brandt* fee issues

    Bills to individuals

    Bills to partnerships

    Bills to Non-Profits

    Bills to religious organizations

    Charges to be divided/allocated among many payors

  14. In many instances I am trying to determine what a reasonable fee is by either the *quantum meruit* approach or by applying the terms of the written retainer agreement or by determining a "lodestar" amount under the terms of a fee-shifting law or court opinions. Many times I am provided with legal bills (and sometime the bills by all sides of a dispute to allow a comparison to be made). The invoices I see may be "shadow billing" (submitted, although payment made on a flat-sum basis), show discounts for many reasons but they also show the face rates—or the rates can easily be calculated. My experience has been that the undiscounted rates charged by counsel selected by clients run from about one hundred fifty to over one thousand dollars per hour. I now see face rates in the range of $125 up to $1,850 per hour on a regular basis. Some of the information I have been provided is pursuant to restrictions of one kind or another although there is no restriction on my considering the data. In many of these retentions there are discounts for a number of reasons, including the volume of work, the prominence of the client, the prominence of the particular matter, statutory limits, marketing pressures, *pro-bono* considerations, statutory schemes, government discounts,

affiliation discounts, prompt-payment discounts, etc. There are also ramifications of blended rates, bonus payments, monthly caps, deferred payments, part-contingency deals, etc.

15. I also review the legal work and many times discuss what was done (or not done) with the lawyers. By reason of this I have come to know the typical and reasonable hourly rates, the normal staffing deployed, the typical and reasonable amounts of time that are charged for legal work as well as the manner in which such work is described.

16. By reason of all of this work, I have developed an expertise and understanding of the ethics, retainer terms, law firm hourly rates, expert's charges, budgets, charges for litigation, arbitrations, appeals and transactional work in major metropolitan areas in many parts of the United States area over the last few years.

17. When challenged, all courts have agreed that I am well-qualified to offer my opinions (although some have not agreed with any or all my recommendations). My methods and testimony as an expert on the reasonableness & necessity of legal fees and rates has been upheld by the appellate court in *Cates v. Chiang*, 213 Cal.App.4th 791 (filed February 7, 2013, *Review Denied*).

18. The following pages have my current curriculum vitae.

*Curriculum Vitae*
**GERALD G. KNAPTON, ESQ.**



   

(2017)

**Firm Name:**
    Ropers, Majeski, Kohn & Bentley apc
    445 South Figueroa Street, 30th Floor
    Los Angeles, CA 90071
    (also Redwood City, San Francisco, San Jose, NYC, Boston, Las Vegas, Seattle, Paris & Hong Kong* offices)
                    *In Association with Liau, Ho & Chan

Main tel. (213) 312-2000 or **direct line: (213) 312-2016**
Main fax (213) 312-2001 – web site www.rmkb.com
E-mail: gerald.knapton@rmkb.com

**Status**: Senior Partner (Shareholder)
(Prior experience as general counsel and as partner and associate at L.A. law firms)

**Ratings**: AV Preeminent in 2017 by Martindale-Hubbell and Preeminent "AV" in 2017 Judicial Edition Martindale-Hubbell/Reed Elsevier/Lexis-Nexis rating:



(2017)

**Admissions to Practice Law**:

| | | | |
|---|---|---|---|
| California (SBN 077038) | : 1977 | Hong Kong (registered foreign lawyer*) | : 2007 |
| Central District of California | : 1978 | Ninth Circuit Court of Appeals | : 1978 |
| Southern District of California | : 1979 | Northern District of California | : 1979 |
| Eastern District of California | : 1981 | Third Circuit Court of Appeals | : 1998 |

**Member**:
**California State Bar Committee on Mandatory Fee Arbitration**
(2001- 2006; Vice-Chair 2004 – 2005; Chair 2005-2006).

Los Angeles County Bar Association member 2003 to 2012

Los Angeles County Bar Association Professional Responsibility & Ethics Committee

(2005 – 2008).

Pasadena Humane Society & SPCA – Board of Directors 2008 – 2017.

Council on Litigation Management (member 2009 – 2012).

American Bar Association (member 1978 – 1983; 2009 to 2011).

