Holly N. Boyer, SBN 221788
  *hboyer@ecbappeal.com*
ESNER, CHANG & BOYER
234 E. Colorado Blvd., Ste. 975
Pasadena, CA 91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859

Attorneys for Plaintiff
ALEXA CURTIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE; NICHOLAS LEE CAROPINO, individually and as Deputy Sheriff for the County of Orange; and DOES 1 through 50,<br><br>Defendants. | Case No.: 8:16-CV-00591-SVW-PLA<br>Assigned to Hon. Stephen V. Wilson<br><br>**DECLARATION OF BARRETT S. LITT IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988**<br><br>*[Filed concurrently with Notice of Motion and Motion for Attorney's Fees and Costs, Declarations in Support Thereof, and [Proposed] Order]*<br><br>**DATE:       September 25, 2017**<br>**TIME:       1:30 p.m.**<br>**DEPT.:      Courtroom 10A** |

1

**DECLARATION OF BARRETT S. LITT**

## DECLARATION OF BARRETT S. LITT

I, Barrett S. Litt, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California.  This declaration is submitted in support of Plaintiffs' Motion for Fees and Costs.  The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents.  If called upon, I could and would testify competently thereto.  I provide this Declaration in support of Plaintiffs' motion for an award of attorney's fees and costs.

**BACKGROUND AND CIVIL RIGHTS/ATTORNEY FEE EXPERTISE**

2.      Since 1984, I have been the principal or senior partner in firms that operate for the specific purpose of developing and maintaining a civil rights and public interest law practice that operates in the private sector on the basis of self-generated fee awards and other recoveries.  Since January 1, 2013, I have been a partner in the law firm of Kaye, McLane, Bednarski & Litt (referred to at times as "KMBL").  Between September 2010 and December 31, 2012, I was a partner in the law firm of Litt, Estuar, and Kitson, which still operates to some extent as an independent firm to complete certain old cases.  From July 2004 to September 2010, I was a partner in the law firm of Litt, Estuar, Harrison, and Kitson.  From 1998 to July 2004, I was the principal in the law firm of Litt & Associates, Inc. From September 1, 1991 to May 1, 1997, when my then partner left the law firm to become Deputy General Counsel for Civil Rights at the federal Department of Housing and Urban Development, I was a partner at the firm of Litt & Marquez. For the seven years prior to that, I was a partner in the firm of Litt & Stormer, Inc.

3.      I graduated from the University of California at Berkeley in 1966 and from UCLA School of Law in 1969. For the first approximately ten years of my practice, I focused primarily in the area of criminal defense at the trial and appellate levels, mostly in federal courts. In that capacity, I handled hundreds of matters, tried many cases ranging from immigration offenses to murders, and

**DECLARATION OF BARRETT S. LITT**

handled numerous appeals. Since 1981, I have focused primarily on complex civil litigation in the areas of constitutional law, civil rights law, class action litigation, and complex multi-party litigation.

4.      My former firm, Litt & Stormer, received the Pro Bono Firm of the Year Award from Public Counsel in 1987 in recognition of its public interest and civil rights work. Litt & Marquez received an award from the NAACP Legal Defense Fund in July, 1992, as civil rights firm of the year in recognition of its civil rights work. I received an award from UCLA School of Law as its public interest alumnus of the year in 1995 and received a CLAY award for my work in *Goldstein v. City of Long Beach et al.*, along with my co-counsel in the case, described in ¶ 12 *infra*.

5.      I have both spoken and written on the subject of civil rights training. I published an article entitled "Class Certification in Police/Law Enforcement Cases" in Civil Rights Litigation and Attorney's Fee Annual Handbook, Vol. 18, Ch. 3 (West Publishing 2002) and one for the National Police Accountability Project titled "Select Substantive Issues Regarding Class Action Litigation In The Jail/Prison Setting", National Police Accountability Project, October 2006. I published an article in the Los Angeles Lawyer regarding the use of minimum statutory damages under the Unruh Act, particularly actions brought under Civil Code §52.1, to enhance the prospects for certifying class actions. See "Rights for Wrongs," Los Angeles Lawyer December 2005. In 2010, I published an article in West's Civil Rights Litigation and Attorney's Fee Annual Handbook entitled, "Obtaining Class Attorney's Fees." I am rated "AV" by Martindale-Hubbell. I am, and have been for many years, listed in Super Lawyers Southern California in the fields of civil rights and class actions.

6.      My curriculum vitae is attached as Exhibit "A" to this declaration.

7.      I am considered an expert in, among other things, attorneys' fees in civil rights and class action cases. I have frequently trained attorneys regarding

**DECLARATION OF BARRETT S. LITT**

1   obtaining and properly documenting statutory attorneys' fee awards. I have filed

2   declarations on numerous occasions expressing expert opinions on the appropriate

3   standards for awards of attorneys' fees in civil rights cases, which have been

4   accepted by the courts.

5   8.   In 2007, I testified as an attorneys' fee expert in a civil rights case on

6   behalf of plaintiffs represented by a major law firm in Los Angeles. The case had

7   a confidential settlement, with fees to be arbitrated by a former superior court

8   judge now at JAMS. Because the settlement and arbitration were confidential, I

9   do not feel at liberty to identify the issues, parties, firms or retired judge involved.

10  However, there was a defense fee expert in that case who described me as "a

11  prominent Los Angeles civil rights litigator experienced in fee issues arising from

12  public interest litigation." The arbitrator described my testimony as "credible and

13  reliable", and described me as having "had a wide exposure to fees at a number of

14  major firms in Los Angeles doing complex civil litigation."

15  9.   I have also on occasion represented other attorneys in their fee

16  litigation seeking statutory attorneys' fees.

17  10.   I litigate a wide range of civil rights cases, including police and jail

18  abuse, wrongful conviction, housing and employment and other discrimination,

19  and violation of a wide range of constitutional rights. My current emphases are

20  civil rights class actions and wrongful convictions cases. I am currently lead or

21  co-lead counsel in pending civil rights class actions in the Los Angeles area and

22  in other jurisdictions, including Washington D.C., Maryland and Georgia.

23  11.   As I mentioned, my full curriculum vitae is attached. To give some

24  sense of my experience, I mention here the largest civil rights cases in which I

25  have been the lead counsel:

26  ➢ *Williams v. Block*, Case No. CV97-03826 CW (C.D. Cal.) and

27  related cases (a series of cases county jail overdetention and strip

28  search cases, settled for $27 Million and a complete revamp of jail

4

**DECLARATION OF BARRETT S. LITT**

procedure);

➢ *McClure v. City of Long Beach* (fair housing case against City of Long Beach for preventing six group homes for the handicapped from opening; jury verdict before remittitur of $22.5 Million (exclusive of attorney's fees) rendered 8/04/04; case recently settled for $20 Million);

➢ *Craft v. County of San Bernardino*, EDCV05-0359 SGL (C.D. Calif.) (reported at 2008 U.S.Dist. LEXIS 27526) (certified class action against the Sheriff of San Bernardino County for blanket strip searches of detainees, arrestees, and persons ordered released from custody; partial summary judgment decided for plaintiffs; $25.5 Million settlement plus injunctive relief in 2008);

➢ *MIWON v. City of Los Angeles*, Case No.: CV07-3072 AHM (FMMx) (class action on behalf of demonstrators attacked by LAPD in MacArthur Park on May 1, 2007; settled in 2009 for $12.75 Million plus injunctive relief);

➢ *Bynum v. District of Columbia*, Case No. 02-956 (RCL) (D.D.C.) (certified class action against the District of Columbia for overdetentions and strip searches of persons ordered released from custody, settled for $12 Million in 2006);

➢ *Nozzi v. Housing Authority of the City of Los Angeles*, Case No. CV 07-00380 PA (FFMx) (settlement of estimated $9.25 Million for failing to provide proper mandated notice prior to subsidy reduction to Section 8 Housing Choice Voucher Program holders pending);

➢ *O'Connell v. County of Los Angeles,* Case No. 13-CV-01905 MWF (PJWx)  ($15 Million settlement in wrongful conviction case pending);

➢ *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex)

**DECLARATION OF BARRETT S. LITT**

(C.D. Cal.) (settlement for putative class fund of approximately $12 Million for persons arrested on possession of drugs and strip searched);

➢ *Goldstein v. City of Long Beach*, et al., Case No. CV04-9692 AHM (Ex) (C.D. Cal.) (wrongful conviction case against Long Beach Police Department based on violation of *Brady v. Maryland* for man imprisoned for 24 years; $7.95 Million settlement in August 2010);

➢ *Lopez v. Youngblood*, 609 F.Supp.2d 1125 ((E.D. Cal. 2009) (Settlement approved for putative class fund of approximately $7 Million for inmates strip searched after becoming entitled to release, and strip searches in groups);

➢ *Barnes v. District of Columbia*, Case 1:06-cv-00315-RCL 02-956 (RCL) (D.D.C.) (*Bynum* follow-up certified class action against the District of Columbia for overdetentions and strip searches of persons ordered released from custody, settled for $12 Million in 2006).

