# See Litt Declaration, ¶¶ 33, 35

# "Exhibit 87"



1  IRELL & MANELLA LLP
   Brian J. Hennigan (86955)
2  Michael H. Strub, Jr. (153828)
   Kimberly A. Svendsen (235785)
3  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
4  Telephone:  (310) 277-1010
   Facsimile:   (310) 203-7199
5
   Attorneys for Plaintiff
6  MONROVIA NURSERY COMPANY

**FILED**
LOS ANGELES SUPERIOR COURT

NOV 2 1 2008

JOHN A. CLARKE, CLERK

BY SHAUNA WESLEY, DEPUTY

7

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES

10

11  MONROVIA NURSERY COMPANY, a          )  Case No.  BC351140
    California corporation,                   )  (Consolidated with Case No. BC 354657)
12                                         )
                                           )  **DECLARATION OF BRIAN J.**
13          Plaintiff,                     )  **HENNIGAN IN SUPPORT OF**
                                           )  **PLAINTIFF MONROVIA NURSERY**
14      vs.                                )  **COMPANY'S MOTION FOR AWARD OF**
                                           )  **ATTORNEYS' FEES**
15  HARRY E. ROSEDALE, JR., an individual; )
    RICHARD VANLANDINGHAM, an             )  [Notice of Motion and Motion of Plaintiff
16  individual; and DOES 1 through 10, inclusive, )  Monrovia Nursery Company for Award of
                                           )  Attorneys' Fees; Memorandum of Points and
17          Defendants.                    )  Authorities; and Memorandum of Costs filed
                                           )  concurrently herewith]
18  WILLIAM BRUCE USREY; MILES R.         )
    ROSEDALE; LANCE H. ROSEDALE;          )  DATE:      December 18, 2008
19  SUSAN KAY BRIERLY; JOANNE M.          )  TIME:      8:30 a.m.
    HUMMER (acting individually and as trustee )  DEPT.:     53
20  of certain testamentary trusts),       )  JUDGE:     Hon. John P. Shook
                                           )
21          Plaintiffs in Intervention.    )
                                           )
22                                         )  DATE ACTION FILED:  April 21, 2006
                                           )
23
24
25
26
27
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1973648

DECLARATION OF BRIAN J. HENNIGAN

**Exhibit C, Page 200**

### DECLARATION OF BRIAN J. HENNIGAN

I, Brian J. Hennigan, declare as follows:

1.      I am a partner at the law firm of Irell & Manella LLP ("Irell & Manella"), counsel of record for plaintiff Monrovia Nursery Company ("Monrovia") in the above-captioned action. I am a member in good standing of the State Bar of California. I submit this Declaration in support of Monrovia's motion for attorneys' fees. Except where stated, I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      I am a member of Irell & Manella's litigation workgroup, where I have worked since 1990. From 1983 to 1989, I worked as an Assistant United States Attorney ("AUSA") in the Criminal Division for the Central District of California (Los Angeles). As an AUSA, I served as the Deputy Chief for the Government Fraud and Public Corruption Section in the United States Attorney's Office in Los Angeles. I received the Special Achievement Award from the Department of Justice, as well as awards from other investigative agencies. In 1999, I was recognized by the *Los Angeles Business Journal* as one of the top 50 trial attorneys in Los Angeles. In January 2007, I was named one of the top 100 Los Angeles lawyers in *Los Angeles Magazine*. I have served as the President of the Federal Bar Association in Los Angeles (2004-2005) and the co-chairman of the American Bar Association, White Collar Crime Section (2004-2006). I also have served as an attorney delegate to the Ninth Circuit Judicial Conference.

3.      In my post-Judgment representation of Monrovia, I was assisted by Michael H. Strub, Jr., who is of counsel to the firm, and six attorneys associated with the firm: Kimberly A. Svendsen, Dena G. Kaplan, Michael F. Bacchus, Katharine J. Galston, Aarti Khanolkar Wilson, and Elizabeth Madjlessi. I was also assisted by Michelle M. Williams, a paralegal. Although a number of additional persons at I&M performed work on this matter, they are not included in this fee request because Monrovia is not seeking to recover their fees.

4.      Michael H. Strub, Jr. is a member of Irell & Manella's litigation workgroup. I am informed and believe that he is a 1990 high honors graduate of the University of Texas School of Law (Order of the Coif), and from 1990 until 1991, he clerked from the Honorable Homer

- 1 -
DECLARATION OF BRIAN J. HENNIGAN

Exhibit C, Page 201

1  Thornberry (United States Court of Appeals for the Fifth Circuit) in Austin, Texas. From 1991 to

2  1997, Mr. Strub was an associate at Shearman & Sterling's Los Angeles office, then an associate

3  in Shearman & Sterling's Washington, D.C. office from August 1997 until August 1999, and

4  thereafter joined Irell & Manella. Mr. Strub's practice has included a variety of commercial

5  litigation and transactional matters -- from a disputed lease for a Boeing 747 jet aircraft to a

6  dispute over profit participation in the "Judge Judy" television show -- and he has represented

7  clients in a variety of jurisdictions, both in and out of California.

8       5.       Kimberly A. Svendsen is a former associate in Irell & Manella's litigation

9  workgroup. I am informed and believe that she graduated from the University of California, Los

10 Angeles School of Law in 2004 (Order of the Coif) and clerked for the Honorable Stephen V.

11 Wilson in the Central District of California. While at Irell & Manella Ms. Svendsen worked on

12 cases involving contract and business torts, entertainment law, and white-collar crime, many of

13 them on behalf of national companies.

14      6.       Dena G. Kaplan is a former associate in Irell & Manella's litigation workgroup. I

15 am informed and believe that she graduated from the University of Pennsylvania Law School cum

16 laude in 2003, and clerked for the Honorable Edward Rafeedie in the Central District of

17 California. While at Irell & Manella Ms. Kaplan worked on cases involving general business

18 litigation, and was named a Rising Star in California Lawyer magazine.

19      7.       Katharine J. Galston is a former associate in Irell & Manella's litigation workgroup.

20 I am informed and believe that she graduated cum laude from NYU School of Law in 2003. After

21 earning her law degree, Ms. Galston served as a law clerk to the Honorable Reena Raggi (United

22 States Court of Appeals for the Second Circuit). While at Irell & Manella, Ms. Galston

23 specialized in appellate litigation matters, and worked on a variety of commercial and

24 entertainment litigation cases.

25      8.       Michael F. Baechus is a former associate in Irell & Manella's litigation workgroup.

26 I am informed and believe that he graduated from the University of Pennsylvania Law School in

27 2003 (Order of the Coif), and then worked as an associate at Patterson, Belknap, Webb & Tyler in

28 New York City. Mr. Baechus clerked for the Honorable Diana Gribbon Motz (United States

- 2 -
DECLARATION OF BRIAN J. HENNIGAN

Exhibit C, Page 202

1  Court of Appeals for the Fourth Circuit), and then he joined Irell & Manella as an associate,

2  working on civil litigation cases, including international licensing disputes and land use matters.

3      9.      Aarti Khanolkar Wilson is an associate in Irell & Manella's litigation workgroup. I

4  am informed and believe that Ms. Wilson is a 2007 graduate of Yale Law School. At Irell &

5  Manella, Ms. Wilson has worked on cases involving appellate litigation and general commercial

6  litigation involving contractual disputes and fraud.

7      10.     Elizabeth Madjlessi is an associate in Irell & Manella's litigation workgroup. I am

8  informed and believe that Ms. Madjlessi graduated cum laude from NYU School of Law in 2007.

9  At Irell & Manella Ms. Madjlessi has worked on cases involving intellectual property and

10 complex contractual disputes.

11     11.     Michelle M. Williams is a former paralegal in Irell & Manella's litigation support

12 staff. I am informed and believe that Ms. Williams graduated from Highline Community College

13 in Washington, receiving her degree in Legal Assistant Studies, and worked as a legal secretary

14 and paralegal prior to joining Irell & Manella. From 1999 to 2008 Ms. Williams worked on a

15 variety of cases at Irell & Manella, including assisting on large intellectual property matters,

16 managing discovery, and aiding with motion practice, trial preparation and support.

