Holly N. Boyer, SBN 221788
  *hboyer@ecbappeal.com*
ESNER, CHANG & BOYER
234 E. Colorado Blvd., Ste. 975
Pasadena, CA  91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859

Attorneys for Plaintiff
ALEXA CURTIN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA CURTIN,<br><br>    Plaintiff,<br><br>  vs.<br><br>COUNTY OF ORANGE; NICHOLAS LEE CAROPINO, individually and as Deputy Sheriff for the County of Orange; and DOES 1 through 50,<br><br>    Defendants. | Case No.: 8:16-CV-00591-SVW-PLA<br>Assigned to Hon. Stephen V. Wilson<br><br>***AMENDED* NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988**<br><br>*[Filed concurrently with Declarations of Daniel K. Balaban, Holly N. Boyer, Jeremy D. Jass, R. Browne Greene, Gerald G. Knapton, Barrett S. Litt, and [Proposed] Order]*<br><br>**DATE:  September 25, 2017**<br>**TIME:  1:30 p.m.**<br>**DEPT.:  Courtroom 10A** |

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE COURT:**

**PLEASE TAKE NOTICE** that on September 25, 2017, at 1:30 p.m., or as soon thereafter as counsel may be heard in the above-entitled Court, Plaintiff Alexa Curtin will move this Court for an order awarding reasonable attorney fees and costs pursuant to 42 U.S.C. Section 1988 and Federal Rule of Civil Procedure 54(d).

Plaintiff will request that the Court award attorneys fees in the amount of $2,088,110. The fee calculation is based on Plaintiff's lodestar attorneys' fees with a request for an enhancement of a 1.0 multiplier pursuant to *Perdue v Kenny A.,* 559 U.S. 542 (2010); *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). As explained below, the factors for the requested enhancement in attorneys' fees are met and a 1.0 multiplier is reasonable and justified. Thus, the sum requested is based on the hours worked at the reasonable rate ($1,044,055) with a 1.0 multiplier added to that sum. Plaintiff will also request that the Court award attorneys' fees for the work performed in connection with the instant motion for attorney fees, including after these papers are filed, as will be set forth in the reply papers. Plaintiff also requests that the Court award expenses in the amount of $20,428.75.

This Motion is based on the grounds that Plaintiff was the prevailing party at trial on her civil rights claim and is entitled to attorney fees as a matter of law. This Motion will be based upon the entire record on file herein, the instant notice, the attached Memorandum of Points and Authorities, the Declarations of Daniel Balaban, Browne Greene, Holly Boyer, Jeremy Jass, Gerald Knapton and Barrett S. Litt, as well as any and all further argument, evidence or documentation as may be presented at the time of the hearing of this motion. Further, this motion is made following a meet and confer of counsel pursuant to Local Rule 7-3, which took

/ / /

/ / /

**AMENDED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

place on August 16 and 17th, 2017.

Dated: August 23, 2017                    ESNER, CHANG & BOYER


                                           */s/ Holly N. Boyer*
                                          Holly N. Boyer
                                          *Attorney for Plaintiff*,
                                          ALEXA CURTIN

3

**AMENDED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

1
2

# **TABLE OF CONTENTS**

3
4
TABLE OF AUTHORITIES ..................................................................... ii
5
MEMORANDUM OF POINTS AND AUTHORITIES .......................................1
6
I.      INTRODUCTION .........................................................................1
7
II.      PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES
8
PURSUANT TO 42 U.S.C. § 1988 IN LIGHT OF THE JURY'S VERDICT
9
FINDING DEFENDANTS LIABLE UNDER § 1983 ..................................3
10
     A.      PLAINTIFF IS THE PREVAILING PARTY ....................................6
11
12
     B.      LODESTAR CALCULATION – REASONABLE HOURLY RATE. ...................6
13
     C.      LODESTAR CALCULATION – HOURS REASONABLY EXPENDED.............10
14
     D.      LODESTAR MULTIPLIER.......................................................15
15
     E.      PLAINTIFF IS FURTHER ENTITLED TO HER REASONABLE OUT-OF-POCKET
16
LITIGATION COSTS AS RECOVERABLE UNDER 42 U.S.C. § 1988. ..........20
17
III.      CONCLUSION ...........................................................................20
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

# <u>TABLE OF AUTHORITIES</u>

### CASES

*Balia v. Idaho State Board of Correction*
 2016 WL 6762651 (D. Idaho 2016)................................................................ 21

*Ballen v. City of Redmond*
 466 F.3d 736 (9th Cir.2006) .................................................................... 5, 18

*Blackwell v. Foley*
 724 F. Supp. 2d 1068 (N.D. Cal. 2010) ....................................................... 12

*Blum v. Stenson*
 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)................................ 7, 21

*Bouman v. Block*
 940 F.2d 1211 (9th Cir. 1991) .................................................................... 4

*Camacho v. Bridgeport Fin., Inc.*
 523 F.3d 973 (9th Cir.2008) ....................................................................... 8, 17

*Cervantes v. Cnty of Los Angeles*
 No. 12-09889 DDP (MRWx), 2016 WL 756456, at *3-4 (C.D. Cal. Feb. 24, 2016) ...... 11

*Chalmers v. City of Los Angeles*
 796 F.2d 1205 (9th Cir. 1986) .................................................................... 7

*Chaudhry v. City of Los Angeles*
 751 F.3d 1096 (9th Cir. 2014) .................................................................... 3

