1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANA ALDEN FOX, SB# 119761
2    E-Mail: Dana.Fox@lewisbrisbois.com
DAWN M. FLORES-OSTER, SB# 155722
3    E-Mail: Dawn.Flores-Oster@lewisbrisbois.com
BARRY HASSENBERG, SB# 71136
4    E-Mail: Barry.Hassenberg@lewisbrisbois.com
633 West 5th Street, Suite 4000
5  Los Angeles, California 90071
Telephone: 213.250.1800
6  Facsimile: 213.250.7900

7  Attorneys for Defendant COUNTY OF ORANGE

8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  ALEXA CURTIN,

       Plaintiff,

13

14     vs.

15  COUNTY OF ORANGE; and DOES 1 through 50,

16         Defendants.

17

18

19

20

21

22

23

24

| | |
|---|---|
| CASE NO. 8:16-cv-00591-SVW-PLA | The Hon. Stephen V. Wilson |

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

**[Filed concurrently with Opposition to Motion for Attorney's Fees; Declaration of Barry Hassenberg; Objections to Declarations of Attorneys R. Brown Greene, Holly N. Boyer, Jeremy D. Jass, Daniel K. Balaban and Gerald G. Knapton; [Proposed] Order]**

**DATE: September 25, 2017**
**TIME:  1:30 p.m.**
**DEPT: Courtroom 10A**

25      I, JAMES P. SCHRATZ, hereby declare:

26      1.    I am an attorney at law licensed to practice in the State of California,

27  and have been so licensed since 1976. I received my law degree from the University

28

4828-9046-4334.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

of San Francisco School of Law in June 1976, where I was the Editor-in-Chief of *The Law Review*. In September 1976, I joined the law firm of Heller, Ehrman, White & McAuliffe, where I worked as an associate in its litigation department.

2.      In March 1978 I left Heller, Ehrman, White & McAuliffe and joined a smaller firm until August 1980, when I joined Fireman's Fund Insurance Company in San Francisco, California, in its General Counsel's Office. My responsibilities included representing Fireman's Fund as attorney of record in various litigation matters throughout the country. In addition, I supervised outside counsel throughout the country on various types of cases, including many complex civil litigation cases.

3.      In July 1990 I was promoted to Vice President Major Claims, where my duties were expanded to include responsibility for any case throughout the world that had potential exposure of $3 million or more, and responsibility for supervising approximately 100 adjusters.

4.      On January 1, 1994, I left Fireman's Fund to establish my own litigation management and consulting firm. I am the principal of Jim Schratz and Associates, a firm that conducts legal fee audits of various law firms throughout the country. Over the past twenty –three years, I have personally supervised or conducted approximately 2,000 legal fee audits throughout the country on behalf of both clients and law firms, including governmental agencies, corporations, and private individuals.

5.      Approximately 95% of these audits have involved plaintiff's fee requests in fee-shifting cases, the vast majority of which are either employment or civil rights cases. Concerning the latter I estimate that we have audited hundreds of fee applications in civil rights cases, most of which were located in California but have also audited fees applications in other jurisdictions. Therefore we are very familiar with concepts such as *Monell* liability, excessive police force, etc. In addition, the methodology used by most legal fee auditors is not dependent on the type of case or whether we have been retained by plaintiff or defendant. In that role,

4828-9046-4334.1

2

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  I have performed legal fee audits of various law firms on behalf of the California

2  Department of Justice, the City and County of San Francisco, the City of Huntington

3  Beach, the Sonoma County Sheriff's Office, and the Orange County Sheriff's

4  Office. The amount of the fee requests audited ranges from a low of a few hundred

5  thousand dollars to approximately $60 million. We do not categorize the 2,000

6  audits by the type of case but based on a brief review of the cases I believe the

7  following is a partial list of civil rights cases where we have been retained. It should

8  be noted that not all these civil rights cases involve  excessive force or *Monell*

9  liability but do allege violations of various civil rights:

10  - *Madrid v. Gomez*, No. C-90-3094, United States District Court for the Northern District of California

11  - *Rios v. Rowland*, No. 330211, Superior Court of California, County of Sacramento,

13  - *Shiow Huey-Chang v. County of Santa Clara, et al.*, Santa Clara County Superior Court, Case No. 5:15-cv-02502-RMW

14  - *Brummet v. County of San Diego*, USDC SD CA, Case 12cv1428-BAS

15  - *Superior Court of The State of California, County of Sacramento, Kathleen    Carroll, Plaintiff, v. State of California, Acting By And Through The California Commission on Teacher Credentialing; Dale Janssen, In His Individual Capacity; Mary Armstrong, In Her Individual Capacity; Lee Pope, In His Individual Capacity; Christa Hill, In Her Individual Capacity; Ani Kindall, In Her Individual Capacity; and DOES 1 Through 10, Inclusive, Defendants.* Case No. 34-2012-00135527-CU-OE-GDS

20  - *Superior Court of The State of California, County of San Diego, North County Division, Delane Hurley, Plaintiff, v. California Department Of Parks And Recreation, Leda Seals and Does One Through Fifty, inclusive, Defendants.* Case No. 37-2013-00050757-CU-OE-NC (BGS)

22  - *Camarillo (Gonzalez) v. City of Maywood*, USDC CD CA, Case CV07-346-ODW (SHx)

24  - *Mann v County of San Diego*, USDC SD CA, Case 11CV0708 GPC (BGS)

25  - *Steffey v Swanson*, USDC ND Ohio, Case 5:07-CV-03226

26  6.    In 1999, I was appointed by the District Court for the Northern Mariana

27

28  Islands to audit approximately $22 million in legal fees in *In re the Estate of Larry*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1                                    3
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

*Lee Hillblom*, one of the founders of DHL Express, whose estate was valued at approximately $1 billion. I was also retained by the United States Department of Justice to conduct an audit of a fee request in a nationwide class action lawsuit against the Immigration and Naturalization Service. I have served as an arbitrator for the Sonoma County Bar Association and the State Bar of California in their mandatory fee arbitration programs.

7.     In January 2010, I was retained by investor Carl Icahn to serve as special litigation counsel to review approximately $60 million in legal fees in the *In re Tropicana Entertainment, LLC, et al*, Case No. 08-10856 (KJC) ("*Tropicana*") in the United States Bankruptcy Court for the District of Delaware.

8.     In February 2010, in *Department of Fair Employment and Housing v. United Dominion Realty* (Case Nos. 07CC12067, 02CC12069) the court accepted our audit findings stating,

> In awarding fees in these amounts, the court has fully accepted the declaration of James P. Schratz in opposition to the motion, including all of his recommended reductions. The court finds his qualifications to be impressive. Likewise his reasoning as to why the fees sought are excessive is persuasive.

9.     In April 2010, I was again retained by Mr. Icahn to serve as special litigation counsel to review an additional $6 million in legal fees in the related *In re Adamar of New Jersey, Inc. and Manchester Mall, Inc.*, Case No. 09-20711 and 09-20716 in the United States Bankruptcy Court for the District of New Jersey.

10.     I have qualified as an expert witness in numerous state courts, including San Francisco Superior Court, Alameda Superior Court, Sacramento Superior Court, Los Angeles Superior Court, Orange County Superior Court and Sonoma County Superior Court, District Court in Corpus Christi, Texas, Seattle Washington and in Federal District Court in San Francisco, California, Philadelphia and Pittsburgh, Pennsylvania, Detroit, Michigan, and Tulsa, Oklahoma.

11.     In the case of *Madrid v. Gomez*, No. C-90-3094, United States District Court for the Northern District of California, I was retained by the California

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

4

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  Department of Justice to audit a fee request of $8.3 million in connection with a

2  prisoners' civil rights case at Pelican Bay State Prison. The audit disclosed a number

3  of billing concerns and the audit report was submitted to Judge King, the settlement

4  judge. The case resulted in a negotiated settlement of $4.25 million, or a reduction

5  of approximately 50 percent. A copy of an article from *The Recorder* dated

6  September 26, 1995, describing the settlement is attached as Exhibit 1.

7       12.    In *Rios v. Rowland*, No. 330211, Superior Court of California, County

8  of Sacramento, I was retained to audit a fee request of $1.5 million. The audit

9  disallowed a significant amount of the fees requested. The court upheld the audit

10  results, and reduced the fee request to approximately $227,000.

11       13.    In *CVB Corporation v. John Cavallucci*, No. 156505, Superior Court of

12  California, County of Marin, I was retained to audit a fee request of approximately

13  $2 million pursuant to a contractual provision. The audit uncovered a number of

14  billing abuses, and the court disallowed approximately 50 percent of the fee request.

15       14.    In *Aguilar v. Avis Rent-A-Car System*, No. 948597, Superior Court of

16  California, County of San Francisco, I was retained to audit a fee request of

17  approximately $1.3 million. The audit disclosed a number of problem areas and

18  disallowed a significant amount. The court followed the audit findings and reduced

19  the request by approximately 50 percent, to $650,000.

20       15.    In *McCauley v. BFC Direct Mailing*, No. 5711562, Superior Court of

21  California, County of Orange, the plaintiff alleged violations of campaign election

22  laws and sought attorneys' fees of $1.1 million. The defendant, Howard Jarvis Tax

23  Reform Movement, hired this office to conduct a legal fee audit, and we disallowed

24  approximately 50 percent of the fees. The court followed the audit findings and

25  awarded approximately $525,000 of the $1.1 million requested.

26       16.    In *Florida Asset Financing Corp. v. Borton, Petrini & Conron*, United

27  States District Court, Central District of California, Southern Division (Santa Ana),

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  Case No. 8:96 cv 01144 AHS-MLG, we were retained by a private client to audit a

2  fee request of $600,000. Based on the audit report, the court awarded $80,000.

3      17.    I conducted an audit of plaintiff's motion for attorneys' fees in *Adam*

4  *v. Norton,* Northern District of California, Case No. C-98-2094 CW, a case in which

5  plaintiff sought total fees in the sum of $1,726,312.92. The Special Master

6  appointed by Judge Claudia Wilken to adjudicate the fee petition cited my

7  declaration and recommended a total award of only $434,581.95 in attorneys' fees,

8  less than 25 percent of the amount originally sought. The Special Master stated, "I

9  believe Mr. Schratz' expert testimony meets the standard. Schratz's testimony is

10  relevant, in that Schratz has provided a useful breakdown of the time spent by

11  Plaintiff's attorneys, and reliable, in that Schratz has accurately summarized the

12  time and expenses claimed by Plaintiff's attorneys." It must be stated the Special

13  Master did not follow all of the audit recommendations. However, the Special

14  Master did recommend reducing the fee request by approximately 75 percent, from

15  $1,726,312.92 to $434,581.95, a result that Judge Claudia Wilken adopted in total in

16  July 2005.

17      18.    In January 2004, in *Frieders v. City of Glendale*, No. BC263271, Los

18  Angeles County Superior Court Judge David A. Workman adopted our findings

19  with respect to an audit of Plaintiff's fee request. As a result, Plaintiff's request of

20  $4.1 million in fees was reduced to $1.1 million. The court specifically referred to

21  our audit and reduced the fee request by approximately 75 percent. A copy of that

22  order is attached as Exhibit 2.

23      19.    In August 2005, in *Rose v. Lancaster School District,* No. BC 303843,

24  Superior Court of California, County of Los Angeles, the court adopted the

25  methodology, analysis, and recommendations contained in our audit, and reduced

26  plaintiff's request for fees by 58 percent from $498,000 to $209,000.

27      20.    In *North Pacifica, LLC v. City of Pacifica*, United States District Court,

28  Northern District of California, Case No. C-01-4823 EMC, plaintiff sought damages

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  at trial of approximately $16 million. I was retained by the defendant to audit

2  plaintiff's request for $2,046,759.16 in fees and costs. In awarding plaintiffs only

3  $453,810.75 in fees, Magistrate Judge Edward M. Chen cited my audit with

4  approval with respect to various billing issues. A copy of the order dated December

5  16, 2005 is attached as Exhibit 3, and states, in pertinent part:

> [B]ased on the information provided in the declaration, Mr. Schratz has
> demonstrated that he is qualified to opine about fee awards and that his
> methodology in evaluating the billing records of NP's attorneys in this
> case is reasonable and sufficiently reliable. For example, Mr. Schratz's
> approach to categorizing the nature of the work of the attorneys is
> reasonable and sufficiently reliable as is, overall, his approach to
> unblocking the block-billed time entries.

