## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

|  Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**     IN CHAMBERS ORDER REGARDING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [286] AND MOTION FOR ATTORNEYS' FEES [289]

Pursuant to Fed. R. Civ. P. 50(b), Defendant County of Orange (the "County") filed a Renewed Motion for Judgment as a Matter of Law on Plaintiff Alexa Curtin's *Monell* claim. At the close of Plaintiff's case-in-chief on August 2, 2017, the County moved for judgment as a matter of law. The Court DENIES Defendant's Renewed Motion for Judgment as a Matter of Law. The Court also DENIES Plaintiff's Motion for Attorney's Fees, ordering Plaintiff to file another Motion for Attorney's Fees following the Court's instructions below.

### I.    BACKGROUND

The facts of this case have been discussed in previous orders. The parties developed these facts during trial from August 2, 2017 to August 3, 2017. The testimony of relevant witnesses will be

                                                                    :  _____

                          Initials of Preparer

                                                    PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

discussed as needed below. At the close of both the plaintiff's and defense's cases-in-chief, counsel for the County made a motion for judgment as a matter of law. The Court denied both motions.

At the end of the trial, the Court read eleven instructions to jury, including Instruction No. 11, which combined the 9th Circuit Model Civil Instructions on *Monell* liability, Numbers 9.5 and 9.8. Instruction No. 11 stated:

In order to prevail on her § 1983 claim against defendant County of Orange alleging liability based on a policy that fails to prevent violations of law by its police officers, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1.      The acts of Nicholas Caropino deprived the plaintiff of her particular rights under the United States Constitution;

2.      Nicholas Caropino acted under color of state law;

3.      The policies of the defendant County of Orange were not adequate to prevent violations of law by its police officers;

4.      The defendant County of Orange was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its police officers; and

5.      The failure of the defendant County of Orange to prevent violations of law by its police officers caused the deprivation of the plaintiff's rights by the Nicholas Caropino; that is, the defendant's failure to prevent violations of law by its police officers is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. I instruct you that Nicholas Caropino acted under color of state law. I instruct you that Nicholas Caropino deprived plaintiff of her rights under the United States Constitution.

Initials of Preparer _____ : _____

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. A policy of inaction or omission may be based on a failure to implement procedural safeguards to prevent constitutional violations. To establish that there is a policy based on a failure to preserve constitutional rights, a plaintiff must show, in addition to a constitutional violation, that this policy amounts to deliberate indifference to the plaintiff's constitutional rights, and that the policy caused the violation, in the sense that the municipality could have prevented the violation with an appropriate policy.

"Deliberate indifference" is the conscious choice to disregard the consequences of one's acts or omissions. The plaintiff may prove deliberate indifference in this case by showing that the Defendant County of Orange knew its failure to implement adequate policies made it highly predictable that its police officers would engage in conduct that would deprive persons such as the plaintiff of her rights.

If you find that the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant.

The jury found in favor of the Plaintiff. On August 4, 2017, the Plaintiff presented her damages case and the County countered it. The jury returned a verdict of $2.25 million in favor of the Plaintiff.

Defendant now claims that it is entitled to judgment as a matter of law on the *Monell* claim for two reasons. First, Defendant claims that Plaintiff did not prove that the "tolling" policy was a cause-in-fact or proximate case of her injury. Second, Defendant claims that Plaintiff did not provide sufficient evidence to support the requisite "deliberate indifference" standard. Plaintiff also files a motion to ask for payment of her attorneys' fees in this case.

II.    **LEGAL STANDARD FOR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

_____    :    _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

Rule 50(a) provides that a party may move for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If the court does not grant the motion before the case is submitted to the jury, the party who moved for the judgment may file a renewed motion for judgment as a matter of law. Fed. R. Civ. P. 50(b).

Judgment as a matter of law is proper only if "the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment." *Escriba v. Foster Poultry Farms, Inc.*, 743 F3d 1236, 1242-1243 (9th Cir. 2014).

"Because the district judge lacks the authority to resolve disputed issues of fact under those circumstances, judgment as a matter of law is appropriate only if no reasonable jury could find for a party on that claim. This necessarily means that the court must draw all reasonable evidentiary inferences in favor of the non-moving party." *Ritchie v. United States*, 451 F.3d 1019, 1022–1023 (9th Cir. 2006); see *also Graves v. City of Coeur D'Alene*, 339 F.3d 828, 838 (9th Cir. 2003) ("Judgment as a matter of law is proper if the evidence, viewed in the light most favorable to the non-moving party, permits only one reasonable conclusion."); *Murphy v. F.D.I.C.*, 38 F.3d 1490, 1495 (9th Cir.1994) ("[w]e are required to sustain a judgment based on a jury verdict if it was supported by . . . such relevant evidence as reasonable minds might accept as adequate to support a conclusion.") The court's role is not to resolve problems with testimony, but to determine whether a reasonable jury could make the inference that the jury actually made. *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F3d 1276, 1283, 1287 (9th Cir. 2001). "The district court may not reject the jury's verdict simply because another appears preferable." *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1037 (9th Cir. 2003).

### III.   The Evidence And Reasonable Inferences Support The Jury's Finding of Causation

#### a.   Requirements for Causation under Monell and § 1983

"In a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008). Because the claimed injury under *Monell* is a deprivation of a constitutional right by a municipality, causation arguments focus on the causal connection between the municipality's conduct and the plaintiff's constitutional deprivation. The Ninth Circuit has long recognized that the language of § 1983

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

contemplates causation that can be either direct or indirect: "[Section 1983] creates liability for any person who 'subjects, or causes to be subjected' particular persons to the deprivation of particular rights. Thus, liability under section 1983 can be established by showing that the defendant personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur." *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