**Education**:
Brown University (Providence, Rhode Island) and
University of California, Berkeley, B.A., 1973 (With Highest Honors & Phi Beta Kappa).
University of California, Los Angeles, School of Law, J.D., 1976
Pepperdine University School of Law – Straus Institute for Dispute Resolution, 2003

**Litigation/Trial Experience**:
More than 48 cases to court, jury and arbitration panel(s).
More than 8 Court of Appeals and Supreme Court matters.

pg. 8

**Exhibit 1, Page 23**

**Testifying expert**:
**Qualified and testified more than 50 times to jury, court or arbitrator as an expert on the reasonableness and necessity of litigation fees and costs.**

**Fee Dispute Matters**:
Far over $4.5 billion dollars in nationwide legal fees, experts' fees and costs and work product reviewed. Litigation management and fee matters concerning attorney's fees and related costs ranging from $20,000 to in excess of $800,000,000.00 in charges. Lawyer to lawyer approach backed by computer technology. Lectures and seminars, written and oral opinions, declarations and expert testimony on reasonableness of fees in hundreds of matters throughout the United States, Canada and other common law jurisdictions. Analysis of *Cumis*, fee-shifting, lodestar, agreement-based, common-fund, panel and retained counsel's fees. "CAFA" projections. *Buss* and *Brandt* and other allocations. Cost-control training, including budgets, alternative fee programs, guidelines and retainer agreements. California State Bar Sub-Committee member on drafting the 2005 State Bar Sample Fee Agreements. Chief outside auditor of legal fees for the several governmental entities. Retained by insurance companies, law firms, governmental entities, corporations and private individuals as fee expert, *in support of and opposing* requests for fees. **Designated "binding" neutral by existing clients, an adverse prominent city and large insurer.** Retained as mediator in fee disputes.

**Author**:
"Budgets, Performance Metrics and You" (ADTA Program Handout -76[th] Meeting, Nashville April 2017). "What Every Lawyer Should Know About the Latest Interpretation of California's Cost-Shifting Settlement Statute" (MCLE article, January 5, 2017) *California Lawyer*; "How to Prove an Attorney's Reasonable Hourly Fee" Expert Advice/Practical Tips *California Lawyer* November 2015; "Can You Prove Your Hourly Rate to the Court?" *Daily Journal* October 19, 2015; 2 Routes to Hourly Rates for Lawyers" April 15, 2015 *Law 360*; "Recovering Fees In Family Law Practice" 2015 - Volume 37 No. 1 *Family Law Newsletter*, California State Bar; "Wrangling with whether and when actual trial begins" *Los Angeles Daily Journal*, February 4, 2015; "Recovering Fees from Clients" *California Lawyer*, July 2014; "Catalyst theory still a viable route to attorney fees" *Los Angeles Daily Journal*, June 19, 2013. "One-way fee shifting proves risky" *Los Angeles Daily Journal*, March 21, 2013. "Welcome to the cafeteria of *Jankey v. Lee*" [federal preemption law] *Los Angeles Daily Journal*, December 27, 2012. "For the Love of a Family Pet," The Recorder, October 19 & 22, 2012. "State high court to review fee award in disability access suit," *Los Angeles Daily Journal*, October 17, 2012. "Warning: Some Cost Shifting May Occur" *California Lawyer* (MCLE article September 2012). "Legislative History Says No Fee-Shifting in Meal and Rest Break Litigation," *Los Angeles Daily Journal*, May 16, 2012. "Labor Code Fee Shifting Provisions," *Los Angeles Daily Journal,* February 17, 2012. "Fee Shifting Statutes and Self Representation" *The Recorder* November 2011. "Recoverable Attorney Fees for Public Entities" Public CEO (July 22, 2011). "The fine art of actually collecting legal fees" *National Law Journal,* June 15, 2009. "Arbitration & Mediation", *The Recorder* April 15, 2009. "Attorney's Guide to Arbitrating and Litigating a Fee Dispute," September 2008 program materials at California State Bar Annual Meeting in Monterey, CA. "Controlling the Costs of E-Discovery," *Los Angeles Daily Journal*, August 6, 2008. October 2006 California State Bar Meeting materials and speaker at MCLE program on California State Bar retainer agreements. September, 2005 California Sate Bar meeting materials for and speaker at 2 MCLE programs: "New State Bar Sample Written Fee Agreements" and "Overview of the Mandatory Fee Arbitration Process." "Billing Guidelines Offer Base Against Which to Measure Results." *San Francisco and Los Angeles Daily Journal* November 24, 2004. October 2004 California State Bar meeting materials for, and speaker at, 2 MCLE programs: "Getting It Right From the Beginning" and "Do's and Don'ts For Collecting Attorneys Fees". "Vroom, Vroom. Three Categories