12.    My qualifications have been noted by various courts or opposing experts. Following are a few examples:

a.    Central District Judge Consuelo Marshall, in a recent fee decision in *Rodriguez et al. v. County of Los Angeles et al.*, CV 10-6342-CBM (AJWx) (12/27/2014), found that "Barrett S. Litt, who served predominantly in a consulting role on this case, is considered one of the leading civil rights attorneys in the country" and that the requested rate "of $975 per hour for Attorney Litt is supported by his strong reputation and experience." See also Judge Marshall's comments in *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex) ("Mr. Litt is widely known as one of the foremost civil rights attorneys in California, having a particular expertise in civil

**DECLARATION OF BARRETT S. LITT**

rights class actions and other complex multi-party civil rights cases, especially law enforcement class actions").

b.  Kenneth Moscaret, a well-known defense fee auditor, has stated in a declaration where he addressed my qualifications that I had "an outstanding background and reputation in civil rights/constitutional litigation in Los Angeles", that I was "one of the top litigators in [my] field" and that he believed that my "skill, experience, and reputation in his field are deserving of a premium rate" (although he thought a premium rate was lower than I do).

c.  Magistrate Judge Carla Woehrle, in awarding attorneys' fees in *Williams v. Block*, *supra*, commented that I am "considered one of the outstanding civil rights litigators in California, with special expertise in class actions, [and] the other attorneys involved in this litigation on behalf of the class are highly regarded, experienced and capable civil rights attorneys…."

d.  United States District Judge Stephen Larson, in awarding attorneys' fees in *Craft v. County of San Bernardino*, *supra*, commented that "Plaintiffs' counsel are experienced civil rights litigators who are at the top of their field of expertise – civil rights litigation with special expertise in civil rights class actions."

e.  In a case in state Court, where I submitted a declaration in support of a fee motion, Judge Gregory W. Alarcon described another attorney and me as "acknowledged experts in attorney fees in class action cases . . . ." *Molina v. Lexmark International Inc.*, LA Super. Ct. No. BC339177, Order Granting Plaintiff's Motion for Attorney's Fees and Costs in

7

**DECLARATION OF BARRETT S. LITT**

1   the Amount of $5,772,008.07, filed Oct. 28, 2011 at 4.

2   13.   As my case list demonstrates, I have been involved with, and
3   successful in, a wide range of complex civil rights cases, and have regularly
4   brought fee motions under numerous federal and state fee shifting provisions. I
5   frequently provide fee declarations in support of fee applications by other
6   attorneys in civil rights cases, which have been cited in fee orders in the Central
7   District to support fees that are in line with those that counsel for the Plaintiffs are
8   seeking in this case. *See, e.g., Rauda v. City of Los Angeles*, CV08-3128 CAS
9   (PJW), Fee Order dated 12/20/2010, p.10 ("With respect to the reasonableness of
10  the fees requested, the Court finds that plaintiffs have sufficiently documented the
11  fees requested. It further concludes, and is satisfied based on the declarations of
12  Barrett S. Litt and Carol A. Sobel in support of plaintiffs' motion that the hourly
13  rates requested by plaintiffs are consistent with those in the relevant legal
14  community for individuals having the stature of plaintiffs' counsel."); *Lauderdale
15  v. City of Long Beach*, No. CV 08-979 ABC (JWJx), Fee Order dated 1/11/2010,
16  p.11 ("Barrett S. Litt, another experienced civil rights litigator, also testified that
17  the rates are in line with the Southern California market, his own experience, and
18  fee awards in similar cases.").

19  14.   I regularly review a variety of material to keep abreast of rates
20  charged and awarded for complex litigation in Southern California. I do this in a
21  variety of ways, including contacting firms to provide (on either a public or
22  confidential basis) current rate information; speaking with other attorneys familiar
23  with complex litigation rates; reviewing court filings and cases regarding
24  attorneys' fees (including both fee applications and fee awards); and obtaining
25  other sources of fee information. I have also reviewed rates reported in Court
26  Express for bankruptcy work by California law firms for the year 2009. My
27  review of selected billing rate information has included, at various times, review
28  of rates from various large law corporate firms. In particular, I have recently

---

8

**DECLARATION OF BARRETT S. LITT**

collected a wide variety of civil rights awards (either lodestar awards or lodestar crosschecks in civil rights class action fee awards) and class action awards in consumer cases with lodestar crosschecks, the results of which are described further on in this declaration. This has included review of rates sought and awarded to such boutique civil rights firms as my own firm(s); the ACLU; the Disability Rights Legal Center; Disability Rights Advocates; Hadsell, Stormer et al.; the Law Offices of Carol Sobel; Schonbrun, DeSimone et al.; and awards to various individual practitioners. In addition, to the extent I am able, I collect information regarding commercial rates; there are periodically reported decisions addressing fee awards in commercial cases, which I periodically review.

### SOURCE MATERIALS RELIED ON FOR RATE OPINIONS

15.     The rate information on which I rely is set forth in full in Exhibit B to this Declaration, which is incorporated by this reference and is broken into three tables, described as follows:

> ➤ Table 1: *Civil Rights Lodestar Awards/Lodestar Crosschecks*. These are taken from reported attorney fee awards, or filed court orders, in civil rights cases where there was either a direct lodestar award or a lodestar crosscheck against a percentage of the settlement or award fee.

> ➤ Table 2: *Consumer/Wage & Hour Class Action Lodestar Crosschecks*. This is self-explanatory, and was taken from reported cases.

> ➤ Table 3: *Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports*. These are a firm's standard rates reported either in a court filing, referred to in a court decision, provided to counsel, or contained in the 2009 Court Express summary of bankruptcy filings referred to previously.

16.     Exhibit B contains three cuts of the same information, each

**DECLARATION OF BARRETT S. LITT**

containing three tables, organized and designated as follows: 1) organized by case; 2) organized by years of graduation, most to least; and 3) organized by rates, highest to lowest (based on the adjusted rate for the year 2014, which concept is described below). I draw on this rate information in addressing the reasonableness of the rates requested in the motion, and include what I consider the most relevant references in the body of this Declaration.

17.    In the charts that I attach as Exhibit B, and incorporate as relevant into the body of this Declaration, I provide the following information:

| Term | Description |
| --- | --- |
| Attorney | The name of the attorney awarded the rate listed or, for the commercial firms, their normal rates (or indicate if the individual identity is unknown) |
| Firm | The firm listed |
| Practice Yrs | The years in practice at the time of the award or, if it could be clearly determined from the opinion or other available information, the years in practice when the fee application was made. In parentheses are the years of law school graduation |
| Rate | The rate awarded in the case of awards, or normally charged for commercial firms |
| Year | The year of the award or the year of the fee application if those rates were used. |
| Adjusted Rate | An adjustment to the fee award to compensate for the passage of time, the basis for which is described in ¶¶ 21-26 below. |

///

10

**DECLARATION OF BARRETT S. LITT**

The name of the case in which the fee was awarded or, for commercial rates (where applicable) filed for, is noted by the use of a superscript number next to the name of the attorney. At the conclusion of the first set of charts in Exhibit B (and incorporated as relevant if the reference is used in the body of this Declaration), the name and case number, and/or Westlaw cite of the case is listed if the source is from a public filing. If the source is not from a public filing, the non-public source is identified and/or attached. Cases not in Westlaw, documents from a case file, and non-public documents relied upon (with the exception of Court Express) that are referenced by a superscript number are attached with a designated Exhibit Number (which number matches the superscript number).[1]  If the case is in Westlaw, it is not attached as Exhibit C.