17     12.     Attached as Exhibit A to this Declaration is a detailed billing report documenting

18 the time spent by Irell & Manella attorneys in our representation of Monrovia before this Court.

19 On the report, "HENN" is my abbreviation, "MHST" is the abbreviation for Mr. Strub, "KSVE" is

20 for Ms. Svendsen, "DGRE" is the abbreviation for Ms. Kaplan, "KGAL" is the abbreviation for

21 Ms. Galston, "BACC" is the abbreviation for Mr. Bacchus, "KHAN" is the abbreviation for Ms.

22 Wilson, "MADJ" is the abbreviation for Ms. Madjlessi, and "4OBC" is the abbreviation for Ms.

23 Williams. Certain of the time entries in Exhibit A have been redacted on the basis of the attorney-

24 client privilege, the attorney work-product doctrine, or both, or for work for which Monrovia is

25 not seeking to recover its fees in this motion. In addition, a ten percent deduction was made from

26 the remainder to account for any duplicative work. The detailed billing report set forth as Exhibit

27 A was prepared in the manner described in the following paragraphs.

28

- 3 -

13.     Irell & Manella uses a computerized system of time billing in which attorneys and other timekeepers, or their assistants, enter their time into the system. Each time entry includes the name of the client and matter, the number of hours spent, and a description of the work done. In order to keep accurate records, timekeepers at Irell & Manella are instructed to enter their time into the computer each day while their recollection of the work performed is still fresh in their minds. The system is set up to send automatic prompting messages via email to any timekeeper who fails to promptly enter his or her time into the system.

14.     In order to determine the fees incurred in connection with our representation of Monrovia in this action, we first took the step of asking our accounting department to print out a detailed time and expense report for the relevant client-matter number.

15.     As a next step, we reviewed the description line of each time entry in order to determine whether the time was expended on matters directly related to our representation of Monrovia in this lawsuit. We redacted certain material on grounds of privilege or for work for which Monrovia is not requesting its attorneys' fees in this motion.

16.     The billing rates charged to Monrovia in this matter are the customary rates charged by Irell & Manella, and reflect the market value of the type of legal service and experience sought by sophisticated clients in major metropolitan areas like Los Angeles. It is my belief that in the Los Angeles legal community, law firms having experience and reputation similar to those of Irell & Manella charge rates that are comparable to Irell & Manella's rates.

17.     Monrovia seeks to recover fees of the following primary Irell & Manella timekeepers at the following average billing rates:

> Brian J. Hennigan (partner) – 72.5 hours at $776.93 per hour;
>
> Michael H. Strub (of counsel) – 83.5 hours at $671.29 per hour;
>
> Kimberly A. Svendsen (associate) – 104.75 hours at $410 per hour;
>
> Dena G. Kaplan (associate) – 24.25 hours at $475 per hour;
>
> Michael F. Bacchus (associate) – 18.5 hours at $475 per hour;
>
> Katharine J. Galston (associate) –69 hours at $492.19 per hour;
>
> Aarti Khanolkar Wilson (associate) – 25.25 hours at $325 per hour;

- 4 -
DECLARATION OF BRIAN J. HENNIGAN

1      Elizabeth Madjlessi (associate) – 51.75 hours at $355 per hour;

2      Michelle M. Williams (paralegal) – 14.75 hours at $222.54 per hour.

3     18.    After calculating the total number of hours at the appropriate respective rate we

4 reduced the total by ten percent to account for any duplicative work that may have occurred in the

5 post-judgment phase.

6     19.    Attached hereto as Exhibit B is a true and correct copy of the Court EXPRESS

7 Legal Billing Report, Volume 10, Number 2 August 2008.

8     20.    Attached hereto as Exhibit C is a true and correct copy of excerpts from The

9 National Law Journal's 2007 sampling of nationwide law firm billing rates, dated December 10,

10 2007.

11    21.    On February 8, 2007 the trial court in this action ordered Defendants to pay

12 Monrovia's fees in the amount of $767,931.25, the fees of plaintiffs in intervention in the amount

13 of $494,972.00, and costs in the amount of $25,132.88. Attached hereto as Exhibit D is a true and

14 correct copy of the Court's order.

15    22.    On September 24, 2008 the California Court of Appeal affirmed the trial court's

16 finding that the attorneys' fees requested in this case were reasonable. Attached hereto as Exhibit

17 E is a true and correct copy of the Court of Appeal's decision granting the fees.

18    23.    In 2005, in an unrelated matter, I submitted a fee and cost bill with regard to my

19 representation of a client in civil dispute related to a contract claim before Judge William Fahey of

20 the Los Angeles Superior Court. After briefing and hearing on the matter, Judge Fahey ordered

21 full payment on the bill. Attached hereto as Exhibit F is a true and correct copy of Judge Fahey's

22 May 20, 2005 Order granting my clients the full amount of attorneys' fees and costs they sought

23 after prevailing in an action involving a contract that contained an attorneys' fee provision.

24

25

26

27

28

- 5 -

DECLARATION OF BRIAN J. HENNIGAN

1973648

24.     Attached hereto as Exhibit G is a true and correct copy of the California Court of Appeal's September 5, 2006 opinion affirming Judge Fahey's award of attorneys' fees to my clients.

Executed on November 21, 2008, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Brian J. Hennigan

- 6 -
DECLARATION OF BRIAN J. HENNIGAN

1973648

**Exhibit C, Page 206**

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **THREE A'S HOLDINGS, L.L.C., a** | : | **Case No. 06-10886 (BLS)** |
| **Delaware limited liability company,** | : | |
| ***et al.,***[1] | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | Objection Deadline:  December 20, 2006 |
| | : | |

| | |
|---|---|
| Name of Applicant: | O'Melveny & Myers LLP |
| Authorized to Provide Professional Services to: | The above-captioned debtors and debtors-in-possession |
| Date of Retention: | September 14, 2006 (*nunc pro tunc* to the date of commencement of these chapter 11 cases) |
| Period for which compensation and reimbursement are sought: | October 1, 2006 through October 31, 2006 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $308,928.40 (80% of $386,160.50) |
| Amount of Expense Reimbursement sought as actual , reasonable and necessary: | $6,349.08 |

This is a(n):  _X_  Monthly _____Interim _____ Final Application

The total time expended for fee application preparation is approximately 12 hours.[2]

Prior Applications Filed:                                  Two

---

[1] The Debtors are the following entities: Three A's Holdings, L.L.C., Jeremy's Holdings, LLC, Tower Direct LLC, 33rd Street Records, Incorporated, Pipernick Corp., M T S, Incorporated (d/b/a Tower Records), Columbus & Bay, Inc. and R.T. Records, Incorporated.
[2] This time was expended by attorneys and paraprofessionals, and compensation for this time will be calculated and requested as part of the next monthly fee application
LA3:1125300 1