*Christian Research Institute v. Alnor*
 165 Cal.App.4th 1315 (Cal.App.2008) ....................................................... 5

*City of Burlington v. Dague*
 505 U.S. 557 (1992)................................................................................... 17

*City of Riverside v. Rivera*
 477 U.S. 561 (1986).................................................................................. 5

*Clark v. City of Los Angeles*
 803 F.2d 987 (9th Cir. 1986) ...................................................................... 16

*Cole v. City of Memphis*, Tenn.
 2015 WL 5076974, at *9 (W.D. Tenn. 2015)................................................. 22

*Dowd v. City of Los Angeles*
 No. CV 09–06731 SS, 28 F.Supp.3d 1019 (C.D. Cal. 2014) .......................... 11

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*
 2016 WL 5938722, at *11 (C.D. Cal. May 16, 2016) ................................... 10

*E-Pass Techs., Inc. v. 3Com Corp.*
 Civ. No. 00-2255 DLJ, 2007 WL 4170514, at *6 (N.D. Cal. Nov. 14, 2007)............ 12

*Evon v. Law Offices of Sidney Mickell*
  688 F.3d 1015 (9th Cir.2012) ................................................................ 18

*Fox v. Vice*
  563 U.S. 826 (2011) ............................................................................ 6

*Gates v. Deukmejian*
  987 F.2d 1392 (9th Cir. 1992) ............................................................. 8

*Glass v. Pfeffer*
  849 F.2d 1261 (10th Cir. 1988) .......................................................... 16

*Gonzales v. City of San Jose*
  2016 WL 3011791, at *8-9 (N.D. Cal. 2016) ...................................... 21

*Gonzalez v. City of Maywood*
  729 F.3d 1196 (9th Cir.2013) .............................................................. 17

*Guam Soc'y of Obstetricians and Gynecologists v. Ada*
  100 F.3d 691 (9th Cir.1996) ............................................................... 9

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) ........................................................................ 4, 5

Hernandez v. George
  793 F.2d 264 (10th Cir. 1986) ........................................................... 16

*Hernandez v. Kalinowski*
  146 F.3d 196 (3rd Cir. 1998) ............................................................ 16

*Jordan v. Mutnomah County*
  815 F.2d 1258 (9th Cir. 1987) ........................................................... 13

*Kelly v. Wengler*
  822 F.3d 1085 (9th Cir. 2016) ................................................... passim

*Kerr v. Screen Extras Guild, Inc.*
  *526 F.2d 67 (9th Cir.1975)* ............................................................... 18

*Lund v. Affleck*
  587 F.2d 75 (1st Cir.1978) ................................................................ 17

*Moore v. Brunner*
  2010 WL 317017, at *3 (S.D. Ohio 2010) ......................................... 21

*Moreno v. City of Sacramento*
  534 F.3d 1106 (9th Cir. 2008) ........................................................... 12

*Odima v. Westin Tucson Hotel*
  53 F.3d 1484 (9th Cir. 1995) ............................................................. 4

*Perdue v. Kenny A. ex rel. Winn*
  559 U.S. 542 (2010) ..................................................................... 4, 18

*Prison Legal News v. Schwarzenegger*
  608 F.3d 446 (9th Cir. 2010) ............................................................. 7

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

*Rodriguez v. County of Los Angeles*
No. 10–6342–CBM (AJWx), 96 F.Supp.3d 1012 (C.D. Cal. 2014).............................. 11

*Serrano v. Unruh*
32 Cal.3d 621 (1982) ...................................................................................... 5

*St. Louis Police Retirement System v. Severson*
No. 12-CV-5086 YGR, 2014 WL 3945655, at *5-6 (N.D. Cal. Aug. 11, 2014)............... 9

*Stetson v. W. Publ'g Corp.*
2016 WL 5867434, at *3 (C.D. Cal. Aug. 11, 2016)........................................ 10

*Thomas v. City of Tacoma*
410 F.3d 644 (9th Cir. 2005) ........................................................................ 4

*Trustees of Const Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*
460 F.3d 1253 (9th Cir. 2006) ...................................................................... 22

*United States v. $28,000.00 in U.S. Currency*
802 F.3d 1100 (9th Cir. 2015) ...................................................................... 8

*Van Skike v. Director, Office of Workers' Compensation Programs*
557 F.3d 1041 (9th Cir.2009) .................................................................... 5, 7

*Welch v. Metro. Life Ins. Co.*
480 F.3d 942 (9th Cir.2007) ....................................................................... 8

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes an award of attorney's fees in civil rights litigation. Specifically, section 1988(b) authorizes the Court to award the prevailing party a reasonable attorney's fee in any suit to enforce the provisions of 42 U.S.C. § 1983. As the prevailing party, Plaintiff Alexa Curtin brings the instant motion to recover her attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54-10. Plaintiff separately seeks her entitlement to costs pursuant to and in accordance with Federal Rule of Civil Procedure 54(d)(1) and Local Rule 54-2.