10  21.  In *Poland v. L.A. Boxing*, Orange County Superior Court, Case No. 30-

11  2009 0121184, plaintiff filed a lawsuit alleging eight causes of action against the

12  defendants. Based upon their expert's testimony at trial, plaintiff had suffered

13  $4,959,023 to $6,423,566 in damages. The jury found in favor of the plaintiff on

14  two causes of action and on the statutory failure to pay owed wages claim awarded

15  $2,800. This was the only cause of action on which they were successful that

16  contained a statutory attorneys' fee provision. Plaintiff's counsel submitted a motion

17  for attorneys' fees. They submitted bills totaling $709,242.50, and initially sought a

18  1/6 allocation (because two causes of action had been dismissed just prior to trial),

19  or $118,207.08 in fees. I was retained by the defendant to audit plaintiff's request.

20  Based upon deficiencies in the billing records such as block billing, redactions,

21  excessive time to create deposition summaries, and excessive internal conferencing,

22  and allocation issues, I recommended that plaintiff's counsel only be awarded fees

23  in the range of $25,000 to $30,000. In a subsequent supplemental declaration,

24  plaintiff increased the amount of attorneys' fees sought to approximately $350,000.

25  In July 2011, the Court found that plaintiff should only be awarded $30,000 – which

26  is the amount that I had recommended.

27  22.  In *Shiow Huey-Chang v. County of Santa Clara, et al.*, Santa Clara

28  County Superior Court, Case No. 5:15-cv-02502-RMW, plaintiff filed a lawsuit

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   alleging excessive force by police. Plaintiff prevailed at jury trial and was awarded

2   $40,000.00, although certain parts of the verdict were overturned by a defense post-

3   trial motion for judgment as a matter of law. Plaintiff was deemed the prevailing

4   party for purposes of attorneys' fees and defendants did not dispute that finding for

5   purposes of the fee motion. Plaintiff sought $970,063.74 in attorneys' fees and costs.

6   I was retained by the defendant to audit plaintiff's request. I recommended that the

7   billing rates being requested be reduced and that fees related to excessive staffing

8   and time billed for certain aspects of the case be adjusted. I recommended that the

9   fee request should be reduced to $236,860.38 plus costs of $27,575.72 for a total of

10  $264,436.10. The court's reasoning and deductions tracked many of those set forth

11  in my declaration and it ruled that plaintiff's fee award, including costs, should be

12  reduced to $350,000.00.

13      23.     In *Carroll v. State of California, et al.,* Sacramento County Superior

14  Court Case No. 34-2012-00135527-CU-OE-GDS, plaintiff was dismissed from her

15  employment as a Staff Attorney with the California Commission on Teacher

16  Credentialing. She filed suit alleging the termination was a wrongful retaliation for

17  whistleblowing. Plaintiff prevailed at trial and sought attorneys' fees of

18  $1,542,397.75, plus a 2.0 multiplier for a total of $3,084,795.50. I recommended

19  that the billing rates being requested be reduced and that fees related to transient

20  billers, unsuccessful claims, clerical billing, and duplicative billing be adjusted. I

21  recommended that the fee request should be reduced to $323,720.37. The court

22  awarded $638,484 or approximately 21 percent of the fees requested after reducing

23  the requested billing rates, reducing the time billed for certain tasks, and reducing

24  the requested multiplier.

25      24.     Of course, not all courts have accepted the audit findings: see, for

26  example, *Oberfelder v. City of Petaluma,* United States Distinct Court, Northern

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

8

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

District of California, Case No. 3:98-cv-01470-MHP; *Estrada v. FedEx,* Superior Court of California, County of Los Angeles, Case No. BC210130[1]; *Millar v. BART,* Superior Court of California, County of Alameda, Case No. C830013-9; *Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585 SI; *Gober v. Ralph's Grocery Company,* Superior Court of California, County of San Diego, North County Judicial District, Case No. N72142; *Miller v. Vicorp,* United States District Court, Northern District of California, San Jose Division, Case No. CV-03-00777-RMW; *Pop, et al. v. Pasadena Area Community College District*, Superior Court of California, County of Los Angeles – Central District, Case No. BC481207.

25.    However, even in the cases in which the Court has not accepted all of the audit findings, the court has often reduced the fee application by a significant amount: see, e.g., *Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585SI.

26.    An audit does not always uncover overbilling. On numerous occasions, I have been retained by a client to audit a legal bill and have informed the client that there is little, if any, overbilling and that the client should pay most, if not all, of the invoice.

27.    For example, previously I have been retained by the California Department of Insurance to audit a number of law firms in connection with numerous matters, including the insolvency of Golden Eagle Insurance Company, which was located in San Diego, California (and was declared insolvent by the California Insurance Commissioner). On a number of these audits, I found that most, if not all, of the fees involved were reasonable and necessary, and recommended to the client that it pay most, if not all, of the fees audited.

---

[1] The Court of Appeal reversed the trial court's award of attorneys' fees using a 2.0 multiplier as excessive, and remanded for recalculation of an appropriate fee award.

4828-9046-4334.1

9

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

28.    As a standard practice, I make an offer to all of my clients to review the bills free of charge and arrive at a preliminary opinion as to whether an audit would uncover any overbilling, so as to make an audit cost efficient. I estimate that in approximately 10 to 15 percent of the requests I receive, I suggest to the client that an audit is not cost justified.

29.    On numerous occasions, I have been retained by a law firm engaged in litigation with a client to conduct an audit, and if the audit discloses no overbilling I testify as an expert witness on behalf of the law firm. The following is a partial list of the law firms that I have audited where the audit disclosed that most, if not all of the fees, were reasonable.

> Sidley & Austin
> Manatt, Phelps & Phillips
> Mower, Koeller, Nebeker, Carlson & Halluck
> Lanahan & Reilley
> Lurie & Zepeda
> Banning, Micklow, Bull & Lopez
> Robles & Castles
> Thelen Reid & Priest
> Stoel Rives
> Robinson & Cole
> LeBoeuf, Lamb, Greene & MacRae,
> Husch & Eppenberger
> Parson, Behle & Latimer
> Christiansen Miller Fink Jacobs Glaser Weil & Shapiro, LLP
> Berding & Weil
> Meredith Weinstein & Numbers
> Spector Law Offices

30.    I have published approximately 35 articles, many of which involve the control of legal fees and abuses in the billing practices of attorneys. Over the past several years, I have given numerous presentations on legal auditing and controlling legal costs throughout the United States, Canada, and England. I have made a number of presentations to various Bar Associations, insurance industry groups, and other organizations, including the American Bar Association, on how to assist the court in analyzing fee requests. I wrote an article on employing legal fee auditors in fee-shifting cases, which was published in *Trial Diplomacy Journal.* Most recently, I wrote an article, "How to Win a Fee Petition," which was published in a number of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1                                     10
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  publications including *The Rhode Island Bar Journal*, *The Practical Litigator*, *The*

2  *Federal Lawyer* and Business Laws, Inc.'s *Law Department Management Adviser*.

3  Among other points, this article listed various "red flags" or questionable billing

4  practices that should be avoided in submitting a fee application.

5      31.    Attached hereto as Exhibit 4 is a true and correct copy of my

6  Curriculum Vitae, which lists my work history, my publications, and my general

7  experience.

8                          **SCOPE OF REVIEW**

9      32.    In or around August 2017 I was retained by Dawn M. Flores-Oster,

10  Esq. of Lewis Brisbois Bisgaard & Smith LLP, attorneys for the County of Orange

11  ("County of Orange"), to audit the claim for attorney's fees by Holly N. Boyer, Esq.

12  of Esner, Chang & Boyer, Daniel K. Balaban, Esq. of Balaban & Spielberger, LLP,

13  Jeremy D. Jass, Esq. of Jass Law, and R. Browne Green, Esq. of Green Broillet &

14  Wheeler, LLP (collectively, "Plaintiff's Attorneys") in this case.

15      33.    Plaintiff's Attorneys filed the instant motion ("Motion for Attorneys'

16  Fees") on or around August 22, 2017.

17      34.    As part of the audit, I reviewed documents obtained from Pacer,

18  including, but not limited to all the pleadings, deposition transcripts, trial transcripts,

19  motions, and discovery. I strongly believe contrary to Mr. Knapton that in order to

20  give an opinion on the reasonableness of the fees the expert should review all the

21  pleadings, depositions, etc. or else the opinion lacks a proper foundation. I do not

22  understand how an expert can claim that over $1 million in fees is reasonable

23  without doing the due diligence of reviewing the entire file. For example, I do not

24  understand how an expert can say $1million in fees is reasonable when the expert

25  did not review all deposition and trial transcripts that clearly demonstrate there are

26  numerous instances of multiple attendances at those depositions and trial days.

27      35.    I am not being compensated based upon my "success" at reducing the

28  requested fees.

4828-9046-4334.1

11

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## AUDIT METHODOLOGY

36.     As part of the audit process, all of the billing time records were input into a computer database to allow for comprehensive searching and analysis. The computerized database permitted creation of summary reports of billing by categories of activities. To the best of my information and belief, all of these reports accurately reflect the information contained in the submitted billing records. Having the records in the computer database also allowed for accurate quantification of various other issues including, but not limited to, those discussed in this declaration.

## SCOPE OF AUDIT

37.     The starting point in any audit is to determine the lodestar, or the amount being requested. As noted above, I was provided with and reviewed all of the documents related to the Motion for Attorneys' Fees.

38.     The Notice of Motion states the total lodestar being requested is $1,044,055.00. (Notice of Motion, p. 2:14.) This is the same total requested in the MPA. (MPA, pp. 2:13; 3:19; 14:2, 19; 18:23; and 20:18.)

39.     The auditor's independent review of the billing records found that the total fees contained in the billing records match the requested lodestar.

## CASE HISTORY

40.     This lawsuit arises from unsubstantiated and unreliable allegations made by plaintiff Alexa Curtin regarding an incident plaintiff claims took place at approximately 1:30 a.m. on June 28, 2014, in Dana Point, California.

41.     Curtin, 25 years old, was visiting her estranged husband, Michael Devecchio, at Devecchio's apartment in Dana Point, California. After a night of drugs and alcohol consumption by Curtin and Devecchio, the two got into a fight that resulted in a call for service to the Orange County Sheriff's Department. Former Deputy Nicholas Caropino and Deputy Dwayne Chapple in one patrol car, and Deputies Christopher Eiben and Cameron Mathis in a second patrol car, responded to the scene. Curtin and Devecchio were separated, with Caropino and Deputy

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1                                    12
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  Chapple taking charge of Curtin. Neither Curtin nor Devecchio were arrested.

2  Caropino and Deputy Chapple transported Curtin to her car that was parked several

3  blocks away.  Curtin was not under arrest or being detained at the time.

4      42.    Curtin claims she was assaulted by Caropino when he returned to

5  Curtin's car. After the alleged assault took place, Curtin claims she waited in her car

6  until dawn, and then drove to her grandmother's home to sleep.

7      43.    In late 2015, Curtin was arrested. She consulted with a criminal

8  attorney and told that attorney about the alleged rape. Curtin was referred by that

9  attorney to one of her current attorneys, Jeremy Jass.

10     44.    On March 30, 2016, Mr. Jass filed a Complaint against the County and

11 "Deputy Epson," which contained numerous errors, including: the date of incident

12 (the date of incident was alleged to be April 2014, but was later changed to June

13 2014), the alleged facts of the incident (Curtin first claimed she was pulled over for

14 a traffic violation, the allegation was later dropped), and the name of the involved

15 deputy ("Epson" dropped in favor of Caropino). (Jass also mis-numbered the causes

16 of action and named Stanley Sniff, the Riverside Sheriff, as a defendant in one of

17 the causes of action.)

18     45.    On March 3, 2017, Curtin took the default of Nicholas Caropino.

19 Subsequently, on March 22, 2017, Caropino filed a Motion to have the default set

20 aside, to allow his answer to be filed, and for a trial continuance. Plaintiff's counsel

21 filed a Notice of Non-Opposition to Caropino's Motions.