The Ninth Circuit has further clarified that causation under § 1983 involves "both causation-in-fact and proximate causation." *Id.* In other words, a municipal policy, action or inaction must be both the "but for" cause as well as the legal or proximate cause of the constitutional deprivation. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). An act is the "proximate cause" of the injury if a reasonable person would see the injury as a likely result of the conduct. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); see also *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989) (noting that federal courts turn to common law of torts for causation in civil rights cases). As the United States Supreme Court has explained, for *Monell* claims involving an allegation that the municipal action itself violated federal law—or directed or authorized the deprivation of federal rights—"resolving issues of fault and causation is 'straightforward' because proof of such a violation 'establishes that ... the municipal action was the moving force behind the injury of which the plaintiff complains.'" *Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008) quoting *Bd. of County Comm'rs*, 520 U.S. at 404-05.[1]

#### b. *Evidence of Causation Available to the Jury*

The jury found that the policy at issue here is such a violation. This Court concluded in its order granting Plaintiff's Motion for Partial Summary Judgment, "there is no genuine dispute that the County had the specific policy that it would toll IA investigations while a criminal investigation is pending." Dkt. 240, at 3. The jury was therefore instructed that "the County of Orange had a policy of tolling the

---

[1] The County claims that *Harper* has limited applicability to this case because, the policy at issue in *Harper* directly violated federal law. But Plaintiff does not rely solely on *Harper* to establish causation here. The County is correct that "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of the Cty. Comm'rs v. Brown, 117 S. Ct. 1382, 1388-89 (1997). Even under those rigorous standards of causation, Plaintiff provided enough evidence for a reasonable jury to determine the policy was the moving force behind Plaintiff's injuries.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

Internal Affairs investigation until the criminal investigation is complete." Dkt. 275, p. 12. The jury was further instructed that to find in favor of Plaintiff, the evidence and reasonable inferences must demonstrate that the County's policy of tolling the Internal Affairs investigation caused the deprivation of the plaintiff's rights. Dkt. 275, p. 12; see also NINTH CIRCUIT MODEL JURY INSTRUCTION 9.8. Based on the evidence presented, the jury found that the tolling policy caused the ultimate deprivation of Plaintiff's rights.

### i. *Lack of Administrative Investigation Regarding Ms. Lamb's Claims*

The evidence demonstrated that on February 28, 2014, the County received a claim from Ms. Lamb detailing a sexual assault and rape by Deputy Caropino. Tr. Ex. 12; *see also* Ex. 2, 7:25-8:2, 9:19-10:12. The claim identified Deputy Caropino stopped and arrested Lamb for a DUI on September 4, 2013. The claims alleged that during the arrest, Caropino sexually assaulted Lamb "in the patrol vehicle during the arrest, [and] at jail." The claim states that "[d]uring Ms. Lamb's arrest, Deputy Caropino uncuffed Taylor Lamb and forced her to touch his penis through his uniform, intimidated her, coerced her, sexually harassed her, called and text messaged her when she was released and went to her residence on duty and had sex with her in violation of her 4th, 5th and 14th rights." Trial Ex. 12. The claim provided specific facts as to the alleged sexual assault and rape of Ms. Lamb. Ex. 4, 14:9-19:10.

In response to the claim, a sergeant compiled a file that included the claim, the police report from Lamb's arrest, and the mobile video from Deputy Caropino's vehicle on the relevant dates. Ex. 1 90:8-91:19; Ex. 2 54:12-55:5. An administrative investigation was created on March 5, 2014. Sergeant Virgil Asuncion, who worked as an Internal Affairs investigator, was assigned Deputy Caropino's file. Exhibit 1 85:2-20. Sgt. Asuncion testified that upon opening the file, he saw there was a criminal investigation pending; thus, he suspended or tolled his IA investigation pursuant to the County's policy to toll the IA investigations during the pendency of a criminal investigation. Ex. 1, 85:2-20. Indeed, Sgt. Asuncion testified that when the case was assigned to him, he followed the County's policy and did not begin his investigation of the alleged misconduct or take any investigative steps whatsoever because of the pending criminal investigation. Ex. 1 90:8-91:19, 100:2-20; Ex. 2 9:19-10:12, 23:19-24:1, 27:8-20.

Sgt. Asuncion testified although the County was on notice of the allegation that Deputy Caropino sexually assaulted Ms. Lamb in the patrol car and at the jail during her arrest, and that Deputy Caropino text messaged her when she was released from jail, went to her home, and had sex with her. Sgt.

Initials of Preparer     :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|----------|----------------------|------|------------------|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

Asuncion testified that despite those facts, County policy prevented him from even touching the investigation until the pending criminal investigation was completed. Ex. 2 8:17-10:12.

> Q. You were unable to look into this -- these serious allegations as the Internal Affairs investigator until the criminal investigation was completed?
>
> A. That is correct.
>
> Q. And all the while Deputy Caropino was still on the job.
>
> A. Yes, sir.

Ex. 2 10:7-12.

The Jury heard that no administrative actions were taken as to Deputy Caropino during the time of the criminal investigation because of the County's tolling policy. Deputy Caropino remained on active duty and on patrol during that time. Sergeant Asuncion's testimony showed that despite being on notice that Deputy Caropino may have committed a rape and sexual assault of a civilian while on duty, the County followed its policy of delaying its administrative investigation, and declined to take any administrative action regarding Deputy Caropino. The jury heard that the County permitted Caropino to continue in his position of power and authority.

When the criminal investigation ended in November 2014, Sgt. Asuncion finally opened his IA investigation. The very next day, Deputy Caropino was placed on administrative leave. Ex. 1 86:25-87:7. Sgt. Asuncion testified once he was able to begin the administrative investigation, it quickly became obvious that Deputy Caropino had violated numerous department policies. Ex. 1 87:12-15. Sgt. Asuncion himself was the one who put Deputy Caropino on leave. Ex. 1 87:8-11.