pg. 9

**Exhibit 1, Page 24**

For Fee Shifting Means Finding The Right Gear", *The Recorder & Cal Law* (Practice Center, August 18, 2004). "Ethics of Attorneys Fees", *California Lawyer* (MCLE article July, 2004). "Attorney Liens Must Comply With 'Fletcher' Requirements", *San Francisco and Los Angeles Daily Journal*, June 29, 2004. "'Catch-All' Arbitration Clauses Don't Give Parties Firm Footing", *San Francisco and Los Angeles Daily Journal*, June 4, 2004. "Attorney-Client Fee Conflicts" San Francisco and Los Angeles Daily Journals (January 26, 2004). "Attorneys Fees Applications" MCLE, *California Lawyer* (January, 2004 revision). "Paper Cutter" (Electronic Invoicing) Daily Journal *Extra* (December 29, 2003). "Appealing Arbitration Awards", *Los Angeles Daily Journal* (October 6, 2003). "Fees in Flux" MCLE Program materials for, and speaker at, 2003 California State Bar Meeting. "Shaping Arbitration", *Los Angeles Daily Journal Verdicts & Settlements* (March 8, 2002). "The *Catalyst Theory* May Still Live", *Expert Advice, California Lawyer* (November, 2001). "Policy Language Is Winning Against Recoupment But A New Battle Looms" *Mealey's Attorney Fees*, Vol. 3, #11 (June, 2001). "Why Don't Clients Pay? What You Need to Know to Avoid Collections Headaches" *Law Practice Management Magazine* (American Bar Association) Vol. 27, # 3 (April, 2001)." The Choice Of The Yardstick Is The Most Crucial Decision", *Mealey's Attorney Fees*, Vol. 3, #2 (September, 2000). "A Lawyers Bill May Be Reduced or Forfeited by Ethical Violations", *Expert Advice, California Lawyer* (February, 2000). "How Do You Prove the "Lodestar" for In-house Counsel Fees?", *Mealey's Attorney Fees,* Vol. 2, #1 (August, 1999)." Attorneys Fees Applications", MCLE*, California Lawyer* (May, 1999). "Paying the Other Side's Legal Fees: Attorneys' Fees Calculations Under Fee-Shifting Statutes.", *The Directory of Municipal Practitioners*, § II, G. (League of California Cities, 1997).

Recent Speaking engagements:
  USC/Gould School of Law, Second Annual Advanced Arbitration Institute  July 28, 2017
  Association of Southern California Defense Counsel MCLE program on recovering fees by motion and the ethics of legal billing on November 3, 2016.
  Law firm pricing program to large law firm on June 17, 2015.
  Plaintiffs Securities Law Firm: In-house MCLE program "Optimal Timekeeping Procedures; Avoiding Objectionable Case-Related Expenses." August 9, 2012
  Smart Business Los Angeles – July 2012 edition. "How to ensure your money is well spent with the right law firm during litigation."
  ACI's 6th Annual Forum "Reducing Legal Costs" October 20-21, 2011
  Provisors, LLP "Effective Motions for Attorney's Fees" July 8, 2011
  Mercury Insurance Group on Mediation for CLM February 2011
  Sonoma Risk Insurance MCLE on Contract Litigation Insurance 2010
  How to Review Legal Bills, CLM program in Columbia, SC June 2010
  Strafford's Ethical Pitfalls in Client Billing & Fee Collection, July 29, 2009.
  State Bar Annual Meeting, September, 2008 (Monterey) on arbitrating or litigating fee disputes.
  Bermuda offshore carriers program May, 2008.
  State Bar Annual Meeting, 2006 (Monterey) on retainer agreements.
  CELA Annual Conference speaker on retainer agreement, September 15, 2006
  Bridgeport MCLE program on Insurance Bad Faith August 25, 2006
  Class Action/UCL MCLE Program section on Attorney's Fees, April, 2006
  Quisenberry Insurance Bad Faith Litigation Seminar, January, 2006
  State Bar Annual Meeting, 2005 (San Diego) on retainer agreements and arbitration.
  Quisenberry Seminar in January, 2005 on fees and ethics.
  State Bar Annual Meeting, 2004 (Monterey) on fees and ethics.
  State Bar Annual Meeting, 2003 (Anaheim) on fees and ethics.

Employment History of Gerald G. Knapton, Esq. (CA SBN 077038):

| | |
|---|---|
| 2002 to present. | Ropers, Majeski, Kohn & Bentley apc – Sr. Partner/Shareholder |
| 1992 to 2002 | Cooper Kardaras & Kelleher LLP (formerly known as Cooper, Brown, Kardaras & Scharf) - Partner (& Manager of Lauditors, Inc.) |
| 1992 to 1992 | First National Group, Inc. - General Counsel |
| 1989 to 1991 | Northland Financial Company - Vice President |
| 1983 to 1989 | First National Group, Inc. - General Counsel |
| 1982 to 1983 | Schroeder, Forde & Knapton - Business/Bank Litigation Partner |
| 1978 to 1982 | Hahn Cazier & Leff - Business Litigation Associate |
| 1977 to 1978 | Kirtland & Packard - Tort Defense Litigation Associate |
| 1973 to 1977 | California Attorney General and Law Offices of Kenneth L. Knapp; law clerk while attending and after law school. |

*Business Experience* prior to law school:
Rogers Corporation (Manufacturing Company)
Branch Motor Express (Trucking Company)
Adley Express (Trucking Company).

Others to be provided upon request.     End of list.