18.     The years of practice for an attorney are based on either information directly provided by the source or, where it was not so provided, by checking the attorney's website or the California State Bar Member Search. In some cases, the year of admission to the Bar may not be completely reliable because there may be reasons that an attorney's years of admission to the California State Bar are less than the years of practice. For example, an attorney may have practiced in another state before California or may have delayed admission while clerking for a judge or for some other reason. Where the attorney graduated from a California law school, it is likely that s/he graduated the same year as the Bar admission.

19.     With respect to my analysis of commercial rates in Table 3 of Exhibit B, it is well established that civil rights rates were intended by Congress to be comparable to complex commercial litigation such as antitrust. *See, e.g., Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122-23 (C.D. Cal. 2008) ("declarations establish that the hourly rates set are similar to those for

---

[1]     So, for example, if the superscript uses the number "81" to designate the case, then the exhibit, if attached, will be Exhibit 81. It will be attached if it is a non-public source or a court order not available on Westlaw.

**DECLARATION OF BARRETT S. LITT**

1  attorneys of comparable skill and experience at the rates paid for complex federal

2  litigation, which was Congress' intent for civil rights cases. *See City of Riverside*

3  *v. Rivera*, 477 U.S. 561, 575-576, 106 S.Ct. 2686 (1986) (quoting Senate Report,

4  at 6, U.S. Code Cong. & Admin. News 1976, p. 5913, *supra*, (Congress intended

5  civil rights fees to be comparable to that for 'other types of equally complex

6  Federal litigation, such as antitrust cases')"). There is nothing to suggest that the

7  legal work involved in the rates referenced in Table 3 is more complex than a

8  complex civil rights case.

### ADJUSTMENT FACTOR

10      20.    In this declaration and in the rate charts attached as Exhibit B, I use

11  "Adjusted Rates" to compare the rates requested in this case to the historical rate

12  data that I have presented. The "Adjusted Rate" is an inflation adjustment to show

13  what a prior rate would be equivalent to in 2017 adjusted for the passage of time.

14  The adjustment is based on the mean (numerical average) of the nation-wide

15  Legal Services Component of the Consumer Price Index produced by the Bureau

16  of Labor Statistics of the United States Department of Labor, which is reproduced

17  by Dr. Michael Kavanaugh in his website for the "Updated Laffey Matrix." The

18  "Updated Laffey Matrix" has been cited, and relied on, by courts in D.C.[2]

---

21  [2]    *See Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000);

22  *Smith v. Dist. of Columbia*, 466 F. Supp. 2d 151, 155 (D.D.C. 2006) (the use of the

23  updated *Laffey* Matrix is reasonable and consistent with previous precedent from

     our Court of Appeals, as well as from this Court in *Salazar*" and is "more accurate

24  in that the calculation was based on increases/decreases in legal services rather

     than increase/decreases in the entire CPI"); *McDowell v. District of Columbia*, Civ.

25  A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4,

26  2001) ("Plaintiffs may point to such evidence as an updated version of the Laffey

     matrix"); *Salazar v. Dist. of Columbia*, 750 F. Supp. 2d 70, 72 (D.D.C. 2011)

27  (affirming use of the adjusted rate based on the national legal services data for

     monitoring work in the case, and rejecting Defendant's contention that the United

28  States Attorney's matrix should be used instead).

---

**DECLARATION OF BARRETT S. LITT**

21.     I used an adjustment factor of 3% per annum. I reached this number by taking the average (mean) annual rate increase of the Legal Services CPI for the ten years June 2008 to May 2018, which came to slightly below 3% (2.96%) per year, and which I rounded to 3%. See http://www.laffeymatrix.com/see.html. That this is a reliable and conservative national figure is confirmed by the fact that the inflation rate calculated for these years was significantly lower than the average inflation factor for the previous ten years which was more than 4.5%, as reflected in the Updated Laffey Matrix.

22.     Further, other information indicates that the 3% inflation factor is likely an understatement of the increase in rates over the past several years in major metropolitan areas. The 3% adjustment is a national figure, and fees in urban large metropolitan areas will likely have risen more rapidly. Thus, for example, the Wall Street Journal reported in April 2013 that, in "the first quarter of 2013, the 50 top-grossing U.S. law firms boosted their partner rates by as much as 5.7%, billing on average between $879 and $882 an hour" and that, in 2012, "legal fees in general rose 4.8% and associate billing rates rose by 7.4%, according to a coming report by TyMetrix Legal Analytics, a unit of Wolters Kluwer, and CEB, a research and advisory-services company. Those numbers are based on legal-spending data from more than 17,000 law firms." See Jennifer Smith, On Sale: the $1,150-Per-Hour-Lawyer, Wall St. J., Apr. 9, 2013, at http://www.wsj.com/articles.  A 2016 article reported an average billing rate increase of 3.2%. See Elizabeth Olson, Higher Fees Increase Law Firm Revenues by 4.1 Percent, N.Y. Times, Aug. 15, 2016, at www.nytimes.com/2016/08/16/business/dealbook/higher-fees-increase-law-firm-revenue-by-4-1-percent.html. According to a March 2017 release from Wolters Kluwer's ELM Solutions and CEB, 2016 rates rose 7.3% at the associate level and 3.2% at the partner level. See also Forbes, July 7, 2016 ("According to data from CEB, the average hourly rate charged by major law firm partners nearly

**DECLARATION OF BARRETT S. LITT**

doubled since 2000")[3]  These figures are considerably higher than the 3% adjustment factor that I have used.

23.    The adjustment factor is important because it is not a valid comparison to take a fee from five years ago for, e.g., a 20 year lawyer and compare it to a fee requested by a 20 year lawyer today because the five-year-old fee does not account for the change in rates in today's legal dollars. Additionally, it is not a valid comparison to take a fee from five years ago for a particular attorney and compare it to a fee requested by that same attorney today, even if the adjustment factor is applied. This is because the adjusted rate for that particular attorney does not reflect that, in addition to industry-wide increases in rates, the attorney is five years more experienced and should charge a higher rate today than she could with five years fewer experience.

24.    Thus, the adjustment factor is merely a tool to approximate what the current rate for an attorney of the same years of experience would be awarded now, as opposed to when the award was actually made, and it does not account for increased experience or expertise. To give an example, a 2009 lodestar cross-check for me confirmed an $800 rate, which, in the adjusted dollars I have used, is over $1000. Similarly, in that same case, the Court approved a rate of $710 for Carol Sobel, which, in the adjusted dollar calculation I used, amounts to over $885. However, those are simply inflation/rise in rates adjustments, and do not

---

[3]    *See also, e.g.*, Hildebrandt Institute, *Top Law Firms Still Tops in Rates, Billable Hours* at 22, January 10, 2013, available at http://hildebrandtblog.com/2013/01/10/top-law-firms-still-tops-in-rates-billable-hours ("A survey from The National Law Journal (NLJ) (registration required) found that median partner rates were up 4.5 percent from 2011 to $517 an hour in 2012, and the median associate rate rose 3.5 percent to $323, with hourly rates ranging from $130 to $1,285 and a median hourly rate of $432. This gibes with the findings of the Major Lindsey & Africa (MLA) "Partner Compensation Survey 2012," which recorded an hourly rate range from $115 to $1,265 and an average partner billing rate of $584 (up from $555 in 2010).")

**DECLARATION OF BARRETT S. LITT**

1  account for increased experience and expertise gained in those intervening years.

2  Thus, it is to be expected that the current rate for attorneys who have received

3  previous awards will be meaningfully above the adjusted rate based on a prior

4  award.