Exhibit A
10

Exhibit C, Page 208

This is a(n):   X  monthly          ___ interim          ___ final application

| PROFESSIONAL | POSITION, YEAR ASSUMED POSITION, PRIOR RELEVANT EXPERIENCE, YEAR OF OBTAINING RELEVANT LICENSE TO PRACTICE | HOURLY BILLING RATE | HOURS BILLED | COMPENSATION |
|---|---|---|---|---|
| David Krinsky | Partner in the Transactions Department.  Joined firm in 1994. Member of the CA State Bar since 1973. | 950 | 15.8 | $15,010.00 |
| Robert Rizzi | Partner in the Transactions Department.  Joined firm in 1994. Member of the CA State Bar since 1978. | 950 | 3.5 | $3,325.00 |
| Ben Logan | Partner in the Restructuring and Finance Department.  Joined firm in 1976. Member of the CA State Bar since 1976. | 860 | 170.9 | $142,681.65 |
| Gordon Krischer | Partner in the Adversarial Department.  Joined firm in 1971. Member of the CA State Bar since 1972 and NY State Bar since 1991. | 860 | 1.3 | $1,118.00 |
| Kathryn Sanders | Partner in the Transactions Department.  Joined firm in 1985. Member of the CA State Bar since 1985 | 820 | 0.7 | $574.00 |
| Suzzanne Uhland | Partner in the Restructuring and Finance Department.  Joined firm in 1988. Member of the CA State Bar since 1988. | 820 | 190.4 | $151,489.62 |
| Alejandro Mayorkas | Partner in the Adversarial Department.  Joined firm in 2001. Member of the CA State Bar since 1986. | 770 | 12.2 | $9,394.00 |
| Shannon Lowry Nagle | Partner in the Transactions Department.  Joined firm in 2007. Member of the NY State Bar since 2007. Member of VA State Bar since 1991. Member of NC State Bar since 1993. Member of State GA Bar since 1996. | 710 | 68.8 | $48,848.00 |
| Gary Tell | Partner in the Transactions Department.  Joined firm in 1999. Member of the DC Bar since 1993. | 700 | 0.5 | $350.00 |

| PROFESSIONAL | POSITION, YEAR ASSUMED POSITION, PRIOR RELEVANT EXPERIENCE, YEAR OF OBTAINING RELEVANT LICENSE TO PRACTICE | HOURLY BILLING RATE | HOURS BILLED | COMPENSATION |
|---|---|---|---|---|
| Thomas M. Riordan | Partner in the Adversarial Department. Joined firm in 1995. Member of the CA State Bar since 1995. | 675 | 31.0 | $20,925.00 |
| C. Brophy Christensen | Partner in the Transactions Department. Joined firm in 1997. Member of the CA State Bar since 1997. | 675 | 3.4 | $2,295.00 |
| Jorge DeNeve | Counsel in the Adversarial Department. Rejoined firm in 2007. Member of the CA State Bar since 1998. | 620 | 31.2 | $19,344.00 |
| Summer Conley | Counsel in the Transactions Department. Joined firm in 1997. Member of the CA State Bar since 1997. | 600 | 1.7 | $1,020.00 |
| Victoria Newmark | Counsel in the Restructuring and Finance Department. Joined firm in 1995. Member of the CA State Bar since 1995. | 595 | 0.2 | $119.00 |
| Christopher Campbell | Counsel in the Tax Department. Joined firm in 1999. Member of the CA State Bar since 1999. | 590 | 59.7 | $35,223.00 |
| Allan Johnson | Counsel in the Adversarial Department. Joined firm in 2002. Member of the CA State Bar since 2001. | 565 | 49.0 | $27,685.00 |
| Natausha Wilson | Counsel in the Transactions Department. Joined the firm in 2007. Member of the NY and NJ State Bars since 2002 and the CA State Bar since 2003. | 565 | 121.7 | $68,760.50 |
| Arthur (Schan) Duff | Counsel in the Adversarial Department. Joined firm in 2004. Member of the DC Bar since 2003. | 540 | 8.8 | $4,752.00 |
| Justin Laubach | Counsel in the Transactions Department. Joined firm in 2003. Member of the CA State Bar since 2002. | 540 | 54.9 | $29,646.00 |
| Emily Culler | Associate in the Restructuring and Finance Department. Joined firm in 2002. Member of the CA State Bar since 2002. | 540 | 1.9 | $1,026.00 |

LA3:1148107.1
RLF1-3300247-1

3

Exhibit A
12

| PROFESSIONAL | POSITION, YEAR ASSUMED POSITION, PRIOR RELEVANT EXPERIENCE, YEAR OF OBTAINING RELEVANT LICENSE TO PRACTICE | HOURLY BILLING RATE | HOURS BILLED | COMPENSATION |
|---|---|---|---|---|
| Laine Mervis | Associate in the Transactions Department. Joined firm in 2007. Member of the CA State Bar since 2003. | 520 | 8.6 | $4,472.00 |
| Andrew Parlen | Associate in the Transactions Department. Joined firm in 2007. Member of the CA State Bar since 2004. | 520 | 297.8 | $151,222.48 |
| Scott Sugino | Associate in the Transactions Department. Joined firm in 2006. Member of the IL State Bar since 2003 and member of the CA State Bar since 2004. | 520 | 2.0 | $1,040.00 |
| Joshua Weisser | Associate in the Transactions Department. Joined the firm in 2007. Member of the NY State Bar since 2006. | 490 | 2.2 | $1,078.00 |
| Jennifer Halvas | Associate in the Transactions Department. Joined firm in 2004. Member of the CA State Bar since 2004. | 480 | 2.1 | $1,008.00 |
| Mike Symons | Associate in the Transactions Department. Joined firm in 2004. Member of the CA State Bar since 2004. | 480 | 28.1 | $13,488.00 |
| Nima Amini | Associate in the Transactions Department. Joined firm in 2006. Member of the CA, MN and DC Bars since 2005, 2006 and 2007, respectively. | 450 | 9.3 | $4,185.00 |
| Abby Schwartz | Associate in the Adversarial Department. Joined firm in 2006. Member of the CA State Bar since 2007. | 450 | 4.8 | $2,160.00 |
| Ana Acevedo | Associate in the Transactions Department. Joined firm in 2006. Not currently a member of the CA State Bar. | 395 | 108.0 | $42,660.00 |
| Danielle Oakley | Associate in the Adversarial Department. Joined firm in 2006. Member of the CA State Bar since 2006. | 395 | 58.2 | $22,337.25 |

Exhibit A
13

Exhibit C, Page 211

| PROFESSIONAL | POSITION, YEAR ASSUMED POSITION, PRIOR RELEVANT EXPERIENCE, YEAR OF OBTAINING RELEVANT LICENSE TO PRACTICE | HOURLY BILLING RATE | HOURS BILLED | COMPENSATION |
|---|---|---|---|---|
| Adrian Pollner | Associate in the Adversarial Department. Joined firm in 2006. Member of the CA State Bar since 2006. | 395 | 25.0 | $9,875.00 |
| Michael Scheppele | Associate in the Transactions Department. Joined firm in 2006. Member of the CA State Bar since 2006. | 395 | 0.2 | $79.00 |
| Angela Wang | Associate in the Transactions Department. Joined firm in 2006. Member of the NY State Bar since 2007. | 395 | 151.5 | $59,842.50 |
| Melanie McLaughlin | Associate in the Transactions Department. Joined the firm in 2007. Member of the NY State Bar since 2008. | 365 | 0.6 | $219.00 |
| Ryan Austin | Associate in the Transactions Department. Joined the firm in 2007. Member of the CA Bar since 2007. | 330 | 24.9 | $8,217.00 |
| Timothy P. Caballero | Associate in the Adversarial Department. Joined firm in 2007. Member of the CA State Bar since 2007. | 330 | 2.4 | $792.00 |
| Lynn Talab | Adversarial Paralegal since 1992. | 310 | 64.8 | $20,088.00 |
| Gregory Trotter | Transactions Paralegal since 1989. | 310 | 0.5 | $155.00 |
| Timothy Sheehan | Adversarial Paralegal since 2004. | 225 | 1.9 | $427.50 |
| Michael Donovan | Litigation Support Specialist since 2005. | 260 | 66.3 | $17,238.00 |
| James McCarthy | Adversarial Paralegal since 1997. | 245 | 17.0 | $4,165.00 |
| Debra Fisher | Librarian since 1980. | 225 | 0.7 | $157.50 |
| Denise Lieu | Practice Support Analyst since 2006. | 220 | 0.6 | $132.00 |
| Catherine Mirhady | Litigation Support Specialist since 2007. | 220 | 41.5 | $9,130.00 |
| Karen Nguyen | Litigation Support Specialist since 2004. | 220 | 2.2 | $484.00 |
| Ryan Lopez | Litigation Support Specialist since 2007. | 220 | 0.4 | $88.00 |

| PROFESSIONAL | POSITION, YEAR ASSUMED POSITION, PRIOR RELEVANT EXPERIENCE, YEAR OF OBTAINING RELEVANT LICENSE TO PRACTICE | HOURLY BILLING RATE | HOURS BILLED | COMPENSATION |
|---|---|---|---|---|
| Stella Kim | Transactions Project Assistant since 2007. | 190 | 4.4 | $836.00 |
| Brian Osimiri | Transactions Project Assistant since 2006. | 190 | 15.6 | $2,964.00 |
| Elizabeth Ene | Litigation Support Specialist since 2007. | 110 | 16.1 | $1,771.00 |
| TOTAL | | | 1785.3 | $963,897.00 |

.