The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. The provision and award of reasonable and compensatory fees encourages the vindication of constitutional and statutory rights. This purpose is particularly applicable here. Multiple attorneys passed on taking on a civil rights action against a Sheriff Deputy and the County of Orange. The potential for a fee award made it possible for Plaintiff's counsel to undertake the risk and complexity of the legal issues presented to effectuate change in the community and justice for Ms. Curtin. At all times during this litigation, the County of Orange never offered a dime to settle this case. Represented by numerous attorneys at a large law firm, the County repeatedly refused to produce documents, requiring counsel to file onerous motions to compel. Once ordered to produce documents by the magistrate, the County simply dumped thousands of pages of "confidential" documents on counsel just weeks before trial. The County baulked at Plaintiff's motion for partial summary judgment and her opposition to summary judgment on the issue of *Monell* liability. The County even took the position that this was simply a sexual "rendezvous" between Ms. Curtin and the deputy, and sought to discount the harm suffered by Ms. Curtin by introducing highly

1

prejudicial and inflammatory evidence concerning her sexual history, necessitating extensive briefing and argument by Plaintiff's counsel.

The risk and complexity of the issues in this case and the hurdles faced by Plaintiff's counsel during this litigation were substantial. As described below and detailed in the accompanying declarations, counsel for Plaintiff were efficient and highly skilled litigators, possessing expertise in a specialized area of the law rarely addressed. Indeed, while many *Monell* claims never do not survive to trial, Plaintiff's counsel navigated uniquely difficult legal analyses and successfully obtained a substantial jury verdict against the deputy and the County of Orange on *Monell* liability. The total hours requested in this motion of 1,880.9 hours is entirely reasonable in light of the obstacles and complexities. The varying hourly rates requested for the respective attorneys represents the current market rates in the community and supports the total lodestar amount of $1,044,055.

The Supreme Court, as well as the Ninth Circuit, have noted that while the lodestar figure is a *presumptively reasonable fee*, the Court may modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure. Here, and as explained below, such factors warrant an *upward modification* of a 1.0 multiplier. The verdict in this case was reached in large part because of the skill level of the attorneys. However, because Mr. Balaban, Mr. Jass, Ms. Boyer and Mr. Murphy, are all relatively young, their lodestar reasonable rate does not truly reflect the quality and value of their services. Therefore a multiplier is warranted. Further supporting the fee enhancement is the public value of the results obtained. As revealed in the press following the verdict, the jury's finding of *Monell* liability will likely effect change in the Sheriff's Department.

Orange County Board Supervisor Todd Spitzer criticized the Orange County Sheriff's Department's policy on internal investigations and urged the Sheriff to begin putting deputies on leave when a criminal investigation is launched. See Declaration of Daniel Balaban ("Balaban Decl.") Ex. B. It has been reported that

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

following the verdict, the Sheriff's Department was reviewing the policy that kept Caropino on patrol.  Balaban Decl. Ex. C. Orange County Sheriff's Deputy Lt. Lane Lagaret was quoted: "We are in the process of reviewing the court's findings with 20-20 hindsight. We would be negligent if we didn't at least find out if there is something to support that allegation."  [Id.]  In this same article, "It was reported that Sgt. Shon Wells from Los Angeles Police Department's Internal Affairs Division, said that [LAPD] won't hesitate to put an officer on leave if the person is accused of a serious crime, *even if there isn't any evidence to initially support the allegation*." (Emphasis added.)   Retired LAPD deputy chief of police Stephen Downing said he thinks Orange County's policy is the opposite of what it should be. "With serious allegations, I think it's wise for a police department to put the officer on administrative leave until they can gather at least the initial elements of the case. I can see why a federal jury would hold them liable, because what they're doing is allowing a predator to remain at large without being investigated. It's clearly irresponsible." Thus, because of the courage of Ms. Curtin to come forward, and the substantial efforts of her counsel in obtaining a successful verdict, the policies of the department will hopefully change.

Plaintiff therefore requests an award of attorney's fee in the amount of $2,088,110 (lodestar figure of $1,044,055, with a 1.0 multiplier added to that sum) as well as expenses in the amount of $20,428.75.

## II.   PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 1988 IN LIGHT OF THE JURY'S VERDICT FINDING DEFENDANTS LIABLE UNDER § 1983

"A party who prevails on a claim under § 1983 is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014), citing 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A plaintiff prevailing on his or her Section 1983 claim "'should

3

ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Thomas v. City of Tacoma,* 410 F.3d 644, 647 (9th Cir. 2005) (quoting *Hensley,* supra, at 429); see also *Barnard v. Theobald,* 721 F.3d 1069, 1077 (9th Cir.2013) ("'a court's discretion to deny fees under § 1988 is very narrow and ... fee awards should be the rule rather than the exception.'").

As repeatedly held by the Supreme Court, the purpose of § 1988 is "to ensure that federal rights are adequately enforced." *See Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 550 (2010); *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances). In light of such public policy, courts have consistently held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block,* 940 F.2d 1211, 1237 (9th Cir. 1991); *Hensley,* 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). If the rule were otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; see also *Odima v. Westin Tucson Hotel,* 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh,* 32 Cal.3d 621 (1982). A fully compensatory fee is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and time spent on the case, calculated at private market rates. See *City of Riverside v. Rivera,* 477 U.S. 561, 581 (1986).

"The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1048 (9th Cir.2009); *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir.2006) ("In the Ninth Circuit, the customary

4

method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method"); see also *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (the Ninth Circuit employs the "lodestar" method to determine a reasonable attorney's fees award under § 1988). Under the lodestar calculation, a reasonable fee is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. The prevailing party bears the burden of establishing the reasonableness of the attorney's hourly rates. The court has broad discretion in evaluating a fee award because trial judges "are in the best position to assess the value of the professional services rendered in their courts." *Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315, 1321 (Cal.App.2008).