22     46.    The parties entered into a Protective Order on January 23, 2017, and an

23 order Dismissing Claims and Excluding Evidence of Specific Issues or Damages

24 was signed by the Court on February 10, 2017. Relief from the Stipulation was

25 thereafter sought, and on July 11, 2017, the Court denied said relief.

26     47.    On April 11, 2017, the Court granted the Motion for trial continuance

27 and continued the trial to August 1, 2017. Caropino was represented by attorney

28 Thomas Chapin.

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

48.    Curtin was represented by Jeremy Jass, a solo practitioner in Long Beach California. On April 4, 2017, Curtin associated in as counsel three attorneys, Dan Balaban, Holly Boyer, and Phillip Cohen. Balaban is a personal injury attorney. Boyer is an appellate lawyer and Cohen is primarily a criminal defense attorney. On July 7, 2017, Browne Greene associated into the action. On July 18, 2017, Mr. Shea Murphy associated into the action.

49.    On April 12, 2017, Nicholas Caropino privately retained attorney Thomas Chapin.

50.    On March 30, 2016, Plaintiff Alexa Curtin filed a Complaint against the County of Orange, "Deputy Epson," and Does 1-50. While the caption page of the Complaint sets forth two claims for relief, namely, Violation of Civil Rights, (42 U.S.C. section 1983), and *Monell* Claim (42 U.S.C. section 1983), the body of the Complaint sets forth three different claims, including: (1) violation of Civil Rights (Unreasonable Seizure), against Defendants Does 1-25; (2) a substantive due process claim against Defendants Does 1-25; and (3) a "fourth" claim (a third claim appears to have been omitted), for unlawful custom and practice against the County, "Sniff" (sic), and Does 26 to 50. The Complaint contained a vague reference to "deliberate indifference to the civil rights of minority groups," although Curtin is not a member of a minority. It was additionally plead that "to the best of Plaintiff's recollection, Deputy Epson was the culprit involved in the April 2014 incident." Punitive damages were sought against the Deputy.

51.    A First Amended Complaint was filed on June 29, 2016, followed by a Second Amended Complaint ("SAC") filed on December 15, 2016. Notably, the SAC identified Caropino as a Defendant in the case and removed an allegation that appeared in the First Amended Complaint that suggested one of the Deputies initiated a traffic stop, causing Plaintiff to pull over.

52.    On July 3, 2017, plaintiff filed a Motion for Partial Summary Judgment in which she requested that the Court find that Caropino sexually assaulted Curtin,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  and that in doing so he violated her rights under the Fourth and Fourteenth

2  Amendments, which the Court granted as to the County and Caropino on or around

3  August 1, 2017. The Court also issued an Order regarding its intent to move *sua*

4  *sponte* on the *Monell* claims asserted against the County, denying all of plaintiff's

5  claims under *Monell* except for a so-called tolling policy and whether that policy

6  was the moving force behind Curtin's assault, on August 1, 2017. As a result of

7  these orders, a number of the parties' motions *in limine* were rendered moot.

8      53.    Commencing on August 2, 2017, the Court held a brief jury trial where

9  the Court bifurcated *Monell* liability from damages. In his closing argument,

10  plaintiff's counsel requested $40 million, or one million dollars for each year of

11  plaintiff's expected remaining life. Judgment was entered on August 8, 2017.

12  Defendant thereafter filed a Rule 50(b) Motion, and plaintiff filed a Motion

13  requesting fees on August 22, 2017.

14      54.    There were very few discovery disputes, plaintiff only modestly

15  succeeding to obtain the requested relief.

16                 **STANDARD OF REVIEW**

17      55.    In conducting a legal fee audit, the auditor analyzes the invoices and

18  work product generated in light of one of two standards. The first standard is

19  contained in any retainer agreement between the law firm and client, or in billing

20  guidelines or any other instructions provided by the client to the law firm. Absent

21  such agreement, guidelines, or instructions, the auditor looks to established case law

22  for what are acceptable billing practices. To the extent there are instructions from

23  the client, State Bar opinions and case law may supplement the instructions.

24      56.    The Declaration of Holly N. Boyer states that this matter was taken on

25  a pure contingency basis. (Boyer Declaration, ¶ 6 at p. 3:2-25.)

26      57.    This typically means the plaintiff pays nothing unless and until she

27  prevailed in the matter. In other words, if a court found that defendants had

28  prevailed, plaintiff would not be entitled to any attorneys' fees whatsoever. On the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  other hand, if a court found that plaintiff had prevailed, then they would be entitled

2  to seek to recover their reasonable fees from the defendants.

3      58.    This type of agreement appears to reward liberal, if not actual excessive

4  billing by the attorneys and other legal professionals: That is, the more they billed,

5  the more fees they could claim under the fee petition, and the more the attorneys

6  stand to recover.

7      59.    Furthermore, in the auditor's experience, the lack of any incentive to

8  conserve fees can lead to lax oversight of billing practices, particularly when any

9  billing overages accrue to the benefit of the ones who are billing. This lack of

10  incentive to control fees is especially troublesome in light of the magnitude of the

11  fees requested in this case and the fact that a single public defendant, an adversary

12  of the plaintiff in this case, is being asked to pay the extraordinary fees in

13  prosecuting the case.

14      60.    The auditor approaches all legal fee audits with the assumption that

15  most attorneys do not intentionally inflate their bills, and that there must be a

16  "preponderance of the evidence" to support an audit finding that a certain amount of

17  fees should be disallowed. In this regard, the auditor also believes that attorneys

18  should be given the benefit of the doubt where possible overbilling may have

19  occurred. On the other hand, in those cases where it is difficult to determine the

20  nature and extent of the possible overbilling due to the firms' questionable billing

21  practices, such as block billing or vague entries, it is incumbent upon the law firms

22  to justify their fees.

23                          **BILLING RECORDS**

24      61.    The auditor views a law firm's billing statement as a representation by

25  the law firm that a particular task was performed on a particular day, by a particular

26  timekeeper, and that the timekeeper spent the amount of time stated on the invoice.

27  Billing format or billing practice irregularities that bring into question the

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

16

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  credibility, integrity or reliability of a law firm's billing records are not only not

2  acceptable, they are potentially grounds for a significant disallowance of fees.

3      62.    Plaintiff's Attorneys submitted the billing records related to the case as

4  exhibits to declarations. The billing records generally contained the date the task or

5  tasks were performed, the amount of time billed on those tasks, and a description of

6  the tasks.

7      63.    A significant issue with the billing records is that they have not

8  submitted sworn declarations from everyone in the firms attesting to their claimed

9  work hours in this case. While there are declarations from attorneys Balaban, Boyer,

10  Jass, and Greene, attorneys Jose, Loftus, Murphy, and Persoff did not submit

11  declarations. Mr. Balaban's declaration submits Ms. Loftus' hours. Ms. Boyer's

12  declaration submits Ms. Jose's, Mr. Murphy's, and Mr. Persoff's hours. The time of

13  attorneys Jose, Loftus, Murphy, and Persoff total 393.30 hours, which is equal to

14  20.9 percent of the total hours claimed in the fee motion and 18.5 percent of the total

15  fees claimed.

16      64.    At best, Mr. Balaban's declaration is hearsay as to Ms. Loftus' hours

17  and Ms. Boyer's declaration is hearsay as to Ms. Jose's, Mr. Murphy's, and Mr.

18  Persoff's hours. In *Muniz v. UPS* (9th Cir. 2013) 738 F.3d 214, 222, the court noted:

19  "Declarations in support of attorney fee awards should be based upon personal

20  knowledge. *Mardirossian & Assocs., Inc. v. Ersoff, 153 Cal. App. 4th 257, 62 Cal.*

21  *Rptr. 3d 665, 674-75 (Cal. Ct. App. 2007).*" In *Muniz*, the District Court had

22  accepted the declaration of the supervising attorney as to the time billed by the

23  paralegal in making its fee award. The 9th Circuit held that "[i]n the absence of a

24  more complete explanation from the district court regarding paralegal hours, we

25  cannot conclude that allowing hearsay as the sole justification for an award to Ms.

26  Jaffe [the paralegal] was harmless." *Muniz, supra*, 738 F.3d at 223. Here, there is no

27  justification for allowing an award of biller time for the four attorneys solely on the

28  basis of Mr. Balaban's and Ms. Boyer's hearsay statements.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

65.    This hearsay problem is compounded by the lack of evidence of contemporaneous records for some of the attorneys. There is little evidence presented as to how the time records were created let alone whether they are contemporaneous time records.

66.    Mr. Balaban states: "The work performed by each attorney in furtherance of this action was reasonable and necessary. All of the time was contemporaneously kept …." (Balaban Declaration, ¶ 19 at p. 6:24-25.) Presumably Mr. Balaban is only referring to the work he and Ms. Loftus performed in this case as he does not indicate that he is personally knowledgeable regarding the work and practices of the other law firms and attorneys in this case. That being the case, his declaration is once again hearsay as to Ms. Loftus' billing practice for the reasons discussed above.

67.    Mr. Greene states: "I have attempted to maintain contemporaneous time records reflecting the work activity and time spent on this case. The time spent in trial and hearings and any other non-contemporaneously recorded time has been reconstructed from the file and from my notes." (Greene Declaration, ¶ 14 at p. 5:25-28.)

68.    While California state courts typically do not require contemporaneous time records, all Federal courts, including those in California, do require such records. See, e.g., *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983). Furthermore, contemporaneous time records are the preferred practice. "[A]lthough not necessary, contemporaneous time records are strongly preferred. See *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (citing *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir. 1991))." *Muniz v. United Parcel Serv. Inc.* (N.D. Cal. 2011, August 23, 2011, p. 22.) A true and correct copy of this Order is attached hereto as Exhibit 5. See also *Webb v. Board of Educ. of Dyer County*, (1985) 105 S.Ct. 1923, 1926, fn. 6: "The time schedule submitted by the petitioner was a reconstruction of the hours his counsel

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 spent on the matter…. Contemporaneously recorded time sheets are the preferred

2 practice. See *Hensley v. Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 1943, 76

3 L.Ed.2d 40 (1983) (BURGER, C.J., concurring).”

4      69.    In addition, to the extent that reconstructed records are submitted, a

5 judge is not required to evaluate “reconstructed” time with the same credibility and

6 presumption of accuracy as contemporaneously-recorded time. *Horsford v. Board of*

7 *Trustees of California State University*, F051782 (Cal. App. 9/4/2008), fn 2: “This is

8 not to say that contemporaneous time records are required as part of every attorney

9 fee application; they are not. (See *Mardirossian & Associates, Inc. v. Ersoff* (2007)

10 153 Cal.App.4th 257, 270-272.) Still, the trial court is entitled to evaluate the

11 records that are submitted and is not required to treat all records as equally

12 informative or accurate. (See, e.g., *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th

13 at p. 1096, fn. 4.)” A true and correct copy of this opinion is attached as Exhibit 6.

14      70.    In summary, the billing records have problems with foundation. The

15 billing records for four attorneys are submitted on hearsay declarations. One

16 attorney claims contemporaneous billing, another attorney claims to have partially

17 attempted contemporaneous billing and partially reconstructed billing records, and

18 there is no indication as to how the billing records for the remaining six attorneys

19 were created.

20 **FINDINGS AND OPINIONS**

21 **A.   HOURLY RATES**

22      71.    I regularly have access to current law firm rates in conducting legal fee

23 audits and auditing law firms’ billing invoices. I also regularly review court

24 opinions on attorneys’ fee motions and requests and am familiar with what attorneys

25 in the United States District Court for the Central District of California are seeking

26 as hourly rates and what courts are awarding, including, but not limited to, firms

27 specializing in civil rights law. I also recently reviewed nearly 50 fee requests filed

28 within the previous few years in the United States District Court for the Central

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

19

District of California to survey what Southern California attorneys are seeking as hourly rates and what courts are awarding. Based on my experience in having conducted approximately 2,000 legal fee audits, my experience as an attorney and expert in legal fees over the past 40 years, and my review of the above-mentioned material, I have personal knowledge of hourly billing rates for attorneys in the United States District Court for the Central District of California market area. On that basis, it is my opinion that the billing rates being claimed by all of the attorneys in this case are unreasonable for the reasons set forth below and that for this reason that the rates should be adjusted.