Sgt. Asuncion testified that without the tolling policy, he could have conducted the same investigation much earlier and arrived at the same result: placing Caropino on administrative leave. When asked "You would have went through the same process, and it would have been prepared in the same exact way that you presented it to your superiors, right? This officer had violated all these policies?", Sergeant Asuncion responded "yes, sir." Ex. 1, 100:2-14.

|  | : |
|--|--|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

Plaintiff provided adequate evidence for the jury to reasonably conclude that the County effectively authorized Caropino to continue the very conduct the County was aware that he allegedly committed. The jury could reasonably conclude that the County's policy was not only the cause-in-fact of Plaintiff's harm, but, because the harm Plaintiff suffered was essentially identical to the harm Ms. Lamb suffered and complained of to the County, such harm was entirely foreseeable, and thus the proximate cause.

ii. *The Criminal Investigation Was Insufficient To Prevent Harm In This Case, Despite Defendant's Argument to the Contrary*

The County claims that Plaintiff "presented no evidence the County failed to conduct an investigation." Dkt. 286 at 24. The County argues: "While Plaintiff contended the County should not have tolled the IA investigation, the County did not toll any investigation." Dkt. 286 at 25. The County reasons that because the criminal investigation was still ongoing at the time Deputy Caropino sexually assaulted Plaintiff, the IA investigation would also have been ongoing and thus no action would have occurred to remove Deputy Caropino from the field prior to his raping Plaintiff. This logic is flawed for two reasons. First, Sergeant Asuncion testified that the IA file contained almost all of the information about Lamb's claim against Caropino before Caropino sexually assaulted Plaintiff. The criminal investigation did not result in much new evidence and Sergeant Asuncion testified that he would have placed Caropino on leave earlier based on what was already in the file. Second, the County's position depends on a flawed assumption that a criminal investigation is equivalent to an IA investigation. But the evidence presented disputes this flawed claim. In fact, the jury heard testimony from multiple witnesses that they could not think of a single instance where an officer was put on administrative leave based on evidence from a criminal investigation.

The jury could reasonably conclude that a criminal investigation is not the same as an IA investigation based on the evidence presented. The jury heard testimony that a criminal investigation is concerned with whether someone committed a crime, which is analysed under a beyond-a-reasonable-doubt standard. In an administrative investigation, the concern is whether an officer violated department policies; the applicable standard is preponderance of the evidence.[2]  Ex. 2,

---

[2]  The County claims that no matter what the standard was, evidence that could have resulted in Caropino's termination would have been obtained in the criminal investigation. But this case is not about whether Caropino could have been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

45:4-46:7. As explained by Mr. Noble, Plaintiff's expert at trial, it is inappropriate for a police department to rely on a criminal investigator to do an IA investigation: "Because, again, they're looking at it for something different. They're looking to see whether or not the person committed a crime. The standard they're using is much higher than what an administrative investigator is looking at. They're looking at very different things. That's why we have these two different things. It wouldn't exist if it was okay for criminal to do both." Ex. 2 82:8-19. Indeed, the criminal investigator, Alex Quilantan, testified that he was looking into Lamb's allegations to see if a **crime** had been committed; he was not investigating whether Caropino violated any department policies or whether Caropino should be placed on leave. Ex. 3 71:23-72:5.[3]

### iii.    Summary of the Evidence Before the Jury

The testimony and evidence was adequate to show the jury that had the IA investigation not been tolled, Deputy Caropino would have been placed on administrative leave or otherwise taken out of the field prior to June 2014, when Caropino assaulted the Plaintiff. Sgt. Asuncion testified as to the evidence in the County's possession[4]:

---

terminated at all; the question is whether Caropino could have been placed on desk duty or administrative leave at an earlier point in time, before he sexually assaulted the Plaintiff. The relevant standard is important to understanding that issue. And even though the County may be correct that the criminal inquiry was only looking for probable cause to bring charges, the timing of the criminal inquiry still matters. All of the information Asuncion relied on to place Caropino on leave was available to the County before Plaintiff was sexually assaulted. In fact, all of that information had already been pulled and placed in a file for an IA investigation before the tolling took effect. The only issue is that Sergeant Asuncion had the information necessary to place Caropino on leave or on desk duty; however, Sergeant Asuncion was not able to act on that information at the time he first looked at the IA file. Sergeant Asuncion testified that once he was able to look at the file, he placed Caropino on leave the next day.
[3]    The County also said that the criminal investigation is similar to an IA investigation because the Police Department had weekly staff meeting where criminal investigators and personnel staff met and discussed ongoing cases. According to the County, if the criminal investigation resulted in anything important, the investigator would give notice to the appropriate staff during the weekly meetings. But Powell, the County's criminal investigator, testified that the criminal investigation did not uncover any new details that he found necessary to report to the executive command. Ex. 3, 23:19-24:10, 31:18-32:18, 34:16-21, 35:1-8. These weekly meetings are irrelevant to the analysis for that reason.
[4]    This considers evidence that was available to IA investigators before June 2014, when Caropino sexually assaulted the Plaintiff.

Initials of Preparer    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

- **Claim filed by Lamb on February 28, 2014**, stating that on September 4, 2013, Deputy Caropino sexually assaulted her in patrol vehicle at jail. *See* Tr. Ex. 12; *see also* Ex. 2, 7:25-8:2, 9:19-10:12.; Ex. 2 54:4-58:25. The claim also stated that after Lamb's release, Deputy Caropino went to her house while on duty and had sex with her. *Id.*
- **Lamb's Arrest Report**, pulled by the County on March 5, 2014. See Ex. 2, 54:4-58:25. The report corroborated that Caropino arrested her for DUI and that she wanted to get a blood draw instead of a breathalyser. Ex. 1, 92:1-9.
- **Patrol Video System (PVS) from Arrest of Lamb**, pulled by the County on March 5. See Ex. 2, 54:4-58:25. The PVS revealed that Caropino's microphone was disabled, and the audio recording inside the vehicle was disabled. See Ex. 3, 48:1-11, 79:8-20 (Quilantan testified that he had the PVS videos within weeks of Lamb's claim and it revealed the disabled audio and video). Sgt. Asuncion testified that from the beginning he had access to the dash-cam video of Lamb's arrest where Caropino cut his microphone and the audio recording inside the vehicle was turned off, both of which were red flags; but, that the only reason he didn't look at the PVS was because of the policy to toll the internal investigations that was in place at the time. Ex. 1, 90:8-91:19.
- **Lamb's Attorney Spoke to the Criminal Investigator** on March 12. See Ex. 2, 54:4-58:25; Ex. 3, 50:7-14. The attorney confirmed sexual assault at jail and in parking lot, and also that Caropino went to Ms. Lamb's home and had sex with her within a few days of arrest. Ex. 3, 50:23-51:7.
- **Video from Jailhouse on Date Of Lamb's Arrest**. See Ex. 2, 54:4-58:35. Sgt. Asuncion also testified that he had access to the jail video which showed Caropino was in the parking lot for 40 minutes, corroborating Lamb's allegations that she was assaulted by Caropino in the jail parking lot. Ex. 1, 91:20-25; Ex. 2, 59:1-13. Sgt. Asuncion testified that he knew from the arrest report that Ms. Lamb had refused the breathalyzer and wanted a blood draw, and knew that the best practice is to obtain the blood draw right away because the longer you wait can affect the outcome of the blood alcohol test. Ex. 1, 92:1-25. Sgt. Asuncion knew from reviewing the jailhouse video that Deputy Caropino waited in the parking lot for 40 minutes and didn't immediately get the blood draw. Ex. 1, 93:1-7. Sgt. Asuncion further testified that he knew Ms. Lamb reported that Deputy Caropino forced her to touch his penis in the parking lot, and from reviewing the video saw that on several occasions, Deputy Caropino approached the passenger side of his vehicle, opened up the passenger side door, thus potentially corroborating her claims. Ex.