5        25.     I have spent the time I have explaining the adjustment factor used

6  because, in analyzing the rates, the only way to compare rates from prior years to

7  the current year rates requested by plaintiffs' counsel in this case is to neutralize

8  the effect of inflation and market changes over time.

9        26.     I have been at times asked why I do not use generic surveys to

10  determine rates. The simple answer is that surveys do not provide the most useful

11  information for the relevant market. I principally rely on actual awarded rates in

12  civil right cases or class action lodestar cross checks in civil rights cases because

13  these are awards in the same market, i.e., the market for Plaintiffs' complex civil

14  rights cases in the major markets in California (Los Angeles and the Bay Area).

15  *See, e.g., Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547 (1984) ("the

16  statute and legislative history establish that 'reasonable fees' under § 1988 are to

17  be calculated according to the prevailing market rates in the relevant

18  community"); *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) ("the district

19  court should not have relied on the rates paid by the City to private attorneys for

20  defending excessive force cases as a starting point for the reasonable hourly

21  rate....Private attorneys hired by a government entity to defend excessive force

22  cases are not in the same legal market as private plaintiff's attorneys who litigate

23  civil rights cases."). The relevant community here is Plaintiffs' lawyers in

24  complex civil rights cases in Los Angeles (and, because rates in Northern

25  California are comparable, Bay Area civil rights awards as well). Surveys do not

26  reflect that market. Class actions and commercial rates for complex litigation are

27  used as comparators because Congress intended civil rights awards to be

28  comparable. See discussion in ¶ 20.

**DECLARATION OF BARRETT S. LITT**

## RATES AND COSTS REQUESTED

27.    The rates being requested are for the lawyers identified in the table below, which includes their firm and position, years of practice, and hours spent on the case (rounded to the lowest full number) are:

| Biller | Firm | Years Practice (Grad Yr) | Rate | Approx. Hours |
|--------|------|--------------------------|------|---------------|
| Browne Greene | Greene, Broillet & Wheeler | 56 years (1961) | $875 | 90 (approx.) |
| Daniel Balaban | Balaban & Spielberger | 11 years (2005) [took bar in 2006] | $750 | 167 (approx.) |
| Holly Boyer | Esner, Chang & Boyer [Partner] | 15 years (2002) | $750 | 442 (approx.) |
| Shea Murphy | Esner, Chang & Boyer [Partner] | 11 years (2006) | $550 | 290 |
| Jeremy Jass | Jass Law | 6 years (2011) | $400 | 787 |
| Vanessa Loftus-Brewer | Balaban & Spielberger [Associate] | 8 years (2009) | $350 | 56 |
| Steffi Jose | Esner, Chang & Boyer [Associate] | 3 years (2014) | $300 | 20 |
| Joseph Persoff | Esner, Chang & Boyer [Associate] | 2 years (2015) | $275 | 25 |

28.    Below is a description provided me by Plaintiffs' counsel describing the role in the case of each attorney listed above.

a.    **Daniel Balaban**, after agreeing to come on board in March 2017, took on the role of lead attorney.  In addition to formulating theories of the case and directing discovery and law

16

**DECLARATION OF BARRETT S. LITT**

and motion, Mr. Balaban took almost all of the key depositions, coordinated a mediation with the County's lead counsel Dana Fox, examined and cross-examined all witnesses during the *Monell* phase of trial and gave the opening and closing statements in both phases of the trial.

   i.   Mr. Balaban acted as lead trial counsel, directed and oversaw discovery and law and motion work, took the key depositions, and coordinated the mediation effort.

b. **Browne Greene** joined the team just before trial and was instrumental in obtaining the verdict.  In addition to assisting with the selection of the jury, Mr. Greene examined and cross-examined all of the witnesses on the issues of damages and provided a rebuttal closing statement before the jury during the damages phase of trial.

   i.   Mr. Greene also participated in the pretrial conference and second pre trial conferences; assisted in the selection of the jury and attended every day of trial; and examined and cross-examined all witnesses during damages phase.

c. **Holly Boyer** prepared and oversaw all of the legal briefing and was imperative in narrowing the issues ultimately tried before the jury.   Ms. Boyer successfully prepared a motion for partial summary judgment in plaintiff's favor, and defeated summary judgment of the *Monell* claims and navigated the case through the complex legal issues presented in the motions in limine, jury instructions and the verdict form.

   i.   Ms. Boyer also prepared and supervised all law and motion, the mediation brief, and plaintiff's MSJ; evaluated all the evidence, prepared extensive a separate

17

**DECLARATION OF BARRETT S. LITT**

1   statement of facts; prepared motions for filing under
2   seal given that defendant designated every document
3   and deposition as confidential; argued all motions
4   before the Court; attended the pretrial conference ,
5   attended every day of trial (at counsel); prepared
6   opposition to Monell MSJ in one week; and prepared
7   motions in limine, jury instructions, special verdict trial
8   briefs and other trial related documents..

9   d.   **Shea Murphy**, a partner at Ms. Boyer's firm, was also
10      brought in to assist in light of the complexity of the legal
11      theories concerning *Monell* liability and the volume of
12      evidence that Plaintiff had to organize and present to the court
13      in the separate statements for both summary judgment
14      motions.

15      i.   Mr. Murphy evaluated the evidence, played a
16          significant role in formulating the ultimate legal
17          theories pursued against the County for *Monell* liability,
18          and assisted in preparing the extensive legal briefing
19          that was ultimately successful in this case and played a
20          central role in researching and writing the extensive
21          motions involved in the case. He attended trial everyday
22          and assisted with any on the spot research/pocket briefs/
23          jury instructions, and prepared the expert for trial.

24   e.   **Jeremy Jass** was the sole attorney representing Ms. Curtin for
25      the first year of litigation and during that time prepared and
26      responded to discovery, took depositions and successfully
27      battled multiple partners and numerous associates at Lewis
28      Brisbois in multiple motions to compel, reviewed the huge

18

**DECLARATION OF BARRETT S. LITT**

volume of documents Defendants produced, and organized
and marshaled all the evidence for trial and for the expert.

        i.     Mr. Jass also took the lead throughout the litigation and
especially during trial in communicating with the client,
which at times was extremely difficult given her
psychological injuries from the rape and assault.

    f.    **Vanessa Loftus-Brewer**, an associate at Balaban &
Spielberger, assisted with numerous pre-trial and trial tasks
including preparing deposition summaries for trial and the
summary judgment motions as well as reviewing and
organizing the numerous documents and video-clips produced
by the County.

    g.    **Steffi Jose** and **Joseph Persoff**, both associates at Esner
Chang & Boyer, assisted with the research necessary for the
filing of the summary judgment motions as well the onerous
process of filing documents under seal in light of the County's
designation of every single document and deposition as
confidential.

29.    While I do not personally know the attorneys on this case, I have
reviewed the information regarding their work on this case and their experience
and qualifications, as well as a description of the issues in this case. While it
appears that obtaining a verdict against the individual defendant was relatively
straightforward, obtaining a verdict against the County was not. Plaintiffs had to
overcome various hurdles unique to establishing *Monell* liability. (I discuss
further on the challenges and complexity of establishing Monell liability.) Thus,
this case qualifies as a complex case (leaving aside, as I explained in ¶ 20, that
Congress considered civil rights cases generally complex), and the rates awarded
should be assigned on that basis. As reflected by Exhibit B, the rates sought in

**DECLARATION OF BARRETT S. LITT**

this case are well within the range of the rates charged by attorneys of comparable experience in the Southern California area for complex federal and civil rights work. Below I address the rates sought in this case, and compare them to attorneys of comparable or lesser experience, skill and reputation seeking or charging comparable or lesser rates.

## BROWNE GREENE RATE

30.     A reasonable rate for Mr. Greene, a well-known Plaintiffs' trial attorney for decades with a long list of multi-million dollar verdicts, is at least $1,000 per hour. My last awarded rate was $975 per hour (and it is now significantly higher). Although it is my opinion that a reasonable rate for Mr. Greene's is at least $1,000, given his experience and reputation, he has limited his request to $875. This rate is more than justified for his trial value, and I believe is very much on the low end of what constitutes a reasonable rate for him.