Exhibit A
15

**Exhibit C, Page 213**

## COMPENSATION BY PROJECT CATEGORY

| Fee Summary – April 1, 2008 through April 30, 2008 | | |
|---|---|---|
| Matter | Hours | Fees |
| Case Administration (071) | 27.2 | $20,361.00 |
| Non-Working Travel (072) | 37.1 | $13,216.00 |
| Asset Analysis/Recovery (073) | 0.1 | $82.00 |
| Asset Disposition (074) | 34.4 | $17,105.50 |
| Relief from Stay Proceedings (075) | 13.2 | $7,690.50 |
| Meetings/Communications with Creditors (076) | 0.6 | $186.00 |
| Fee/Employment Objections (077) | 115.7 | $64,309.50 |
| Assumption/Rejection of Leases and Contracts (080) | 92.8 | $53,073.00 |
| Claims Administration and Objections (081) | 64.7 | $41,715.00 |
| Plan & Disclosure Statement (082) | 933.2 | $514,465.00 |
| General Litigation/Litigation Claims (083) | 67.4 | $32,370.50 |
| Reclamation Claims (086) | 1.0 | $520.00 |
| Fee/Employment Applications (087) | 88.2 | $36,609.00 |
| Employee Matters (Benefits, Pensions) (089) | 5.6 | $2,925.00 |
| Corporate and Securities Matters (090) | 24.3 | $17,015.00 |
| Tax Issues (091) | 36.0 | $23,495.00 |
| Government Investigations (093) | 141.8 | $52,603.50 |
| Warehouse Lenders (094) | 16.5 | $14,190.00 |
| Deferred Compensation Plan Litigation (095) | 21.1 | $12,605.50 |
| Access Lending (096) | 42.5 | $26,801.00 |
| WARN Litigation (097) | 21.4 | $12,206.00 |
| Examiner Issues (098) | 0.5 | $353.00 |
| **Total** | **1,785.3** | **$963,897.00** |

LA3:1148107.1
RLF1-3300247-1

7

**EXPENSE SUMMARY**

| Expense Summary – April 1, 2008 through April 30, 2008 | |
|---|---|
| **Expense** | **Amount** |
| Copying (Equitrac – Internal) (E101E) | $521.20 |
| Lasertrak Printing (E101L) | $571.10 |
| Specialty Photocopying (E101SP) | $110.50 |
| Outside Printing/Reproduction (Photocopying) (E102A) | $3,048.45 |
| Outside Printing/Reproduction (Microfilming) (E102A1) | $890.55 |
| Outgoing Faxes (E104) | $10.00 |
| Telephone (Accounts Payable) (E105A) | $163.40 |
| Premiere Global Service Conference Call (E105P) | $16.93 |
| Online Research / Lexis-Nexis (E106L) | $625.14 |
| Online Research / Miscellaneous (E106M) | $344.48 |
| Online Research / Westlaw (E106W) | $525.47 |
| Delivery Services/Messengers (E107) | $2,053.61 |
| Local Travel (Taxi) (E109TX) | $70.47 |
| Expense Report Other - Includes Out of Town Travel (E110) | $407.08 |
| Out of Town Travel (Expense Reports - Meals) (E110EM) | $60.00 |
| Out-of-Town Travel (Direct Bill Firm – Airfare) (E110T) | $8,027.24 |
| Other Professionals (Accounts Payable) (E123A) | $1,816.89 |
| Other (Internal Bindery) (E124B1) | $1.25 |
| Scanning Services (Accuroute) (E130AR) | $28.10 |
| **Total** | **$19,291.86** |

8

Exhibit A
17

**Exhibit C, Page 215**

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416(KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | **Hearing Date: Only if Objection is Received** |
| | : | |
| | : | **Objection Deadline: July 28, 2008** |

### THIRTEENTH MONTHLY APPLICATION OF O'MELVENY & MYERS LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS CO-COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD APRIL 1, 2008 THROUGH APRIL 30, 2008

Pursuant to Sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Court's Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated April 25, 2007 [Docket No. 389] (the "Administrative Order"), O'Melveny & Myers LLP ("OMM") hereby files this Thirteenth Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co-Counsel to the Debtors and Debtors in Possession for the Period from April 1, 2008 through and including April 30, 2008 (the "Application"). By this

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

Application, OMM seeks a monthly allowance pursuant to the Administrative Order with respect to the sums of $771,117.60 (80% of $963,897.00) as compensation and $19,291.86 for reimbursement[2] of actual and necessary expenses for a total of $790,409.46 for the period April 1, 2008 through and including April 30, 2008 (the "Compensation Period"). In support of this Application, OMM respectfully represents as follows:

### Background

1.      On April 2, 2007 (the "Petition Date"), the Debtors, other than Access, filed the instant petitions for relief and the Debtors' bankruptcy cases are being jointly administered pursuant to an order of the Court. Access filed its chapter 11 petition on August 3, 2007 (the "Access Petition Date"). The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

2.      The retention of OMM by the Debtors other than Access was approved effective as of the Petition Date by this Court's Order dated May 7, 2007 [Docket No. 567] (the "Retention Order"). The Retention Order authorized OMM to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses. Subsequently, on October 23, 2007, the scope of OMM's retention was expanded to include the representation of Access effective as of the Access Petition Date.

### Compensation Paid and its Source

3.      All services for which compensation is requested by OMM were performed for or on behalf of the Debtors.

4.      Except to the extent of the retainers paid to OMM as described in the applications seeking approval of OMM's employment by the Debtors during the period covered by this Application, OMM has received no payment and no promises for payment from any source for

---

[2]  In accordance with the procedures approved by the Court pursuant to the Administrative Order, upon the filing of a certificate of no objection with the Court, the Debtors are authorized to pay OMM an amount equal to the lesser of (i) 80% of the fees ($771,117.60) and 100% of the expenses ($19,291.86) requested in the Application and (ii) 80% of the fees and 100% of the expenses not subject to an objection.

services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between OMM and any other person other than the partners of OMM for the sharing of compensation to be received for services rendered in these cases.

### Fee Statements

5.     The fee statements for the Compensation Period are attached hereto as Exhibit A. The statements contain daily time logs describing the time spent by each attorney and paraprofessional for this period.[3] To the best of OMM's knowledge, this Application complies with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2 and the Administrative Order.

### Actual and Necessary Expenses

6.     A summary of the actual and necessary expenses and daily logs of expenses incurred by OMM for the Compensation Period is attached hereto as Exhibit B. OMM has charged $1.00 per page for out-going facsimile transmissions and $.10 per page for photocopying expenses for the purposes of these bankruptcy cases, in accordance with Del. Bankr. L.R. 2016-2(e)(iii).[4] Actual long-distance carrier charges for outgoing facsimile transmissions are reflected in the long-distance telephone charges.

7.     Regarding providers of on-line legal research (e.g., LEXIS and WESTLAW), OMM charges all its clients the standard usage rates these providers charge, which, due to contractual flat fees, may not always equal OMM's actual cost. OMM is currently under contract to pay these providers a flat fee every month. For certain months the flat fee may be higher than actual usage. For certain other months the flat fee may be lower than actual usage.

---

[3] OMM's word processing and distribution handling expenses are not included in its overhead but instead are charged separately to clients. OMM generally charges its bankruptcy clients at the same rates as its non-bankruptcy clients but, consistent with applicable guidelines, is not seeking reimbursement from the Debtors' estates for these actual incurred expenses.

[4] OMM typically charges its clients $1.25 per page for out-going facsimile transmissions and $0.15 per page for photocopying expenses.

Charging its clients the on-line providers' standard usage rates allows OMM to cover adequately · the monthly flat fees it must pay to these types of providers.