As recently explained by the Ninth Circuit in *Kelly*: "The lodestar method is a two-step process. *Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir.2000). First, a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *Id.*  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.' [Citation]. The lodestar figure 'roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case,' [citation], and is therefore a presumptively reasonable fee. *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir.2013). Second, the court determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure. See *Perdue, 559* U.S. at 553–54, 130 S.Ct. 1662; *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 & n. 8 (9th Cir.1996), as amended on denial of reh'g, 108 F.3d 981 (9th Cir.1997)." *Kelly*, at p. 1099.

In determining the size of an appropriate fee award, the Supreme Court has emphasized that courts need not "achieve auditing perfection" or "become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("We emphasize, as

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

we have before, that the determination of fees 'should not result in a second major litigation.'"). Rather, because the "essential goal of shifting fees . . . is to do rough justice," the court may "use estimates" or "take into account [its] overall sense of a suit" to determine a reasonable attorney's fee. *Id.*

### A.   PLAINTIFF IS THE PREVAILING PARTY

There can be no dispute that Plaintiff Alexa Curtin was the prevailing party in this litigation.  As to her only claim against Defendant Nicholas Caropino, Plaintiff secured summary judgment on the issue of Deputy Caropino's liability under 42 U.S.C. § 1983 for his violation of her constitutional rights when he raped and sexual assaulted her while acting under color of his authority as a County of Orange Deputy Sheriff. As to her only claim against Defendant County of Orange, in the first phase of a bifurcated trial, Plaintiff secured a unanimous jury verdict establishing liability in the County of Orange under 42 U.S.C. § 1983 as applied to municipalities under *Monell v. Dep't of Soc. Servs. of City of N.Y*, 436 U.S. 658 (1978), for the deliberately indifferent policies and practices it had in place that acted as a moving force in the violation of Alexa Curtin's Constitutional Rights by Deputy Caropino.  In the second phase of the bifurcated trial, Plaintiff secured a judgment against both Deputy Caropino and the County of Orange in the amount of $2.25 million. Based on these rulings, on August 8, 2017, this Court entered an enforceable judgment against Defendants and in favor of Plaintiff. Dkt. 278.  As the prevailing party, Plaintiff is entitled to recover attorney's fees and costs.

### B.   LODESTAR CALCULATION – REASONABLE HOURLY RATE.

Reasonable attorney's fees are assessed at the prevailing market rates in the relevant community.  See *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).  A reasonable hourly rate is not defined "by reference to the rates actually charged by the prevailing party." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986).  Rather, reasonable fees must be calculated based on the prevailing market rates charged by "attorneys in the relevant

community engaged in 'equally complex Federal litigation.'" *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)); see also *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) ("The Supreme Court has consistently held that reasonable fees 'are to be calculated according to the prevailing  market rates in the relevant community.'").

"[A]ffidavits of the [applicant's] attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008); see also *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 946 (9th Cir.2007) ("[B]illing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.")  The relevant community includes "attorneys practicing in the forum district"—that is, the Central District of California. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  Further, "the Court must base its determination on the *current* market rate." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015), citing *Camacho*, 523 F.3d at 981 ("[A] district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."); *Bell*, 341 F.3d at 861 ("We hold ... that it was an abuse of discretion in this case to apply market rates in effect more than two years before the work was performed.")

Here, Plaintiff has submitted declarations not only from her attorneys attesting to the reasonableness of the rates sought, but also a declaration from a local prominent civil rights attorney and an attorney's fee expert showing that the requested rates match the prevailing market rates in Los Angeles for private attorneys with similar levels of experience. See *Guam Soc'y of Obstetricians and Gynecologists v. Ada,* 100 F.3d 691, 696 (9th Cir.1996) ("declarations of the

7

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

‘prevailing market rate in the relevant community ... [are] sufficient to establish the appropriate [billing] rate for lodestar purposes.’” (quoting *Davis v. City and County of San Francisco* 976 F.2d 1536, 1547 (9th Cir.1992))).

The declarations establish that the prevailing community rate for Mr. Balaban and Ms. Boyer is $750 an hour, the rate for Mr. Murphy is $550 an hour, Mr. Jass $400 an hour, Mr. Browne $875 an hour, and the associates at a range between $275-350 an hour.  See Declaration of Gerald Knapton (“Knapton Decl.” ¶¶ 39-43; Declaration of Barrett Litt (“Litt Decl.”) ¶¶ 31-37.  As detailed by Gerald Knapton, an attorneys’ fees expert, the “averaging across all-sized law firms and all practice areas in Los Angeles, partners charge hourly rates between $392.86 (first quartile) and $875.00 (third quartile), with a mean of $661.39 and a median of $645.83, while associates charge hourly rates between $296.17 (first quartile) and $675.00 (third quartile), with a mean of $460.21 and a median of $531.50.” Knapton Decl. ¶ 38. Mr. Knapton explained the rates in the Third Quartile are the best measure of the rates to be applied here given the difficult in proving *Monell* liability and the specific facts and issues presented in this case.  Knapton Decl. ¶ 39-42.