72.    Mr. Balaban is requesting an hourly rate of $750:

22.    I believe a more than reasonable billing rate for my experience and skill level is $750.00 per hour. My experience is commensurate with that of a partner at any "bluechip" law firm and my hourly rate is necessarily on par with that of a senior partner at such a firm defending a discrimination lawsuit on behalf of a corporate client.

23. I am familiar with the attorneys' fees market throughout California, particularly as it pertains to complex matters and trial work. As previously described, my firm specializes in representing plaintiffs in complex disputes and, as primarily a plaintiffs' attorney, I am very familiar with the risk of litigation.

Balaban Declaration, ¶¶ 22-23.

73.    He has been an attorney since 2006, or 11 years. (Balaban Declaration, ¶ 6.) He is presently working at his own, small, law firm. (Balaban Declaration, ¶ 4.)

74.    Ms. Boyer is also requesting an hourly rate of $750:

7. Based on the difficulty of this case and the skill, experience and ability necessary to prevail on this case, I believe an hourly attorney fee rate for my services under the circumstances should be $750 per hour.

Boyer Declaration, ¶ 7.

75.    She has been an attorney since 2002, or 15 years. She is an appellate specialist working at her own small appellate firm. (Boyer Declaration, ¶ 6 at p. 3:21-22.)

76.    Mr. Greene is requesting an hourly rate of $875:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

16. I believe a more than reasonable billing rate for my experience and skill level is $875.00 per hour.

Greene Declaration, ¶ 16 at p. 6:5-6.

77.    He has been an attorney since 1961, or 56 years. He was retained to assist with the trial. (Greene Declaration, ¶ 12 at p. 5:14-15.) Although he states his involvement began in June 2017 (*Id.*), his first billing entry to this case is July 1, 2017.

78.    Mr. Jass is requesting an hourly rate of $400:

A reasonable fee for the work I performed on this case is $400 per billable hour.

Jass Declaration, ¶ 12 at p. 3:6-7.

79.    He has been an attorney since 2011, or six years. He works at his own small law firm. (Jass Declaration, ¶ 10 at p. 3:1-2.) He was the original attorney on this case. (Jass Declaration, ¶ 13.)

80.    Ms. Jose is requesting an hourly rate of $300:

I believe it would be appropriate to compensate Mr. [sic] Jose's work at $300 per hour.

Boyer Declaration, ¶ 17 at p. 6:20-21.

81.    She has been an attorney since 2014. (Boyer Declaration, ¶ 15.)

82.    Ms. Loftus-Brewer is requesting a rate of $350:

My [Mr. Balaban's] office's regular billable rate for her billable time is $350 per hour.

Balaban Declaration, ¶ 26 at p. 8:12-13.

83.    She has been an attorney since 2009.

84.    Mr. Murphy is requesting a rate of $550:

I believe it would be appropriate to compensate Mr. Murphy's work at $550 per hour.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Boyer Declaration, ¶ 13 at p. 6:1-2.

85.    Mr. Murphy has been an attorney since 2008. (Boyer Declaration, ¶ 10 at p. 5:1.)

86.    Mr. Persoff is requesting a rate of $275:

I believe it would be appropriate to compensate Mr. Persoff's work at $275 per hour.

Boyer Declaration, ¶ 22 at p. 7:9-10.

87.    The following is a summary of the timekeepers, their years of practicing law, and their requested rates, in alphabetical order:

| Timekeeper | Years of Practice | Requested Rate |
|---|---|---|
| Balaban | 11 | $750 |
| Boyer | 15 | $750 |
| Green | 56 | $875 |
| Jass | 6 | $400 |
| Jose | 3 | $300 |
| Loftus | 8 | $350 |
| Murphy | 9 | $550 |
| Persoff | 2 | $275 |

88. When this same data is sorted by year, inconsistencies appear:

| Timekeeper | Years of Practice | Requested Rate |
|---|---|---|
| Green | 56 | $875 |
| Boyer | 15 | $750 |
| Balaban | 11 | $750 |
| Murphy | 9 | $550 |
| Loftus | 8 | $350 |
| Jass | 6 | $400 |
| Jose | 3 | $300 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1
22
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

| Persoff | 2 | $275 |
|---------|---|------|

89.    Ms. Boyer and Mr. Balaban are requesting the same hourly rate, although Ms. Boyer has four additional years of law practice than Mr. Balaban.

90.    The requested hourly rate for Mr. Balaban, who has 11 years of experience, is $200 more than the requested hourly rate for Mr. Murphy, who has nine years of experience. This means plaintiff's attorneys are claiming a difference of $100 per hour per year.

91.    The requested hourly rate for Mr. Murphy, who has nine years of experience, is $200 more than the requested hourly rate for Ms. Loftus, who has eight years of experience, or a difference of $200 per hour per year.

92.    The requested hourly rate for Mr. Jass, who has six years of experience, is $50 more than that being requested for Ms. Loftus, who has eight years of experience.

93.    The requested hourly rate for Ms. Loftus, who has eight years of experience is only $50 more than the rate being requested for Mr. Jose, who has three years of experience.

94.    In addition to the inconsistencies in the requested hourly rates, there are other issues with the rates being requested by plaintiff's attorneys.

**1.    Not Usual and Customary Rates That Are Paid by Clients or Awarded by Courts.**

95.    There is no indication in any of the moving papers that the rates being sought here are their usual and customary rates *and that their clients routinely pay these rates* or that *courts have awarded these rates*.

96.    Although Mr. Balaban states that his firm has "taken multiple cases to trial" (Balaban Declaration, ¶ 4 at p. 2:12-13) and "recovered numerous 7 to 8 figure settlements" (Balaban Declaration, ¶ 4 at p. 2:15-16), he does not indicate that he has ever been awarded attorneys' fees in these cases, let alone attorneys' fees at the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  rate he is requesting here. In fact, he does not indicate *any* hourly rate he has ever

2  been awarded or paid. The only reference he makes to an award is a San Diego case

3  in which a three million dollar award was made for attorneys' fees, costs, and

4  expenses. (Balaban Declaration, ¶ 9.) We do not know what role he played in that

5  case, how many hours he billed in that case, how much he actually received (as

6  opposed to the attorneys as a group), and thus what his effective hourly rate was, nor

7  the year of that settlement.

8      97.    The same applies to his associate, Ms. Loftus. Although Mr. Balaban

9  states that his office's regular billing rate for Ms. Loftus is $350 per hour, he does

10  not indicate that anyone has ever paid this rate or that any court has awarded this

11  rate.

12      98.    Ms. Boyer makes no reference to amounts that client pay her. She only

13  refers to a 2014 case in which an award of three million dollars was made to her,

14  Mr. Balaban, and Mr. Green for attorneys' fees and costs. (Boyer Declaration, ¶ 7.)

15  There is no indication what she did in the case, how many hours she billed, what

16  hourly rate she requested in the case, or the effective hourly rate of the award to her.

17      99.    Ms. Boyer also makes no representations as to Ms. Jose's, Mr.

18  Murphy's, and Mr. Persoff's requested hourly rates other than her belief that they

19  are reasonable.

20      100.   Mr. Jass makes no reference to attorneys' fees that any client has paid

21  or any court has awarded to him.

22      101.   Despite Mr. Green's many years as an attorney, the only attorneys' fee

23  award he mentions in his declaration is the same three million dollar fee and cost

24  award that Mr. Balaban and Ms. Boyer mention in their declarations. (Green

25  Declaration, ¶ 11.) As with Mr. Balaban and Ms. Boyer, he fails to indicate how

26  much he requested in fees, how much he received, what work he did in the case, and

27  the effective hourly rate for that award.

28

4828-9046-4334.1

24

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

102.   "The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "[A] reasonable hourly rate ... is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895-96 n. 11, 104 S.Ct. 1541).

103.   The only one of the attorneys who states that they are familiar with rates is Mr. Balaban. (Balaban Declaration, ¶ 23.) However, he does not limit his familiarity to civil rights cases in the Central District of California, but to "the attorneys' fees market throughout California, particularly as it pertains to complex matters and trial work." (*Id.*) Despite this claimed familiarity with "the attorneys' fees market," he does not refer to even a single case or rate nor does he state that his requested rate is in line with rates for attorneys of similar experience and expertise working on similar types of cases in this district.

**2.    Insufficient Documentation of Reasonableness of Requested Rates.**

104.   The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Dang v. Cross* 422 F.3d 800, 814 (9th Cir. 2005).

105.   Plaintiff's Attorneys submitted declarations from two other attorneys, but those declarations do not address the issue of the reasonableness of the hourly rates being sought with any competent, foundational evidence. Therefore, there is no supporting evidence as to the reasonableness of the rates being sought.

106.   One of plaintiff's attorneys' fees experts, Gerald Knapton, opines that the hourly rates for Plaintiff's attorneys are reasonable. In this case, Mr. Knapton argues that the Court should apply the top 25% (the third quartile) of rates shown in the Real Rate Report to plaintiff's attorneys in order to justify higher hourly rates.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1                                25
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

(See Knapton Declaration, ¶ 40). However, in prior declarations, Mr. Knapton has recommended that the "mean" rate be applied when it supports his client's position as to "what other firms are actually charging in the Los Angeles area." (See Mr. Knapton's Declaration in *State Compensation Insurance Fund v. Kahn* attached hereto as Exhibit 7, ¶ 19). The mean rate is obviously lower than the top 25 percent of rates and he does not explain why he is stating a different opinion in this case.

107.    Further, in the instant case, plaintiff did not prevail on all of her claims and should not be awarded attorneys' fees for work related to those unsuccessful claims. In such a situation, the Court should allocate attorneys' fees based on hours billed for the successful claims *vis à vis* the unsuccessful claims. By way of example, where a plaintiff brings multiple claims and is only partially successful, district courts must apply a two-part analysis to determine which claims are compensable. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (1986). First, the court asks whether the unsuccessful claims were related to the plaintiff's successful claims. *Id*. Related claims will involve a same common core of facts or be based on related legal theories. *Id*. If the successful and unsuccessful claims are unrelated, the fee may not include time expended on the unsuccessful claims. *Id*. (citing *Hensley v. Eckerhart* (1983) 461 U.S. 424 at pp. 434-35). However, if the unsuccessful and successful claims are related, the court must then evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id*. (citing *Hensley*, 461 U.S. at 435). If the relief is limited in comparison to the scope of the litigation as a whole, a reduced fee may be appropriate. *Hensley*, 461 U.S. at 435.

108.    In prior declarations, plaintiff's expert, Mr. Knapton, has advocated for this "allocation" approach. (See Mr. Knapton's Declaration in *Nichols Institute Diagnostics, Inc. v. Scantibodies Clinical Laboratory, Inc. et al.* attached hereto as Exhibit 8, ¶¶ 16-19, and Mr. Knapton's Declaration in *State Compensation Insurance Fund v. Kahn* attached hereto as Exhibit 9, ¶¶ 98-108).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

109.   Mr. Litt is plaintiff's other fee expert. He states that he bases his opinions on the information contained in three tables: (1) a Civil Rights Lodestar Awards/Lodestar Crosscheck; (2) Consumer/Wage & Hour Class Action Lodestar Crosschecks; and (3) Commercial or Reported Standardized Rates. (Litt Declaration, ¶ 15.)

110.   The information contained in Mr. Litt's Table 1 includes mostly information from public interest agencies (ACLU, DRA, DRLC, etc.) and large firms (Skadden Arps, Bingham, McCutcheon, Morrison Foerster, Weil, Gotschall, etc.), not small firms like plaintiff's attorneys here. The significance of firm size in relation to billing rates is discussed below. The cited cases are also from all over California (Northern District, Eastern District, Southern District, as well as some Central District), and not limited to this court's venue.

111.   The information contained in Mr. Litt's Table 2 are, as described, lodestar crosschecks from class actions. The first issue with this information is that they once again come from all over the state, not just the Central District. The second issue with this information is that it comes from class actions. The Ninth Circuit has a benchmark percentage for attorneys' fee awards in class actions (25 percent of the settlement) and the hourly rate usually, but not always, only comes into play as a potential lodestar cross-check on the size of fee award. As long as the lodestar cross-check comes within reasonable reach of the requested award (and sometimes even if it doesn't), the attorneys' fee award is typically approved. In rare instances, courts do adjust hourly rates as discussed below, but this is not usually the case. Furthermore, class actions involve multiple plaintiffs against one or more large entities, entailing a different type of litigation than encountered here. Therefore, fee awards in class actions are uninstructive and offer no relevant probative information for fee awards in the type of case at bar.