Initials of Preparer        :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

1, 93:8-94:10. Sgt. Asuncion testified that the only reason that he didn't look at the jail video earlier was because the matter was still under criminal investigation. Ex. 2, 23:19-24:1.

- **Deputy Caropino's Work Schedule**, pulled March 5, 2014. Ex. 2, 54:4-58:25. The schedule showed that Caropino worked the days immediately after her arrest.
- **Dash Cam Video From Caropino's Patrol Car From the Days After Lamb's Arrest** showing Caropino at Lamb's house. See Ex. 2, 54:4-58:25. Sgt. Asuncion further testified that part of the allegation of Lamb was that after she was released from jail, Caropino had inappropriate sexual contact with her at her home; and that one of the ways he could corroborate that Caropino went to Ms. Lamb's home is to look at the dash-cam video which was available to him. Ex. 1, 94:11-22. That dash-cam video corroborated Ms. Lamb's claims as it established that Caropino was at her home for over an hour and that the video was actually turned off during that time. Ex. 1, 95:4-17. Sgt. Asuncion testified that the only reason that he didn't look at the dash-cam/patrol car video earlier was because the matter was still under criminal investigation. Ex. 2, 23:19-24:1.[5]

The Plaintiff presented the above evidence to the jury. A reasonable jury could thus infer that had the tolling policy not been in place, Sergeant Asuncion would have had facts corroborating Lamb's allegations of sexual assault available almost immediately. In fact, Sergeant Asuncion testified that the contents of the file were enough to place Caropino on leave immediately. A reasonable jury could conclude that Sergeant Asuncion would have taken Caropino off of patrol duty if Sergeant Asuncion could have considered the IA file prior to June 2014; the only reason he did not was the tolling policy.

All of this was supported by the opinion of Plaintiff's expert, Jeffrey Noble, whose testimony the jury also heard. Ex. 2 54:4-58:25. As explained by Noble, a quick review of the video showed that Caropino's microphone was not working the day he arrested Lamb; that when Caropino and Lamb left Dana Point station, the rear-facing camera was also not working; and, that the audio inside the car was not working. This was generally concerning to Noble. When they arrived at the jail, they stayed in the parking lot for 40 minutes, which was highly unusual to Noble for multiple reasons. Jail forms only take

---

[5]  The County argues that this list of evidence focuses on the investigation and not the policy. That is incorrect. As Sergeant Asuncion notes, this evidence would have been enough to place Caropino on administrative leave as it was available before Caropino sexually assaulted Plaintiff. The focus of the list is that the information available at the IA stage was enough but the policy prevented an IA officer from considering it.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

a few minutes to fill out, particularly in a DUI case because there is a need to get blood evidence. Also, because blood evidence dissipates with time, the officer would want to have a blood test as soon as possible. The jail video also shows Caropino coming around to the passenger side of the car instead of sitting in the driver's side with the report, which was also unusual.

The County also had the phone conversation between Hughes (Lamb's attorney) and Quilantan, where Hughes gave Quilantan additional facts, including that Caropino came to Lamb's home within a few days of her arrest, a fact confirmed by video. As Mr. Noble told the jury:

> Once you find that videos, you see . . . he went to her home, and he was there for an hour. And . . . he had no business there. He didn't report. He didn't tell a supervisor that he was there. . . . Once you find that video that says that yes, he went to her home, then at that point, there's no question that he should have been taken out of the field, and that all could have been done within days.

Ex. 2 54:4-58:25. The jury could reasonably conclude that the moving force that led to Plaintiff's constitutional deprivations was the policy of tolling an IA investigation—which would have considered the need to place Caropino on leave—as long as a criminal investigation was pending.

The County claims that even if the IA investigation was not tolled, no administrative action would have been taken since there is no guarantee that Deputy Caropino would have admitted any misconduct in an interview. Dkt. 286 at 25. This is an unreasonable inference because Caropino agreed to an interview in the criminal matter, which could have had greater effect on his status as an officer. Regardless, and as outlined above, there were enough facts to corroborate Lamb's allegations to justify removing Deputy Caropino from patrol before June 2014 without ever interviewing Caropino.

The County also argues that the jury's verdict on *Monell* cannot stand because "plaintiff must demonstrate that had the County implemented a policy which required the IA investigation to proceed first, the sexual assault by Caropino would not have occurred." Dkt. 286 at 24. This is incorrect. The question is whether the express policy of tolling the IA investigation until the conclusion of the criminal investigation caused the sexual assault of the Plaintiff. The jury had reasonable evidence to determine that had the IA investigation run before or parallel to the criminal investigation, Sergeant Asuncion had enough information to corroborate Lamb's allegations. The jury could reasonably conclude that Sergeant Asuncion would this have been able to take Caropino out of the field, based on Sergeant

_____                                    :  _____

                                    Initials of Preparer

                                    PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

Asuncion's own testimony. The jury could reasonably conclude that by following its policy of tolling the internal affairs investigations during the pendency of a criminal investigation, the County effectively authorized Deputy Caropino to continue the very conduct the County was aware that he allegedly committed. The harm Plaintiff suffered was identical to the harm Lamb suffered and the jury had reasonable evidence to conclude that such harm was entirely foreseeable.