31.     Below I list other awards or rates for attorneys of comparable or fewer years who have these or similar rates. In doing so, as I mentioned above, I rely on the adjusted rate in order to compare apples to apples. I supply these in the three different tables previously described – civil rights awards, consumer class actions lodestar crosschecks, and commercial rates.

First, I list some relevant comparable rates from my Table 1. Table 1 shows many lawyers with comparable years of experience receiving comparable rates in adjusted dollars to those requested here. These are all based on documented court awards in civil rights cases, and thus don't reflect commercial rates. Perhaps most comparable to Mr. Greene from the list below, because he is also a well-known Plaintiff's trial lawyer, is Ian Herzog, who was awarded a statutory fee rate of $1,000 in 2011, six years ago. (The adjusted rate for that award is $1,194.)

/ / /

/ / /

/ / /

**DECLARATION OF BARRETT S. LITT**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Sid Wolinsky[13] | DRA* | 51 (1961) | $860 | 2012 | $997 |
| Sid Wolinsky[4] | DRA* | 49 (1961) | $835 | 2010 | $1,027 |
| Unnamed[10] | Rosen Bien & Galvan | 48 (1962) | $800 | 2010 | $984 |
| Barrett S. Litt[34] | Kaye, McLane, Bednarski & Litt | 45 (1969 | $975 | 2014 | $1,065 |
| Ian Herzog[24] | Law Office of Ian Herzog | 44 (1967) | $1,000 | 2011 | $1,194 |
| Barrett S. Litt[8] | Litt, Estuar & Kitson | 43 (1969) | $850 | 2012 | $985 |
| Barrett S. Litt[6] | Litt, Estuar & Kitson | 40 (1969) | $800 | 2009 | $1,013 |
| Paul R. Fine[24] | Daniels, Fine, Israel, Schonbuch &  Lebovits | 39 (1972) | $850 | 2011 | $1,015 |
| Barrett S. Litt[15] | Litt, Estuar & Kitson | 39 (1969) | $750 | 2008 | $979 |
| Dan Stormer[8] | HSKRR**** | 38 (1974) | $825 | 2012 | $956 |
| Bill Lann Lee[18] | Lewis, Feinberg, Lee, Renaker, & Jackson | 38 (1974) | $825 | 2012 | $956 |
| Barrett S. Litt[7] | Litt, Estuar & Kitson | 38 (1969) | $725 | 2007 | $974 |
| Jose R. Allen[4] | Skadden Arps | 34 (1976) | $930 | 2010 | $1,144 |
| Paul L. Hoffman[6] | Schonbrun, de Simone | 33 (1976) | $750 | 2009 | $950 |

        Because it would consume an undue amount of space to list the cases, rate sources etc. relied upon in the body of this Declaration, I do not list them in the Declaration for any of the tables. Exhibit B contains the full name of each reference used, and the source referred to, by superscript number. (For example,

**DECLARATION OF BARRETT S. LITT**

1  using the reference from Table 1 to Katherine Weed, superscript #13 refers to the
2  Fee award in *Communities Actively Living Independent and Free v. City of Los*
3  *Angeles*, 2:090cv-00287 CBM-RZ-Doc # 255 (C.D. Cal. 6/10/13) (lodestar award
4  in settlement of ADA injunctive relief class action), the citation to which may be
5  found at page 14 of Exhibit B.)

6        Below, I list some relevant, comparable rates from my Table 3. (I did not use
7  Table 2 for this Declaration because I did not think it was that helpful or analogous
8  in this case.) Table 3 *shows* a wide range of attorneys in commercial cases with
9  both awarded and adjusted rates over $1,000 (again, based on adjusted dollars),
10  substantially higher than those requested here for an attorney with 11 years of
11  experience. As I explained above, Congress intended rates for complex civil rights
12  litigation to be on a par with those for complex commercial litigation.

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Unnamed[84] | Lieff Cabraser | 42 (1970) | $900 | 2012 | $1,043 |
| Thomas J. Nolan[82] | Skadden Arps | 40 (1971) | $1,095 | 2011 | $1,307 |
| Unnamed[11] | Arnold & Porter | 39 (1974) | $910 | 2013 | $1,024 |
| Unnamed[84] | Lieff Cabraser | 38 (1974) | $900 | 2012 | $1,043 |
| Unnamed[85] | Paul Hastings | 33 (1978) | $940 | 2011 | $1,122 |
| Unnamed[92] | Pachulski, Stang et al. | 32 (1977) | $650 | 2009 | $1,089 |
| Daniel Kolkey[86] | Gibson Dunn | 32 (1977) | $840 | 2009 | $1,064 |
| Arturo Gonzalez[83] | MoFo | 28 (1985) | $950 | 2013 | $1,069 |
| Wayne Barsky[86] | Gibson Dunn | 26 (1983) | $905 | 2009 | $1,146 |
| Brian J. Hennigan[89] | Irell & Manella | 25 (1983) | $775 | 2008 | $1,011 |

22

**DECLARATION OF BARRETT S. LITT**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Unnamed[92] | Gibson Dunn & Crutcher | 25 (1974) | $790 | 2009 | $1,210 |
| Marc Becker[81] | Quinn Emanuel | 24 (1988) | $1035 | 2012 | $1,200 |
| Unnamed[85] | Paul Hastings | 23 (1998) | $850 | 2011 | $1,015 |
| Unnamed[92] | Davis, Polk & Wardwell | 19 (1990) | $955 | 2009 | $1,240 |
| Jason D. Russell[82] | Skadden Arps | 18 (1993) | $1,030 | 2011 | $1,230 |

## DANIEL BALABAN AND HOLLY BOYER RATES

32.     Next, I turn to Daniel Balaban and Holly Boyer, who have comparable years of experience 15 and 11, took the lead in aspects of the case (Mr. Balaban for trial and trial preparation and Ms. Boyer for navigation of the legal issues). As such, I believe each should be awarded at the high end of the rates that have been awarded in other cases and the requested rate for both is $750. Although Mr. Balaban has four less years' experience, his requested rate is somewhat higher due to his exceptional level of trial experience for his years of practice. Below I list some comparable awarded rates in civil rights cases for attorneys of 10 to 20 years' experience.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Michelle Uzeta[13] | DRLC*** | 20 (1992) | $700 | 2012 | $811 |
| Michael Seplow[5] | Schonbrun, de Simone | 20 (1990) | $590 | 2010 | $726 |

**DECLARATION OF BARRETT S. LITT**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Earnest Bell[15] | Law Offices of Earnest Bell | 20 (1988) | $600 | 2008 | $783 |
| Julia Sherwin[27] | Haddad & Sherwin | 19 (1995) | $695 | 2014 | $759 |
| Scott A. Brooks[24] | Daniels, Fine, Israel, Schonbuch & Lebovits | 19 (1992) | $650 | 2011 | $776 |
| Julie Nepveu[4] | AFL***** | 19 (1991) | $660 | 2010 | $812 |
| Ronald K. Tellis[30] | Baron & Budd | 18 (1996) | $775 | 2014 | $847 |
| Melissa Kasnitz[4] | DRA* | 18 (1992) | $650 | 2010 | $799 |
| Shawna Parks[35] | Law Ofc Shawna Parks | 17 (1999) | $695 | 2016 | $716 |
| Robert M. Kitson[8] | Litt, Estuar & Kitson | 17 (1995) | $625 | 2012 | $725 |
| Hector O. Villagra[1] | ACLU | 17 (1994) | $600 | 2011 | $716 |
| Douglas Ingraham[28] | Schonbrun, de Simone | 15 (1998) | $575 | 2013 | $647 |
| Matthew McNicholas[17] | McNicholas & McNicholas | 15 (1997) | $700 | 2012 | $811 |
| Peter Eliasberg[2] | ACLU | 15 (1994) | $525 | 2009 | $665 |
| Angela Padilla[20] | MoFo | 15 (1991) | $600 | 2006 | $831 |
| Gene J. Stonebarger[31] | Stonebarger Law, APC | 14 (2000) | $650 | 2014 | $710 |
| Shawna Parks[13] | DRA* | 13 (1999) | $665 | 2012 | $771 |
| Unnamed[10] | Bingham, McCutcheon | 13 (1997) | $655 | 2010 | $806 |
| Unnamed[10] | Rosen Bien & Galvan | 13 (1997) | $560 | 2010 | $689 |
| John Glugoski[19] | Righetti Glugoski | 12 (1997) | $650 | 2012 | $754 |