8.    OMM believes the foregoing rates are the market rates that the majority of law firms charge clients for such services. In addition, OMM believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## Summary of Services Rendered

9.    The partners, counsel and associates who rendered professional services in this case during the Compensation Period are: Robert Rizzi, Ben Logan, David Krinsky, Gordon Krischer, Kathryn Sanders, Suzzanne Uhland, Alejandro Mayorkas, Shannon Lowry Nagle, Thomas Riordan, Gary Tell, C. Brophy Christensen, Victoria Newmark, J. Jorge DeNeve, Summer Conley, Christopher Campbell, Allan Johnson, Natausha Wilson, Justin Laubach, Arthur (Schan) Duff, Emily Culler, Laine Mervis, Andrew Parlen, Scott Sugino, Joshua Weisser, Jennifer Halvas, Mike Symons, Nima Amini, Abby Schwartz, Ana Acevedo, Danielle Oakley, Adrian Pollner, Michael Scheppele, Angela Wang, Melanie McLaughlin, Sue Derian, Ryan Austin, and Timothy Caballero.

10.    The paraprofessionals of OMM who provided services to the attorneys in these cases are: Lynn Talab, Gregory Trotter, Timothy Sheehan, Michael Donovan, James McCarthy, Debra Fisher, Denise Lieu, Catherine Mirhady, Karen Nguyen, Ryan Lopez, Brian Osimiri, Elizabeth Ene, and Stella Kim. OMM by and through the above-named persons, has prepared and/or assisted in the preparation of various applications and orders submitted to the Court for consideration, advised the Debtors on a regular basis with respect to various matters in connection with these cases, and has performed professional services which are described and narrated in detail hereafter.

## Summary of Services by Project

11.    The services rendered by OMM during the Compensation Period can be

grouped into the categories set forth below.

    A.    <u>Case Administration (071)</u>

        Fees: $20,361.00          Total Hours: 27.2

This category includes all matters related to filing documents with the Court, service thereof, maintenance of calendars, communications with the U.S. Trustee, regular status calls including management and professionals, review of work in process reports, review of notices of appearances and maintaining services lists.

    B.    <u>Non-Working Travel (072)</u>

        Fees: $13,216.00          Total Hours: 37.1

This category includes all travel time not otherwise chargeable (and is billed at one-half the normal billing rate) in accordance with Del. Bankr. L.R. 2016-2(e)(iii).

    C.    <u>Asset Analysis (073)</u>

        Fees: $82.00          Total Hours: 0.1

This category includes all matter relating to the analysis of the Debtors assets.

    D.    <u>Asset Disposition (074)</u>

        Fees: $17,105.50          Total Hours: 34.4

This category includes all matters relating to the disposition of property of the estate. OMM provided significant services during these cases assisting the Debtors' efforts in pursuing major asset sales and during the Compensation Period continued to render services in connection with follow up matters related to these transactions. On May 7, 2007, the Court entered an order approving the sale of a pool of approximately 2,200 unencumbered mortgage loans to Ellington Management Group, L.L.C. on behalf of its Client Funds ("Ellington"). On May 23, 2007, the Court authorized the sale of the Debtors' servicing business (the "Carrington Sale") to Carrington Mortgage Services, LLC, an affiliate of Carrington Capital Management, LLC. On June 27, 2007, the Court approved an amendment to that sale agreement approving the sale of additional loans to Ellington. On July 3, 2007, the Court entered an order approving the sale of certain technology assets to EquiFirst Corporation. On September 14, 2007, the Court authorized

the sale of 235 mortgage loans (the "Disputed Loans"), the rights to which were disputed between the Debtors and Deutsche Bank Structured Properties, Inc. Finally, on January 24, 2008, the Court authorized the sale of 41 mortgage loans (the "Ohio LNFA")of the sale of such loans (subject to overbid) to GRP Financial Services Corporation for approximately $1.4 million. Those sales are now successfully closed.

During the Compensation Period, OMM's efforts included attending to post-closing matters associated with the Carrington Sale. In that regard OMM spent time working with the Debtors in connection with the assignment of certain licenses and contracts to Carrington. OMM also spent time attending to post-closing matters regarding the Ohio LNFA sale. Additionally, during the Compensation Period, OMM also spent substantial time advising the Debtors in connection with and facilitating the sale of miscellaneous assets (particulary intellectual property assets) pursuant to Court-approved procedures.

E.     Relief from Stay Proceedings (075)

Fees: $7,690.50          Total Hours: 13.2

This category includes all matters related to and including all motions and stipulations to modify the automatic stay and issues related to the effect of the automatic stay or pending matters.

F.     Meetings/Communications with Creditors (076)

Fees: $186.00          Total Hours: 0.6

OMM spent time during the Compensation Period receiving and responding to numerous written and telephonic queries from creditors.

G.     Fee/Employment Objections (077)

Fees: $115.7          Total Hours: 115.7

This category includes all matters related to (i) responding to objections to OMM's employment and fee applications and (ii) objecting to employment and fee applications on behalf of the Debtors. During the Compensation Period, OMM spent its time in this category responding to the Fee Auditor's initial report regarding OMM's fees during the period April 2, 2007 through

July 31, 2007.

    H.    <u>Assumption/Rejection of Leases and Contracts (080)</u>

        Fees: $53,073.00        Total Hours: 92.8

This category includes all matters related to contract and lease analysis and matters related to assumption, assignment or rejection of executory contracts and unexpired leases. During the Compensation Period, OMM analyzed its claims under contracts with third parties. Additionally, on behalf of the Debtors, OMM was successful in reaching an agreement with Accenture, pursuant to which Accenture agreed to pay the Debtors $1.9 million and to release $6.3 million of claims against the Debtors' estates. OMM drafted a motion seeking approval of this settlement agreement, which motion was granted by the Bankruptcy Court on April 21, 2008.

    I.    <u>Claims Administration and Objections (081)</u>

        Fees: $41,715.00        Total Hours: 64.7

This category includes all matters related to and including claims administration matters and bar date matters, including claims objections and related contested matters. Among other tasks, OMM worked with the Debtors and their other professionals to analyze claims filed against the Debtors, strategize with respect to the claims objection process, and prepare omnibus objections to claims. Moreover, OMM spent time in this category negotiating with creditors holding claims to which the Debtors had previously objected. During the Compensation Period OMM also rendered services in connection with the Debtors' equipment financing arrangement with GMAC and the respective rights of the Debtors and GMAC. Additionally, OMM worked with the Debtors to resolve large claims filed by the state of Ohio and AT&T.

    J.    <u>Plan & Disclosure Statement (082)</u>

        Fees: $514,465.00        Total Hours: 933.2

This category includes all matters related to the the joint chapter 11 plan of liquidation of the Debtors and the Committee (the "Plan"). Much of services rendered by OMM in this matter during the Compensation Period related to preparing for the April 24-25, 2008 hearing on the confirmation of the Plan (the "Confirmation Hearing"). Leading up to the Confirmation

Hearing, OMM coordinated the Debtors' document production to the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (the "Ad Hoc Committee"). OMM also prepared Holly Etlin and Todd Brents for their depositions by the Ad Hoc Committee and defended them at their depositions. Additionally, OMM worked with numerous creditors, the Securities and Exchange Commission, and the Office of the United States Trustee to resolve both formal and informal objections to the Plan, which efforts resulted in only two standing objections to the Plan at the Confirmation Hearing and the filing of a second amended plan on April 23, 2008. OMM also was primarily responsible for all briefing related to the Plan, which included an extensive reply brief in response to the objections of the Ad Hoc Committee and the New York State Teachers' Retirement System as lead plaintiff in a securities class action suit. Among other tasks, OMM communicated with numerous creditors of the Debtors regarding the Plan, assisted with the preparation of the Liquidating Trust Agreement and the Plan Administrator Agreement, drafted a motion requesting an order approving modifications to the Plan, prepared a draft Confirmation Order, drafted declarations of Holly Etlin and Todd Brents in support of the Plan, negotiated voting stipulations, and attended to other matters regarding Plan voting. Subsequently, on April 24 and 25, 2008, three OMM attorneys attended the Confirmation Hearing.