Notably, Mr. Napton’s analysis of focusing on “real rate” reports has been described by numerous courts as a preferable and accurate reflection of the true prevailing market rate in the community.  See *St. Louis Police Retirement System v. Severson*, No. 12-CV-5086 YGR, 2014 WL 3945655, at *5-6 (N.D. Cal. Aug. 11, 2014) (court relied on real rate report and noted: “The Court finds this publication's analysis to be much more persuasive than other surveys, as it is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies - a much better reflection of true market rates than self-reported rates in all practice areas as part of a national survey of top firms.”); *Stetson v. W. Publ’g Corp.*, 2016 WL 5867434, at *3 (C.D. Cal. Aug. 11, 2016) (“the Real Rate Report is a persuasive source of information for determining reasonable hourly rate, as it is a reflection of true market rates”); *Downey Surgical Clinic, Inc. v.*

8

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS’ FEES AND COSTS**

*Optuminsight, Inc.*, 2016 WL 5938722, at *11 (C.D. Cal. May 16, 2016) ("Courts have found that the Real Rate Report is a much better reflection of true market rates than self-reported rates in all practice areas.")

The rates requested are further supported by the declaration of Barrett Litt, who explained that the relevant community rate here is plaintiff's lawyers in *complex civil rights cases* in Los Angeles. See Litt Decl. ¶ 27. Mr. Litt highlighted that analyzing rates recovered by lawyers of similar experience in complex cases such as this one, the requested rates are in accord with the current prevailing rates. See Litt Decl. ¶¶ 31-37. In fact, Mr. Litt states in his declaration that based on his review of fees obtained in other civil rights cases, "a reasonable rate for Mr. Greene, a well-known Plaintiffs' trial attorney for decades with a long list of multi-million dollar verdicts, is at least $1000 per hour." Litt Decl. ¶ 31. Mr. Litt explained "[a]lthough it is my opinion that a reasonable rate for Mr. Greene's is at least $1000, given his experience and reputation, he has limited his request to $875. This rate is more than justified for his trial value, and I believe is very much on the low end of what constitutes a reasonable rate for him." *Id.*

Likewise, Mr. Litt notes that in light of their experience and skill, the rate of $750 for Mr. Balaban and Ms. Boyer is reasonable and supported by comparable awarded rates in civil rights cases. Litt Decl. ¶ 33-34. With respect to Mr. Murphy's requested $550 rate, and Mr. Jass at $400, Mr. Litt noted that the requested rates are "low compared to rates for attorneys of similar years' experience doing complex commercial litigation." See Litt Decl. ¶ 36. He further explained that the associates rates of $350-275 are reasonable and warranted in this case. See Litt Decl. ¶¶ 36-37.

As outlined in the declaration of Mr. Litt, the requested rates for Plaintiff's counsel echo those awarded in similar complex civil rights actions. See Litt Decl. ¶ 31-37; see also *Rodriguez v. County of Los Angeles*, No. 10–6342–CBM (AJWx), 96 F.Supp.3d 1012 (C.D. Cal. 2014) (§ 1983 action where Mr. Litt was awarded a

9

$975 an hour; the lead attorney, who had been practicing civil rights law for 10 years and who had extensive criminal trial experience, a rate of $775 an hour; another attorney who had been practicing law for over 20 years with a focus in the area of police misconduct an award of $700 an hour; an attorney with 10 years of experience practicing law a rate of $600 an hour; an attorney with six years of experience $500 an hour; and paralegal rates of $295 an hour and law clerk rates of $175 an hour); *Dowd v. City of Los Angeles*, No. CV 09–06731 SS, 28 F.Supp.3d 1019 (C.D. Cal. 2014) (court awarded an attorney with a 43-year career $775 an hour; an attorney with over 35 years practicing law and limited civil rights case experience $675 an hour; an attorney with seven years practicing law and limited civil rights and complex litigation experience $375 an hour; and an attorney with one year of legal experience and no experience litigating civil rights or other complex federal cases $200 an hour); *Cervantes v. Cnty of Los Angeles*, No. 12-09889 DDP (MRWx), 2016 WL 756456, at *3-4 (C.D. Cal. Feb. 24, 2016), (court awarded $700 an hour for lead counsel with over 35 years of experience practicing law; $400 an hour was appropriate for an attorney litigating his first federal jury trial and who had limited civil rights experience; and $275 an hour for an attorney approximately two years out of law school who was participating in his first federal trial).

The evidence therefore supports the rates requested by Plaintiff's counsel.

## C.   LODESTAR CALCULATION – HOURS REASONABLY EXPENDED.

Under the lodestar method, "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). As noted by the Ninth Circuit in *Moreno*, as a general rule, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno,* 534 F.3d at 1112; see also *E-Pass Techs., Inc. v.*

1   *3Com Corp.,* Civ. No. 00-2255 DLJ, 2007 WL 4170514, at *6 (N.D. Cal. Nov. 14,

2   2007) ("[T]he court will not second-guess reasonable attorney conduct of a

3   litigation strategy for the case.").   Such deference is particularly appropriate in

4   plaintiffs' attorneys in civil rights cases where attorneys often work on a

5   contingency basis and thus have little incentive to expend unnecessary hours.  See,

6   e.g., *Moreno,* 534 F.3d at 1112 ("It would be the highly unusual civil rights

7   case where [a] plaintiff's lawyer engages in churning."); *Blackwell v. Foley,* 724 F.

8   Supp. 2d 1068, 1080 (N.D. Cal. 2010) ("[I]f anything, an attorney working on

9   contingency is less likely to expend unnecessary hours because the payoff is too

10  uncertain.").