112.   The information contained in Mr. Litt's Table 3 are presented based upon a 1976 Senate Report that civil rights fees should be comparable to other types

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1                          27
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

of equally complex Federal litigation. This information is also not directly relevant to the inquiry here. First, it includes information firms of varying size including some of the nation's largest firms (e.g., Arnold & Porter, Quinn Emanuel, Skadden Arps, MoFo, Lieff Cabraser, Paul Hastings, Gibson Dunn). The relevance of firm size on billing rates is discussed below. Second, it does not indicate the type of cases involved, the complexity of the cases, or the amounts at issue.

113.   Mr. Litt's declaration presents a list of hourly rates for firms of varying sizes, mostly large firms, of differing legal specialties, and in various locations.

114.   As recognized by district courts, these types of declarations are of limited value because "the appropriate standard is 'the prevailing rate in the community' to attract 'qualified counsel to civil rights cases,' and not necessarily what others in the community believed that *Plaintiffs' counsel* are entitled to." *See, e.g., Charles Antuna v. County of Los Angeles,* No. CV 14-5600-MWF (PLAx) (C.D. Cal. Mar. 8, 2016) (quoting *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008)).

115.   Neither of plaintiff's expert declarations provide this information.

### 3.   Plaintiffs' Attorneys' Failure to Substantiate Their Rates

116.   The result of Plaintiff's Attorneys' insufficient supporting declarations is that "[Plaintiffs] have provided the court with no credible source to determine if the hourly rates they seek are reasonable. Reasonable hourly rates are calculated by reference to 'prevailing market rates in the relevant community,' with a special emphasis on fees charged by lawyers of 'comparable skill, experience, and reputation.' *Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992).*" *Jacobs v. California State Automobile Association Inter-Insurance Bureau* (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 101586, *8-9. A true and correct copy of the *Jacobs* opinion is attached hereto as Exhibit 10 and incorporated herein by this reference.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1
28
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

117.   The Court in *Muniz v. United Parcel Service, Inc.* also demanded relevant information regarding hourly rates from the party seeking attorneys' fees:

> To ascertain an attorney's reasonable hourly rate, courts consider "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum v. Moses, 24 Cal.4th 1122, 1133, 104 Cal. Rptr. 2d 377, 17 P.3d 735 (2001)* (emphasis in original). The moving party has the burden "to prove the appropriate market rate to be used in calculating the lodestar." *MBNA Am. Bank, N.A. v. Gorman, 147 Cal.App.4th Supp. 1, 16, 54 Cal. Rptr. 3d 724 (2006).*

*Muniz v. United Parcel Service, Inc.* (N.D. Cal. March 25, 2011) 2011 U.S. Dist. LEXIS 36697, *3-4. A true and correct copy of this opinion is attached hereto as Exhibit 11 and incorporated herein by this reference.

118.   The *Muniz* court went on to analyze the fee request at issue in that case. The court noted that although the attorney requesting fees indicated when he graduated from law school (1970), the primary focus of his law practice (individuals in employment law cases), the number of depositions he had taken, and the number of times he had gone to trial (35), he "did not indicate the disposition of any of his cases." (*Id.*, at *4-5.) Plaintiffs' attorneys here have not generally provided any evidence of the disposition of their cases.

119.   The *Muniz* court also found fault with the supporting declarations submitted in support of plaintiff's fee request. The plaintiff in that case offered declarations from a solo employment law practitioner and a partner from another firm. *Muniz, op. cit.* at *5. The court found those declarations to simply opine "in boilerplate language" that the rates were reasonable without articulating the basis for their conclusions. *Id.* The Court further stated that:

> Although these declarants may have expertise related to attorneys' fee awards, courts are not required to rely on opinion evidence that is simply "the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)*; see also *Hensley v. Eckerhart, 461 U.S. 424, 440 n.15, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*.

*Id.*

4828-9046-4334.1

29

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

120.   The *Muniz* court also criticized an approach that simply looked at the number of years an attorney has practiced to determine a reasonable hourly rate. The Court stated: "Career longevity does not necessarily correlate with an attorney's skill, experience and reputation. As noted above, although Mr. Jaffe indicates that he has participated in various proceedings, none of the declarants, including Mr. Jaffe, has indicated his level of success in them." *Muniz, op. cit.* at *6.

### 4.    Small Law Firm Billing Rates

121.   All of plaintiff's attorneys are either solo practitioners or in a small firm. In my opinion and experience, solo practitioners and small firms do not charge hourly rates in the same range as larger law firms, because large law firms' client base consists mainly of large corporate clients who are more willing and more able to pay the higher rates of firms who specialize in large complex litigation matters and who charge for, among other reasons, higher overhead costs. The Ninth Circuit provides that "rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City of San Francisco*, 976 F. 2d 1536, 1545 (9th Cir. 1992). The "court should look to fees charged by attorneys comparably situated to those representing the movant. Thus, if the movant is represented by a small or medium-size firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensable rates if represented by a large urban firm …." (*Algie v. RCA Global Communications*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994), citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d at 1058-59; *Jennette v. City of New York*, 800 F. Supp. 1165, 1169 (S.D.N.Y.1992); *Williams v. City of New York*, 728 F. Supp. 1067, 1071 (S.D.N.Y. 1990)]; see also *Swisher v. U.S.*, 262 F. Supp.2d 1203, 1214 (D. Kan. 2003).

122.   The significance of law firm size is also confirmed by the 2016 Real Rate Report, which is the sole authority relied upon by plaintiff's fee expert, Mr.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1                                          30

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  Knapton, for his opinion that the rates being requested by plaintiff's attorneys are

2  reasonable.

3  **Law Firm Size Has the Largest Impact on Hourly Rates**
Of the more than 350 factors we tested, our analysis confirmed that law firm

4  size was the largest driver of law firm rates. Regardless of the market
location or type of work performed, larger firms consistently charged higher

5  rates. These data suggest that larger law firms have been more successful not
only in promoting an integrated "one-stop-shop" value proposition but also

6  in obtaining a greater share of large matters. Location (especially in New
York or Washington, DC), years of experience, and the designation as a

7  partner also heavily impacted a lawyer's hourly rate.

8  Knapton Declaration, Ex. 2, pg. 33 (page 6, column 2 of the 2016 Real Rate

9  Report.)

10      123.   According to the Real Rate Report, law firm size is the *largest driver of*

11  *law firm rates*. Given that all of plaintiff's attorneys are solo practitioners or practice

12  in small firms, this must have a weighty effect upon the rates that may be awarded. I

13  am aware of at least one other federal district court case (from the Second Circuit)

14  that held that in awarding fees in a fee-shifting case, the hourly rates awarded must

15  reflect the size of the law firm involved. This case, *Bick v. City of New York* (95 Civ.

16  8781), 1998 U.S. Dist. LEXIS 5543, 1998 WL 190283 (S.D.N.Y. April 21, 1998), is

17  an unpublished opinion by the U.S. District Court for the Southern District of New

18  York. Notwithstanding being an unpublished opinion, *Bick* has been cited in other

19  decisions, both reported and unreported, in the Second Circuit since 1998, e.g.,

20  *Shannon v. Fireman's Fund Insurance Co.*, 2001 U.S. Dist. LEXIS 7452 (S.D.N.Y.

21  June 7, 2001) (age discrimination case; district court focused on hourly rates for

22  seasoned civil rights litigators at small to midsize law firms in New York).

23      124.   *Bick* follows the judicial reasoning in a reported decision by the Second

24  Circuit Court of Appeals, *Chambless v. Masters, Mates & Pilots Pension Plan*, 885

25  F.2d 1053, 1058-59 (2d. Cir. 1989), cert. denied 496 U.S. 905, 110 L.Ed. 2d 268,

26  110 S.Ct. 2587 (1990) (district court not required to assign the same hourly rate to

27  every law firm in the same city, since several market rates may prevail in a large and

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

31

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  diverse legal community such as New York City; lodestar rate can be calculated by

2  specific reference to small-to-midsize firms).

3      125.  Mr. Knapton acknowledges that large law firms charge more than small

4  law firms at paragraph 34 of his amended declaration where he states that the rates

5  in the Real Rate Report are inflated since they include rates that companies pay,

6  which are higher than rates that individuals pay.

7      126.  Large law firms spend a considerable amount of time and money

8  marketing their services to establish "brand identification," so that potential clients

9  will think of the law firm when they seek legal services. For example, Orrick,

10  Herrington & Sutcliffe, a large firm in San Francisco, spends considerable resources

11  to establish an identity as specialists in municipal bonds. In the auditor's experience,

12  clients of larger firms are often drawn by this brand identification and specialization

13  and price is not the major factor. By contrast, small law firms and solo practitioners

14  do not devote large resources to marketing, and, therefore, their potential clients are

15  much more price sensitive.

16      127.  In applying the Ninth Circuit standard for lodestar rates, the Central

17  District of California recognized that the size of a firm can be taken into

18  consideration when determining rates for lawyers of comparable ability and

19  reputation. *Common Cause v. Jones* 235 F. Supp.2d 1076, 1081-1082 (C.D. Cal.

20  2002). In *Jones*, when evaluating whether plaintiff's request for current rates was

21  reasonable to establish the lodestar, the Court compared firms of similar size and

22  reputation. See also the Ruling on Submitted Matters: Motion to Tax Costs and

23  Motion for Attorneys' Fees in *Streisand v. Adelman*, Los Angeles County Superior

24  Court Case No. SC 077 257, filed May 10, 2004, p. 4. A true and correct copy of

25  this Ruling is attached hereto as Exhibit 12 and incorporated herein by this

26  reference.

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

### 5.    Recommended Rates

128.    As noted above, none of plaintiff's attorneys cite to any award of attorneys' fees given to them at any time but for the one case in which three million dollars was the agreed upon amount for attorneys' fees and costs. The auditor's search for attorneys' fee awards for any of plaintiff's attorneys came up with only one recent case for one attorney: a June 2015 case involving Ms. Boyer. In *Rojas v. Zaninovich* (Case No. 1:09-cv-0705-AWI-JLT, E.D. Cal., June 12, 2015), the court set Ms. Boyer's rate at $300 per hour to perform the lodestar cross-check. A true and correct copy of this ruling is attached hereto as Exhibit 13 and incorporated herein by this reference.

129.    Given that *Rojas* took place slightly more than two years ago, some adjustment to Ms. Boyer's rate would be appropriate. Plaintiff's expert, Mr. Litt, argues that the appropriate adjustment is 3 percent per year. Without endorsing Mr. Litt's analysis or methodology, and simply for purposes of attempting an adjustment for Ms. Boyer's fees, if we use that 3 percent figure, Ms. Boyer would be entitled to $318.27 per hour. Rounding up would give her a current billing rate of $320. However, venue must also be taken into consideration and given that *Rojas* was filed in the Fresno Division of the Eastern District of California, a further upward adjustment would be appropriate for this Central District case. A ballpark figure for the adjustment of Ms. Boyer's rate in this instance would be $100 per hour, bringing her rate to $420. However, to be exceedingly generous, I would recommend that her rate for this case be set at no higher than $450 per hour.