The Plaintiff provided sufficient evidence for the jury to find that the County's tolling of the administrative investigation was the moving force behind Plaintiff's constitutional deprivation.

IV.   **The Evidence and Reasonable Inferences Support The Jury's Finding of Deliberate Indifference**

The County also argues that "the jury was never presented with evidence the County was deliberately indifferent, because the need for more or different action was never 'so obvious' or 'so likely' to result in a deprivation of constitutional rights." Dkt 286, at 30. This is incorrect. Plaintiffs introduced enough evidence at trial to show that the County's tolling policy implicated a high risk of constitutional violation.

The Court held in its *Monell* order that "there is no dispute of fact that the policy itself exists . . . ." Dkt. 240 at 1. As Sergeant Asuncion testified:

> Q. The reason why you didn't do an investigation is because that's the policy is not to do an investigation Internal Affairs until the criminal is exhausted. That's the policy; right?
> A. It's past practice, yes.
> Q. You didn't do anything different in this case than you did for every other case; right?
> A. Yes, sir.
> Q. This wasn't your decision not to interfere in the criminal. This was the Department's decision that you don't do investigative -- Internal Affairs investigation until the criminal is exhausted; correct?
> A. Yes, sir.

Ex. 2, at 27:8-20.

Initials of Preparer                                    : 

                                                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

In the context of the established existence of this policy, the disputed issue of fact was whether the County acted with deliberate indifference to violations of constitutional rights in creating and implementing this policy. The Ninth Circuit explained in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016), that "in *City of Canton Ohio v. Harris*, 489 U.S. 378 (1989), which concerned a Fourteenth Amendment claim for failure to train, the Supreme Court held that a municipality was deliberately indifferent when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 1076 (cleaned up). The same standard applies in cases outside of the training context as well.[6]

The issue here is whether there was substantial evidence that the policy that existed—tolling IA investigations until the completion of the criminal investigation—so obviously implicated a threat of constitutional violations that the policy makers at the County were deliberately indifferent to that threat. The Plaintiff provided enough evidence to support the jury's finding of that deliberate indifference.

Plaintiff's expert, Jeffrey Noble, explained that the generally accepted standard in policing for investigating claims of police misconduct is to conduct concurrent criminal and IA investigations. Ex. 2, at 47:23-48:7. When asked why he believed this was a best practice, Noble explained,

---

[6] As cited in this Court's Order on Plaintiff's *Monell* claims, the Ninth Circuit acknowledges that there are two types of policies:

> [T]hose that result in the municipality itself violating someone's constitutional rights or instructing its employees to do so, and those that result, through omission, in municipal responsibility for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation.

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). The policy of tolling the IA investigation is not facially unconstitutional. The County certainly did not direct Caropino to the take the unconstitutional action of sexually assaulting Plaintiff nor is there any allegation the municipality satisfied the state of mind requirement. Thus, the heightened requirement of showing deliberate indifference is "necessary to avoid imposing respondeat superior liability, which would run afoul of *Monell*." *Id.*

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

> [I]f you have an officer who is engaging in serious misconduct, um,
> particularly a case where the officer has used his position of authority by
> wearing a uniform, and there's a likelihood that they could do that again,
> you want to conduct a concurrent investigation to remove that person from
> the field to protect the community.

Ex. 2, at 52:17-52:24. The jury could reasonably infer that an officer who had used his position of power and authority to commit an act of serious misconduct, such as rape, is likely to commit such an act again if left in that position of power and authority. The jury could reasonably conclude that in the face of a complaint alleging serious police misconduct, a policy that tolls the IA investigation—thus allowing the officer to remain on duty—posed a substantially certain risk that the officer will commit the act again.

Noble also testified that he has never seen any other police agency stop an internal investigation pending the outcome of the criminal investigation. Ex. 2, at 48:23-49:5. Rather, he testified that he is familiar with the police agencies of Seattle, Chicago, New York, Miami, Austin, Los Angeles, Irvine, Westminster, and numerous other smaller cities across the nation, and they all conduct concurrent investigations. Ex. 2, at 48:9-22. And Noble noted that all the published information that he consulted stressed performing concurrent criminal and IA investigations. Ex. 2, at 80:1-20.

The County's own expert, Robert Fonzi, was asked if the San Bernardino Sheriff's Department, where he was a deputy for 33 years, had such a blanket policy, like the one here. Fonzi responded "no." Ex. 4, at 12:16-13:2. Fonzi was then asked the following questions:

> Q. Right. And in fact you believe, sir, that a policy that would in
> fact do that, that would toll every Internal Affairs investigation pending
> the outcome of a criminal investigation, is an inappropriate practice; right?
> A. An automatic policy, yes. I would agree with that.
> Q. You would agree with what we're saying in this case an
> automatic policy to toll every Internal Affairs investigation pending the
> outcome of a criminal investigation is inappropriate; right?
> A. If they don't review it on a case-by-case, yes, I would agree
> with that.
> Q. Because that would be reckless because you could have an
> officer accused of a serious crime and there is minimal information to

Initials of Preparer                                   :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

substantiate that crime and his remaining on the force could be a danger to the public. And to toll the Internal Affairs investigation into his administrative status at that point would be reckless to the public; right?
    A. It wouldn't be a reasonable practice, I would agree.

Exhibit 4, 13:3-20.[7] This also provided substantial evidence supporting the jury's verdict that the County acted with deliberate indifference.