**DECLARATION OF BARRETT S. LITT**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Kevin LaHue[34] | Kaye, McLane, Bednarski & Litt | 10 (2004) | $600 | 2014 | $656 |
| Katherine Weed[13] | DRA* | 10 (2002) | $600 | 2012 | $696 |
| Joseph J. Ybarra[1] | MTO** | 10 (2001) | $550 | 2011 | $657 |
| Jennifer Bezoza[4] | DRA* | 10 (2000) | $570 | 2010 | $701 |
| Shawna Parks[14] | DRLC | 10 (1999) | $525 | 2009 | $665 |

33.    If we were to use commercial awards for attorneys of comparable years of experience to Mr. Balaban and Ms. Boyer, they would be consistently higher, as the adjusted rates taken from Table 3 show for attorneys in the 8-17 year range. I included as low as eight years to illustrate that, in complex commercial litigation, the rates for attorneys of comparable years of experience, or substantially fewer are far higher.

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Unnamed[85] | Paul Hastings | 17 (1994) | $725 | 2011 | $866 |
| Unnamed[92] | Morrison & Foerster | 17 (1992) | $650 | 2009 | $747 |
| Amy Lalley[94] | Sidley Austin | 16 (1998) | $825 | 2014 | $765 |
| Unnamed[91] | Paul Hastings | 16 (1994) | $725 | 2010 | $812 |
| Diane Hutnyan[81] | Quinn Emanuel | 15 (1997) | $790 | 2012 | $916 |
| Unnamed[85] | Paul Hastings | 15 (1996) | $725 | 2011 | $866 |
| Unnamed[92] | Gibson Dunn & Crutcher | 15 (1994) | $525 | 2009 | $1,001 |

**DECLARATION OF BARRETT S. LITT**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Danielle Gilmore[87] | Quinn Emanuel | 15 (1993) | $685 | 2008 | $894 |
| Daniel Perry[93] | Milbank, Tweed | 14 (2000) | $1,135 | 2014 | $830 |
| Unnamed[92] | Pachulski, Stang et al. | 14 (1995) | $535 | 2009 | $918 |
| Victoria Maroulis[81] | Quinn Emanuel | 13 (1999) | $815 | 2012 | $945 |
| Delilah Vinzon[93] | Milbank, Tweed | 12 (2002) | $900 | 2014 | $874 |
| Todd Briggs[81] | Quinn Emanuel | 12 (2000) | $735 | 2012 | $852 |
| Melissa Dalziel[81] | Quinn Emanuel | 12 (2000) | $730 | 2012 | $846 |
| Unnamed[85] | Paul Hastings | 12 (1999) | $670 | 2011 | $800 |
| Unnamed[92] | Klee, Tuchin, Bogdanoff, & Stern | 12 (1997) | $650 | 2009 | $1,077 |
| Unnamed[92] | Munger, Tolles & Olson | 12 (1997) | $525 | 2009 | $918 |
| Unnamed[92] | Gibson Dunn & Crutcher | 12 (1997) | $635 | 2009 | $773 |
| Erik Swanholt[88] | Greenberg Traurig | 11 (1998) | $575 | 2009 | $750 |
| Hillary A. Hamilton[82] | Skadden Arps | 10 (2001) | $710 | 2011 | $848 |
| Unnamed[91] | Paul Hastings | 10 (2000) | $660 | 2010 | $760 |
| Unnamed[11] | Arnold & Porter | 09 (2004) | $625 | 2013 | $703 |
| Unnamed[85] | Paul Hastings | 09 (2002) | $630 | 2011 | $752 |
| Unnamed[92] | Hennigan, Bennett & Dorman | 09 (2000) | $505 | 2009 | $861 |

**DECLARATION OF BARRETT S. LITT**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Hannah Cannom[93] | Milbank, Tweed | 08 (2006) | $800 | 2014 | $830 |
| Unnamed[85] | Paul Hastings | 08 (2003) | $620 | 2011 | $740 |

## SHEA MURPHY RATES

34.    Shea Murphy, a recently named partner at Ms. Boyer's firm, has 11 years' experience.  I listed some awards in the chart for Mr. Balaban above for lawyers with 10 and eleven years' experience whose adjusted rate is far higher than the $550 requested for Mr. Murphy. In addition, the following civil rights awards in the chart below further demonstrate the reasonableness of the $550 request for Mr. Murphy.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Jennifer Lee[13] | DRLC*** | 09 (2003) | $550 | 2012 | $638 |
| Roger Heller[4] | DRA* | 09 (2001) | $560 | 2010 | $689 |
| Rebecca Thornton[21] | Law Office of Carol Sobel | 09 (2001) | $450 | 2010 | $553 |
| Matthew Strugar[13] | DRLC*** | 08 (2004) | $525 | 2012 | $609 |
| Jacob A. Kreilkamp[1] | MTO** | 08 (2003) | $505 | 2011 | $603 |
| Sage Reeves[14] | DRLC | 08 (2001) | $475 | 2009 | $602 |
| Rebecca Thornton[6] | Law Offices of Carol Sobel | 08 (2001) | $425 | 2009 | $538 |

27

**DECLARATION OF BARRETT S. LITT**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Richard D. Lambert[31] | Stonebarger Law | 07 (2007) | $500 | 2014 | $546 |
| Mary-Lee Smith[13] | DRA* | 07 (2005) | $555 | 2012 | $643 |
| Kevin Knestrick[4] | DRA* | 07 (2003) | $535 | 2010 | $658 |
| Caitlin Weisberg[34] | Kaye, McLane, Bednarski & Litt | 06 (2008) | $500 | 2014 | $546 |
| Anna Canning[3] | Schoenbrun, de Simon | 06 (2006) | $450 | 2012 | $522 |
| Kasey Corbit[4] | DRA* | 06 (2004) | $500 | 2010 | $615 |

35.     Similarly, the commercial rates for attorneys of fewer than eight years' demonstrates that the rates sought for Mr. Shea, as well as those for the two to six year attorneys discussed in the next section are low compared to rates for attorneys of similar years' experience doing complex commercial litigation. (Because the rates generally support all of these, I have put them together and will not repeat them for the discussion of Mr. Jass, Ms. Loftus-Brewer, Messrs. Steffi and Persoff addressed in the next section.

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Suzanna Brickman[83] | MoFo | 07 (2006) | $650 | 2013 | $732 |
| Unnamed[85] | Paul Hastings | 07 (2004) | $590 | 2011 | $704 |
| Caitlin Hawks[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $811 |

**DECLARATION OF BARRETT S. LITT**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Revi-Ruth Enriquez[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $601 |
| Alex Doherty[94] | Sidley Austin | 06 (2008) | $700 | 2014 | $541 |
| Unnamed[84] | Lieff Cabraser | 06 (2006) | $435 | 2012 | $504 |
| Unnamed[85] | Paul Hastings | 06 (2005) | $565 | 2011 | $675 |
| Unnamed[92] | White & Case | 06 (2003) | $600 | 2009 | $950 |
| Unnamed[92] | Weil, Gotscahl & Manges | 06 (2003) | $580 | 2009 | $678 |
| Unnamed[92] | Gibson Dunn & Crutcher | 06 (2003) | $570 | 2009 | $665 |
| Katherine Eklund[93] | Milbank, Tweed | 05 (2009) | $550 | 2014 | $901 |
| Unnamed[85] | Paul Hastings | 05 (2006) | $530 | 2011 | $633 |
| Paralegal[90] | O'Melveny &Myers | 05 (2004) | $225 | 2009 | $1,156 |
| Danielle Katzir[86] | Gibson Dunn | 05 (2004) | $525 | 2009 | $665 |
| Katherine J. Galston[89] | Irell & Manella | 05 (2003) | $490 | 2008 | $1,089 |
| Dena G. Kaplan[89] | Irell & Manella | 05 (2003) | $475 | 2008 | $620 |
| Bambo Obaro[95] | Weil Gotshal | 04 (2010) | $400 | 2014 | $656 |
| Unnamed[84] | Lieff Cabraser | 04 (2008) | $395 | 2012 | $458 |
| Alex Doherty[94] | Sidley Austin | 04 (2008) | $520 | 2012 | $394 |
| Unnamed[85] | Paul Hastings | 04 (2007) | $500 | 2011 | $597 |
| Unnamed[92] | Davis, Polk & Wardwell | 04 (2005) | $680 | 2009 | $1,216 |
| Unnamed[92] | Weil, Gotscahl & Manges | 04 (2005) | $500 | 2009 | $1,012 |
| Unnamed[92] | Munger, Tolles & Olson | 04 (2005) | $435 | 2009 | $665 |
| Multiple associates[86] | Gibson Dunn | 04 (2005) | $495 | 2009 | $627 |