K.    General Litigation/Litigation Claims (083)

Fees: $32,370.50         Total Hours: 64.7

This category includes all matters relating to pending state court litigation matters and adversary proceedings for which no separate matter is listed.

L.    Reclamation Claims (086)

Fees: $520.00       Total Hours: 1.0

This category includes the analyses of reclamation claims asserted in the Debtors' cases. During the Compensation Period, OMM negotiated and drafted a supplemental stipulation regarding the reclamation claim of KST Data, Inc.

M.   Fee/Employment Applications (087)

Fees: $36,609.00          Total Hours: 88.2

This category includes all matters related the retention and compensation of professionals in the Debtors' cases. During the Compensation, OMM prepared its monthly fee applications for February 2008 and March 2008. OMM also completed a supplemental declaration in support of its employment so as to remain in compliance with Rule 2014 of the Federal Rules of Bankruptcy Procedure, which task included an extensive supplemental conflicts check.

N.   Employee Matters (Benefits, Pensions) (089)

Fees: $2,925.00          Total Hours: 5.6

This category includes all matters related to employee wages, employee plans, benefits, other employee relations matters and retiree benefits. During the Compensation Period, OMM's time in this matter centered on addressing issues related to the Department of Labor's audit of the Debtors' 401(k) plan.

O.   Corporate and Securities Matters (090)

Fees: $17,015.00          Total Hours: 24.3

This category includes the drafting of board resolutions, the preparation and filing of reports required by the Securities and Exchange Commission, preparing materials for and attending board of directors meetings, and related research.

P.   Tax Issues (091)

Fees: $3,495.00          Total Hours: 36.0

This category includes all federal and state income, property, employment, excise and other tax matters, other than tax aspects of a chapter 11 plan. During the Compensation Period, OMM spent a substantial amount of time within this category analyzing the Debtors' tax liabilities and assisting the Debtors in connection with the ongoing IRS audit, including communicating with IRS counsel regarding the IRS' proof of claim and with the Committee regarding open audit issues.

Q.    Government Investigations (093)

Fees:  $52,603.50              Total Hours: 141.8

Continuing its work from prior to the Petition Date, OMM assisted the Debtors in addressing certain ongoing investigations being conducted by the U.S. Department of Justice and the Securities and Exchange Commission relating to prepetition criminal and regulatory investigations by such entities.

R.    Warehouse Lenders (094)

Fees: $14,190.00              Total Hours: 16.5

This category includes all matters related to the Debtors' master repurchase agreements and master loan purchase agreements and to the Debtors' disputes with the counterparties to such agreements.  OMM spent time during the Compensation Period analyzing and negotiating the deficiency claims of coutnerparties to master repurchase agreements

S.    Deferred Compensation Plan Litigation (095)

Fees: $12,605.50              Total Hours: 21.1

This category includes all matters related to litigation concerning the Debtors' deferred compensation plan (the "Deferred Compensation Plan Litigation").  In particular, OMM continued its analysis of the documents governing the Debtors' deferred compensation plan and its fact investigation and legal analysis pertaining to the Deferred Compensation Plan Litigation. Additionally, OMM engaged in strategy discussions with the Committee.

T.    Access Lending (096)

Fees: $26,801.00              Total Hours: 42.5

This category includes all matters related to the Access chapter 11 case.  During the Compensation Period, OMM analyzed claims against Access Lending, worked to negotiate a settlement with Access Lending's largest creditor regarding its claim against Access Lending, and negotiating payment of amounts owed under the asset purchase agreement pursuant to which the assets of Access Lending were sold to Access Holdings.  In addition, OMM spent substantial time

in this matter modifying Access Lending provisions of the Plan and drafting a motion related thereto.

U.    WARN Litigation (097)

Fees: $12,206.00       Total Hours: 21.4

This category includes all matters related to the WARN Act lawsuit brought against the Debtors, for which O'Melveny assumed responsibility at the end of June, 2007. During the Compensation Period, OMM spent time in this category negotiating a settlement of the litigation with the plaintiffs and the Committee.

V.    Examiner Issues (098)

Fees: $353.00       Total Hours: 0.5

This category includes all matters related to facilitating the Debtors' cooperation with the investigation being conducted by the Court-appointed examiner.

### Valuation of Services

12.    Attorneys and paraprofessionals of OMM have expended a total of 1,785.3 hours in connection with this matter during the Compensation Period.

13.    The nature of the work performed by these persons is fully set forth in Exhibit A attached hereto. These are OMM's normal hourly rates for work of this character. The reasonable value of the services rendered by OMM to the Debtors during the Compensation Period is $963,897.00.

14.    In accordance with the factors set forth in Section 330 of the Bankruptcy Code, OMM respectfully submits that the amounts requested are fair and reasonable given (a) the complexity of this case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services and (e) the costs of comparable services other than in a case under this title. Moreover, OMM has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

Exhibit C, Page 226

WHEREFORE, OMM respectfully requests that the Court enter an order providing that, for the Compensation Period, an allowance be made to OMM with respect to the sum of $771,117.60 (80% of $963,897.00) as compensation for necessary professional services rendered, and the sum of $19,291.86 for reimbursement of actual necessary costs and expenses, for a total of $790,409.46, and that such sums be authorized for payment less any sums that have been previously paid to OMM pursuant to the Administrative Order, and for such other and further relief as the Court may deem just and proper.

Dated: July 8, 2008            Respectfully submitted,
Wilmington, Delaware

                               /s/ Andrew M. Parlen
                               Suzzanne Uhland
                               Ben H. Logan
                               Andrew M. Parlen
                               O'MELVENY & MYERS LLP
                               275 Battery Street
                               San Francisco, California  94111
                               (415) 984-8700

                               ATTORNEYS FOR DEBTORS AND
                               DEBTORS IN POSSESSION

LA3:1148107.1
RLF1-3300247-1                         12

                                   Exhibit A
                                      29

## VERIFICATION

STATE OF CALIFORNIA)
COUNTY OF ORANGE   )

    Suzzanne Uhland, after being duly sworn according to law, deposes and says:

    a)  I am counsel with the applicant firm, O'Melveny & Myers LLP, co-counsel to the Debtors in the above-captioned matter.

    b)  I have performed and am familiar with the work performed on behalf of the Debtors by O'Melveny & Myers LLP.

    c)  I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such Rule.

                                   _____
                                     Suzzanne Uhland

SWORN AND SUBSCRIBED before me this ___th day of _____, 2008

_____
        Notary Public

LA3:1148107.1

            1

## CALIFORNIA JURAT WITH AFFIANT STATEMENT

X See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____                    _____
Signature of Document Signer No. 1                                Signature of Document Signer No. 2 (if any)

State of California

County of Orange

Subscribed and sworn to (or affirmed) before me on this

7th day of July, 20 08, by
    Date            Month              Year

(1) Suzanne Uhland
                Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

**MICHELE R. EMIUO**
Commission # 1611933
Notary Public - California
Orange County
My Comm. Expires Dec 2, 2009

(2) _____
                Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____
                        Signature of Notary Public

Place Notary Seal Above

------------------------ **OPTIONAL** ------------------------

*Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document:_____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org  Item #5910  Reorder: Call Toll-Free 1-800-876-6827

Exhibit A
31

**Exhibit C, Page 229**

# See Litt Declaration, ¶ 34

# "Exhibit 21"



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG BEACH AREA PEACE NETWORK, et al., | ) NO. CV 04-08510 SJO (SSx) )  )  Plaintiffs, | 
| Plaintiffs, | ) **ORDER GRANTING PLAINTIFFS' MOTION** |
| v. | ) **FOR AWARD OF ATTORNEYS' FEES AND** ) **COSTS AGAINST DEFENDANT** |
| CITY OF LONG BEACH, | ) [Docket No. 56] )  ) |
| Defendant. | ) ) |

This matter is before the Court on Plaintiffs Long Beach Area Peace Network and Diana Mann's (collectively, "Plaintiffs") Motion for Award of Attorneys' Fees and Costs, filed April 15, 2010. Defendant City of Long Beach ("Defendant") filed an Opposition to which Plaintiffs replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for May 24, 2010. *See* Fed. R. Civ. P. 78(b). Because of the following reasons, Plaintiffs' Motion is GRANTED.