11         Here, plaintiff's counsel submitted billing statements reflecting a total of

12  1,8809 hours.   The chart below references the hours spent by each attorney.

13  Considering these hours against the three phases of how the case proceeded, as

14  described in Mr. Balaban's declaration (see Balaban Decl. ¶¶ 12-13), i.e. (1) pretrial

15  discovery and initial litigation, (2) law and motion, and (3) trial, the hours reflect

16  787.9 hours for Jass Law, 779.2 hours Esner, Chang & Boyer, and 313.8 for Balaban

17  & Speilberger and Greene, Broillet & Wheeler.   The hours requested are supported

18  by the submitted billing statements, and as detailed in the declarations of Plaintiff's

19  counsel, Plaintiff has exercised billing judgment in the hours requested.

20         The analysis of the reasonableness of the hours requested requires the Court

21  to determine that the "time spent was reasonably necessary and that its counsel

22  made 'a good faith effort to exclude from the fee request hours that are excessive,

23  redundant, or otherwise unnecessary.'" *Jordan v. Mutnomah County,* 815 F.2d

24  1258, 1263 n.8 (9th Cir. 1987) (quoting *Hensley v. Eckerhart,* 461 U.S. 433, 434

25  (1983)).   As explained in *Hensely,* "Counsel for the prevailing party should make a

26  good faith effort to exclude from a fee request hours that are excessive, redundant,

27  or otherwise unnecessary, just as a lawyer in private practice ethically is obligated

28  to exclude such hours from his fee submission. In the private sector, 'billing

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (internal citations and quotations omitted).

The time records and declarations submitted reflect such billing judgment. Indeed, as noted by Mr. Knapton, "[t]he time from inception to March of 2017 is by only one lawyer, Mr. Jass, a former police officer.  He is joined by others, including the very well-known Mr. Greene for the trial.  The time by all the lawyers is well under 2,000 hours over 17 months and this represents a very reasonable time for taking a case such as this from inception to trial to a jury in my opinion." Knapton Decl. ¶ 31; see also ¶ 29.

With respect to Mr. Jass's time, he was the sole attorney on the case for the first year of litigation and alone battled numerous discovery disputes with the County's attorneys.  Mr. Jass drafted multiple rounds of pleadings, discovery- both propounded and responses, numerous motions, and investigated matters to decipher witnesses, deputies' identities, other victims, and other deputy misconduct despite the County's uncooperative conduct with discovery. Of note, Mr. Jass drafted multiple Motions to Compel discovery that together exceeded 700 pages and secured evidence critical to proving Ms. Curtin's claims.

As to Ms. Boyer and Mr. Murphy's time, there was extensive legal briefing in this case that ultimately and significantly narrowed the issues to be tried before the jury.  Indeed, as a result of the legal briefing prepared, the Court was able to determine multiple elements of Plaintiff's 1983 claim *as a matter of law*.  Because certain elements and factual determinations were made by the Court, the trial was considerably shorter, leaving the jury to decide simply whether the County's deliberately indifferent policies caused Plaintiff's harm.  While the legal issues raised in these motions for summary judgment was significantly complex and required extensive research, the preparation of the motions were particularly

12

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

onerous given the County's designation of all documents and nearly all depositions as "confidential" and thus requiring filing the documents under seal and the preparation of redacted and unredacted versions.  Separate from the motions for summary judgment, there were numerous motions in limine filed by the County which required opposition as well as motions in limine necessary for Plaintiff to file in light of the positions taken by the County.  Research and preparation of trial briefs, jury instructions, special verdict and other such trial documents further make up the hours expended by Ms. Boyer and Mr. Murphy.  Further, because of the complexity of the legal issues, it was necessary for Ms. Boyer and Mr. Murphy to attend trial and assist with on-the-spot legal briefing.

Mr. Balaban and Mr. Greene were co-lead trial counsel for this case. In addition to his trial duties, Mr. Balaban took many of the depositions of key witnesses in the case, handled communications with defense counsel, and took a leadership role in managing the case, strategy development, and preparing the case for trial. At trial, Mr. Balaban handled all aspects of liability and was responsible for opening statements for both phases of trial, the examinations of Sergeant Virgil Asuncion, Jeffrey Noble, Assistant Sheriff Steven Kea, Assistant Sheriff Adam Powell, Investigator Alex Quilantan, Robert Fonzi, and closing arguments for both phases of trial. Mr. Greene handled the damages portion of the trial and was responsible for the examinations of Alexa Curtin, Lynne Curtin, Raquel Curtin, Jenni D'Errico, and Catherine Fevery, as well as part of the closing arguments for the damages phase of trial. Both Mr. Balaban and Mr. Greene spent significant hours preparing for trial and displayed impressive skills in executing their individual functions at trial.

Plaintiff's claim for violation of Section 1983 against Caropino and the County under a theory of *Monell* liability therefore required substantial work and the attorneys have exercised billing judgment in the hours submitted.