130.    Ms. Boyer is a 2002 bar admittee so has approximately 15 years of experience at this point. I recommend that the billing rates for the other attorneys be adjusted based upon Ms. Boyer's recommended rate and the years of practice that each of the other attorneys has. The following table sets forth my recommended billing rates:

/ / /

4828-9046-4334.1

33

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| Biller | Years of Practice | Requested Rate | Recommended Rate | Requested Fees | Recommended Fees | Difference |
|--------|------|------|------|------|------|------|
| Green | 56 | $875 | **$600** | $79,100.00 | $54,240.00 | $24,860.00 |
| Boyer | 15 | $750 | **$450** | $331,725.00 | $199,035.00 | $132,690.00 |
| Balaban | 11 | $750 | **$400** | $125,250.00 | $66,800.00 | $58,450.00 |
| Murphy | 9 | $550 | **$325** | $159,830.00 | $94,445.00 | $65,385.00 |
| Loftus | 8 | $350 | **$300** | $19,740.00 | $16,920.00 | $2,820.00 |
| Jass | 6 | $400 | **$275** | $315,160.00 | $216,672.50 | $98,487.50 |
| Jose | 3 | $300 | **$240** | $6,210.00 | $4,968.00 | $1,242.00 |
| Persoff | 2 | $275 | **$225** | $7,040.00 | $5,760.00 | $1,280.00 |
| | | | | **$1,044,055.00** | **$658,840.50** | **$385,214.50** |

131.    Based upon the foregoing, I recommend that Ms. Boyer's rate be set no higher than $450 per hour. The rates for the other attorneys, who, with the lone exception of Mr. Green, have less experience than does Ms. Boyer, should be proportionately adjusted.

**B.    DUPLICATIVE ATTENDANCE**

132.    Plaintiff double, triple, or quadruple staffed certain depositions, hearings, the mediation, and trial.

**1.    DEPOSITIONS**

133.    The duplicative timekeeper in a deposition usually adds little to the matter and is simply there to handle paperwork or take notes. If plaintiff were paying her attorneys' fees out of her own pocket, it is doubtful that she would allow this amount of duplicative staffing to occur. This is not an appropriate billing practice and especially so when the opponent is being asked to pay for those fees.

134.    For the June 5, 2017 deposition of Nicholas Caropino, three attorneys billed to prepare and/or attend.

| 6/4/2017 | Boyer | Prepare outline for Daniel re Depo of Caropino (3.2); research prepare mediation video (1.4); review Noble testimony (0.6) | 5.20 |
|------|------|------|------|
| 6/4/2017 | Jass | Preparation for Deposition of Caropino | 2.50 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 6/5/2017 | Balaban | Review documents, review complaints from 6 women, review background of Mr. Caropino, and prepare for deposition of Nicholas Caropino; appear at the deposition of Nicholas Caropino | 5.80 |
|----------|---------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| 6/5/2017 | Boyer | Attend Depo of Caropino and confer with co-counsel before, during and after deposition | 5.20 |
| 6/5/2017 | Jass | Deposition of Caropino | 2.50 |

135.   Mr. Balaban was the examining attorney and neither Mr. Jass nor Ms. Boyer made any comments or asked any questions on the record. As Mr. Balaban did not bill to prepare for the deposition, I recommend allowing the time of Ms. Boyer to draft the deposition outline and the time of Mr. Balaban to attend. The other time should be disallowed as duplicative.

136.   For the June 7, 2017 deposition of Virgil Asuncion, both Mr. Balaban and Mr. Jass billed to prepare and attend.

| 6/6/2017 | Balaban | Review documents and file material in preparation for the deposition of Virgil Ascuncion. | 3.50 |
|----------|---------|--------------------------------------------------------------------------------------------|------|
| 6/6/2017 | Jass | Prepare Depo Asuncion | 2.60 |
| 6/7/2017 | Balaban | Prepare for and appear at deposition of Virgil Ascuncion. | 5.50 |
| 6/7/2017 | Jass | Deposition of Asuncion | 5.50 |

137.   However, Mr. Balaban was the examining attorney and Mr. Jass did not make a single statement on the record. Mr. Balaban even introduced both of them. Therefore, the time billed by Mr. Jass for preparing for and attending the Asuncion deposition should be disallowed.

138.   For the June 27, 2017 deposition of Steven Kea, both Mr. Balaban and Mr. Jass billed to prepare and attend.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

35

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

| 6/27/2017 | Balaban | **Review file material and documents for upcoming deposition of Steven Kea (2.9); Appear at deposition of Steven Kea/30 B6 Witness (1.2);** Review file material and documents for upcoming deposition of Deputy Dwayne Chappel and build strategy for the deposition (3.5); Appear at deposition of Deputy Dwayne Chappel, travel time not included (2.4) | 10.00 |
| 6/27/2017 | Jass | Prepare Depo Kea | 1.20 |
| 6/27/2017 | Jass | Depo of Kea | 2.80 |

139.    However, Mr. Balaban was the examining attorney and Mr. Jass did not make a single statement on the record. Mr. Balaban even introduced both of them. Therefore, the time billed by Mr. Jass for preparing for and attending the Kea deposition should be disallowed as duplicative.

140.    For the June 27, 2017 deposition of Dwayne Chapple, three plaintiff's attorneys appeared on the record: Mr. Balaban, Mr. Jass, and Mr. Philip Cohen. Plaintiff's attorneys have not submitted any time records for Mr. Cohen and are apparently not seeking compensation for his time. However, both Mr. Balaban and Mr. Jass billed to prepare for and attend the Chapple deposition.

| 6/26/2017 | Jass | Prepare Depo Chapple | 1.50 |
| 6/27/2017 | Balaban | Review file material and documents for upcoming deposition of Steven Kea (2.9); Appear at deposition of Steven Kea/30 B6 Witness (1.2); **Review file material and documents for upcoming deposition of Deputy Dwayne Chappel and build strategy for the deposition (3.5); Appear at deposition of Deputy Dwayne Chappel, travel time not included (2.4)** | 10.00 |
| 6/27/2017 | Jass | Deposition of Chapple | 3.50 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

141.    Mr. Balaban was the examining attorney and Mr. Jass made no comment on the record. Mr. Jass's time was duplicative and there is no indication that his presence was necessary at this deposition. Therefore, I recommend that Mr. Jass's time in preparing for and attending this deposition be disallowed.

142.    For the June 28, 2017 deposition of James Vogel, three plaintiff's attorneys appeared on the record: Mr. Balaban, Mr. Jass, and Mr. Philip Cohen. Plaintiff's attorneys have not submitted any time records for Mr. Cohen and are apparently not seeking compensation for his time. However, both Mr. Balaban and Mr. Jass billed to prepare for and attend the Vogel deposition.

| 6/27/2017 | Jass | Prepare Depo Vogel | 1.00 |
|---|---|---|---|
| 6/28/2017 | Balaban | Review file material and documents for upcoming deposition of James Vogel (2.7); Appear at the deposition of James Vogel, travel time not included (4.5) | 7.20 |
| 6/28/2017 | Jass | Deposition of Vogel | 4.50 |

143.    Mr. Balaban was the examining attorney and Mr. Jass only made one comment on the record: "It's like seven minutes," in reference to a recording. Mr. Jass's time was duplicative and there is no indication that his presence was necessary at this deposition. Therefore, I recommend that Mr. Jass's time in preparing for and attending this deposition be disallowed.

144.    For the July 26, 2017 deposition of Lieutenant Jason Danks, both Mr. Balaban and Mr. Jass billed to prepare and attend.

| 7/25/2017 | Jass | Prepare depo of Danks | 0.80 |
|---|---|---|---|
| 7/26/2017 | Balaban | **Appear at the Deposition of Lt. J. Danks (2.2); Review file material and documents for upcoming deposition of LT. J. Danks (2.2);** Review file material and documents for upcoming deposition of Adam Powell (2.7); Review file material and documents for upcoming deposition of Alex Quilantan (1.3) | 8.40 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 7/26/2017 | Jass | Depo of Danks | 2.20 |

145.    However, Mr. Balaban was the examining attorney and Mr. Jass did not make a single statement on the record. Mr. Balaban even introduced both of them. Therefore, the time billed by Mr. Jass for preparing for and attending the Danks deposition should be disallowed.

146.    For the July 27, 2017 deposition of Adam Powell, both Mr. Balaban and Mr. Jass billed to prepare and attend.

| 7/26/2017 | Balaban | Appear at the Deposition of Lt. J. Danks (2.2); Review file material and documents for upcoming deposition of LT. J. Danks (2.2); **Review file material and documents for upcoming deposition of Adam Powell (2.7);** Review file material and documents for upcoming deposition of Alex Quilantan (1.3) | 8.40 |
| 7/26/2017 | Jass | Prepare Depo Powell | 0.50 |
| 7/27/2017 | Balaban | **Appear at the deposition of Adam Powell (3.1);** Appear at Deposition of Alex Quilantan (5.5) | 8.60 |
| 7/27/2017 | Jass | Depo of Powell | 2.00 |

147.    However, Mr. Balaban was the examining attorney and Mr. Jass did not make a single statement on the record. Mr. Balaban even introduced both of them. Therefore, the time billed by Mr. Jass for preparing for and attending the Powell deposition should be disallowed.

148.    For the July 29, 2017 deposition of defense expert Robert Fonzi, both Mr. Balaban and Mr. Jass billed to prepare and attend.

| 7/28/2017 | Balaban | Review file material, documentation, and expert materials produced for upcoming deposition of Robert Fonzi | 2.90 |
| 7/28/2017 | Jass | Prepare Depo of Fonzi | 1.40 |

4828-9046-4334.1

38

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 7/29/2017 | Balaban | Prepare for and appear at Deposition of Robert Fonzi | 3.40 |
| 7/29/2017 | Jass | Depo of Fonzi | 4.00 |

149.    However, Mr. Balaban was the examining attorney and Mr. Jass did not make a single statement on the record. Therefore, the time billed by Mr. Jass for preparing for and attending the Fonzi deposition should be disallowed.

**Recommended Disallowance:**

| | |
|---|---|
| Net Fees | $658,840.50 |
| Duplicative Depositions | – 14,275.00 |
| Net Fees | $644,565.50 |

## 2.    MSJ HEARING

150.    The hearing on the motion for summary judgment was held on July 31, 2017. Four plaintiff's attorneys billed to attend this hearing: Mr. Balaban, Ms. Boyer, Mr. Jass, and Mr. Green:

| 7/29/2017 | Boyer | Review depositions for trial re Monell; prepare for hearing | 3.80 |
| 7/29/2017 | Jass | Prepare for hearing on 7/31 | 4.00 |
| 7/31/2017 | Balaban | Review moving and opposing papers and supporting evidence, and appear at MSJ Hearings (3.5); Appear at Mock Jury Trial to strategize each aspect of the case before trial, including travel time (6.7) | 10.20 |
| 7/31/2017 | Jass | Prepare for hearing | 2.00 |
| 7/31/2017 | Jass | Summary Judgment Hearing | 3.50 |
| 7/31/2017 | Green | Review MSJ papers, travel to and appear at MSJ and pre- trial hearing (5.3); prepare for and attend Mock Jury trial to strategize methods and theories for trial (5.3) | 10.60 |

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

151.    Although this was an important motion that would have narrowed the issues for trial, the presence of four attorneys is excessive. Based upon communications with defense counsel, I understand that two attorneys would have been more than adequate to attend this hearing. However, to err on the side of caution, I recommend that the time of three attorneys be allowed.

152.    Although he was plaintiff's original attorney, Mr. Jass is the attorney with the least experience out of the four who billed to attend this hearing. Therefore, I recommend that his time for preparing for and attending this hearing be disallowed.

**Recommended Disallowance:**

| | |
|---|---|
| **Net Fees** | **$644,565.50** |
| **Duplicative MSJ** | **− 2,612.50** |
| **Net Fees** | **$641,953.00** |

## 3.    MEDIATION

153.    This matter went to mediation on June 14, 2017. Four plaintiff's attorneys billed to attend the mediation: Mr. Balaban, Ms. Boyer, Mr. Murphy, and Mr. Jass.

| 6/7/2017 | Boyer | Prepare mediation brief | 4.10 |
|---|---|---|---|
| 6/13/2017 | Boyer | Research re emotional distress (2.5); **prepare for mediation (2.7)** | 5.20 |
| 6/13/2017 | Murphy | **Prepare for mediation (2.7);** research setting aside/modifying stipulation and damages (3.0). | 5.70 |
| 6/14/2017 | Balaban | Review file material and mediation briefs to prepare for upcoming Mediation (1.8); Prepare for, travel to and appear at mediation in Irvine (9.8) | 11.60 |
| 6/14/2017 | Boyer | Prepare for, travel to and attend mediation; confer with co-counsel re trial strategies | 8.10 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 6/14/2017 | Murphy | Prepare for, travel to and attend Mediation in Orange County; discuss trial strategy with co-counsel | 8.10 |
| 6/14/2017 | Jass | Mediation | 8.00 |

154.    Based upon conversations with defense counsel, I understand that only one attorney appeared at the mediation on behalf of the County of Orange. As with the hearing on the motion for summary judgment, having four attorneys bill to attend the mediation is overstaffing and duplicative.