    The County contends that deliberate indifference cannot be established here because there are no prior similar events with regard to the tolling policy, events that would have put the County on notice about the problems with the policy. Dkt. 286, at 30-32. The law does not require prior similar events or notice. As the Ninth Circuit recently explained in *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016), "the Supreme Court articulated a standard permitting liability on a showing of notice: Where a § 1983 plaintiff can establish that the facts available to city policymakers put them ***on actual or constructive notice*** that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied. *City of Canton*, 489 U.S. at 396, 109 S.Ct. 1197." *Id.*, at 1076 (cleaned up)(emphasis added). The Ninth Circuit went on to explain that "[i]n *Farmer*, the [Supreme] Court clarified its earlier holding: '[I]t would be hard to describe the *Canton* understanding of deliberate indifference, permitting liability to be premised on ***obviousness or constructive notice***, as anything but objective.' *Farmer*, 511 U.S. at 841, 114 S.Ct. 1970." *Id.* at 1076.

    A municipality can be placed on either actual notice, where other prior incidents have occurred, or, as here, constructive notice, where the obviousness of the threatened harm is sufficiently great that the municipality should have known about the implicated dangers. Notably, and unlike most other cases addressing the deliberate indifference standard, the issue here is not the need for a policy where none exists, *i.e.* additional training. Rather, it is whether there is substantial evidence that the policy that did exist so obviously implicated a threat of constitutional violations that the policy-makers at the County were deliberately indifferent to that threat.

---

[7] The County claims that this testimony is taken out of context and that the County did not have a blanket policy; however, the County's Reply does not cite to any specific portion of the record showing that the County did not blindly adhere to its tolling policy.

Initials of Preparer       : 

                         PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

The issue before the jury was the obviousness of the threat of constitutional violations. The jury heard evidence that a policy, which tolls all IA investigations pending the outcome of criminal investigation, a policy which tolls IA investigation regardless of the seriousness of the alleged misconduct, poses a threat of constitutional violations. The jury heard evidence that the likely outcome of such a policy, which would allow an officer accused of misconduct to remain active and on patrol, is the repetition of that same misconduct.

The County's reliance on *Mueller v. Auker*, 700 F.3d 1180 (9th Cir. 2012) is misplaced. *Mueller* involved a police department's failure to adequately train its police officers. The legal analysis there focused on the absence of policy, and specifically, the absence of adequate training regarding. *Id.*, at 1194. Obviousness was not an issue in that case in the way it is here. Here, the claim is not a lack of training, but rather, an affirmative policy to toll the IA investigation as long as a criminal investigation was ongoing. In other words, this is not an omitted policy where it was up to the municipality to identify the absence of that policy and a need to adequately fill it; rather the County affirmatively implemented a policy whereby all IA investigations were tolled during the pendency of a criminal investigation.

The County next argues that it was merely following California Government Code, § 3304, a statute permitting the tolling of IA investigations. Dkt. 286, at 32. The County's argument fails because while there may be statutory authorization for tolling IA investigations, there is no statutory mandate that such tolling must occur. Ex. 4, at 13:24-14:1. The mere fact that a statute exists which authorizes tolling of IA investigations does not mean that it is necessary or even advisable to toll a given investigation of misconduct, let alone mandate a policy tolling all IA investigations irrespective of the misconduct.[8]

The County also argues that "[P]laintiff offered no evidence of any intent by the County or its employees to place female citizens in danger, or to ignore their safety and well-being." Dkt. 286, at 32. That was not the issue before the jury and is not the issue in any *Monell* claim. The issue in this case is not whether the County had a specific intent to "place female citizens in danger," but, rather, whether the County acted with deliberate indifference to threat of constitutional violations that would result from

---

[8]  The County makes an argument similar to qualified immunity, claiming that it is immune from liability because it relied on California Code § 3304. Even if the statute had misled the county—a conclusion the evidence does not support—counties do not have qualified immunity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Initials of Preparer                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

their policy. There was enough evidence presented at trial for the jury to reasonably conclude that the County acted with deliberate indifference.

The Plaintiff adequately provided evidence that by tolling IA investigations of complaints of serious misconduct, the County permitted officers to continue to use their position of power and authority and likely perpetrate further assaults. Thus the Court DENIES Defendant's Motion for Reconsideration.

V.  **The Court Addresses Plaintiff's Motion for Attorneys' Fees**

a.  **Legal Standard**

"A party who prevails on a claim under § 1983 is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014), citing 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A plaintiff prevailing on his or her Section 1983 claim "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005) (quoting *Hensley*, supra, at 429); see also *Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir.2013) ("'a court's discretion to deny fees under § 1988 is very narrow and ... fee awards should be the rule rather than the exception.'").

Under the lodestar calculation, a reasonable fee is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The prevailing party bears the burden of establishing the reasonableness of the attorney's hourly rates. The court has broad discretion in evaluating a fee award because trial judges "are in the best position to assess the value of the professional services rendered in their courts." *Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315, 1321 (Cal.App.2008).

As explained by the Ninth Circuit in *Kelly*: "The lodestar method is a two-step process. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir.2000). First, a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *Id*. A reasonable hourly rate is ordinarily the 'prevailing market rate in the relevant community.' The lodestar figure 'roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case,' and is therefore a

|  |  | : |  |
|---|---|---|---|
| Initials of Preparer | | | |
| | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.2013). Second, the court determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure. *Kelly*, at 1099.

### b.  The Court Will Not Consider the Declaration of James Schratz In Determining Appropriate Attorneys' Fees

The County relies on a 54-page declaration by James Schratz, a fee auditor, who argues that the fees requested by Plaintiffs should be reduced. The declaration is improper under Federal Rule of Evidence 702. Schratz is an attorney who owns a litigation management and consulting firm and was retained by defendant to audit plaintiffs' fee request. Multiple courts, including the Ninth Circuit, have already held that his methodology in calculating fees lacks legal and factual support. See e.g. *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 992-993 (N.D. Cal. 2005).

"A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods to the facts of the case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48, 119 S.Ct. 1167, 143 L.E.2d 238 (1999). The Court acts as a gatekeeper to assess whether expert testimony is admissible. The Court has three concerns under Rule 702. First, Schratz's opinions are not based on personal knowledge and lack foundation. Second, Schratz is also not qualified to opine on the reasonableness of attorney fees. Third, Schratz's opinions are not based on a reliable methodology and instead frequently rely on speculation.