29

**DECLARATION OF BARRETT S. LITT**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
|---|---|---|---|---|---|
| **Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports** | | | | | |
| Unnamed[92] | Munger, Tolles & Olson | 04 (2005) | $450 | 2009 | $500 |
| Unnamed[92] | White & Case | 04 (2004) | $600 | 2009 | $830 |
| Unnamed[92] | Munger, Tolles & Olson | 04 (2004) | $395 | 2009 | $760 |
| Kimberly A. Svendsen[89] | Irell & Manella | 04 (2004) | $410 | 2008 | $535 |
| Unnamed[85] | Paul Hastings | 03 (2008) | $450 | 2011 | $537 |
| Unnamed[92] | Gibson Dunn & Crutcher | 03 (2006) | $470 | 2009 | $804 |
| Unnamed[92] | Weil, Gotscahl & Manges | 03 (2006) | $465 | 2009 | $735 |
| Melissa Barshop[86] | Gibson Dunn | 03 (2006) | $470 | 2009 | $595 |
| Unnamed[92] | Munger, Tolles & Olson | 03 (2006) | $400 | 2009 | $551 |
| Hirad Dadgostar[88] | Greenberg Traurig | 03 (2006) | $400 | 2008 | $522 |
| Unnamed[92] | O'Melveny & Myers | 03 (2006) | $395 | 2009 | $507 |
| Abby Schwartz[90] | O'Melveny &Myers | 03 (2006) | $450 | 2009 | $285 |
| Multiple associates[86] | Gibson Dunn | 02 (2007) | $400 | 2009 | $507 |
| Sara Brenner[87] | Quinn Emanuel | 02 (2006) | $340 | 2008 | $444 |
| Lauren McCray[94] | Sidley Austin | 02 (1998) | $495 | 2014 | $437 |
| Unnamed[84] | Lieff Cabraser | 01 (2011) | $325 | 2012 | $377 |
| Jessica Mohr[95] | Weil Gotshal | 01 (2013) | $300 | 2014 | $1,024 |
| Unnamed[85] | Paul Hastings | 01 (2010) | $360 | 2011 | $430 |
| Unnamed[92] | Weil, Gotscahl & Manges | 01 (2008) | $355 | 2009 | $633 |
| Multiple associates[86] | Gibson Dunn | 01 (2008) | $345 | 2009 | $437 |

**DECLARATION OF BARRETT S. LITT**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Lauren McCray[94] | Sidley Austin | 01 (1998) | $340 | 2012 | $929 |

## JASS, LOFTUS-BREWER, JOSE AND PERSOFF RATES

36.    I have put together and analysis of the requested rates for Mr. Jass, who is a six year attorney and handled the case on his own for some period of time and is requesting an award of $400; Ms. Loftus- Brewer who is an eight year attorney and associate at Mr. Balaban's office requesting $350 an hour; and Ms. Jose and Mr. Persoff, three and two year associates at Ms. Boyer's office requesting $300 and $275 respectively.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Genevieve Guertin[27] | Haddad & Sherwin | 05 (2009) | $400 | 2014 | $437 |
| Debra Patkin[13] | DRLC*** | 05 (2007) | $450 | 2012 | $522 |
| Karla Gilbride[13] | DRA* | 05 (2007) | $430 | 2012 | $498 |
| Stephanie Biedermann[13] | DRA* | 05 (2007) | $430 | 2012 | $498 |
| Christine Chuang[13] | DRA* | 05 (2007) | $430 | 2012 | $498 |
| Laura D. Smolowe[1] | MTO** | 05 (2006) | $460 | 2011 | $549 |
| Mary–Lee Kimber[4] | DRA* | 05 (2005) | $475 | 2010 | $584 |
| Sheryl Wu Leung[4] | Skadden Arps | 05 (2005) | $395 | 2010 | $486 |

31

**DECLARATION OF BARRETT S. LITT**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Matthew Strugar[14] | DRLC | 05 (2004) | $400 | 2009 | $507 |
| Bambo Obarro[29] | Weill Gotschall | 04 (2010) | $400 | 2014 | $437 |
| Gina Altomare[27] | Haddad & Sherwin | 04 (2010) | $350 | 2014 | $382 |
| Heather McGunigle[22] | DRLC | 04 (2009) | $375 | 2009 | $475 |
| Bethany Woodard[14] | MTO** | 04 (2005) | $395 | 2009 | $500 |
| Marina A. Torres[1] | MTO** | 03 (2008) | $385 | 2011 | $460 |
| Sarala V. Nagala[1] | MTO** | 03 (2008) | $385 | 2011 | $460 |
| Stephanie Biedermann[4] | DRA* | 03 (2007) | $350 | 2010 | $430 |
| Kristina Wilson[14] | MTO** | 03 (2006) | $350 | 2009 | $443 |
| Thomas Kennedy Helm[27] | Haddad & Sherwin | 02 (2012) | $325 | 2014 | $355 |
| Kara Janssen[13] | DRA* | 02 (2010) | $330 | 2012 | $383 |
| Nathaniel Fisher[4] | Skadden Arps | 02 (2008) | $530 | 2010 | $652 |
| Unnamed[10] | Bingham, McCutcheon | 02 (2008) | $400 | 2010 | $492 |
| Becca von Behren[4] | DRA* | 02 (2008) | $265 | 2010 | $326 |
| Mahogany Jenkins[20] | MoFo | 02 (2004) | $285 | 2006 | $395 |
| Unnamed[10] | Prison Law Office | 01 (2009) | $275 | 2010 | $338 |
| Stacey Brown[7] | Litt, Estuar & Kitson | 01 (2006) | $275 | 2007 | $370 |

**DECLARATION OF BARRETT S. LITT**

37.     I indicated earlier on in ¶ 30 that *Monell* litigation is complex litigation. This is not only my opinion, but one recognized by the Supreme Court. In *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997), Justice Breyer, joined by Justices Stevens and Ginsburg, dissented from the decision but, more relevant to this discuss, addressed the issue of whether the *Monell* standard should be re-thought. While the majority of the Court has not agreed with Justice Breyer that the *Monell* standard should be replaced, there is not disagreement about the complexity of the *Monell* standard that led Justice Breyer to his conclusion. Below, I provide an excerpt containing some of Justice Breyer's points regarding *Monell* complexity (which included discussion of the complexity of the application of the deliberate indifference standard that applies in certain types of *Monell* claims and that the Court employed here)[4]:

In *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), this Court said that municipalities cannot be held liable for constitutional torts under 42 U.S.C. § 1983 "on a *respondeat superior* theory," but they can be held liable "when execution of" a municipality's "policy or custom ... inflicts the injury." 436 U.S., at 691, 694, 98 S.Ct., at 2036, 2037. *That statement has produced a highly complex body of interpretive law.* Today's decision exemplifies the law's complexity, for it distinguishes among a municipal action that "*itself* violates federal law," ..., an action that "intentionally deprive[s] a plaintiff of a federally protected right," ...., and one that "has caused an employee to do so," .... It then elaborates this Court's requirement that a consequence be "*so likely*" *to occur* that a policymaker could "*reasonably be said to have been deliberately indifferent*" with

---

[4]     Justice Breyer's case citations are omitted without the use of elipses.