I.     BACKGROUND

Defendant adopted an ordinance, codified in §§ 5.60 *et seq.*, of the Long Beach Municipal Code ("LBMC"), that established a permit scheme for parades and assemblies held in the City of Long Beach (the "Ordinance"). Plaintiffs filed a "facial challenge" to the Ordinance, seeking: (1) declaratory and injunctive relief; (2) compensatory damages; and (3) attorneys' fees. On November 15, 2004, the Court permanently enjoined Defendant from enforcing the Ordinance

1   on the grounds that the Ordinance constituted an unconstitutional restraint on speech and

2   assembly.  Defendant subsequently appealed the Court's Order to the Ninth Circuit.

3          In *Long Beach Area Peace Network v. City of Long Beach,* 574 F.3d 1011 (9th Cir. 2009),

4   the Ninth Circuit affirmed in part and reversed in part, and remanded the issue of whether the four

5   unconstitutional provisions could be severed.  Defendant filed a petition for rehearing *en banc,*

6   which was denied.  Defendant then petitioned for a Writ of Certiorari with the United States

7   Supreme Court, which was also denied.

8          On March 15, 2010, the Court heard argument on whether the unconstitutional provisions

9   of the Ordinance were severable and concluded on April 1, 2010, that the provisions were not

10  severable and thus the entire Ordinance was invalid.  (Docket ("Dkt.") No. 43.)  Plaintiffs now

11  move for attorneys' fees and costs.  (*See generally* Pls.' Mot. for an Order Awarding Attorneys'

12  Fees and Costs Pursuant to 42 U.S.C. § 1983 and California Code of Civil Procedure § 1021.5

13  ("Pls.' Mot.").)

14  II.    DISCUSSION

15         A.     Attorneys' Fees

16         42 U.S.C. § 1988 states that "[i]n any action or proceeding to enforce a provision of [section

17  1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney[s']

18  fee as part of the costs . . . ."  42 U.S.C. § 1988.  In determining the amount of attorneys' fees to

19  be awarded, the court must first determine the lodestar figure, which is calculated by multiplying

20  the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See*

21  *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).  The lodestar figure is presumptively

22  reasonable.  *See Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988).  Hours are not

23  reasonably expended if they are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461

24  U.S. at 434.  The reasonable hourly rate is the rate "prevailing in the community for similar work

25  performed by attorneys of reasonably comparable skill, experience, and reputation."  *Blum*

26  *v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Once calculated, the court may then adjust the

27  lodestar amount up or down based on a number of factors, including:

28

1          (1) [t]he time and labor required; (2) [t]he novelty and difficulty of the

2          questions; (3) [t]he skill requisite to perform the legal services

3          properly; (4) [t]he preclusion of other employment due to acceptance

4          of the case; (5) [t]he customary fee; (6) [t]he contingent or fixed nature

5          of the fee; (7) [t]he limitations imposed by the client or the case; (8)

6          the amount involved and the results obtained; (9) [t]he experience,

7          reputation, and ability of the attorneys; (10) [t]he undesirability of the

8          case; (11) [t]he nature of the professional relationship with the client;

9          and (12) [a]wards in similar cases.

10  *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622 (9th Cir. 1993). In seeking attorneys' fees under this

11  method, "the fee applicant has the burden of producing satisfactory evidence, in addition to the

12  affidavits of its counsel, that the requested rates are in line with those prevailing in the community

13  for similar services . . . and that the claimed number of hours is reasonable . . . ." *Id.* at 622-23.

14        Plaintiffs allege that they are entitled to attorneys' fees and costs as prevailing parties under

15  42 U.S.C. § 1983. (Pls.' Mot. 2:13-16.)

16        1.    <u>Reasonableness of Hourly Rate</u>

17        As established in *Blum v. Stenson*, the reasonableness of an hourly rate is "calculated

18  according to the prevailing market rates in the relevant community, regardless of whether plaintiff

19  is represented by private or nonprofit counsel . . . . [T]he rates should be in line with those

20  prevailing in the community for similar services by lawyers of reasonably comparable skill,

21  experience, and reputation." *Blum*, 465 U.S. at 896 n.11. Plaintiffs have submitted affidavits and

22  cases in support of the reasonableness of the hourly rate charged by Plaintiffs' attorneys. (Pls.'

23  Mot., Ex. 3-8; Pls.' Mot., Decl. of Barrett Litt in Support of Plaintiffs' Motion for an Order Awarding

24  Attorneys' Fees and Costs.)  Accordingly, the rates are presumed to be reasonable unless

25  Defendant can show that the rates are not in line with those prevailing in the community. *See*

26  *Blum*, 465 U.S. at 896 n.11.

27        Defendant has not presented sufficient evidence to refute the figures provided by Plaintiffs,

28  instead relying on references to the United States Attorney's Office ("USAO") *Laffey* Matrix and

**Exhibit C, Page 233**

1 | the Altman Weil Survey of Law Firm Economics.[1]  (*See generally* Mem. of P. & A. in Opp'n to Pls.'

2 | Mot. for Attorneys' Fees ("Def.'s Opp'n").)  However, neither alternative is representative of the

3 | "prevailing market rates in the relevant community" of Los Angeles. *Blum*, 465 U.S. at 896 n.11.

4 | Since neither the *Laffey* Matrix nor the Altman Weil Survey are applicable, Defendant has failed

5 | to rebut the presumption of reasonableness of Plaintiffs' claimed rates. *See id.*

6 |      After review of the evidence presented by the parties in support of fees, the Court finds that

7 | the requested rates are reasonable for each of the attorneys, clerks, and paralegals.

8 |         2.    Reasonableness of Claimed Number of Hours

9 |      Hours are not reasonably expended if they are "excessive, redundant, or otherwise

10 | unnecessary." *Hensley*, 461 U.S. at 434.  Moreover, the "fee applicant bears the burden of

11 | documenting the appropriate hours expended in the litigation and must submit evidence in support

12 | of these hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).  Once the fee

13 | applicant has met that burden, the opposing party "has a burden of rebuttal that requires

14 | submission of evidence to the district court challenging the accuracy and reasonableness of the

15 | hours charged." *Id.* at 1397-98.

16 |      Plaintiffs have submitted a sufficiently detailed breakdown of time spent on various levels

17 | of the litigation. (Pls.' Mot. 6:3-25.)  Plaintiffs allege that they have exercised billing judgment by

18 | excluding the time spent preparing briefs in Small Claims Court and for issues that were ultimately

19 | unsuccessful.  *See Hensley*, 461 U.S. at 434; Pls.' Mot. 5:10-20.  In total, Plaintiffs contend that

20 | they have already eliminated 46 hours from Ms. Thornton's time and 41 hours from Ms. Sobel's

21 | hours. (Pls.' Mot. 5:10-20.)

22 |      However, Defendant argues that the hours billed are still unreasonable and must be

23 | reduced.  The Court will address each of Defendant's arguments separately.

24 |

25 |

26 |     [1] The USAO *Laffey* Matrix is a publication based on District of Columbia averages of hourly

27 | rates charged by attorneys, whereas the Altman Weil Survey is a national average of hourly rates

28 | charged by attorneys in the United States.  The Court notes that Defendant failed to provide the *Laffey* Matrix, as well as the pertinent portions of the Altman Weil Survey.

Exhibit C, Page 234

### a.   Ms. Sobel's Use of an Associate

Defendant wishes to exclude all of Ms. Thornton's involvement in the appellate process when calculating attorneys' fees. (Opp'n to Appellees' Application for Attorneys' Fees attached as Ex. 1 to Def.'s Opp'n ("Ex. 1").) However, Defendant's request implies that Defendant would have preferred Ms. Sobel to conduct the same basic research and drafting tasks done by Ms. Thornton, but at more than three times the billing rate. (Pls.' Reply to the Opp'n to Attorneys' Fees and Costs ("Pls.' Reply") 6:13-24.) Had Ms. Sobel completed all of the work done by Ms. Thornton, Plaintiffs' fees would be even higher. Accordingly, the Court finds that Plaintiffs' use of an associate was neither excessive nor unwarranted.