13

Applying the reasonable prevailing rate to each attorney's reasonable hours expended provides a total lodestar amount of $1,044,055 as depicted in the chart below.  See also Knapton Decl. ¶ 44 ["Because counsel for Ms. Curtin incurred a reasonable amount of time of 1,880.9 hours litigating this case at reasonable hourly rates, in my opinion Plaintiff's' requested lodestar of attorneys' fees of $1,044,055 is reasonable and necessary."]

| ATTORNEY | RATE | HOURS SPENT | TOTAL |
|---|---|---|---|
| Browne Green | $875 | 90.4 | $79,100 |
| Daniel Balaban, | 750 | 167 | $125,250 |
| Holly Boyer | 750 | 442.3 | $331,725 |
| Shea Murphy | 550 | 290.6 | $159,830 |
| Jeremy Jass | 400 | 787.9 | $315,160 |
| Vanessa Loftus-Brewer | 350 | 56.4 | $19,740 |
| Steffi Jose | 300 | 20.7 | $6,210 |
| Joseph Persoff | 275 | 25.6 | $7,040 |
| | | LODESTAR TOTAL: | **$1,044,055** |

Lastly, Plaintiff notes that in addition to the attorney's fees derived from legal work performed in preparing and litigating this case to trial, Plaintiff is entitled to attorneys fees for their time spent establishing their right to attorneys' fees in the amount requested. See *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); see also *Hernandez v. Kalinowski,* 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988);

14

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

Hernandez v. George, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."). Plaintiff is also entitled to fees for time spent opposing any post-trial motions by Defendants.  At the time of filing the instant motion, Defendant the County of Orange has filed a Rule 50(b) motion, with Plaintiff's opposition due in the next week.  Plaintiff's counsel will include in her reply brief to this motion, the compilation of the total hours associated with the instant motion, including a time estimate regarding preparation for and appearance at oral argument, as well as the time spent on opposing any and all post-trial motions, including Defendant's Rule 50(b) motion.

### D.   LODESTAR MULTIPLIER.

As noted above, the lodestar figure is *presumptively reasonable*. See *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) ("We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]"); *Gonzalez,* 729 F.3d at 1202 ("The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988."). However, "in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), that have not been subsumed in the lodestar calculation." *Camacho,* 523 F.3d at 982. Those factors to be considered in making any adjustment to the presumptively reasonable lodestar include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the

15

professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. See also *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 n. 11 (9th Cir.2012) (quoting *Morales v. City of San Rafael,* 96 F.3d 359, 363–64 n. 8 (9th Cir.1996); *Ballen,* 466 F.3d at 746 ("After making that computation, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors.").

As recognized by the Supreme Court, while the justification for a multiplier cannot include the same factors considered in the initial determination of the lodestar figure, an award of fees may be adjusted upward by a multiplier where, for example, the lodestar figure does not "adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Perdue v. Kenny A. ex rel Winn,* 559 U.S. 542, 554-555 (2010) ("[T]here is strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified."); see also *Kelly v. Wengler,* 822 F.3d 1085, 1093, 1102-1105 (9th Cir. 2016) (citing *Perdue* and the superior attorney performance justification for a fee enhancement, the Ninth Circuit affirmed a multiplier of 2.0 and 1.3 to the fees requested by the two attorneys respectively that successfully litigated the action).

*Kelly* is instructive. There, the Ninth Circuit, affirmed a multiplier of 2.0 and 1.3 to the fees requested on the grounds that the "superior performance" of the attorneys and the "need to attract competent counsel," factors not subsumed in the lodestar figure, justified the enhancement of fees. *Kelly,* 822 F.3d 1102-1105. With respect to the superior performance, the Ninth Circuit explained: "In *Perdue*, the Supreme Court held, although the lodestar figure typically subsumes 'the novelty and complexity of a case' and 'the quality of an attorney's performance,' a court may enhance the lodestar in 'rare' and 'exceptional' circumstances when the

16

lodestar figure does not adequately represent counsel's 'superior performance and commitment of resources.' 559 U.S. at 553-54, 130 S.Ct. 1662 (citation omitted)." Id. at 1102. The Ninth Circuit explained that in "civil rights cases, a court may enhance the lodestar figure if plaintiffs counsel demonstrates the value of her services **exceeds** *what the court determines to be the prevailing market rate for otherwise comparable attorneys*." *Id.* (emphasis added).

Highlighting the district court's finding that the plaintiffs counsel provided "'extraordinary performance yielding extraordinary results," and that "the quality of the work that produced these results [was] underrepresented in the hourly fee," the Ninth Circuit held 'The district court's justification for enhancing the lodestar figure was supported by specific evidence in the record. The court's statement that Plaintiffs' counsel labored 'under extreme time pressure and with very limited resources' was, if anything, an understatement," nothing that counsel had less than a month to conduct discovery, review thousands of pages of documents, and engaged in "extensive motions practice, writing numerous pre-trial briefs" and yet despite such time constrains, "Plaintiffs' counsel uncovered substantial evidence of noncompliance with the settlement agreement" supporting a verdict in favor of their clients. *Id.* at 1102-1104.

Similar to *Kelly*, the lodestar figure arrived at here does not adequately reflect the true market value of the services rendered in this case. Indeed, the attorneys with the most hours in this case, Mr. Jass, Ms. Boyer, Mr. Murphy and Mr. Balaban, are relatively young attorneys (less than 20 years experience) and yet expertly tried this case under similar, although less demanding, time constraints as in *Kelly*. Indeed, after providing the County with multiple time extensions for discovery, the County produced not a single document in response to numerous discovery requests, forcing Plaintiff to compel such documents which were "dumped" on Plaintiffs counsel just over a month before trial. Further, and as detailed in the declaration of Mr. Balaban, the County unnecessarily created work and obstacles during the

17

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

litigation by designating almost all of the evidence as confidential and refusing to
engage in any settlement discussions or even stipulations as to facts upon which
should have been undisputed at trial. Plaintiff engaged in extensive briefing before
the Court, and within tight time-lines, all the while preparing for trial.