155.    I recommend allowing the time for two attorneys to attend the mediation and disallowing the time for the remaining two attorneys. The two attorneys whose time should remain are Mr. Balaban and Ms. Boyer. The time of Mr. Murphy and Mr. Jass should be disallowed. As mediation preparation is a different matter, I do not recommend disallowing any of the time billed to prepare for the mediation.

**Recommended Disallowance:**

**Net Fees                    $641,953.00**
**Duplicative Mediation        – 5,710.00**
**Net Fees                    $636,243.00**

## 4.    TRIAL

156.    Mr. Green and Mr. Balaban were co-lead trial counsel and so their time should not be discounted. However, several other timekeepers also billed to attend some, or all, of the trial on behalf of plaintiff.

| 8/2/2017 | Balaban | Prepare for and appear at Trial, including travel time(9.7); Review depositions, discovery and documentary evidence, and expert reports in preparation for upcoming trial (8.0) | 17.70 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 8/2/2017 | Boyer | Attend trial (8.0); Review the County's special verdict form, prepare Plaintiff special verdict, research (3.9); Prepare jury instructions, research re causation proximate cause and but for, research re deliberate indifference (4.1) discuss motion for directed verdict with SSM, research re same (0.8) | 16.80 |
|---|---|---|---|
| 8/2/2017 | Murphy | Attend trial (8.0); Prepare Motion for Judgment Notwithstanding the Verdict (3.1); research re: deliberate indifference and Monell; Prepare pocket brief re: prior sexual history (4.2); research and prepare jury instructions on causation and deliberate indifference, prepare special verdict form (2.0) | 17.30 |
| 8/2/2017 | Jass | Day 1 of Trial | 8.00 |
| 8/2/2017 | Green | Prepare for and appear at Trial (9.0); strategize with co- counsel and review depositions and documentary evidence in preparation for following day of trial (3.9) | 12.90 |
| 8/3/2017 | Balaban | Review depositions, discovery and documentary evidence, and expert reports in preparation for upcoming trial (8.0); Appear at trial, including travel time (10.7) | 18.70 |
| 8/3/2017 | Boyer | Attend trial (8.0); Research and prepare pocket brief re deliberate indifference and whether applicable in express policy case (3.8); research re damages permitted, prepare jury instructions and special verdict re damages (2.7); Research re instruction on adverse inference from the 5th Amendment; edit and revise instruction re inference (1.4) | 15.90 |
| 8/3/2017 | Murphy | Attend trial (8.0); Prepare Motion for Judgment Notwithstanding the Verdict. (4.4); Research and prepare jury instructions on causation; Prepare trial brief re: damages adverse inference and sexual history (3.5). | 15.90 |
| 8/3/2017 | Jass | Day 2 of Trial | 9.00 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

42

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

| | | | | |
|---|---|---|---|---|
| 8/3/2017 | Green | Prepare for and appear at Trial (9.0); review outline for examination of witnesses in preparation for next day of trial (3.0); strategize with co-counsel re trial theories (2.5) | 14.50 |
| 8/4/2017 | Balaban | Prepare for and appear at Trial, including travel time | 10.80 |
| 8/4/2017 | Loftus | Attend trial, provide litigation support including research re verdict form and instructions | 4.20 |
| 8/4/2017 | Boyer | Review County's proposed instructions re damages(0.8); Attend trial (8.0) | 8.80 |
| 8/4/2017 | Murphy | Attend trial (8); Research and prepare jury instructions re: damages (3.5); Prepare special verdict form (1.3); Travel from Los Angeles (3.4). | 16.20 |
| 8/4/2017 | Jass | Day 3 of Trial | 9.00 |
| 8/4/2017 | Green | Prepare for witness examination and confer with client and family (2.4); appear at trial (7.0) | 9.40 |

157.  The time of the timekeepers other than Mr. Green and Mr. Balaban appears to be duplicative and unnecessary.

158.  In their motion for attorneys' fees, plaintiff tries to justify Ms. Boyer and Mr. Murphy's presence at trial for "on the spot briefing." (MPA, p. 13:8-10.) This argument does not carry much, if any, weight. From my conversations with defense counsel in this case, if trial counsel needed a pocket brief on any matter, he would walk out into the hallway during a break and call the office for that brief. There was no time that a defense brief was needed that it was not provided in a timely manner.

159.   This practice is fully consistent with my experience as both an attorney and as an auditor. An attorney does not need to be present at trial and billing for that attendance "just in case" a brief becomes necessary.

4828-9046-4334.1

43

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

160.   I have read through the trial transcripts and in several instances, some of the timekeepers billing for their attendance at trial do not even appear in the trial transcripts. According to defense counsel, some plaintiff's attorneys sat in the audience throughout the trial. Therefore, all of the trial attendance time billed by Ms. Loftus, Ms. Boyer, Mr. Murphy, and Mr. Jass could be disallowed.

161.   However, to remain conservative in disallowances, I recommend disallowing only 50 percent of the trial attendance time for these timekeepers.

**Recommended Disallowance:**

| | |
|---|---|
| **Net Fees** | **$636,243.00** |
| **Duplicative Trial (50%)** | **– 13,505.00** |
| **Net Fees** | **$622,738.00** |

## 5.    INTRA-OFFICE CONFERENCING

162.   Intra-office conferencing, or conferencing within the firm or with other co-counsel, is not directly related to any particular work product, and consists of exactly what it says – attorneys and paralegals discussing the case among themselves or giving or receiving instructions. The auditor identified a significant amount of conferencing among timekeepers in this case. While a certain amount of communication among colleagues is necessary and appropriate, excessive conferencing potentially burdens and inflates fees. Excessive conferencing is subject to disallowance.

163.   To quantify the extent of conferencing in the billing records reviewed in this audit, the auditor reviewed each entry to look for entries pertaining to conferencing or referencing other attorneys or professionals within Plaintiff's Attorneys' firms.

164.   Although there was such conferencing occurring and being billed, the amount found within the billing records was within what we have seen in other cases and so we do not recommend any adjustment based on this conferencing.



C.    **MOTION TO SET ASIDE THE STIPULATION RE:**
      **SEVERE EMOTIONAL DISTRESS**

165.    On December 5, 2016, the parties filed a Joint Stipulation to Exclude Evidence of Certain Alleged Damages. (ECF 21). In late June 2017, plaintiff's attorneys began billing to research and file a motion to set aside that stipulation.

| 6/24/2017 | Murphy | Prepare motion to set aside/modify stipulation re: IME | 2.20 |
|---|---|---|---|
| 6/25/2017 | Boyer | Prepare motion re stip | 1.70 |
| 6/25/2017 | Murphy | Prepare motion to set aside/modify stipulation re: IME | 3.80 |
| 6/26/2017 | Boyer | Prepare Motion re Stipulation of Emotional Distress(6.1); Edit and finalize motion re stip (3.8) | 9.90 |
| 6/26/2017 | Murphy | Prepare MILs (6.6); **Prepare Motion to set aside/modify stipulation re IME (3.6)** | 10.20 |
| 6/29/2017 | Boyer | Research and review depositions (4.9); **discuss plan for filing motions on Monday (0.8);** | 5.70 |
| 6/29/2017 | Murphy | Prepare MSJ; **prepare motion to set aside stip.** | 3.00 |
| 6/29/2017 | Jose | **Draft Ex Parte App for Order Shortening Time; Declaration in support of Ex Parte App for Order Shortening Time; Research re Procedures for Requesting Advancing Hearing Date (2.5);** Research re filing seal documents with Central District of CA(1.2); Review Stipulated Protective Order (0.3); Review Documents Produced by Defendants pursuant to Motion to Compel (0.8); Research propriety of filing under seal documents designated as confidential (0.4) | 5.30 |
| 6/30/2017 | Murphy | Prepare motion to withdraw stip; prepare motion to advance hearing time; prepare motion to file under seal | 4.80 |

4828-9046-4334.1

45

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 7/3/2017 | Boyer | Prepare MSJ (5.6); prepare SS (6.8); **prepare and finalize Ex aprte to advance hearing, with HNB decl(.9); prepare and finalize motion re emotional distress(1.3); prepare and finalize joint stipulation re emotional distress (1.6);** research re filing under seal (1.3); | 17.50 |
|---|---|---|---|
| 7/3/2017 | Jass | Rev. Joint Mot. For Relief from Stipulation | 2.00 |
| 7/10/2017 | Boyer | **Prepare for, travel to and attend Status Conference wherein ex partes and other motions argued and heard before judge; edit Reply to MIL (8.9);** Prepare and edit supplemental memo re motion to compel (1.1) | 10.00 |
| 7/10/2017 | Murphy | Prepare outline and materials for status conference. | 3.00 |
| 7/10/2017 | Jass | Prepare for Status Conf Hearing | 4.00 |
| 7/10/2017 | Jass | Status Conference | 3.00 |
| 7/10/2017 | Jass | Rev. Def's Opp to Motion for Relief from Stip. | 1.50 |
| 7/12/2017 | Jass | Rev. Transcript of 7/10 Conference | 1.00 |

166.    The court made a ruling on this matter at the July 10, 2017 status conference as follows: "The Court rules as follows: 1. The Motions for Relief from Stipulation 117 and 129 are denied. The Ex Parte Application to shorten time for hearing on the motion for relief from stipulation [dkt. 118] is DENIED as moot." (ECF 169.)

167.    On the following day, July 11, 2017, the court issued a minute order in chambers to the same effect. (ECF 170.)

168.    The parties voluntarily entered into the stipulation and the court found that there was no good cause to set aside the stipulation. Therefore, this effort was a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

46

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  complete failure on the part of plaintiff and defendant should not have to be asked to

2  pay for it.

3      **Recommended Disallowance:**

4

5
| Net Fees | $622,738.00 |
| Motion to Set Aside Stip | − 21,687.50 |
| Net Fees | $601,050.50 |

6

7  **D.     LIMITED SUCCESS/ALLOCATION**

8      169.   Plaintiff's original lawsuit contained multiple causes of action and

9  multiple theories based on Monell.

10     170.   The court brought a *sua sponte* summary judgment motion and, on

11  August 1, 2017, issued the following ruling:

12          Trial tomorrow will first proceed as to the *Monell* theory of liability
       against the County of Orange. Once that is complete, trial will proceed with

13     the same jury as to the issue of damages. If Plaintiff is successful in her
       *Monell* claim, the damages phase will concern both Caropino and the County.

14     If Plaintiff is unsuccessful in her *Monell* claim, the damages phase will only
       concern damages against Caropino.

15          Furthermore, the Court is in a position to rule on its *sua sponte*
       summary judgment consideration against Plaintiff's *Monell* claim. The Court

16     finds that Plaintiff cannot, as a matter of law, claim *Monell* liability based on
       the following theories: (1) the theory that the County had a policy allowing

17     officers to engage in welcome" solicitation of sexual relationships while on
       duty, (2) the theory concerning the "code of silence", and (3) the ratification

18     theory. The Court further grants partial summary judgment on Plaintiff's
       fourth *Monell* claim finding that there is no dispute of fact that the policy

19     itself exists, but that there is a dispute of fact as to causation.

20  ECF 240.

21     171.   Therefore, on the day before trial began, the Court dismissed three

22  theories on which plaintiff was attempting to establish *Monell* liability.

23     172.   Given that the Court made this ruling, it is clear that all of Plaintiff's

24  efforts to establish liability on these bases failed.

25     173.   At least 30 to 40 percent, if not more, of plaintiff's time was spent

26  trying to develop these two theories, as can be made out by the questioning which

27  occurred in the depositions, particularly those of the County employees, and by way

28  of the opposition plaintiff submitted in opposition to the Court's *sua sponte* motion

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

on *Monell*. The auditor could recommend that only 60 to 70 of the remaining fees be allowed for Plaintiff's limited success.