Regarding personal knowledge and a lack of foundation, Schratz does not have personal knowledge of the facts he asserts in his declaration. Schratz was not at the hearings where he disputes the number of plaintiffs' attorneys in attendance. Furthermore, Schratz makes broad sweeping generalizations about contingency fees as a whole, without providing and specific or factual support to show the contingency fee in the case at hand was problematic. Schratz Decl. ¶ 58.

Furthermore, Schratz is not qualified as an expert to provide opinions on the reasonableness of attorneys' fees because he has no experience with the issues in the case. While his office may retain experts for civil rights cases in general, none of those cases involve *Monell* claims or civil rights

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

violations involving sexual assault or rape. Also, none of the cases Schratz cites are from the Central District of California, a factor that influences the rates set for attorneys in this case.

Finally, the Court finds that Schratz has not based his opinion on reliable principles and methods. Fed. R. Evid. 702. Schratz claims that he is familiar with the amount attorneys in the Central District of California seek as hourly rates and what courts typically award. Schratz does not cite to a single case from the Central District of California that he used to determine his opinions here. Schratz also generally claims that it was unnecessary for plaintiff's attorneys to concurrently bill for depositions and pre-trial hearings, but he cites no authority for this proposition.

For all of these reasons, Schratz's opinions are based on "subjective belief" and "unsupported speculation" prohibited by *Daubert*. 509 U.S. at 589. The Court will not consider Schratz's declaration in determining attorney's fees.

### c.  **Plaintiff Was Successful in Securing a Favorable Verdict**

Defendant claims that Plaintiff did not obtain a degree of success that would warrant awarding Plaintiff's request for attorney's fees here. The Ninth Circuit has stated that "the most critical factor in determining the reasonableness of an attorney's fee award if the degree of success the plaintiff achieved." *Corder v. Brown*, 25 F.3d 833, 836 (9th Cir. 1994).

Defendant claims that because Plaintiff asked for $40 million in her closing argument and the jury returned a verdict for $2.25 million, Plaintiff did not succeed. Although a District Court should consider the amount received in relation to the amount sought, this consideration is relevant when the jury only awards nominal damages, which is not the case here. *See Mahach-Watkins v. Depee*, 593 F.3d 1054 (9th Cir. 2010). The jury verdict here, $2.25 million, is not nominal. In returning a verdict against Defendant, the jury concluded that the County's policy of tolling all internal affairs investigations pending a criminal investigation was deliberately indifferent to Plaintiff's constitutional rights and a motivating force behind Deputy Caropino's assault of Plaintiff.

Defendant also claims that because Plaintiff only won on one *Monell* theory, Plaintiff was not successful in litigating her case. Defendant provides no caselaw suggesting that Plaintiff needed to prevail on any more than one *Monell* claim in order to be named the prevailing party. The fact that the jury did find that the County acted with deliberate indifference with regard to the tolling policy is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

enough to show that Plaintiff prevailed in this case. The Supreme Court stated in *Hensley v. Eckhart* that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." 461 U.S. 424, 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* The fact that Plaintiff advanced multiple theories for her single *Monell* claim against the County in no way diminishes or alters the fact that she prevailed on at least one of these claims.

### d. **Plaintiff Misunderstands The Lodestar-Multiplier Enhancement**

Plaintiff claims that she only requests an enhancement of 1.0, not 2.0, as Defendant states in its opposition. Plaintiff is clear though that she is requesting that her attorney's fees be doubled. Doubling requires a 2.0 multiplier, as multiplying by 1.0 would keep the attorney's fees at the original rate.

A lodestar may be adjusted upwards from 1.0 based on: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitation imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and abilities of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70.

In *Kelly v. Wengler*, 478 U.S. 546, 565-66, plaintiffs' counsel requested a 2.0 multiplier of their fees. The court agreed to enhance the fee award—although not by the full 2.0 multiplier amount—for two reasons. First, there was evidence that plaintiffs' counsel provided superior performance under extreme time pressure and with very limited resources. *Id.* Second, prisoners in Idaho have such difficulty obtaining counsel for civil rights cases that plaintiffs' counsel were likely the only attorneys willing to accept plaintiffs' case. *Id.* This case is not similar. The legal principles were not particularly complicated, novel, or difficult. While some *Monell* cases can be difficult, this was not one of those cases. Plaintiff had a clear policy at issue here, unlike many *Monell* cases where the Plaintiff must first deal with the difficult question of whether the alleged pattern or practice even amounts to a policy at all. Here, Plaintiff also had multiple witnesses from the County, such as Sgt. Asuncion, who testified about what exactly the policy prevented them from doing. There was no extraordinary use of time or

Initials of Preparer          :

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

limitations imposed by the circumstances in this case. Other attorneys who work with similar civil rights claims could also have taken on this case without much other necessary expertise.

As the Supreme Court noted in *Perdue v. Kenna A.*, 559 U.S. 542, 554 (2010), enhancements in fees awards under Section 1988 are "rare" and "exceptional" and are appropriate only when the traditional lodestar calculation does not adequately reward "superior attorney performance." The Court would have to provide a "reasonably specific explanation for all aspects of a fee determination." *Id.* at 558. The Court does not see any evidence of critical maneuvering or insight by Plaintiff's counsel that would amount to rare and exceptional work. Plaintiff provides the Court with no further rationale under *Kerr* as to why the rates should be doubled. The Court finds no reason to award Plaintiff's counsel double the attorney's fees based on the record and arguments presented to the Court before and during trial.

    e.   **Some of Plaintiff's Calculations Are Not Based On Reasonable Amounts of Time Expended on This Matter**

"The district court must base its determination whether to award fees for counsel's work on its judgment as to whether 'the work product . . . was both useful and of a type ordinarily necessary to advance the . . . litigation.' *Webb v. Bd. Of Educ.*, 471 U.S. 234, 243 (1985); *G & G Fire Sprinkler, Inc.*, 156 F.3d 893, 908 (9th Cir. 1998)." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003).

Plaintiff's time-records are vague and excessive at multiple points. It is "unrealistic to expect a trial judge to evaluate and rule on every entry in an application," so courts routinely apply across-the-board reductions to address problems such as vagueness and excessive or duplicative billing. *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).[9] "Vague and

---

[9] Indeed, the Court can reduce the time spent by an attorney or paralegal by a percentage, across the board, and not abuse its discretion in doing so. "The district court reviewed samples from the fee application and calculated an 80% block billing rate. The district court identified attorneys and paralegals who were primarily responsible for block billing, and reduced 80% of their billable hours by 30%. This was permissible and not an abuse of discretion. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citing California State Bar's Committee on Mandatory Fee Arbitration's report that block billing may increase time by 10 to 30%). The district court further excluded fees incurred because of court-requested supplemental information and made an additional 10% across-the-board reduction for excessive and redundant work. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This was a reasoned exercise of discretion." See, *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010).

                                                               :

Initials of Preparer

                                       PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

ambiguous descriptions of work performed prevent the . . . court from assessing the reasonableness of the work, and should be eliminated or reduced." *In re Coxeter*, 2012 WL 7070198 (Bkrtcy. E.D. Cal. 2012).

Plaintiff claims that nine attorneys billed over 1,880 hours on this case, a case with relatively minimal discovery disputes, a single motion for summary judgment—which was renewed—and a trial that lasted less than a week. The first issue here is duplicative attendance: Plaintiff's attorneys attended multiple depositions, hearings, the mediation, and trial with more attorneys than necessary. The evidence indicates multiple depositions where Plaintiff had two attorneys present: Balaban and one other associate. There is no evidence suggesting why the second associate was necessary. The Court disallows all time spent by a second attorney preparing for and attending these depositions.

The Motion for Summary Judgment was heard on July 31, 2017. Four of Plaintiff's attorneys billed to attend this hearing; the Court does not remember hearing from more than two attorneys and disallows billing for time spent by the two attorneys with the least experience. Similarly, four of Plaintiff's attorneys billed to attend mediation. The Court lacks compelling evidence about the need for so many attorneys and disallows billing for time spent by the two attorneys with the least experience.

Six individuals billed Plaintiff for time spent on the case during trial. While the Court recognizes that Balaban and Green were lead trial counsel on the matter and conducted examinations, it was unnecessary for so many other individuals to bill for their attendance at tiral based on the evidence provided. Understanding that assistance may be required, the Court allows the hours billed by Jass to remain but disallows billing for trial attendance for all other attorneys besides Balaban, Green, and Jass.

With regard to all other matters, the Court lacks any evidence about why Murphy, Loftus, Jose, or Persoff were necessary to any portion of this case. The evidence Plaintiff provides to this Court does not show the necessity of any of these individuals, especially considering that the other attorneys in the cased billed for much of the same work and more. Therefore, the Court disallows any billing on any matter for each of those individuals.

### f.  Plaintiff's Counsels' Hourly Rates

Reasonable attorney's fees are assessed at the prevailing market rates in the relevant community. See *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). A reasonable hourly

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

rate is not defined "by reference to the rates actually charged by the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Rather, reasonable fees must be calculated based on the prevailing market rates charged by "attorneys in the relevant community engaged in 'equally complex Federal litigation.'" *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).

Plaintiff has submitted declarations not only from her attorneys attesting to the rates sought, but also a declaration from a local civil rights attorney, Barrett Litt, and an attorney's fee expert, Gerald Knapton, showing where the requested rates match fall within the prevailing market rates in Los Angeles. The declarations claim that the rate for Mr. Balaban and Ms. Boyer should be $750 an hour, the rate for Mr. Murphy should be $550 an hour, Mr. Jass would be $400 an hour, Mr. Browne would be $875 an hour, and the associates would be a range between $275-350 an hour. *See* Knapton Decl. ¶¶ 39-43; Litt Decl. ¶¶ 31-37. As detailed by Knapton, an attorneys' fees expert, "averaging across all-sized law firms and all practice areas in Los Angeles, partners charge hourly rates between $392.86 (first quartile) and $875.00 (third quartile), with a mean of $661.39 and a median of $645.83, while associates charge hourly rates between $296.17 (first quartile) and $675.00 (third quartile), with a mean of $460.21 and a median of $531.50." Knapton Decl. ¶ 38.

Both Knapton and Litt claim that the rates in this case should fall around the third quartile of the analysis, considering the complex nature of the case at hand. As the Court notes above, while *Monell* cases are typically complex, this case does not fall into such a category. Plaintiff did not have to argue about the lack of a policy, which is the issue in many *Monell* cases; to the contrary, the Court had already recognized the existence of the tolling policy at issue in the case and told the jury exactly what that policy was. Plaintiff also had access to both the internal and criminal investigation files for the Lamb claim, providing evidence that would have been much more difficult to obtain otherwise. Plaintiff also had multiple supporting witnesses employed by the County, allowing Plaintiff to prove her case with more ease than typical *Monell* plaintiffs. The Court sees nothing extraordinary or difficult about this case that warrants awarding Plaintiff's attorneys' hourly rates that are in the third quartile of the research done by Mr. Knapton.

Accordingly, the Court orders Plaintiff to file another Motion for Attorney's Fees reflecting hourly rates for each attorney that fall within the second quartile of Mr. Knapton's analysis. The Court also orders Plaintiff to include the other changes noted in Section V of this order, such as an appropriate lodestar multiplier and removing excess billing.

Initials of Preparer                    : 

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV16-00591-SVW-PLA | Date | January 31, 2017 |
|---|---|---|---|
| Title | *Alexa Curtin v. County of Orange, et al.* | | |

VI.    **CONCLUSION**

The Court DENIES Defendant's Renewed Motion for Judgment as a Matter of Law. The evidence supports the jury's verdict. The Court DENIES Plaintiff's Motion for Attorneys' Fees as it currently stands and orders Plaintiff to file a renewed motion in accordance with the guidance provided above.

Initials of Preparer                          :

PMC