**DECLARATION OF BARRETT S. LITT**

respect to it, *Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (emphasis added), with an admonition that the unconstitutional consequence must be "plainly obvious," .... The majority fears that a contrary view of prior precedent would undermine *Monell* 's basic distinction. That concern, however, rather than leading us to spin ever finer distinctions as we try to apply *Monell* 's basic distinction between liability that rests upon policy and liability that is vicarious, suggests that we should reexamine the legal soundness of that basic distinction itself.

I believe that the legal prerequisites for reexamination of an interpretation of an important statute are present here. The soundness of the original principle is doubtful. *The original principle has generated a body of interpretive law that is so complex that the law has become difficult to apply*. ....

First, consider *Monell* 's original reasoning. [Discussion of the unsoundness of *Monell's* original reasoning and historical analysis omitted]

…

Second, *Monell* 's basic effort to distinguish between vicarious liability and liability derived from "policy or custom" has produced a body of law that is neither readily understandable nor easy to apply. Today's case provides a good example. The District Court in this case told the jury it must find (1) Sheriff Moore's screening "*so likely* to result in violations of constitutional rights" that he could "*reasonably [be] said to have been deliberately indifferent* to the constitutional needs of the Plaintiff" and (2) that the "inadequate hiring ... policy *directly caused* the Plaintiff's injury." App. 123a (emphasis added). This instruction comes close to repeating this Court's language in

**DECLARATION OF BARRETT S. LITT**

*Canton v. Harris.* In *Canton,* the Court said (of the city's failure to train officers in the use of deadly force):

> "[I]n light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy *so likely* to result in the violation of constitutional rights, that the policymakers of the city can *reasonably be said to have been deliberately indifferent* to the need." 489 U.S., at 390, 109 S.Ct., at 1205 (emphasis added).

The majority says that the District Court and the Court of Appeals did not look closely enough at the specific facts of this case. It also adds that the harm must be a "*plainly obvious consequence* " of the "decision to hire" Burns. *Ante,* at 1392. But why elaborate *Canton* 's instruction in this way? The Court's verbal formulation is slightly different; and that being so, a lawyer or judge will ignore the Court's precise words at his or her peril. Yet those words, while adding complexity, do not seem to reflect a difference that significantly helps one understand the difference between "vicarious" liability and "policy…

Consider some of the other distinctions that this Court has had to make as it has sought to distinguish liability based upon policymaking from liability that is "vicarious." It has proved necessary, for example, to distinguish further, between an exercise of *policymaking authority* and an exercise of *delegated discretionary policy-implementing authority....* Without some such distinction, "municipal liability [might] collaps[e] into *respondeat superior,*" *...,* for the law would treat similarly (and hold municipalities responsible for) both a police officer's decision about how much force to use when

35

**DECLARATION OF BARRETT S. LITT**

making a particular arrest and a police chief's decision about how much force to use when making a particular *kind* of arrest. But the distinction is not a clear one. It requires federal courts to explore state and municipal law that distributes different state powers among different local officials and local entities. ...That law is highly specialized; it may or may not say just where policymaking authority lies, and it can prove particularly difficult to apply in light of the Court's determination that a decision can be "policymaking" even though it applies only to a single instance....

It is not surprising that results have sometimes proved inconsistent....

*Nor does the location of "policymaking" authority pose the only conceptually difficult problem. Lower courts must also decide whether a failure to make policy was "deliberately indifferent," rather than "grossly negligent." ... And they must decide, for example, whether it matters that some such failure occurred in the officer-training, rather than the officer-hiring, process....*

Given the basic *Monell* principle, these distinctions may be necessary, for without them, the Court cannot easily avoid a "municipal liability" that "collaps[es] into *respondeat superior.*"... But a basic legal principle that requires so many such distinctions to maintain its legal life may not deserve such longevity.

...

(Emphasis supplied.)

*38.*   I include this lengthy excerpt to emphasize that both legally and factually successfully litigating a *Monell* claim is a challenge that relatively few attorneys have the requisite expertise to do successfully. Among the challenges identified by Justice Breyer is the application of the deliberate indifference

36

**DECLARATION OF BARRETT S. LITT**

standard, which I understand was a significant issue in this case. Nor are the challenges identified by Justice Breyer the only ones. An important one that he does not elaborate on is the meaning of "moving force," a highly confusing concept, difficult for lawyers and courts, much less lay juries. That confusion is only multiplied by the contradictory statements made by the Supreme Court, which has used both "the moving force" and "a moving force." *Compare, e.g.,* the two contradictory formulations in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S. Ct. 1197, 1199–200, 103 L. Ed. 2d 412 (1989) (the "deliberate indifference" standard is most consistent with the rule of Monell … that a city is not liable under § 1983 unless a municipal 'policy' or 'custom' is *the moving force* behind the constitutional violation" *with* "[w]e express no opinion on whether a policy that itself is not unconstitutional, such as the general 'inadequate training' alleged here, can ever meet the 'policy' requirement of Monell. In addition, even assuming that such a 'policy' would suffice, it is open to question whether a policymaker's 'gross negligence' in establishing police training practices could establish a 'policy' that constitutes *a 'moving force'* behind subsequent unconstitutional conduct" Id. at . 471 U.S. 824

39.    That the formulation "a moving force" more correctly captures the concept is explained by Justice Brennan concurring in *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) when he explained that the policy or custom must have a "played a part":

> "[A] governmental entity is liable under § 1983 only *when the entity itself is a " 'moving force' "* behind the deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell*, supra, 436 U.S., at 694, 98 S.Ct., at 2037); thus, in an official-capacity suit the entity's "policy or custom" *must have played a part in the violation* of federal law. *Monell, supra; Oklahoma City v. Tuttle*, 471 U.S. 808, 817-818, 105 S.Ct. 2427,

**DECLARATION OF BARRETT S. LITT**

2433, 85 L.Ed.2d 791 (1985); id., at 827-828, 105 S.Ct., at 2437, 2438 (BRENNAN, J., concurring in judgment)."

(emphasis supplied); *see also, e.g., Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights"); §433A of the Restatement (Second) of Torts, Comment i, Subsection 2 (under standard tort analysis, including in the constitutional context, where there are concurrent causes of an injury, a defendant is a concurrent cause of the injury if his or her conduct was a substantial factor in bringing the injury about, citing *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006)(civil rights case)).

40.     The seemingly minor distinction between "the" and "a" is not minor at all since one ("the moving force") suggests that the defendant was the dominant or sole force while the other ("a moving force") suggests it was one among many factors. Even though "a moving force" is more correct given that the Court has never said the policy must be the sole or primary cause, Ninth Circuit Model Jury Instruction 9.8 (and the instruction used in this case ["the failure of the defendant County of Orange to prevent violations of law by police officers caused the deprivation of the plaintiff's rights by Nichols Cropino; that is, the defendant's failure to prevent violations of law by its police officers is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury"]) ) uses the term "the moving force."

41.     And, although Model Instruction 9.8 uses the phrase "the moving force," Model Instruction 9.2 on Causation actually contradicts that concept, saying, "Regardless of what theory the plaintiff employs to establish municipal liability— policy, custom, or failure to train— the plaintiff must *establish an affirmative causal link* between the municipal policy or practice and the alleged

**DECLARATION OF BARRETT S. LITT**

1  constitutional violation." (Emphasis supplied.) Establishing that a policy, custom
2  or failure was "an affirmative" cause is a lesser standard than demonstrating that
3  it was "the moving force." Confusion and conceptual conflation abound in this
4  area.

5      42.    For the reasons I have explained, this case qualifies as complex civil
6  rights litigation, and the rates requested are reasonable rates, well supported by
7  other civil rights awards in this District and the similar (as it relates to rates)
8  Northern District of California.

9      I declare, under penalty of perjury, that the foregoing is true and correct.
10 Executed at Pasadena, California on August 22, 2017.

11

12

13              Barrett S. Litt

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF BARRETT S. LITT**