### b.   Ninth Circuit Appeal

Defendant alleges that Ms. Sobel's general experience in First Amendment law and her involvement as lead attorney in *Santa Monica Food Not Bombs v. Santa Monica*, 450 F.3d 1022 (9th Cir. 2006), necessarily resulted in duplicitous research. (Def.'s Opp'n 2:24-25.) However, the Court finds that any duplicitous work was done out of necessity, especially given the fact that litigation occurred over several years. (Pls.' Reply 2:9-10.)

Defendant also contends that a reduction in attorneys' fees is warranted because Plaintiffs were only successful on four out of nine issues. (Ex. 1.) This is irrelevant because Plaintiffs were ultimately successful in invalidating the entire Ordinance. (*See generally* Pls.' Reply.) Accordingly, the Court finds this argument is without merit.

Alternatively, Defendant contends that Plaintiffs' failure to follow Ninth Circuit Rule 28-2.6[2] resulted in unnecessary supplemental briefing in the present case because the "matters could have potentially been consolidated and the necessity and expense of supplemental briefing could have been avoided." (Ex. 1.) There is no evidence that the Ninth Circuit would have consolidated the matters. Accordingly, the Court finds that this argument lacks merit. After reviewing the evidence presented by both parties, the Court finds no reduction in attorneys' fees is necessary

---

[2] Ninth Circuit Rule 28-2.6 states in pertinent part: "[e]ach party shall identify in a statement . . . any known related case pending in [the Ninth Circuit] . . . . Cases are deemed related if they . . . raise the same or closely related issues . . . ." Fed. R. App. P. 28-2.6.

Exhibit C, Page 235

1   for the appellate process. Accordingly, Plaintiffs are awarded $119,082.50 in attorneys' fees for

2   work done during the appeals process.

3                   c.     United States Supreme Court Briefing

4         Defendant alleges that spending 141.1 hours on Plaintiffs' Brief in opposition to Defendant's

5   Petition for Writ of Certiorari is excessive because Plaintiffs merely quoted and paraphrased

6   liberally from the Ninth Circuit opinion and provided little independent legal analysis. (Def.'s Opp'n

7   4.) However, Plaintiffs allege that it had to research numerous new cases and issues. (Pls.' Reply

8   6:25-28.) Furthermore, Plaintiffs argue that 19 months passed between the time Plaintiffs filed

9   their Opposition to the petition for rehearing *en banc* in May 2008 to the time they filed their

10  Response to the Petition for Certiorari in December 2009. (Pls.' Reply 7:22-24.) Thus, although

11  the work may have been duplicitous, given the time lapse between actions, the Court finds that

12  any duplication was necessary. The Court finds that no reduction in attorneys' fees is necessary.

13  Accordingly, the Court finds the sum of $71,322.50 to be appropriate, and thus awards such an

14  amount for matters related to the Petition for Certiorari.

15                 d.     District Court Proceedings

16        Defendant alleges that Plaintiffs are not entitled to collect attorneys' fees for the original

17  district court proceedings because they failed to file a timely application for attorneys' fees

18  pursuant to Federal Rule of Civil Procedure ("Rule") 54(d)(2)(B)(i).[3]  *See* Fed. R. Civ. P.

19  54(d)(2)(B)(i). However, Local Rule 54-12 permits the filing of a motion for attorneys' fees fourteen

20  days after any final order is issued. *See* Local Rule 54-12.[4] Plaintiffs contend that the term "final

21  order" means after the time for filing an appeal has expired "such that there is no longer any

22  possibility that the district court's judgment is open to attack." *Al-Harbi v. Immigration and*

23  *Naturalization Serv.*, 284 F.3d 1080, 1082 (9th Cir. 2002). The Court issued its Order denying

24

25      [3] Rule 54(d)(2)(B)(i) states that a motion for attorneys' fees must "be filed no later than 14

26  days after the entry of judgment[.]" Fed. R. Civ. P. 54(d)(2)(B)(i).

27      [4] Local Rule 54-12 states that "[a]ny motion or application for attorneys' fees shall be
served and filed within fourteen (14) days after the entry or judgment or other final order, unless
28  otherwise ordered by the Court."

1 | severability on April 1, 2010, and the instant Motion for attorneys' fees was filed on April 14, 2010.

2 | (*See* Dkt. No. 55; Dkt. No. 56.)  Since the instant Motion was filed within 14 days from the final

3 | Order denying severability, Plaintiffs are not precluded from seeking attorneys' fees for the original

4 | district court proceedings.  Accordingly, Plaintiffs are awarded $67,405.00 for work done for the

5 | original district court proceedings.

6 | e.        Severability and Post-Appellate Proceedings

7 | Defendant alleges that Ms. Sobel's involvement in *Long Beach Lesbian & Gay Pride, Inc.*

8 | *v. City of Long Beach*, 17 Cal. Rptr. 2d 861 (Cal. App. 1993), a case dealing with a prior version

9 | of the same city ordinance as the instant case, necessarily means that some hours expended

10 | working on the severability hearings in the instant case are duplicitous.  (Def.'s Opp'n 5:3-12.)

11 | *Long Beach Lesbian & Gay Pride, Inc.* was decided in 1993, almost two decades ago and a whole

12 | decade before the commencement of the instant litigation.  Over such a long period of time, laws

13 | may change and work product may become stale.  *See Moreno v. City of Sacramento*, 534 F.3d

14 | 1006, 1112 (9th Cir. 2008).  At a bare minimum, an attorney "needs to get up to speed with the

15 | research previously performed." *Id*.  Thus, the Court finds Defendant's argument without merit.

16 | Accordingly, the Court finds the sum of $19,690.00 to be a reasonable sum of attorneys' fees for

17 | the severability hearing and post-appeal proceedings.

18 | f.        Work on the Motion for Attorneys' Fees and Costs

19 | Defendant argues that the hours billed for the instant Motion are excessive because

20 | Plaintiffs only had to include a minor amount of additional information and thus much of the work

21 | was duplicative.  (Def.'s Opp'n 5:20-24.)  Plaintiffs initially sought 17.9 hours, but request an

22 | additional 18.4 hours for time spent on the Reply.  Plaintiffs are not required to travel to, appear

23 | at, or prepare for a hearing regarding this matter.  Accordingly, Plaintiffs' request for fees for 4.5

24 | hours of time for such matters is denied.  As such, total hours billable for work done regarding the

25 | instant Motion is 31.8 hours at $725 per hour for a total of $23,055.

26 | B.        Costs

27 | The Court is unable to locate the Bill of Costs that Plaintiffs allegedly transferred from the

28 | Ninth Circuit, as it is not attached as Exhibit 15 to the Declaration of Ms. Sobel as Plaintiffs claim.

1  (Decl. of Carol A. Sobel in Support of Mot. for an Order Awarding Attorneys' Fees and Costs ¶ 20.)

2  The only enumerated costs that can be found are in Ms. Sobel's Supplemental Declaration

3  attached to Plaintiffs' Reply.   (Pls.' Reply, Supplemental Decl. of Carol A. Sobel ¶ 12.)

4  Accordingly, Plaintiffs are awarded $190.68 for out-of-pocket costs. (Pls.' Reply, Supplemental

5  Decl. of Carol A. Sobel ¶ 12.)

6  III.     **RULING**

7         For the foregoing reasons, Plaintiffs' Motion for an Order Awarding Attorneys' Fees and

8  Costs is GRANTED.  Accordingly, the Court awards Plaintiffs attorneys' fees and costs in the

9  amount of $300,745.68.

10

11         IT IS SO ORDERED.

12  Dated: July 2, 2010.

13

14         _____

15                    S. JAMES OTERO
                UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

8

**Exhibit C, Page 238**