Thus, just as in *Kelly*, the prevailing market rate for Mr. Jass, Ms. Boyer, Mr.
Murphy and Mr. Balaban, given the respective years of experience, fails to
appreciate the superior skill applied by these attorneys in this litigation and the
meaningful and beneficial result obtained for the community as a result of this case.
On this latter point, the Ninth Circuit's position in *Kelly* that the 2.0 and 1.3
enhancement was further justified in light of the court's finding that "the limited
fees available in prisoner civil rights cases, without enhancement, are insufficient
to induce private attorneys in Idaho to accept cases, such as this one, seeking
declaratory and injunctive relief' is also relevant to the applicability of a multiplier
here as, given the difficulty of providing *Monell* claims, an award of fees that does
meaningfully compensate the attorneys will fail to attract the most competent of
counsel. See *Kelly*, at 1104-1105. While public entities such as police departments
provide tremendous benefit to the community, such powerful institutions can also
wield extraordinary harm. Claims such as the instant one hold public entities
accountable for their unlawful policies.  Section 1988, and the loadstar multipliers
its authorizes, ensures that competent counsel of the highest quality will chose to
fight these important cases

In light of such considerations, factors not already considered in the lodestar
figure of $1,044,055, Plaintiff requests a multiplier of 1.0, bringing the total fees
award to $2,088,110.  See also *Moore v. Brunner,* 2010 WL 317017, at *3 (S.D.
Ohio 2010) ("Due to the exceptional results obtained in these cases, the Court finds
that a multiplier of 1.25 is appropriate. See *Blum v. Stenson*, 465 U.S. 886, 901, 104
S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("in some cases of exceptional success an
enhanced award may be justified") (quoting *Hensley v. Eckerhart*, 461 U.S. 424,

18

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).”); *Gonzales v. City of San Jose*, 2016 WL 3011791, at *8-9 (N.D. Cal. 2016) (“The Court agrees with Plaintiff that the case was factually complex. Plaintiff asserted constitutional violations in the context of an extensive police operation to investigate an alleged gang murder in which Plaintiffs son was the chief suspect. The number of officers on the scene when the alleged misconduct occurred was extraordinary, necessitating complicated discovery that was only made more difficult by the obstacles City threw in Plaintiffs way. The Court also agrees with Plaintiff that the contingency-fee arrangement justifies a multiplier, as does the fact that this was not an attractive case for attorneys to take. At the same time, the legal issues involved should have been relatively standard for lawyers of Plaintiffs counsel's experience and expertise. . . . Having granted Plaintiffs counsel's requested fees and hours nearly in full, the Court finds that a multiplier of 1.1 is appropriate on balance.”); *Balia v. Idaho State Board of Correction*, 2016 WL 6762651 (D. Idaho 2016) (awarding multipliers similar to those in Kelly due to the attorneys' superior performance and the need to attract competent counsel); *Cole v. City of Memphis*, Tenn., 2015 WL 5076974, at *9 (W.D. Tenn. 2015) (In a civil rights class action where fees were requested under Section 1988, the court held that in light of the results obtained, a 1.15 multiplier was warranted; “In light of the injunctive relief prohibiting the Beale Street Sweep and requiring additional training of police officers to be more aware of an individual's constitutional rights, the results achieved by Plaintiffs9 counsel go beyond the interests of the parties in the instant case. For these reasons, the Court finds it appropriate to award Plaintiffs' counsel a 15% enhancement (1.15 multiplier).”).

Therefore, a 1.0 enhancement is justified in this case.

/ / /

/ / /

/ / /

19

### E. PLAINTIFF IS FURTHER ENTITLED TO HER REASONABLE OUT-OF-POCKET LITIGATION COSTS AS RECOVERABLE UNDER 42 U.S.C. § 1988.

Further, it is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as "costs" under 28 U.S.C. § 1920. *Trustees of Const Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006). Therefore, Plaintiff is entitled to recover for reasonable out-pocket-expenses incurred in this litigation. These are expenses that a client would normally pay but which were not taxed as costs; they are, therefore, compensable under 42 U.S.C. § 1988.

Plaintiff's out-of-pocket expenses included the cost of retaining expert witness, Mr. Jeffrey Noble concerning the practices and policies of the County. Plaintiff incurred expert witness expenses of $20,428.75.  See Balaban Decl. Ex. F. Accordingly, Plaintiff respectfully requests an award of expenses in the amount of $20,428.75.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorney's fees in the amount of $2,088,110 (lodestar figure of $1,044,055, with a 1.0 multiplier added to that sum).  Plaintiff also requests that the Court award expenses in the amount of $20,428.75.  Finally, Plaintiff requests that the Court award him attorney's fees for work performed in the litigation of the instant motion for attorney fees, including after these papers are filed, as will be stated in the reply papers.

Dated:  August 23, 2017                    ESNER, CHANG & BOYER


                                       ___/s/ Holly N. Boyer_____
                                       Holly N. Boyer, Esq.
                                       *Attorneys for Plaintiff,*
                                       *Alexa Curtin*

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**