174.    However, the auditor believes that allowing only 60 to 70 percent of the remaining fees for their limited success would be unduly harsh and recommends that 80 percent of the remaining fees be allowed to take into consideration that Plaintiff did prevail at trial on the lone remaining *Monell* theory. The other 20 percent of fees should be disallowed.

$$20\% * \$601,050.50 = \$120,210.10$$

**Recommended Disallowance:**

| | |
|---|---|
| Net Fees | $601,050.50 |
| Allocation (20%) | − 120,210.10 |
| Net Fees | $480,840.40 |

## E.    THE REQUESTED MULTIPLIER

175.    Plaintiffs' Attorneys seek a 2.02 multiplier to enhance their lodestar amount. (Notice of Motion, p. 2:8-10.) Several factors may be considered by the court in determining whether to augment a fee award, including but not limited to, the following:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[2] Plaintiff's attorneys consistent call their request a "1.0" multiplier, but that would simply mean they are asking for their lodestar without any enhancement. It is obvious, based upon the amount being requested, that they are seeking a 2.0 multiplier and the auditor will treat the request as such.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975); see also *Serrano v. Priest* (*Serrano III*) (1977) 20 Cal. 3d 25, 48; *Press v. Lucky Stores, Inc.* (1983) 34 Cal. 3d 311, 321-322 for similar factors under state law.

176.    The *only* basis in their motion on which Plaintiff's Attorneys allege that a 2.0 multiplier is warranted is that the lodestar does not adequately reflect the true market rate of the attorneys. (Motion for Attorneys' Fees, p. 17:19-20.) However, as discussed above, the billing rates being sought by plaintiff's attorneys is already in excess of their market rate.

177.    Although Plaintiff's motion cites to several cases in which multipliers were found to be warranted based on other factors, the motion does not argue that any of those other factors are present or relevant here.

178.    However, for the sake of completeness, in case the Court chooses to examine these other factors, the auditor will address them.

179.    Plaintiff's attorneys do not discuss the time and labor required as a factor to be considered. Elsewhere, they argued that it was "a straightforward case." (See ECF 65, p. 4:26.) They cannot have it both ways.

180.    Plaintiff's attorneys do not contend that this was a novel or difficult case. Again, they argued that it was a straightforward case. While there were *Monell* issues, they were not extraordinary or novel.

181.    Plaintiff's attorneys do not argue that this case required an extraordinary level of skill to perform the legal services adequately. Given that they failed to set aside the stipulation on emotional distress damages and lost on several *Monell* theories on the eve of trial, it would be difficult for them to be able to argue otherwise.

182.    To the extent that Plaintiff's attorneys argue that this case precluded other employment, that statement lacks foundation. Summing up the total hours billed per month per timekeeper results in the following data:

4828-9046-4334.1

49

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| MONTH | BILLER | TIME |
|---|---|---|
| Mar-17 | Balaban | 14.00 |
| Apr-17 | Balaban | 5.20 |
| May-17 | Balaban | 0.80 |
| Jun-17 | Balaban | 46.10 |
| Jul-17 | Balaban | 41.70 |
| Aug-17 | Balaban | 59.20 |
| Mar-17 | Boyer | 31.40 |
| Apr-17 | Boyer | 37.10 |
| May-17 | Boyer | 4.40 |
| Jun-17 | Boyer | 82.30 |
| Jul-17 | Boyer | 194.70 |
| Aug-17 | Boyer | 92.40 |
| Jul-17 | Green | 22.90 |
| Aug-17 | Green | 52.50 |
| Mar-16 | Jass | 21.50 |
| Apr-16 | Jass | 19.30 |
| Jun-16 | Jass | 3.00 |
| Jul-16 | Jass | 1.50 |
| Aug-16 | Jass | 4.20 |
| Sep-16 | Jass | 8.90 |
| Oct-16 | Jass | 38.20 |
| Nov-16 | Jass | 25.90 |
| Dec-16 | Jass | 42.10 |
| Jan-17 | Jass | 3.90 |
| Feb-17 | Jass | 53.10 |
| Mar-17 | Jass | 115.00 |
| Apr-17 | Jass | 45.10 |
| May-17 | Jass | 32.80 |
| Jun-17 | Jass | 123.20 |
| Jul-17 | Jass | 180.20 |
| Aug-17 | Jass | 70.00 |
| Jun-17 | Jose | 14.60 |
| Jul-17 | Jose | 6.10 |
| Jun-17 | Loftus | 15.50 |
| Jul-17 | Loftus | 29.50 |
| Aug-17 | Loftus | 11.40 |
| Mar-17 | Murphy | 18.60 |
| Apr-17 | Murphy | 53.80 |
| May-17 | Murphy | 3.00 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

| Jun-17 | Murphy | 55.60 |
| Jul-17 | Murphy | 75.60 |
| Aug-17 | Murphy | 84.00 |
| Jul-17 | Persoff | 25.60 |
| | | 1,880.90 |

183.    This table shows that the timekeepers were *not* precluded from working on their other cases while working on this case. Other than in July 2017, during which month Ms. Boyer and Mr. Jass billed 194.70 and 180.20 hours respectively, all of the attorneys had more than ample time to work on other cases.

184.    The auditor is aware that this review is just a rough look at the monthly demands of the instant litigation on the law firms, and it is not intended to portray or represent the law firms' practices as a whole. At the same time, the auditor believes the data offer a helpful context to understand counsel's claim concerning the time pressures of this litigation. A review of the table demonstrates that in many months, the law firms' billed hours to this matter were very low, some months didn't even include billable hours for all timekeepers, and all of them clearly could have accepted other cases, assuming such cases were available, other than during July 2017.

185.    Plaintiff's attorneys do not present any evidence or argument on the customary fee for this type of action.

186.    Plaintiff's attorneys do mention, but do not argue, that this was a contingent matter. However, that should not affect the attorneys' fee award here. Virtually all of these types of cases are brought on this type of fee agreement whereby counsel recovers fees if and only if plaintiff prevails. This case is no different than any other case brought by Plaintiff's Attorneys. If the Court were to accept this argument, that would mean that a multiplier would be *de facto* automatically warranted in each and every case of this type. The fact that courts have never set forth this proposition, and the fact that the legislature did not make

4828-9046-4334.1

51

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  this a statutory requirement, forcefully argue against this being a valid rationale for

2  any sort of multiplier.

3      187.  Plaintiff's attorneys do not present any evidence or argument of any

4  time limitation.

5      188.  Plaintiff's attorneys do not present any evidence or argument of the

6  amount involved and the results obtained. If this were brought up, the fact that they

7  requested $40 million and were awarded just $2 million would strongly argue

8  against any positive multiplier in this case.

9      189.  Plaintiff's attorneys do not present any evidence or argument regarding

10  the experience, reputation, and ability of the attorneys in this case. Indeed, those

11  factors should already be included in the hourly fee request.

12      190.  Plaintiff's attorneys do not present any evidence or argument that this

13  case was "undesirable." Although there is some allegation that multiple attorneys

14  turned down this case at the outset, the auditor is unaware of any evidence to

15  support this allegation.

16      191.  Plaintiff's attorneys' professional relationship with the client appears to

17  be limited to slightly over one year for Mr. Jass and three to six months for the

18  remaining attorneys. There is no long-term relationship involved here.

19      192.  Finally, plaintiff's attorneys have not presented evidence of awards in

20  similar cases.

21      193.  In short, plaintiff's attorneys have not presented sufficient evidence to

22  warrant any sort of positive multiplier.

23      194.  In addition, other factors to be considered in determining whether to

24  enhance or reduce an award by applying a "multiplier" also include: (1) whether the

25  fee award will fall ultimately on taxpayers because it is against the state; (2) whether

26  the attorneys receive public or foundational funding to bring lawsuits of the type at

27  issue; (3) whether the fees would inure to the benefit of the organizations employing

28  the attorneys rather than to the attorneys themselves. (*Flannery v. California*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Highway Patrol* (1998) 61 Cal.App.4th 629, 640 n. 4 [citations omitted].) Since the County of Orange is a public entity, any award to Plaintiff's attorneys is coming out of taxpayer pockets. It would benefit the attorneys themselves, not any public benefit organization.

195.   For the foregoing reasons, a multiplier is not warranted in this case.

**SUMMARY**

196.   The following table summarizes my recommended adjustments:

| | |
|---|---|
| LODESTAR | $1,044,055.00 |
| Rate Adjustment | − 385,214.50 |
| Net Fees | $658,840.50 |
| Duplicative Deposition Attendance | − 14,275.00 |
| Net Fees | $644,565.50 |
| Duplicative MSJ Hearing Attendance | − 2,612.50 |
| Net Fees | $641,953.00 |
| Duplicative Mediation Attendance | − 5,710.00 |
| Net Fees | $636,243.00 |
| Duplicative Trial Attendance (50%) | − 13,505.00 |
| Net Fees | $622,738.00 |
| Motion to Set Aside the Stipulation | − 21,687.50 |
| Net Fees | $601,050.50 |
| Limited Success/Allocation (20%) | − 120,210.10 |
| Net Fees | $480,840.40 |

197.   Plaintiff's Attorneys' calculated lodestar is $1,044,055.00. They also request a 2.0 multiplier. After the recommended adjustments and deductions, the maximum fees that should be awarded to plaintiff for her attorneys' work on the case should be $480,840.40. This is a deduction of 54 percent, but awards 46 percent of the attorneys' claimed fees. They should not be awarded a positive

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9046-4334.1
53
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  multiplier.

2        I declare under penalty of perjury under the laws of the State of California

3  and the laws of the United States that the foregoing is true and correct.

4        Executed this 4th day of September, 2017 at Sonoma, California.

5

6                              By: _____

7                                   James P. Schratz

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# FEDERAL COURT PROOF OF SERVICE

Alexa Curtin v. County of Orange; Deputy Epson - Case No. USDC No.: 8:16-cv-00591-SVW-PLA

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On September 4, 2017, I served the following document(s): DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

### SEE ATTACHED SERVICE LIST

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on September 4, 2017, at Los Angeles. California.

_____
Debbie Wilhelm

4828-9046-4334.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**SERVICE LIST**
**Alexa Curtin v. County of Orange; Deputy Epson**
**USDC No.: 8:16-cv-00591-SVW-PLA**

Browne Greene, Esq.
**GREENE BROILEET & WHEELER,**
**LLP**
100 Wilshire Boulevard, 21st Floor
P.O. Box 2131
Santa Monica, CA  90407-2131
Tel: 310-576-1200; Fax: 310-576-1220
Email: bgreene@gbw.law
Attorneys for *Plaintiff, ALEXA*
*CURTIN*

Jeremy D. Jass, Esq.
**JASS LAW**
4510 E. Pacific Coast Hwy., Suite 400
Long Beach, CA 90804
Tel: 562.340.6299; Fax: 562.340.6422
Email:  Jeremy@jasslaw.com
*Attorneys for Plaintiff ALEXA*
*CURTIN*

Holly N. Boyer, Esq.
Shea S. Murphy, Esq.
**ESNER, CHANG & BOYER**
234 East Colorado Blvd., Ste. 975
Pasadena, CA 91101
Tel: 626-535-9860; Fax: 626-535-9859
Email:  hboyer@ecbappeal.com
Email: smurphy@ecbappeal.com
*Co-Counsel for Plaintiff ALEXA*
*CURTIN*

Daniel K. Balaban, Esq.
Balaban & Spielberger, LLP
11999 San Vicente Blvd., Ste. 345
Los Angeles, CA 90049
Tel: 424-832-7677; Fax: 424-832-7702
Email: Daniel@dbaslaw.com
*Co-Counsel for Plaintiff ALEXA*
*CURTIN*

Thomas R. Chapin, Esq.
Law Office of Thomas R. Chapin
232 E. Grand Blvd., Suite 204
Corona, CA 92882
Tel: 951-278-2919; Fax: 951-278-2999
Email:  coronalaw@aol.com
*Attorneys for Defendant Nicholas*
*Carovino*

Philip Kent Cohen, Esq.
Philip Kent Cohen, APC
100 Wilshire Bl., Ste. 1300
Santa Monica, CA 90401
Tel: 310-451-9111; Fax: 310-451-9119
Email:  pcohen@pcohenlaw.com
*Co-Counsel for Plaintiff ALEXA*
*CURTIN*

4828-9046-4334.1

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT COUNTY OF ORANGE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES